# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| W&T OFFSHORE, INC., and W&T ENERGY VI, LLC,<br><br>   Plaintiffs and Counterclaim-Defendants,<br><br>v.<br><br>ENDURANCE ASSURANCE CORPORATION *et. al.*,<br><br>   Defendants and Counterclaim-Plaintiffs. | Civil Action No. 4:24-cv-03047 |

### ENDURANCE ASSURANCE CORPORATION AND LEXON INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**I.   INTRODUCTION**[1]

As discussed below, W&T's opposition brief ("**Response**") is rife with speculation, innuendo, and outright misstatements that are largely irrelevant because they are directed at issues not before the Court on the Motion. The Court need not, and should not, take W&T's invitation to wade into extraneous issues such as the fate of BOEM regulations governing W&T's off-shore drilling activities, Lexon's supposed motivations in exercising contractual rights, or W&T's financial health or lack thereof. Instead, the Court can and should decide Lexon's Motion based on Plaintiffs' undisputed material breach of the plain and unambiguous terms of the Indemnity Agreement governing the parties' relationship and the resulting threat of irreparable harm to Lexon that courts time and again have recognized in the surety context.

Despite W&T's best efforts at obfuscation, the Motion is straightforward. This is a breach of contract action arising from the Indemnity Agreement regarding surety bonds that Lexon issued

---

[1] Capitalized terms not defined herein shall have the meanings given in Lexon's Motion for Preliminary Injunction ("Motion").

on behalf of W&T. The structure of the surety relationship is as follows: if W&T (the principal) does not perform its obligations to the U.S. Department of the Interior (the obligee) in connection with oil and gas drilling permits issued to W&T, then Lexon (as surety) must perform those obligations, *subject to* Lexon's ability to obtain collateral in advance of undertaking such liability and its right to be indemnified by W&T for any related costs. *See* Mtn., Ex. A, ¶¶ 4–5.

In this way, surety bonds are a form of financing—not insurance—for the principal; if W&T defaults, Lexon's obligations run to the obligee, meaning Lexon may be required to make payments on W&T's behalf in order to, for example, employ workers to complete a project, retain lawyers to defend or assert litigation, or pay liabilities or penalties that W&T incurs. *See* Mtn., Ex. A, ¶ 5. But W&T, not Lexon, remains responsible for the cost of those obligations pursuant to the Indemnity Agreement. *See* Mtn., Ex. B-1. In other words, the arrangement does not contemplate that Lexon will incur a loss even if W&T does not perform its bonded obligations; rather, Lexon is entitled to remain or be made whole. Lexon's ability to demand collateral in its discretion is crucial to its ability to remain whole because, absent collateral, its sole remaining protection is indemnification from the principal for the costs of performance, with all the uncertainty that entails. *See Id.* ¶ 2. If Lexon does not use the collateral it is holding, the collateral is returned to W&T, as it is no longer needed to secure W&T's obligations. *See* Mtn., Ex. B-1.

Therefore, the Indemnity Agreement provides, in a section entitled "Security":

> The Surety ***may at any time and from time to time hereafter, in its sole and absolute discretion, require the Principals to provide collateral, in form and amounts acceptable to the Surety*** (such amounts not to exceed the aggregate penalty sum of all then-issued Bonds) to secure the Principals' obligations to the Surety hereunder and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond.

Mtn. Ex. B-1, ¶ 3 (emphasis added). Lexon also requires the right to access W&T's financial information in order to assess its exposure and need for security under the Bonds. *Id.* ¶ 4. These

protections are fundamental to the economic bargain of the surety-principal relationship.

Notably, nothing required W&T to obtain permits through surety bonds.[2] W&T could have satisfied BOEM's regulatory financial assurance requirements in other ways, including by posting cash. W&T chose to access the surety market, presumably to free up liquidity on its balance sheet. *See* Resp., Ex. 2-B, at 2-3 ("cash flow is paramount to our success" and "[o]ur liquidity and cash position" enable "growth opportunities"). Having made that choice and obtained the benefits of added liquidity and the ability to obtain oil and gas drilling permits via the Bonds, W&T should not be permitted to shirk its contractual commitment to provide the collateral demanded.[3]

Reaching the result W&T advocates not only would be inconsistent with the plain terms of the Indemnity Agreement and the fundamental expectations of the parties thereto, but also with W&T's acknowledgement of sureties' rights to demand collateral as set forth in its own filings with the United States Securities and Exchange Commission ("SEC"). In its 2023 Form 10-K, W&T recognized that "pursuant to the terms of our agreements with various sureties under our existing bonds or under any additional bonds we may obtain, ***we are required to post collateral <u>at any time</u>, <u>on demand</u>, <u>at the surety's discretion</u>.***" Mtn., Ex. B-3 at 46 (emphasis added). W&T's concession in its public filing is directly at odds with and fatally undermines the litigation-driven position it now takes.

Lexon established in the Motion that it is entitled to preliminary injunctive relief because

---

[2] BOEM requires oil and gas companies to provide financial security to ensure that oil and gas companies—not taxpayers—bear the costs and risks of their activities. *See* Risk Management & Financial Assurance Rule, BOEM https://www.boem.gov/sites/default/files/documents/oil-gas-energy/risk-management/BOEM_Risk%20Management_Financial%20Assurance%20Rule_Fact%20Sheet_0.pdf ("Companies provide financial assurance to BOEM in the form of surety bonds, decommissioning accounts, or other guarantees.").

[3] Lexon cannot unilaterally cancel the surety bonds. Once issued, Lexon is responsible for all obligations covered by the Bonds unless the Regional Director issues a written termination of the bond (which could occur if, for instance, W&T replaced Lexon's bonds with bonds issued by other sureties, provided substitute collateral, or discharged all obligations under the applicable permit). *See* Am. Compl., Ex. B. Lexon's current total exposure under the Bonds ("penalty sum") is approximately $55 million.

3

it is likely to succeed on the merits and confronts the threat of imminent irreparable harm. Mtn. at 15-17. As to the former, on July 9, 2024, Lexon demanded collateral in the amount of $7.5 million in the form of cash or a letter of credit. Mtn., Ex. B-2. There is no dispute that W&T has failed to provide such collateral, in material breach of the Indemnity Agreement. Mtn., Ex. A, ¶ 19. As for imminent irreparable harm, courts around the country have found a threat of irreparable harm due to failure to provide collateral in light of the importance of collateral to the economic bargain underlying the surety relationship. *See* Mtn. at 15-17. The threat of irreparable harm is especially pronounced here, where W&T faces collateral demands from several sureties that total in excess of $250 million, while W&T admittedly has only $126.5 million in cash or cash equivalents on hand and has refused to meet any portion of these collateral demands. Am. Compl., ¶ 107; Resp. at 19. Other sureties, including Lexon, have filed motions for preliminary injunctive relief seeking orders preventing the dissipation of W&T's assets.[4] Mtn., Ex. A, ¶¶ 22–23, Ex. B-7, Ex. B-9.

W&T's Response ignores these straightforward contractual issues and the mounting litigation against it altogether. Instead, W&T dedicates much of its Response to criticizing BOEM's new regulations, even though those regulations have nothing to do with Lexon or Lexon's rights under the Agreement. Resp. at 2, 8–10, 17–18. W&T concedes that the relevant provision of the Agreement is unambiguous, but nonetheless attempts to rewrite it to grant *W&T* the right to decide in *its* sole discretion the amount and form of collateral provided, or to limit the circumstances when Lexon can demand collateral to the assertion of a "claim." *See, e.g.,* Resp. at

---

[4] W&T's claims of financial stability and "improved financial position" (Resp., Ex. 2, ¶ 11) ring hollow in light of its own public disclosures and that this action arises from W&T's outright refusal to provide $7.5 million in collateral and produce financial information that would permit an assessment of W&T's purported financial strength. Instead, without evidencing how any statements regarding W&T's financial condition in the Motion are incorrect, W&T offers the Declaration of Todd Grabois, which cites cherry-picked and incomplete financial data while offering unsupported speculation not based on first-hand knowledge about Lexon's motives in exercising its contractual rights. *See* Resp., Ex. 2, ¶¶ 9, 15. W&T's speculation is unfounded, simply false and ultimately irrelevant to Lexon's right to relief.

1, 22. Of course, that is not what the Agreement says. *See* Mtn., Ex. B-1, ¶ 3. Rather, given the clear and unambiguous terms of the Agreement, coupled with the recognized threat of irreparable harm confronting Lexon, the Court should grant the relief sought by Lexon.

## II.   LEGAL STANDARD

Lexon seeks a preliminary injunction ordering W&T to: (a) post collateral in the amount of $55,902,578; (b) to the extent W&T continues to contest its inability to pay and other financial difficulties, specifically perform their books and records obligations under the Indemnity Agreement by granting the Surety access to W&T's books, records, and accounts, on an ongoing and continuing basis, as well as disclose any material financial changes; and (c) refrain from transferring, encumbering, or otherwise dissipating any of W&T's assets, until it has posted the full amount of collateral security demanded by Lexon.

The relief Lexon requests does not constitute a mandatory injunction. Lexon seeks to preserve its rights by maintaining adequate collateral, which it should already possess but for W&T's breach. *See Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997). The *status quo* is not sanctioning W&T's ongoing breach of the Agreement, but granting Lexon's Motion, including affording Lexon access to W&T's financial records and precluding W&T from transferring, encumbering, or otherwise dissipating its assets until W&T provides the collateral owed.[5] Even if Lexon is subject to a so-called "heightened" standard—"that the facts and law clearly favor the moving party" (Resp. at 11-12)—Lexon has met that standard for the reasons stated below and in the Motion.

## III.   ARGUMENT

### A. <u>Lexon Is Likely to Succeed on the Merits.</u>

Lexon asserts a straightforward contract claim seeking to enforce its unambiguous rights under

---

[5] W&T does not address Lexon's request for access to W&T's books and records under the Indemnity Agreement or that the Court preclude it from dissipating assets until it has posted the full amount of collateral owed.

5

the Agreement to: (i) in its "sole and absolute discretion" "require [W&T] to provide collateral, in form and amounts acceptable to" Lexon, and (ii) obtain "reasonable access" to the financial books and records of W&T. Mtn., Ex. B-1, ¶¶ 3, 4. On July 9, 2024, Lexon demanded that W&T deposit $7.5 million in cash collateral. Mtn., Ex. B-2. W&T had 30 days to comply with Lexon's demand. Mtn., Ex. B-1, ¶ 3. Similarly, on November 20, 2024, Lexon served a demand for access to W&T's financial books and records. Mtn., Ex. B-4. W&T did not comply with either demand. Mtn., Ex. A, ¶ 20.

With respect to the deposit of collateral, W&T attempts to justify its breach by arguing that Lexon may only demand collateral when there are "current or anticipated bond claims."[6] Resp. at 13. W&T's interpretation is contradicted by the plain and unambiguous terms of the Agreement:

> The Surety may at any time and from time to time hereafter, in its sole and absolute discretion, require the Principals to provide collateral, in form and amounts acceptable to the Surety (such amounts not to exceed the aggregate penalty sum of all then-issued Bonds) to secure the Principals' obligations to the Surety hereunder and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond. Within thirty (30) days after the Surety has made written demand on Principals, each Principal shall execute such documents and take such further action as may be necessary in order to provide such collateral.

Mtn., Ex. B-1, ¶ 3. W&T claims that the clause "to cover any actual or potential liability, claim, suit, or judgment" limits when Lexon may demand collateral. Resp. at 12-13. That argument fundamentally distorts the plain language of the provision. First, if the parties had intended to limit Lexon's ability to demand collateral only following an "actual or potential" claim, then the parties could have drafted the provision to state that collateral may be demanded "upon" or "with notice of" any "actual or potential claims." *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 822 (5th Cir. 2003) (unambiguous terms "will be given their plain meaning and . . . enforced as written"); *Endeavor Energy Resources, L.P. v. Energen Resources Corp.*, 615 S.W.3d 144, 149 (Tex. 2020) ("We begin with the most important consideration in interpreting any contract: 'the plain meaning of the [agreement's]

---

[6] W&T does not dispute that the relevant provision in the Agreement is unambiguous. *See generally* Mtn.

6

operative language.'") (citation omitted). The Agreement says no such thing. *See* Mtn., Ex. B-1, ¶ 3.

Second, W&T's construction impermissibly excises Lexon's contractual right to in its "sole discretion" demand collateral "at any time" and in any form and amount.[7] *Weingarten Realty Investors v. Albertson's, Inc.*, 66 F.Supp.2d 825, 838-39 (S.D. Tex. 1999) ("The court should 'examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'") (citations omitted). Lexon's construction, in contrast, gives effect to the entire provision. Third, the language W&T relies upon clearly addresses what the collateral may be used for ("to secure the Principals' obligations to the Surety hereunder and/or to establish reserves"), not when it can be demanded (which, as discussed, is "at any time" in Lexon's "sole discretion"). Mtn., Ex. B-1, ¶ 3. Finally, as noted above, W&T's own SEC filings confirm Lexon's interpretation, which recognize that "pursuant to the terms of our agreements with various sureties . . . ***we are required to post collateral at any time, on demand, at the surety's discretion.***" Mtn., Ex. B-3, 46. W&T's strained, litigation-driven interpretation is neither credible nor reasonable, and is belied by the plain terms of the Agreement and its own statements.[8]

In addition, Lexon's interpretation does not make the Bonds illusory. Resp. at 12. As explained above, W&T obtained the benefit of its bargain: it chose to access the surety markets to satisfy BOEM financial assurance requirements, thereby preserving balance sheet liquidity that W&T itself publicly proclaimed is "paramount," and further benefitted from being able to obtain permits to operate on the OCS. *See, e.g.*, Am. Compl., Ex. B; Resp., Ex. 2-B, at 2. In exchange for the Bonds and the associated

---

[7] Indeed, the only limitation is that the amount demanded cannot exceed the penal sum (Lexon's total exposure). Mtn., Ex. B-1, ¶ 3.

[8] *U.S. v Louisiana*, 2012 WL 832295, at *2-3 (M.D. La. Mar. 9, 2012) is inapposite. There, the Court found the omission of a comma in the provision impacted the construction of a provision entitling a "party or any person from whom discovery is sought" to move for a protective order. W&T does not and cannot explain how a protective order provision between different parties in a different lawsuit in a different jurisdiction is remotely relevant here. It is not.

benefits, W&T has premium, collateral, and indemnification obligations to Lexon under the Indemnity Agreement. Mtn. Ex. B-1. Lexon, in turn, has obligations to the obligee under the Bonds. *See, e.g.*, Am. Compl., Ex. B. Lexon's obligations to the obligee (not W&T) remain in effect until the Bonds are terminated. *See, e.g.*, *id.* During this period, W&T maintains its permits and may continue to operate, and profit from such operations, on the OCS. Thus, there is nothing illusory about the Agreement. *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 224 (Tex. App.—Fort Worth 2009, pet. denied) (contract not illusory due to "mutuality of obligation").

Finally, since W&T cannot twist the Indemnity Agreement into the contract it wishes it had entered, it attacks Lexon's purported motivations in exercising its contractual rights. *See e.g.*, Resp., at 14. Such speculation is baseless, conclusory, and misleading. It is wholly irrelevant whether the BOEM financial assurance regulations are withdrawn or stayed pursuant to court order—outcomes that are entirely speculative—because Lexon is entitled to demand collateral for any reason, in its sole discretion. Mtn., Ex. B-1, ¶ 3. Lexon is not required to establish grounds, financial or otherwise, to demand collateral under the plain terms of the Agreement. Even if Lexon was required to justify its demand, the Motion identified ample grounds supporting Lexon's decision, independent of BOEM regulations. *See* Mtn., at 15–21. Therefore, Lexon is likely to succeed on the merits of its claims.[9]

### B. Lexon Confronts the Threat of Imminent Irreparable Harm.

The Motion established that Lexon confronts imminent irreparable harm absent relief from this Court due to W&T's failure to provide the requested collateral. Mtn. at 15–17; *see, e.g., Hartford Fire Ins. Co. v. 3i Construction, LLC*, No. 3:16-cv-00992, 2017 WL 3209522, at *4 (N.D. Tex. May 18, 2017) (movant "identified an irreparable injury in the loss of its contractual rights under the Indemnity Agreement"); *Travelers Casualty and Surety Co. of Am. v. Samson Investment Co.*, No. 13-cv-156,

---

[9] W&T does not address or dispute Lexon's right to access its books and records, nor does it contest that it refused such access in breach of the Agreement.

8

2013 WL 12109098, at *2 (N.D. Okla. June 17, 2013) (finding imminent irreparable harm without claim because the surety "will be effectively denied the benefit of its bargain if it must wait until the conclusion of the case to obtain the letter of credit").

W&T argues that the harm Lexon faces is "strictly financial." Resp. at 15. But as the decisions cited in the Motion make clear, the risk that W&T will be unable to provide collateral due to competing demands from multiple sureties, coupled with the critical role of collateral in the surety's bargain, distinguishes the decisions upon which W&T relies and supports a finding of imminent irreparable harm. Neither *Endurance Assurance Corp. v. Axon Power & Gas LLC*, No. 3:20-cv-00185-X, 2020 WL 3792259 (N.D. Tex. July 6, 2020) nor *Travelers Casualty & Surety Co. of America v. Padron*, No. 5:15-CV-200-DAE, 2015 WL 1981563 (W.D. Tex. May 1, 2015) involved the mounting $250 million collateral demands at issue here. Moreover, a later decision in *Padron* actually granted the surety the relief it sought with respect to collateral. *Travelers Cas. & Sur. Co. of Am. v. Padron*, No. 5:15-cv-200, 2017 WL 9360906, at *7 (W.D. Tex. Aug. 2, 2017).[10]

C. **The Potential Harm Is Greater to Lexon than to W&T.**

As explained in the Motion, without injunctive relief, Lexon may be left with no remedies at all, including specific performance. W&T complains that Lexon's "assertion of collateralization on demand is unfair." Resp. at 22. Yet, W&T freely chose to satisfy BOEM's financial assurance requirements via surety bonds, thereby creating greater liquidity for the company, and relied on those same Bonds to obtain permits to conduct its operations on the OCS, from which it derives millions of dollars in revenues. Am. Compl., Ex. B; Resp., Ex. 2-B, at 2. Having obtained those

---

[10] Lexon respectfully submits that the Court's one-page decision in *Axon* incorrectly disregarded the ample authority that recognizes the irreparable harm sureties face when collateral is not timely provided. Mtn. at 15-17. Regardless, that decision applied different facts to a different agreement than those at issue in this case. Here, W&T faces collateral demands that exceed its cash position, while last year, its credit rating was downgraded, and it no longer maintains an investment-grade credit rating. Mtn. at 9–10.

benefits, W&T's assertion that the Bonds serve no purpose and the Agreement is illusory if Lexon is fully collateralized is simply false. W&T should be made to comply with the obligations it undertook to receive the foregoing benefits by providing Lexon with the collateral demanded.

There is no risk of a "collateral windfall" to Lexon here, and W&T's assertions in this regard misstate the purpose and permitted use of collateral. Resp. at 1. Collateral is not a payment to Lexon to use for any purpose.[11] Rather, collateral is a deposit of cash or other assets that Lexon is entitled to use to satisfy W&T's obligations covered by the Bonds if W&T defaults on those obligations. Mtn., Ex. A, ¶ 5. If collateral is not used, it is returned to W&T. Mtn., Ex. B-1, ¶ 1. As recognized in *Padron*:

> [I]n finding irreparable harm and granting injunctive relief, courts protect: . . . three interests of the surety: the bargained-for benefit of collateral security, avoidance of present exposure to liability during pending litigation against indemnitors, and avoidance of risk that, should Indemnitors become insolvent, the surety will be left as a general unsecured creditor, frustrating the purpose of the indemnity agreement.

2017 WL 9360906, at *10 (citation omitted).

### IV.   CONCLUSION

For the foregoing reasons, Lexon respectfully requests that the Court issue a preliminary injunction ordering W&T (1) to deposit with Lexon the sum of $55,902,578 in collateral security; (2) to perform its books and records obligations under the Indemnity Agreement; and (3) not to transfer, encumber, or otherwise dissipate any of its assets until it has posted the full amount of the collateral sought by Lexon. Lexon also seeks any further relief as may be appropriate in accordance with the nature of this cause.

---

[11] W&T repeatedly avers that Lexon should not need collateral because W&T has been paying its premiums under the Bonds. Resp. at 1, 6, 7. Premiums are periodic payments made to Lexon as compensation for the potential liability it accepts in issuing the bonds. Mtn., Ex. B-1, ¶ 1. That W&T has not breached yet another provision in the Agreement, *i.e.*, its obligation to pay premiums, is irrelevant to whether it has breached its obligation to provide collateral.

Dated: December 18, 2024

Respectfully submitted,

**VINSON & ELKINS LLP**

_/s/ Jason M. Halper_____
Jason M. Halper (admitted *pro hac vice*)
Sara E. Brauerman (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel.: (212) 237-0000
Fax: (212) 237-0100
jhalper@velaw.com
sbrauerman@velaw.com

Alyx E. Eva
Texas Bar No. 24116334
Federal ID No. 3544812
Sarah Smati
Texas Bar No. 24137198
Federal ID No. 3895036
845 Texas Avenue, Suite 4700
Houston, Texas 777002-2947
Tel.: (713) 758-2060
Fax: (713) 615-5068
aeva@velaw.com
ssmati@velaw.com

**ATTORNEYS FOR ENDURANCE ASSURANCE CORPORATION AND LEXON INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2024, a true and correct copy of the above and foregoing document was served on all counsel of record in compliance with the Federal Rules of Civil Procedure.

_/s/ Sara E. Brauerman_____
Sara E. Brauerman