IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, | | |
| | Plaintiffs, | |
| v. | | Civil Action No. 4:24-CV-03047 |
| ENDURANCE ASSURANCE CORPORATION AND LEXON INSURANCE CO., | | |
| | Defendants. | |
| U.S. SPECIALTY INSURANCE COMPANY, | | |
| | Plaintiff, | |
| v. | | Civil Action No. 4:24-CV-04113 |
| W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, | | |
| | Defendants. | |
| UNITED STATE FIRE INSURANCE COMPANY, | | |
| | Plaintiff | |
| v. | | Civil Action No. 4:24-CV-04395 |
| W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, | | |
| | Defendants. | |
| PENNSYLVANIA INSURANCE COMPANY, | | |
| | Plaintiff | |
| v. | | Civil Action No. 4:24-CV-04400 |
| W&T OFFSHORE, INC., | | |
| | Defendant. | |

**PENNSYLVANIA INSURANCE COMPANY'S REPLY TO PLAINTIFFS' RESPONSE TO PENNSYLVANIA INSURANCE COMPANY'S MOTION FOR PRELIMINARY INJUNCTION**

Pennsylvania Insurance Company ("Penn"), hereby states as follows its Reply to Plaintiffs' W&T Offshore, Inc. ("W&T Offshore") and W&T Energy VI, LLC ("W&T Energy") (collectively, "W&T") Response to Pennsylvania Insurance Company's Motion for Preliminary

Injunction (Dkt. 54) ("W&T's Response").

## I.   SUMMARY

W&T's Response relies almost entirely on the irrelevant assertion that no claim exists, a standard that is inapplicable under the Indemnity Agreement. W&T is well aware of its obligations, having notified its investors, advisors, and regulators for years that, pursuant to its bonding agreements, "we may be required to post collateral at any time, on demand, at the surety's sole discretion." W&T Offshore, Inc., Annual Report (Form 10-K) (Mar. 6, 2024), https://www.sec.gov/Archives/edgar/data/1288403/0001558370-24-014923-index.htm.

Despite its contractual obligations, W&T seeks a ruling that would eviscerate the Indemnity Agreement's purpose and transform Penn into a perpetual guarantor without recourse. W&T fails to even address either the basis of Penn's discharge demands or the governing terms of the Indemnity Agreement, which are clear and enforceable.

In sum, W&T seeks to obscure the real issues before the Court by mischaracterizing the relief sought, misstating applicable law, and introducing an improperly heightened standard for injunctive relief. Penn respectfully asks this Court to enforce the plain language of the Indemnity Agreement and follow well-established precedent supporting the preliminary relief requested.

## II.   ARGUMENTS AND AUTHORITIES

W&T's Response relies on a fundamental misunderstanding of the relief sought by Penn and the purpose of injunctive relief in the context of an indemnity agreement. As explained by the Court in *Talbot*, when awarding injunctive relief to a Surety, courts focus on protecting the interests of sureties in the three following respects:

> …the bargained-for benefit of collateral security, avoidance of present exposure to liability during pending litigation against indemnitors, and avoidance of risk that, should Indemnitors become insolvent, the surety will be left as a general unsecured creditor, frustrating the purpose of the indemnity agreement.

*Int'l Fidelity Ins. Co. v. Talbot Constr., Inc.*, No. 1:15-CV-3969-LLM, 2016 WL 8814367, at *7 (N.D. Ga. Apr. 13, 2016).

The reasoning of the *Talbot* Court is paramount and instructive in the context of injunctive relief based on the language of an indemnity agreement. Rather than focusing on the monetary loss of the surety, it focuses on the surety's *rights* that will forever be lost without the Court's injunctive relief.

### A. Previous Admissions and Current Omissions by W&T Undermine its Efforts to Avoid its Contractual Obligations

W&T's newfound interpretation of its obligations under the Indemnity Agreement directly contradict its prior admissions in public filings. For years, W&T has disclosed to its investors, advisors, and regulators that:

> Pursuant to the terms of our agreements with various sureties under our existing bonding arrangements, or under any future bonding arrangements we may enter into, we may be required to post collateral at any time, on demand, at the surety's sole discretion.

*See* W&T Offshore, Inc., Annual Report (Form 10-K) (Mar. 6, 2024), https://www.sec.gov/Archives/edgar/data/1288403/0001558370-24-014923-index.htm.

Yet now, W&T argues that Penn's "demand for a collateral windfall is unsupported by the agreement at issue, which requires that such demand relate directly to liability." (W&T Response, Dkt. 54, p. 1.) This assertion is simply incorrect. The plain language of the Indemnity Agreement imposes no such requirement.

The relevant provision of the Indemnity Agreement states:

> The Surety may, in its sole discretion, determine one or more of the following: (a) the Indemnitors financial condition has been or is believed to be deteriorating; or (b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the Bond(s). In such an event, within thirty (30) days of receipt of the Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s)

> by providing competent written evidence of release satisfactory to the Surety, in its sole discretion. If Indemnitors fail to provide the aforementioned release Indemnitors shall, within an additional seven (7) days, provide the Surety with collateral in the amount of 100% of the unreleased liability under the Bond(s).

The Indemnity Agreement, Case No. 4:24-cv-04400, Dkt. 1-3, ¶ 12.

Penn's discharge demand clearly establishes that W&T must obtain the release of all of the bonds within 30 days, and—only if they fail to do so—is the requirement triggered to provide Penn with collateral equal to the penal sum of all outstanding bonds. The discharge demand stated in relevant part:

> The Indemnity Agreement provides the Surety with an unequivocal right of exoneration and to be released form the Bonds by the Principal and its Indemnitors.

*See* Discharge Demand, Case No. 4:24-cv-04400, Dkt. 1-4, p. 2.

Despite the clarity of the provision and related demands, W&T constructs a straw man argument—that no claims exist—to assert that Penn's collateral demand is unreasonable. W&T then cites cases dealing with *contract* surety indemnity agreements as opposed to the *commercial* indemnity agreements before this Court.[1]

---

[1] In general, contract surety is focused on guaranteeing obligations in construction and service contracts, while commercial surety guarantees compliance with laws, licenses, or other specific obligations. The *contract* surety cases cited within Penn's Brief contain language—also included, but not relied upon, in Penn's indemnity agreement—that ties collateral demands to potential, pending, or actual claims. The collateral awarded in those cases discussed the potential claims because the sureties moved on those bases. Indemnity agreements for commercial sureties, on the other hand, typically contain *additional* provisions allowing sureties to request to be discharged from one or more bonds. The collateral demands in those cases therefore equate to the amount of undischarged liability. *See, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, No. 13-CV-156-JHP-FHM, 2013 WL 12109098, at *1 (N.D. Okla. June 17, 2013), *report and recommendation adopted sub nom. Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, No. 13-CV-0156-JHP-FHM, 2013 WL 12109099 (N.D. Okla. July 3, 2013) ("As relevant to the current application, the Indemnity Agreement provides that upon Traveler's demand Samson will obtain Travelers' full and complete discharge from the bonds and provide written evidence of the discharge satisfactory to Travelers in its sole discretion. If Samson fails to obtain Traveler's discharge and provide satisfactory written evidence of the discharge, Samson agreed to provide an irrevocable letter of credit to Travelers equal to the undischarged liability under the bonds.").

W&T's failure to address the pertinent provision of the Penn's Indemnity Agreement is fatal in a number of ways.

First, W&T mischaracterizes the Indemnity Agreement by claiming that Penn must tie its collateral demand to a claim. The Indemnity Agreement does not impose such a requirement; instead, it grants Penn the sole discretion to determine both the timing and the amount of collateral required.

Second, W&T ignores the fact that it had options to mitigate its collateral obligations. Penn's demand was tied to W&T's refusal or inability to replace and release Penn's Bonds. If W&T had replaced the Bonds with those from another surety—something that again W&T has recently notified its investors is an option[2]—it would have avoided the necessity of posting collateral entirely. Even partial replacement of the Bonds would have proportionally reduced W&T's collateral obligations.[3] By failing to act, W&T triggered its obligation to provide collateral for the full amount of the undischarged liability.

Notably, W&T's current position asks the Court to re-write the Indemnity Agreement in multiple, important respects. While the Indemnity Agreement allows the Surety to determine the timing and form of the collateral, W&T asks that the Court hold that the timing must be triggered by a claim and the form of collateral can be chosen by W&T. Neither position is supported by

---

[2] W&T Offshore, Inc., Quarterly Report (Form 10-Q) (dated November 7, 2024), https://www.sec.gov/Archives/edgar/data/1288403/0001558370-24-014923-index.htm ("As a result of the foregoing litigation, [W&T] may be required to provide the collateral demanded by the surety entities, or . . . **[W&T may] choose to replace the surety bonds provided by the applicable surety with surety bonds from different surety entities**.") (emphasis added).

[3] As an example, *see Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, No. 13-CV-156-JHP-FHM, 2013 WL 12109098, at *1 (N.D. Okla. June 17, 2013), *report and recommendation adopted sub nom. Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, No. 13-CV-0156-JHP-FHM, 2013 WL 12109099 (N.D. Okla. July 3, 2013) ("Travelers and Samson worked together and obtained further written documentation of Travelers' discharge satisfactory to Travelers for approximately one-half ($^1/_2$) of the bonds. Unsatisfied with the written documentation of discharge on the remaining bonds, Travelers seeks specific performance of the terms of the Indemnity Agreement which requires Sampson to provide an irrevocable letter of credit to Travelers for Travelers' undischarged liability on the bonds.")

the Indemnity Agreement and should be rejected by this Court. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)("[C]ourts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless.")(emphasis in original).

Even more troubling, however, is that W&T is asking for a ruling that would hold these sureties in an indefinite contract. Penn merely wanted W&T to obtain replacement bonds from another bonding company. This is the only avenue for Penn to, in effect, terminate its business relationship with W&T. If Penn is not afforded the right to make that request, then the Indemnity Agreement is rendered meaningless.

The Fifth Circuit has repeatedly rejected interpretations of contracts that would create perpetual obligations, presuming instead that contracts are terminable at will unless expressly stated otherwise: "The Fifth Circuit does not favor perpetual contracts and presumes that [any such] contract is terminable at will." *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 855 (5th Cir. 2004) (citing *Trient Partners I, Ltd. v. Blockbuster Entm't Corp.*, 83 F.3d 704, 708 (5th Cir. 1996)).

This Court is therefore presented with two options: (1) enforce the Indemnity Agreement as written, holding W&T to its contractual promises, or (2) accept W&T's flawed interpretation, which would improperly convert the Indemnity Agreement into an indefinite obligation. But even under W&T's newfound interpretation, the outcome remains the same: a perpetual contract is disfavored and will be treated as terminable at will—requiring W&T to obtain replacement bonds. *Id*. Thus, under either interpretation, the result is the same—W&T would be required to replace the bonds. Having failed to do so, W&T's collateral obligations have been triggered, and this Court should therefore grant the requested relief.

Penn will use the remainder of its Reply to quickly address a few of the other issues raised in W&T's Response.

### B.  Mandatory Injunction

W&T argues that Penn seeks a mandatory injunction, yet this relief is fully consistent with well-established precedent cited by US Fire.[4] Courts routinely grant similar injunctions in favor of sureties, recognizing that the bargained-for right to collateral security is a fundamental protection under indemnity agreements.

### C.  Penn has Demonstrated Irreparable Harm

W&T discusses, at length, the *Padron I* and *Padron II* cases, yet ignores the reasoning and ultimate holding of Padron that "new evidence" regarding dissipation of assets "persuaded the [*Padron*] court that there was a risk of irreparable harm." W&T's Response, Dkt. 54, p. 17. That was not the Court's holding.

W&T cites to an out-of-context slice of the Court's opinion for the proposition that the dissipation of assets led the Court to find irreparable harm because the surety was finally able to show that "[D]efendants' financial situation was a 'presently existing actual threat to Defendants' ability to fulfill their obligations under the Indemnity Agreement." W&T's Response, Dkt. 54, p. 17.[5]  There is a crucial omission from the text that undermines its argument, including the bolded phrase in the following sentence: "At the hearing and through the

---

[4] *Int'l Fidelity Ins. Co. v. Talbot Constr., Inc.*, No. 1:15-CV-3969-LMM, 2016 WL 8814367, at *7 (N.D. Ga. Apr. 13, 2016); *Travelers Cas. & Sur. Co. of Am. v. Padron*, 5:15-CV-200-DAE, 2017 WL 9360906, at *10 (W.D. Tex. Aug. 2, 2017); *Travelers Cas. v. Samson Inv. Co.*, 13-CV-156-JHP-FHM, 2013 WL 12109098, at *1 (N.D. Okla. June 17, 2013), report and recommendation adopted sub nom. *Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, No.13-CV-0156-JHP-FHM, 2013 WL 12109099 (N.D. Okla. July 3, 2013); *Merchants Bonding Co. (Mut.) v. Arkansas Constr. Sols., LLC*, 5:18-CV-05078, 2019 WL 452767 (W.D. Ark. Feb. 5, 2019); *Merchants Bonding Co. v. Burnside*, No. 4:22-CV-3651, 2023 WL 4140455 (S.D. Tex. June 21, 2023)

[5] W&T's conflicting representations is not limited to its interpretation of the Indemnity Agreement. Even within its Response (Dkt. 55), W&T argues on one hand that US Fire "has not presented any evidence that W&T is presently in dire financial condition" yet also alleges that the sureties' requests for full collateralization are "economically devastating." *See* W&T's Response, Dkt. 55, pp. 21 & 27, respectively.

briefing, [the Surety] has shown that Defendants' financial situation is a presently existing actual threat to Defendants' ability to fulfill their obligations under the Indemnity Agreement, **further compounding** the irreparable harm to [the Surety] if it does not receive injunctive relief by way of specific enforcement of the collateral security provision." *Padron*, 2017 WL 9360906, at *10 (emphasis added).

The *Padron* court did not need to find any dissipation of assets in holding that the surety was irreparably harmed. That evidence merely *compounded* the court's conclusion that the surety was irreparably harmed because "a judgment for money damages alone would deprive the surety of prejudgment relief to which it is contractually entitled." *Id*. It should be noted—in the opinion's section entitled "Conclusions on Irreparable Harm"—the court does not even mention the dissipation of the indemnitors' assets:

> Therefore, similar to the court's finding in, for example, *Talbot Construction, Inc.*, the Court finds that [the surety] would be irreparably harmed without injunctive relief because it has no adequate remedy at law for a breach of the collateral security provision, "either for recovering for its actual losses or for protecting itself against future losses due to claims on the bonds." *See* 2016 WL 8814367, at *7. Just as the surety did in *Talbot Construction, Inc.*, [the surety] here "specifically sought protection against present exposure to liability on bonds through contractual language requiring deposit of collateral 'on demand,'" and therefore, "[d]amages available after trial and judgment, even if including costs and interest, are of little use" to [the surety] "when it is responsible for investigating, defending, and paying claims on bonds in the present." *See id*. Accordingly, [the surety] has clearly shown a substantial threat of irreparable harm.

*Padron*, 2017 WL 9360906, at *11.

W&T's Response relies on a misreading of *Padron* and a fundamental misunderstanding of surety law. The inability to enforce a collateral demand before claims arise is well-established as irreparable harm. Courts routinely enforce such provisions to protect sureties from precisely the type of risk W&T seeks to impose on Penn. If W&T's argument were accepted, the collateral

security provision would have no practical effect, as it would only apply when it is too late for the surety to mitigate its risk. Courts reject such interpretations.

### D. Alleged Fact Issues Exist are Irrelevant at this Stage

The remainder of W&T's brief focuses on alleged fact issues and a request for expedited discovery. Penn respectfully submits that these purported issues, which remain unsupported by evidence, do not preclude the Court from ruling on its Motion for Injunctive Relief. To the extent W&T believes these defenses may affect the ultimate issuance of a permanent injunction, such concerns are addressed by the protection provided through the injunction bond. As to whether an evidentiary hearing is necessary, Penn defers to the Court's judgment but believes the record provides sufficient grounds to grant the requested relief without additional proceedings.[6]

### PRAYER

For these reasons, Penn requests that this Court grant the Motion for Preliminary Injunctive Relief and for such further relief in law or equity to which it may be justly entitled.

---

[6] Penn contends that since it seeks a preliminary injunction, not a final injunction, an evidentiary hearing is unnecessary. In the undersigned's experience, the vast majority of the motions he has filed have been granted without evidentiary hearings. See *The Cincinnati Ins. Co. v. Arkroc Construction, et al.*, No. 4:11-cv-516-JMM, at [Dkt. 33] (E.D.Ark. Jan. 20, 2012) (granted on the papers; no hearing); *Int'l Fidelity Ins. Co. v. Talbot Constr., Inc.*, No. 1:15-CV-3969- LMM, 2016 WL 8814367, at *7 (N.D. Ga. Apr. 13, 2016) (granted on the papers; no hearing); *Argonaut Ins. Co. v. Kimbrel Oil Corp., et al.*, No. CJ-2016-2064 (Dist. Ct. of Tulsa Cnty., Okla., Aug. 10, 2016) (granted on the papers; no hearing); *Argonaut Ins. Co. v. 1996 Snyder Family P'ship, Ltd.*, No. 219-02093-2016 (Collin Cnty. 219th Judicial Dist., Sept. 1, 2016) (granted on the papers; no hearing); *Argonaut Ins. Co. v. Primrose Petroleum, LLC*, No. 2016-31641 (Harris Cnty. 165th Judicial Dist., Oct. 21, 2016) (granted on the papers; no hearing); *Travelers Cas. & Sur. Co. of Am. v. Padron*, 5:15-CV-200-DAE, 2017 WL 9360906, at *10 (W.D. Tex. Aug. 2, 2017) (granted after oral argument; no evidentiary hearing); *SureTec Ins. Co. v. Eternity LLC*, 1:18-CV-1247-ACA, 2018 WL 6001103 (N.D. Ala. Nov. 15, 2018) (granted after oral argument; no evidentiary hearing); but see *Travelers Cas. v. Samson Inv. Co.*, 13-CV-156-JHPFHM, 2013 WL 12109098, at *1 (N.D. Okla. June 17, 2013), report and recommendation adopted sub nom. *Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, 13-CV-0156-JHP-FHM, 2013 WL 12109099 (N.D. Okla. July 3, 2013) (granted after evidentiary hearing) and *Merchants Bonding Co. v. Burnside*, No. 4:22-CV-3651, 2023 WL 4140455 (S.D. Tex. June 21, 2023) (granted after evidentiary hearing).

RESPECTFULLY SUBMITTED this 12th day of February, 2025.

*/s/ Ryan D. Dry*

Ryan D. Dry
Texas Bar No. 24050532
S.D. Tex. Bar No. 618363
Steven K. Cannon
Texas Bar No. 24086997
S.D. Tex Bar No. 3356957
**DRY LAW, PLLC**
909 18th Street
Plano, TX 75074
(972) 797-9510 Tele/Fax
rdry@drylaw.com
scannon@drylaw.com

**ATTORNEYS FOR PENNSYLVANIA INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that, on February 12, 2025 a true and correct copy of the foregoing document was filed and served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas on those parties registered to receive electronic notice.

*/s/ Ryan D. Dry*
Ryan D. Dry