**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PENNSYLVANIA INSURANCE COMPANY | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 4:24-cv-04400 |
| | ) | |
| W&T OFFSHORE, INC., | ) | |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

## PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF AND BRIEF IN SUPPORT

Plaintiff, Pennsylvania Insurance Company ("Plaintiff" and/or the "Surety"), by and through its undersigned counsel and pursuant to Rule 65 of the Federal Rules of Civil Procedure, files this Motion for Injunctive Relief (the "Motion") and Brief in Support against Defendant, W&T Offshore, Inc. ("Defendant") seeking enforcement of a General Indemnity Agreement (the "Indemnity Agreement"), including specific performance of the collateral security provisions therein, and in support thereof, respectfully states to the Court as follows:

1.      Plaintiff hereby applies for a temporary restraining order and preliminary injunction ordering Defendant, as Indemnitor pursuant to its Indemnity Agreement with Plaintiff, to immediately deposit cash collateral in the amount of $11,343,949.00 with Plaintiff, such amount representing the amount that Plaintiff, in its sole judgment and as mandated by the terms of the Indemnity Agreement, deems sufficient to protect itself from loss in connection with certain bonds for the performance of Defendants' decommissioning and asset retirement obligations, including the plugging and abandonment of oil and gas wells, executed by Plaintiff at the request of Defendants with a total penal sum liability of $11,343,949.00.

2.      Plaintiff further applies for a preliminary injunction ordering Defendant to

specifically perform its books and records obligations under the Indemnity Agreement by providing Plaintiff with access to the books, records, and accounts of Defendant, on an ongoing and continuing basis until all claims and liabilities in connection with the Bonds have been extinguished.

3.      Plaintiff further applies for a preliminary injunction enjoining Defendant from transferring, encumbering or otherwise dissipating any of its assets until such time as Defendant has posted the full amount of the collateral demanded by Plaintiff or it is determined by this Court that all claims and liabilities in connection with the Bonds have been extinguished.

4.      As explained further in Plaintiff's Brief in Support of and made part of this Motion, the injunctive relief requested herein is necessary to preserve the status quo and to prevent significant, imminent, and irreparable harm to Plaintiff. In lieu of collateralizing the Bonds outright, Defendant explicitly agreed and unconditionally promised to deposit collateral with the Surety upon demand. Defendant's failure to do so has resulted in significant, imminent, and irreparable harm to the Surety.

5.      Furthermore, Defendant waived any and all defenses or challenges to the Surety's bargained-for right to collateral upon demand. Paragraph 4 of the Indemnity Agreement provides, in pertinent part, that:

> Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement").

6.      Defendant's financial condition has deteriorated significantly since the Bonds were originally executed and the Surety has concerns regarding Defendant's ability to sustain their capital structure, liquidity, and cash flows long term. As such, the Surety's liability and exposure as secondary obligor has increased significantly as the result of Defendant's precarious financial position and refusal to honor their promises and obligations under the

Indemnity Agreement.

      7.     Plaintiff has no adequate remedy at law, as without the injunction, Plaintiff will forever lose its bargained-for rights to immediate exoneration and collateral upon demand. If Plaintiff is to have the security for which it bargained for, the promise to provide the security must be specifically enforced as promised and agreed by Defendant.

      8.     Post judgment remedies are of little use to Plaintiff when it is required to expend money in the present, as a result of the Defendant's failure as an indemnitor pursuant to a written indemnity agreement to perform and fulfill its indemnity obligations, including depositing collateral with Plaintiff, as Surety, upon demand.

      9.     Granting the preliminary injunction will protect Plaintiff's bargained-for benefit of exoneration and collateral security upon demand, avoid imposing the risk and burden of present exposure to liability for which Defendant is primarily liable on, and avoid or otherwise mitigate the risk that the Defendant may become insolvent, not only leaving Plaintiff as a general unsecured creditor, but also ensuring that sufficient funds are set aside for the performance of Defendant's decommissioning and asset retirement obligations.

      10.    There is a strong likelihood that Plaintiff will prevail on the merits. Plaintiff has no adequate remedy at law and injunctive relief will not adversely affect the public interest. The balance of equities favor enforcement of Plaintiff's unconditional rights under the Indemnity Agreement to enforce Defendant's obligation to post collateral security in connection with the Bonds. Plaintiff is willing to post a bond in the amount the Court deems appropriate.

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Alki Partners, LP v. DB Fund Services, LLC*, 4 Cal. App. 5th 574, 209 Cal. Rptr. 3d 151 (Ct. App. 2016) ....................................................................................................... 12

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ........................................ 24

*Bib Constr. v. Fireman's Ins. Co. of Newark, NJ*, 214 A.D.2d 521 (N.Y. 1 App. Div. 1995) 20

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ..................................................................... 24

*Clark v. Prichard*, 812 F.2d 991 (5th Cir. 1987) ..................................................................... 16

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981) ........................ 17

*Doster v. Continental Casualty Co.*, 268 Ala. 123, 105 So.2d 83 (Ala. 1958) ........................ 20

*Frontier Ins. Co. in Rehab. v. MC Mgmt.*, No. 3:06-CV-597-H, 2009 WL 541301 (W.D. Ky. Mar. 4, 2009) ......................................................................................................... 14

*Gen. Ins. Co. v. Howard Hampton Inc.*, 185 Cal. App. 2d 426 (Cal. Ct. App. 1960) ............. 14

*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007) ............................ 17

*Great Am. Ins. Co. v. Conart Inc.*, 2006 U.S. Dist. LEXIS 17787, 2006 WL 839197 (M.D. Ga. Mar. 29, 2006) ................................................................................................ 15, 22

*Hartford Fire Ins. Co. v. 3i Constr., LLC*, No. 3:16-CV-00992-M, 2017 WL 3209522 (N.D. Tex. May 18, 2017) ...................................................................................................... 13, 18

*Hartford Fire Ins. Co. v. 4-H Ventures, Inc.*, 2008 U.S. Dist. LEXIS 48602 (S.D. Tex. June 25, 2008) ...................................................................................................... 15

*Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC*, 2011 WL 4715155 ....................................... 26

*Int'l Fidelity Ins. Co. v. Anchor Environmental, Inc.*, Civ. A. No. 07-04750, 2008 WL 1931004 (E.D. Penn. May 1, 2008) ..................................................................................... 21

*Int'l Fidelity Ins. Co. v. Talbot Constr., Inc.*, Civil Action No. 1:15-cv-3969-LMM, 2016 WL 8814367 (N.D. Ga. Apr. 13, 2016) ......................................................................... 19, 20, 22

*Leiva–Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) ............................................................. 24

*Lewis v. S. S. Baune*, 534 F.2d 1115 (5th Cir. 1976) .............................................................. 19

*Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290 (S.D. Fla. 2008) ........................................................................................................................ 14

*Liberty Mut. Ins. Co. v. National Pers. of Tex., Inc.*, 2004 WL 583531 ................................. 15

*M.M.M. on Behalf of J.M.A. v. Sessions*, 347 F. Supp. 3d 526 (S.D. Cal. 2018) ................... 24

*Marine Midland Tr. Co. of New York v. Alleghany Corp.*, 28 F. Supp. 680 (S.D.N.Y. 1939) 14

*Maryland Casualty Co. v. Straubinger*, 19 A.D.2d 26 (4th Dep't 1963) ............................... 14

*Merchants Bonding Co. (Mut.) v. Arkansas Constr. Sols., LLC*, No. 5:18-CV-05078, 2019 WL 452767 (W.D. Ark. Feb. 5, 2019) ............................................................. 14, 18, 23, 26

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007) ...................................................................................................................................... 19

*Milwaukie Construction Co. v. Glens Falls Ins. Co.*, 367 F.2d 964 (9th Cir. 1966) ... 14, 20, 24

*National Surety Corp. v. Titan Construction Corp.*, 26 N.Y.S.2d 227 ................................... 14

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803 (9th Cir. 2018) ............... 17

*Northwestern National Ins. Co. of Milwaukee, Wisconsin v. Alberts*, 937 F.2d 77 (2d Cir. 1991) ................................................................................................................................. 19

*Northwestern National Ins. Co. of Milwaukee, Wisconsin v. Barney*, No. C86-3936, 1988 WL 215411 (N.D. Ohio 1988) ............................................................................................... 19

*Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206 (D. Conn. 2014) ............................. 18

*Ohio Cas. Ins. Co. v. L.H. Eng'g Co., Inc.*, SACV1301249CJCANX, 2014 WL 12569351 (C.D. Cal. Jan. 2, 2014) ................................................................................................. 19, 26

*Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F2d 380 (7th Cir. 1984) ........................ 17

*Safeco Ins. Co. of Am. v. Criterion Inv. Corp.,* 732 F. Supp. 834 (E.D. Tenn. 1989) ............ 14

*Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431 (9th Cir. 1984) ..................................... 14, 20

*Ticor Title Ins. Co. v. Middle St. Officer Tower A Assocs.,* 768 F. Supp. 390 (D. Me. 1991) . 14

*Travelers Cas. & Sur. Co. of Am. v. C.R. Calderon Constr., Inc.*, No. CV TDC-17-0282, 2017 WL 2256600 (D. Md. May 22, 2017) ...................................................................... 21

*Travelers Cas. & Sur. Co. of Am. v. Desert Gold Ventures, LLC*, CV 09-4224 PSG AJWX, 2010 WL 5017798 (C.D. Cal. Nov. 19, 2010) ................................................................... 24

*Travelers Cas. & Sur. Co. of Am. v. Padron*, 5:15-CV-200-DAE, 2017 WL 9360906 (W.D. Tex. Aug. 2, 2017) ........................................................................... 16, 17, 18, 19, 20, 23

*Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, 2014 U.S. Dist. LEXIS 49649, 2014 WL 1404473 (N.D. Okla. Apr. 10, 2014) .......................................................................... 15

*Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, No. 13-CV-156-JHP-FHM, 2013 WL 12109098 (N.D. Okla. June 17, 2013) ............................................................................ 18

*Travelers Casualty & Surety Company v. Ockerlund*, No. 04-C-3963, 2004 WL 1794915 (N.D. Ill. Aug. 6, 2004) ...................................................................................... 20, 22, 23

*United Bonding Ins. Co. v. Stein*, 273 F. Supp. 929 (E.D. Pa. 1967) ..................................... 14

*United Fire v. Coggeshall Construction Co.,* No. 91-3159, 1991 WL 169147 (C.D. Ill. Jun. 28, 1991) ...................................................................................................................... 21

*United States v. Vahlco Corp.*, 800 F. 2d 462 (5th Cir. 1986) .................................................. 13

*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830 L.Ed.2d 175 (1981).................... 24

*Upshaw v. Alameda County*, 377 F. Supp. 3d 1027 (N.D. Cal. 2019) ................................... 24

*US. Fid. & Guar. Co. v. J United Elec. Contracting Corp.,* 62 F. Supp. 2d 915 (E.D.N.Y. 1999) ................................................................................................................. 14, 24

*Western Cas. & Sur. Co. v. Biggs*, 217 F.2d 163 (7th Cir. 1954) .......................................... 22

*Wingsco Energy One v. Vanguard Group Resources*, 1989 WL 223756 (S.D. Tex. 1989) ................................................................................................................................................................................................................................................ 13

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008*)* ................................................................................................................................................................................................................................ 16, 17, 24

**Statutes**
RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY, § 21. .................................................. 22

**Other Authorities**
*Exoneration and Quia Timet,* in THE LAW OF SURETYSHIP, 2D ED. (Edward G. Gallagher ed., 2000) ........................................................................................................................ 14

*Introduction to the Surety's Rights as the Foundation for the Indemnity Agreement*, in THE SURETY'S INDEMNITY AGREEMENT, LAW AND PRACTICE, 2D ED (Marilyn Klinger, et al, eds., 2008) ...................................................................................................... 13

Phillip L. Bruner & Patrick J. O'Connor, Jr., BRUNER & O'CONNOR ON CONSTRUCTION LAW, § 12:97 (2002) ............................................................................ 13

Phillip L. Bruner & Patrick J. O'Connor, Jr., BRUNER & O'CONNOR ON CONSTRUCTION LAW, § 12:99 (2002) ............................................................................ 13

## BRIEF IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff, Pennsylvania Insurance Company ("Plaintiff" and/or the "Surety"), files this Brief in Support of its Application for Injunctive Relief, and respectfully moves this Court for a Preliminary Injunction to thwart dissipation of assets and preserve the Surety's rights of recovery by compelling Defendant W&T Offshore, Inc. ("Defendant" and/or "Indemnitor"), to post contractually-required collateral security in an amount sufficient to exonerate and indemnify the Surety for its incurred and anticipated losses, specifically perform its books and records obligations, and enjoin the Defendant from transferring, encumbering or otherwise dissipating any of its assets until such time as it has posted the full amount of its collateral obligation with the Surety.

## I. SUMMARY

1. Under the express and unequivocal terms of the Indemnity Agreement, Defendant promised and agreed to, *inter alia*, deposit collateral security with the Surety upon demand and grant the Surety access to its books and records. Not only did Defendant promise and agree to do so, but Defendant expressly waived the right to challenge any collateral demand from the Surety.

2. Despite written demand by the Surety, Defendant has wholly failed, refused, and/or neglected to post collateral security with the Surety or grant the Surety reasonable access to its books and records. Through this Motion, the Surety seeks to enforce and have Defendant honor its contractual promises.

3. Defendant's failure to honor its contractual obligations under the Indemnity Agreement raises significant questions as to whether Defendant is in the process of selling, diverting or transferring assets and whether, as Indemnitor, Defendant has the financial ability to satisfy its obligations to the Surety.

4.      Further, absent an injunction, the Surety will suffer the harm of having its bargained-for rights under the Indemnity Agreement effectively nullified, leaving the Surety unsecured against claims and loss while Defendant would be free to sell, transfer or conceal their assets to avoid its obligations.

5.      In light of the applicable case law and the clear and unambiguous terms of the Indemnity Agreement, Defendant's refusal to comply with the Surety's demands since learning of the Surety's intention to exercise its rights under the Indemnity Agreement underscore the Surety's need for a preliminary injunction ordering Defendant to: (a) post collateral in the amounts of $11,343,949.00, the amount of security deemed acceptable to the Surety, in its sole judgment, to protect the Surety from loss; (b) specifically perform their books and records obligations under the Indemnity Agreement by granting the Surety access to the books, records, and accounts of Defendant, on an ongoing and continuing basis, as well as disclose any material financial changes; and (c) refrain from transferring, encumbering or otherwise dissipating any of Defendant's assets, until such time as they have posted the full amount of collateral security demanded by the Surety.

## II.      FACTS[1]

### A.      The Indemnity Agreement and the Surety's Right to Indemnity, Exoneration, and Collateralization

6.      On or about September 20, 2023, Defendant entered into that certain Purchase and Sale Agreement with QuarterNorth Energy LLC (the "Obligee") which provided, *inter alia*, for the sale and assignment, from Obligee to Principal, of the Obligee's interests in certain oil and gas properties, including oil and gas leases covering submerged lands and offshore waters in the Outer Continental Shelf in federal waters of the United States (the "Leases").

---

[1] In the interest of judicial economy, the Surety incorporates the facts, definitions, and exhibits provided in its Verified Complaint in this matter, filed contemporaneously with this motion.

7.      At the request of Defendant, Plaintiff executed four bonds in which Defendant W&T Offshore, Inc. was named as Principal, Plaintiff was named as Surety, and QuarterNorth Energy LLC as Obligee (the "Bonds"). True and correct copies of the Bonds are attached as **Exhibit A** to Plaintiff's Original Complaint and fully incorporated herein by reference for all purposes. In total, the aggregate penal sum of the Bonds is $11,343,949.00.

8.      As inducement for the Surety's execution of the Bonds, on or about February 2, 2023, Defendant W&T Offshore, Inc. executed that certain General Agreement of Indemnity (the "GIA") for the benefit of Plaintiff and its successors and/or assigns (the "Surety"). A true and correct copy of the GIA is attached to Plaintiff's Original Complaint as **Exhibit B** and fully incorporated herein by reference for all purposes.

9.      Under the GIA, Defendant, as Indemnitor, promised to, *inter alia*, indemnify, exonerate, and hold the Surety harmless from and against any and all losses and expenses that the Surety incurs or anticipates that it will incur in connection with the Bonds or enforcement of the GIA.

10.     Specifically, the GIA provides, in relevant part that Defendant, as Indemnitor, promised and agreed as follows:

> To indemnify, hold harmless, and exonerate Surety from and against any and all Losses, as well as any other expense that the Surety may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s). Expenses include, but are not limited to: (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s) or this Agreement; (b) the cost of procuring or attempting to procure the Surety's release from liability or a settlement under any Bond(s) upon or in anticipation of Losses, including the defense of any action brought in connection therewith; and (c) the cost in bringing suit to enforce this Agreement against any of the Indemnitors.

Exhibit B, *GIA*, p. 1, ¶ 2.

11.     Additionally, the GIA defines the term "Losses" as follows:

> The term "Losses" shall mean any and all (a.) sums paid by Surety to claimants under the Bonds, (b.) sums required to be paid to claimants by Surety, but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs

and expenses incurred in connection with investigating, paying or litigating any claim under the Bonds, including but not limited to legal fees and expenses, technical and expert witness fees and expenses, (d.) ***all costs and expenses incurred in connection with enforcing the obligations of the Indemnitors under this Agreement including, but not limited to interest, legal fees and expenses***, (e.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds and/or (f.) all other amounts payable to Surety according to the terms and conditions of this Agreement.

Exhibit B, *GIA*, p. 1 (emphasis added).

12.     In addition to indemnifying, exonerating, and holding Plaintiff harmless from

any and all Losses, Paragraph 4 of the GIA provides:

> **The Indemnitors acknowledge that the Bonds issued on their behalf are to be secured by collateral *upon demand.***

Exhibit B, *GIA*, p. 1, ¶ 4 (emphasis added).

13.     Additionally, Paragraph 4 of the GIA further provides that Defendant promised

and agreed that:

> In lieu of fully collateralizing the Bonds prior to their issuance and in consideration for the execution and/or delivery of one or more Bonds, the Indemnitors agree to deposit with the Surety, ***upon demand***, an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses . . . **The Indemnitors acknowledge that Surety would not issue any Bonds without the agreement of the Indemnitors to post collateral upon demand**.

Exhibit B, *GIA*, p. 1, ¶ 4 (emphasis added).

14.     Importantly, Paragraph 4 of the GIA also provides, in pertinent part that

Defendant, as Indemnitor, agreed to waive any right to contest the Collateral Requirement

(defined therein), including that:

> Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement").

Exhibit B, *GIA*, p. 1, ¶ 4.

15.     Defendant further stipulated and agreed that any failure to provide collateral to the Surety upon demand would cause the Surety to suffer irreparable harm for which the Surety would have adequate remedy at law. Specifically, the GIA states, in relevant part, that:

> Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement.

Exhibit B, *GIA*, p. 1, ¶ 4.

16.     In addition to Defendant's promise and agreement to provide the Surety with collateral upon demand, paragraph 12 of the GIA, entitled "**Surety's Right to Release of Bonds and Indemnitors' Waiver**" provides that:

> The Surety may, in its sole discretion, determine one or more of the following: (a) the Indemnitors financial condition has been or is believed to be deteriorating; or (b) there has been or is believed to be some other change that adversely impacts the Surety's right under the Bond(s). In such an event **within thirty (30) days of receipt of Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s) by providing competent evidence of release satisfactory to the Surety, in its sole discretion**.

Exhibit B, *GIA*, p. 2, ¶ 12 (emphasis added).

17.     Despite these unambiguous provisions, Defendant has refused to provide collateral or otherwise exonerate or indemnify the Surety.

18.     The Indemnitors further agreed that "the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors for the purpose of examining the same" should the Surety receive a claim or establish a reserve in anticipation of incurring Losses. Exhibit B, *GIA*, p. 2 ¶ 6.

19.     Paragraph 25 of the GIA provides that "[t]his Agreement shall be interpreted under the substantive law of the State of Texas, without giving effect to its choice of law principles." Exhibit B, *GIA*, p. 3, ¶ 25.

20.     Finally, paragraph 26 of the GIA provides that:

In any legal proceeding brought by or against the Surety that in any way relates to this Agreement, each Indemnitor for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole and exclusive option of the Surety, **of the courts in Texas**, or any state in which any Indemnitor resides, has property, or in which any Contract is performed. Indemnitors hereby irrevocably and unconditionally submit to the jurisdiction of said courts and waive and agree not to assert any claim that they are not subject to the jurisdiction of any such court, that such proceeding is brought in an inconvenient forum or that the venue of such proceeding is improper.

Exhibit B, *GIA*, p. 3, 26 (emphasis added).

## B. The Indemnitors' Breach of the Indemnity Agreement

21. On October 1, 2024, the Surety made a formal demand upon Defendant, as Indemnitor under the GIA, to procure the release of the Bonds within 30 days and, in the event Defendant failed to do so, to deposit the sum of $11,343,949.00 in money or other acceptable collateral security with the Surety (the "Collateral Demand") representing the amount of collateral deemed to be sufficient to cover any and all undischarged liability under the Bonds. A true and correct copy of the Collateral Demand is attached as **Exhibit C**.

22. Additionally, the Surety notified and made demand upon Defendant for the payment of $357,355.10 in unpaid premium for the Bonds.

23. Despite the Collateral Demand, Defendant has failed, refused, and/or neglected to deposit collateral with the Surety in an amount sufficient to discharge any Losses and protect it from any potential or anticipated Losses as agreed and required in the GIA. As such, Defendant is in material breach of its promises and obligations as Indemnitor under the GIA.

24. All conditions precedent to recovery by the Surety from Defendant has occurred or has been performed.

## III. ARGUMENTS AND AUTHORITIES

25. Indemnity agreements are construed under the same rules that govern the interpretation of other contracts. *Alki Partners, LP v. DB Fund Services, LLC*, 4 Cal. App. 5th 574, 600, 209 Cal. Rptr. 3d 151, 171 (Ct. App. 2016). Where the obligations of the parties are

clearly and unambiguously set forth in the indemnity agreement, a court should summarily enforce such indemnification provisions. *Id.* Accordingly, courts have sustained a surety's right to sue for specific performance of an agreement to furnish it indemnity, exoneration, and collateralization. *See, e.g.*, *Hartford Fire Ins. Co. v. 3i Constr., LLC*, No. 3:16-CV-00992-M, 2017 WL 3209522, at *2-*9 (N.D. Tex. May 18, 2017) ("Courts generally grant specific performance to enforce collateral security clauses on the grounds that if a creditor is to have the security position he bargained for, the promise to maintain that security must be specifically enforced."); *see also Wingsco Energy One v. Vanguard Group Resources*, 1989 WL 223756 (S.D. Tex. 1989). When an indemnity agreement is signed, an indemnitor promises to protect its surety. Because the Indemnitors promised to protect the Surety, the Surety is entitled to petition the Court to enforce these promises.

26.    "At the root of the surety's decision to accept potential liability for its principal's contractual undertakings are both the hope and a rightful expectation" that the surety will suffer no loss. David Slaughter, *Introduction to the Surety's Rights as the Foundation for the Indemnity Agreement*, in THE SURETY'S INDEMNITY AGREEMENT, LAW AND PRACTICE, 2D ED, pg. 8 (Marilyn Klinger, et al, eds., 2008). This bedrock authority is reflected in *United States v. Vahlco Corp.*, 800 F. 2d 462 (5th Cir. 1986):

> A guarantor under Texas law is a so-called favorite of the law and as such, a guaranty agreement is construed strictly in favor of the guarantor.

*Id*. at 465.

27.    "Since at least the time of classical Rome, basic legal rights have existed for the protection of sureties." Phillip L. Bruner & Patrick J. O'Connor, Jr., BRUNER & O'CONNOR ON CONSTRUCTION LAW, § 12:97 (2002). Indemnification is an equitable principal of ancient origin that impliedly obligates an indemnitor to reimburse its surety. *Id.* at § 12:99.

A.    **Necessities of Injunctive Relief Met by the Indemnity Agreement**

28.     When an indemnitor agrees to post collateral but then refuses to perform, courts are not hesitant to order the indemnitor to specifically perform its obligation to post collateral. *See, e.g., Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433-34 (9th Cir. 1984); *Marine Midland Tr. Co. of New York v. Alleghany Corp.*, 28 F. Supp. 680, 683-84 (S.D.N.Y. 1939) ("If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced"); *see also Maryland Casualty Co. v. Straubinger*, 19 A.D.2d 26, 29-30, 231 (4th Dep't 1963) (per curiam); *National Surety Corp. v. Titan Construction Corp.*, 26 N.Y.S.2d 227, 230-31.; *Milwaukie Construction Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 966-67 (9th Cir. 1966); *United Bonding Ins. Co. v. Stein*, 273 F. Supp. 929, 929-30 (E.D. Pa. 1967); *see also Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.,* 534 F. Supp. 2d 1290, 1321-22 (S.D. Fla. 2008) ("surety's loss of its right to collateralization cannot be adequately remedied through monetary damages"); *Frontier Ins. Co. in Rehab. v. MC Mgmt.,* No. 3:06-CV-597-H, 2009 WL 541301 (W.D. Ky. Mar. 4, 2009) ("requiring indemnitors to post collateral to cover an indemnitee's potential liability is the type of specific relief that courts may require"); *US. Fid. & Guar. Co. v. J United Elec. Contracting Corp.,* 62 F. Supp. 2d 915, 921 (E.D.N.Y. 1999); *Ticor Title Ins. Co. v. Middle St. Officer Tower A Assocs.,* 768 F. Supp. 390,392 (D. Me. 1991); *Safeco Ins. Co. of Am. v. Criterion Inv. Corp.,* 732 F. Supp. 834, 843 (E.D. Tenn. 1989); *Gen. Ins. Co. v. Howard Hampton Inc.,* 185 Cal. App. 2d 426 (Cal. Ct. App. 1960) (holding that specific performance ensures the creditor maintains the security position for which it bargained); *Merchants Bonding Co. (Mut.) v. Arkansas Constr. Sols., LLC*, No. 5:18-CV-05078, 2019 WL 452767 at *3 (W.D. Ark. Feb. 5, 2019) ("even if (surety) were to fully recover its monetary damages at the end of the litigation, it still would not be made whole… (t)he issue is not simply one of monetary loss: it is about the right of a surety to the immediate, contracted-for payment of collateral to eliminate the surety's *potential exposure* for a risk of loss").

29.     Courts routinely award injunctive relief where—as we have here—the Indemnitors waived their right to contest this requirement. *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, 2014 U.S. Dist. LEXIS 49649, 2014 WL 1404473 (N.D. Okla. Apr. 10, 2014) ("Specific performance is routinely granted to sureties."); *see also, e.g., Hartford Fire Ins. Co. v. 4-H Ventures, Inc.*, 2008 U.S. Dist. LEXIS 48602 (S.D. Tex. June 25, 2008) ("Defendants expressly agreed that the failure to provide the requested collateral constitutes irreparable harm. All of their arguments to the contrary must fall before the plain language of the indemnity agreements."); *Great Am. Ins. Co. v. Conart Inc.*, 2006 U.S. Dist. LEXIS 17787, 2006 WL 839197 (M.D. Ga. Mar. 29, 2006) ("The [undersigned Defendants] agree that the Surety shall be entitled to injunctive relief for specific performance . . .Therefore, the Court finds that absent enforcement of the Agreement, Plaintiff has no adequate remedy at law.")

30.     Similarly, here, Defendant, as Indemnitor under the GIA contractually:

    a.   Agreed to procure full and complete discharge of the Surety from the Bonds;

    b.   Post collateral with the Surety *upon demand*;

    c.   Waived the right to contest these requirements;

    d.   Stipulated and agreed that the Surety has no adequate remedy at law; and

    e.   Stipulated and agreed that the Surety is entitled to specific performance.[2]

The Court, therefore, can award injunctive relief based on the explicit terms of the Indemnity Agreement.

31.     Even if an indemnity agreement is silent, the overwhelming majority of courts find that all requirements for specific performance and injunctive relief are met.  *See Liberty Mut. Ins. Co. v. National Pers. of Tex., Inc.*, 2004 WL 583531 at *2 ("Courts have generally granted specific performance to enforce collateral security clauses based on the premise such remedy is required to protect the surety's bargain").

---

[2] *See* Exhibit B to Complaint.

32.     Because Defendant, an Indemnitor, contractually agreed to fully exonerate the Surety and collateralize the Surety under the Bonds, this Court should grant its request for a Preliminary Injunction. *See* Indemnity Agreement at ¶4.

**B.      Standard for Injunctive Relief, Traditionally**

33.     As highlighted above, courts routinely grant injunctive relief compelling indemnitors to provide collateral security to a surety when this obligation has been undertaken pursuant to a written agreement of indemnity. *See Padron*, 2017 WL 9360906, at *10-13.. Despite the more lenient standard applicable to sureties, here the Surety also meets the following four factors which traditionally govern injunctive relief:

> a.   the threat of irreparable harm to the movant and that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
>
> b.   the state of the balance between this harm and the injury that granting the injunction will inflict on other parties;
>
> c.   the likelihood that the movant will succeed on the merits; and
>
> d.   the public interest.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008*); Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

> *a.      The Threat of Irreparable Harm to the Movant*

34.     When the Surety executed the Bonds, it relied upon the ability of its Indemnitor—*i.e.*, Defendant—to perform its promises and obligations under the Indemnity Agreement including, but not limited to protecting the Surety from all loss and expense the Surety may sustain as result of executing the Bonds. The Surety would not have executed the Bonds without the financial guarantees and promises set forth in the Indemnity Agreement. Accordingly, should the Court deny the Surety's Motion for Injunctive Relief, the Surety's rights to contractual and common law exoneration and collateralization will be forever lost. The Surety has no adequate remedy at law, and the declaratory and equitable relief sought here

constitutes the only means by which the Surety can secure adequate relief and by which furtherance of justice may be served.

35.     Irreparable harm requires a showing that the harm "is likely in the absence of the injunction" *Winter* at 22 (2008). There must be a "sufficient causal connection" between the alleged irreparable harm and the activity to be enjoined and showing that "the requested injunction would forestall" the irreparable harm qualifies as such a connection. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018).

36.     The injunctive relief requested by the Surety would prevent the suffering of an imminent and irreparable injury typically required for preliminary injunctions. *See Travelers Cas. & Sur. Co. of Am. v. Padron*, 5:15-CV-200-DAE, 2017 WL 9360906, at *10 (W.D. Tex. Aug. 2, 2017) ("The rationale behind finding irreparable harm and that specific performance of a collateral security provision is warranted is that "the surety has specifically bargained for *prejudgment collateralization* and a judgment for money damages alone would deprive the surety of *prejudgment relief* to which it is contractually entitled."); *see also Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (to obtain injunctive relief a plaintiff must show that "absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'"). An imminent injury is one that is likely, rather than a mere possibility. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 375−76 (2008). An injury is irreparable if it cannot be prevented or fully rectified by an award of damages at the end of trial, such as when "[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F2d 380, 386 (7th Cir. 1984); *see also Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).

37.     The Surety is entitled to the valuable benefit it contracted for, as "the very nature of an indemnity agreement is that it enables a surety to contract for collateral security *upon demand*—not at a time of the indemnitor's choosing." *Merchants Bonding Co. (Mut.) v. Arkansas Constr. Sols., LLC*, No. 5:18-CV-05078, 2019 WL 452767 at *5 (W.D. Ark. Feb. 5, 2019).   The rationale behind finding irreparable harm and that specific performance of a collateral security provision is warranted is that "the surety has specifically bargained for prejudgment collateralization and a judgment for money damages alone would deprive the surety of prejudgment relief to which it is contractually entitled." *Travelers Cas. & Sur. Co. of Am. v. Padron*, 5:15-CV-200-DAE, 2017 WL 9360906 (W.D. Tex. Aug. 2, 2017) at *10, quoting *Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206, 214 (D. Conn. 2014).   The Surety "will be effectively denied the benefit of its bargain if it must wait until the conclusion of the case to obtain the letter of credit." *Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, No. 13-CV-156-JHP-FHM, 2013 WL 12109098, at *2 (N.D. Okla. June 17, 2013). To hold otherwise would render the collateral provision in the Indemnity Agreement meaningless.

38.     By their very nature, the rights to contractual and common law exoneration require pre-judgment relief. *See, e.g., 3i Construction* 2017 WL 3209522, at *8 (holding that, "[m]erely awarding money damages post-judgment would deny [the surety] its contractual right to immediate payment of collateral, and accordingly, [the surety] would forever lose its right to immediate exoneration and would be irreparably injured. This is not simply an issue of a possible monetary loss, but rather is an issue of 'impairing a surety's expectation and requiring it to suffer any loss, even if only temporary, associated with the performance of a primary obligor's duty.'").

39.     In finding irreparable harm and granting injunctive relief courts protect:

> . . . three interests of the surety: the bargained-for benefit of collateral security, avoidance of present exposure to liability during pending litigation against indemnitors, and avoidance of risk that, should

indemnitors become insolvent, the surety will be left as a general unsecured creditor, frustrating the purpose of the indemnity agreement.

*Int'l Fidelity Ins. Co. v. Talbot Constr., Inc.*, Civil Action No. 1:15-cv-3969-LMM, 2016 WL 8814367, at *7 (N.D. Ga. Apr. 13, 2016); *see also Ohio Cas. Ins. Co. v. L.H. Eng'g Co., Inc.*, SACV1301249CJCANX, 2014 WL 12569351, at *2 (C.D. Cal. Jan. 2, 2014).

40.     If these rights cannot be enforced at the inception of an action, but rather must await determination by final judgment, then the rights are meaningless. *See Talbot Constr*. at *7 (N.D.  Ga.  Apr.  13, 2016) ("Damages available after trial and judgment, even if including costs and interest, are of little use to [the Surety] when it is responsible for investigating, defending, and paying claims on bonds in the present – claims arising due to [the bond principal's] alleged failure to fulfill its obligations."). It is well-established that the use of injunctive relief is appropriate to protect a surety's contractual, common-law, and equitable rights of exoneration and *quia timet*. *Northwestern National Ins. Co. of Milwaukee, Wisconsin v. Alberts*, 937 F.2d 77 (2d Cir. 1991); *Northwestern National Ins. Co. of Milwaukee, Wisconsin v. Barney*, No. C86-3936, 1988 WL 215411 (N.D. Ohio 1988).

41.     Should the Court not grant the Motion for Injunctive Relief, the rights of the Surety to contractual and common law collateralization will be forever lost.  The Surety has no adequate remedy at law, and the equitable relief sought herein constitutes the only means by which the Surety can secure adequate relief and by which furtherance of justice may be served.

42.     Often times the concepts of "irreparable injury" and "no adequate remedy at law" are indistinguishable in the context of a permanent injunction. *Lewis v. S. S. Baune*, 534 F.2d 1115, 1124 (5th Cir. 1976).  As should be expected, this Court's adequate remedy at law analysis parallels that performed for irreparable harm. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007).

43. The *Padron* court, following the *Tablot* court's finding, found a surety:

would be irreparably harmed without injunctive relief because it has no

adequate remedy at law for a breach of the collateral security provision, "either for recovering for its actual losses or for protecting itself against future losses due to claims on the bonds." Just as the surety did in *Talbot Construction, Inc.*, [the surety] here "specifically sought protection against present exposure to liability on bonds through contractual language requiring deposit of collateral 'on demand,' " and therefore, "[d]amages available after trial and judgment, even if including costs and interest, are of little use" to [the surety] "when it is responsible for investigating, defending, and paying claims on bonds in the present." Accordingly, [the surety] has clearly shown a substantial threat of irreparable harm.

*See Padron*, 2017 WL 9360906, at *11 (citing *Tablot Constr.*, 2016 WL 8814367, at *7).

44.     Numerous courts have held that there is an inherent absence of a legal remedy— and the equally inherent existence of an irreparable injury—where an indemnitor refuses to perform its contractual, common-law, and equitable obligations to the surety, including those of exoneration and *quia timet*. *See, e.g., United Bonding*, 273 F. Supp. at 930 (legal remedy for subsequent damages will not suffice when indemnitor refuses to voluntarily comply with surety's demands); *Milwaukie Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964 (9th Cir. 1966); *Schwab*, 739 F.2d 431 at 433 ("sureties are ordinarily entitled to specific performance of collateral security clauses.  If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced"); *Bib Constr. v. Fireman's Ins. Co. of Newark, NJ*, 214 A.D.2d 521 (N.Y. 1 App. Div. 1995) ("damage resulting from failure to give security is not ascertainable, and the legal remedy is therefore inadequate"); *Doster v. Continental Casualty Co.*, 268 Ala. 123, 105 So.2d 83 (Ala. 1958) ("it is not necessary for the surety to show any fraudulent disposition of property on the part of the principal or any special reason for fearing a loss").

45.     In *Ockerlund*, the court considered the proper means for enforcing obligations created by an indemnity agreement's collateral security provision where the Indemnitors were required to protect the surety against any loss arising by reason of the issuance of the bond and concluded injunctive relief was proper. *Travelers Casualty & Surety Company v. Ockerlund*,

No. 04-C-3963, 2004 WL 1794915, *1 (N.D. Ill. Aug. 6, 2004). On the facts before it, the court determined that the surety would suffer irreparable harm if the injunction did not issue as it would be forced to use its own funds to defend and pay claims despite defendants' promises to protect the surety from this risk. The court reasoned that by granting the injunction it was only requiring the defendants to perform the obligations they had contractually agreed to undertake. *Id.* at *4.

46.      Similarly, the court in *United Fire v. Coggeshall Construction Co.* found a judgment for money damages at the end of the case—without according the Surety specific performance of the collateral security provision contained in the indemnity agreement before the court—would not be an adequate remedy and would irreparably harm the surety by depriving it of pre-judgment relief to which it is contractually entitled. *United Fire v. Coggeshall Construction Co.,* No. 91-3159, 1991 WL 169147, *2 (C.D. Ill. Jun. 28, 1991).

47.      Likewise, the court found in *Int'l Fidelity Ins. Co. v. Anchor Environmental, Inc.* that the surety would be irreparably harmed absent a preliminary injunction. The court explained "[i]f [the surety] is deprived of the bargained-for collective security, it will face the risk of being a general unsecured creditor of Defendants and of not being able to collect. To protect Plaintiff from becoming a general creditor, the grant of specific performance to enforce the collateral security provision is warranted." *Int'l Fidelity Ins. Co. v. Anchor Environmental, Inc.*, Civ. A. No. 07-04750, 2008 WL 1931004 *7 (E.D. Penn. May 1, 2008).

48.      As grounds for granting a surety's request for an injunction directing indemnitors to post collateral, the United States District Court for the District of Maryland in *Travelers Cas. & Sur. Co. of Am. v. C.R. Calderon Constr., Inc.*, No. CV TDC-17-0282, 2017 WL 2256600 (D. Md. May 22, 2017) recently found:

> Under the reasoning reflected in the great weight of case law, Travelers has shown a likelihood of irreparable harm . . . Travelers is now, in fact, obligated for upwards of $200,000 as a result of that Payment Bond, but does not have the collateral security it was promised under the Indemnity Agreement. Travelers is

therefore presently exposed to the risk of non-payment on the part of Defendants, the very risk that the collateral security provision of the Indemnity Agreement was meant to obviate. Money damages are inadequate here, because they cannot compensate Travelers for unduly bearing this risk of non-payment and the loss of its bargained-for security position as compared to other creditors.

*Id.*, at *4.

49.     The Surety's rights to discharge and collateral are absolute under the Indemnity Agreement and Defendant has no reasonable challenge to the enforcement of that provision. Further, if Defendant is not required by this Court to post collateral sufficient to cover its obligations to the Surety under the Indemnity Agreement, it is unlikely Defendant will retain any ability to satisfy their contractual promises later. This is the specific risk the provision requiring posting of collateral is designed to avoid and absent its specific enforcement, the Surety will be irreparably harmed.

> **b.      *The Balance Of Harms Versus The Potential Injury That Granting The Injunction Will Inflict On Other Parties Weighs In The Surety's Favor***

50.     It is evident that the balance of harms in this matter weighs in favor of the Surety. If the Surety is denied an injunction, it is likely no assets will be available to the Surety later to satisfy the Indemnitor's contractual and common law obligations. As several courts and treatises have noted, it is well settled that this is a serious harm to a surety. *See Western Cas. & Sur. Co. v. Biggs,* 217 F.2d 163, 165 (7th Cir. 1954); *Great Am. Ins. Co. v. Conart Inc.*, No. 1:05-CV-038 (WLS), 2006 WL 839197, at *6 (M.D. Ga. Mar. 29, 2006); *Ockerlund,* 2004 WL 1794915 at *5; RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY, § 21.

51.     In *Talbot Constr.*, *supra*, the United States District Court for the Northern District of Georgia acknowledged this principle and ordered indemnitors to post collateral in an amount for both costs and expenses already incurred and anticipated future losses. Reviewing a collateral provision similar to the one in the Indemnity Agreement, the court explained "Indemnitors should not be rewarded for their apparent breach of contract by

avoiding contribution of collateral for costs they have thus far evaded." *Tablot Constr.*, 2016 WL 8814367, at *18.

52.    Granting injunctive relief will cause no substantial harm to Defendant. It merely requires Defendant to abide by its promises.  If this Court grants the injunction and orders Defendant to specifically perform its obligations under the Indemnity Agreement's collateral security provision, the parties will simply be placed in the positions they bargained for at the time the Indemnity Agreement was executed. Defendant will be required to perform as it contractually agreed to do, and the Surety will receive the collateral security to which it is entitled. *See Merchants Bonding Co. v. Burnside*, No. 4:22-CV-3651, 2023 WL 4140455, at *5 (S.D. Tex. June 21, 2023) ("There is no doubt that collateralizing the Surety…would be a burden, but ultimately, it is a burden the Indemnitors explicitly bargained when they executed the Indemnity Agreement."); s*ee also Ockerlund*, 2004 WL 1794915 at *6; *Travelers Cas. & Sur. Co. of Am. v. Padron*, No. 5:15-CV-200-DAE, 2017 WL 9360906, at *12 (W.D. Tex. Aug. 2, 2017) ("[I]f Defendants are required to post collateral security here, they are merely being required to perform pursuant to the terms of the otherwise undisputedly clear and valid Indemnity Agreement to which they are a party....").

### c.    The Probability That The Movant Will Succeed On The Merits

53.    In the instant action, there is not only a "probability" that the Surety will succeed on the merits–Defendant's breach of the Indemnity Agreement is clear and the Surety's ability to succeed on the merits is readily apparent.  Among the Surety's rights under the Indemnity Agreement is the right to request of Defendant—and thereby obtain the Indemnitor's performance—to collateralize any and all liability and exposure under the Bonds.  Here, the Surety has requested that Defendant fulfill its express contractual obligation to do so, but Defendant has failed, refused, and/or neglected to do so.  The Surety has met its burden of

establishing a probability that it is entitled to specific performance of the Indemnity Agreement's collateral security provision.

54. There is no dispute that the Indemnity Agreement is a valid, existing contract between the Surety and the Indemnitors. Courts have routinely upheld the validity of collateral security clauses and enforced their terms. *See Travelers Cas. & Sur. Co. of Am. v. Desert Gold Ventures, LLC*, CV 09-4224 PSG AJWX, 2010 WL 5017798, at *7 (C.D. Cal. Nov. 19, 2010); *Glens Falls Ins.*, 367 F.2d 964 (9th Cir. 1966); *J United Electrical*, 62 F. Supp. 2d 915 (B.D.N.Y. 1999). Accordingly, the Indemnity Agreement in this instance should be upheld and enforced.

55. "[L]ikelihood of success on the merits is 'the most important' factor; if a movant fails to meet this 'threshold inquiry,' [a court] need not consider the other factors." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018). While plaintiffs carry the burden of demonstrating a likelihood of success, they are not required to prove their case in full at this stage but only such portions that enable them to obtain the injunctive relief they seek. *M.M.M. on Behalf of J.M.A. v. Sessions*, 347 F. Supp. 3d 526, 532–33 (S.D. Cal. 2018). To satisfy the first element of the standard for injunctive relief, it is not necessary for the moving party to "prove his case in full," or show that he is "more likely than not" to prevail. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). At "an irreducible minimum," the party seeking the injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation. *Upshaw v. Alameda County*, 377 F. Supp. 3d 1027, 1031 (N.D. Cal. 2019). "Serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other elements of the *Winter* test are also met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

56.     As detailed above, numerous federal courts have granted the equitable relief requested by the Surety under facts and contracts substantially the same as those here. These cases demonstrate that—in light of the Surety's unconditional rights and the Indemnitor's specific obligations under the Indemnity Agreement—it is almost certain the Surety will prevail.

### d.    *Public Interest*

57.     The final factor to be weighed is the interests of public policy in this dispute. The public interest factor clearly weighs in favor of the Surety. The general indemnity agreement is the foundation of modern suretyship, and its enforcement is essential to the procurement of commercial and contract surety bonds to guarantee performance of the obligations of principal obligors in the event they are unable to do so.

58.     This is also a significant matter of public interest as it involves public safety, health, and welfare. Defendants' failure to perform their environmental obligations, including decommissioning and plugging and abandonment of oil and gas assets, could be catastrophic. Not only will the Surety be called upon to perform Defendants' obligations—at least up to the penal limits of the Bonds—but any remaining liabilities will be left as a heavy burden on the public.

59.     At present, Defendants are extracting and developing valuable resources on public lands for substantial profits under the assumption that they will ultimately restore those sites, remediate, and reverse any environmental damage after those operations cease. However, they have failed to ensure that they will be financially capable of doing so once those valuable resources have been exhausted. There is a strong public policy interest in financial transparency, particularly with regard to the allocation of funds for decommissioning, and ensuring that sufficient resources are set aside and available for these activities.

60.     On this point, the court in *Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC* found "enforcing the collateral security provision of an indemnity agreement . . . serves an important public interest: to encourage sureties to continue to provide bonds for [the] public." *Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC,* 2011 WL 4715155 at \*5 (citing *First Nat. Ins. Co. of America v. Sappah Bros, Inc.,* 771 F. Supp. 2d 569,575 (E.D.N.C. 2011)).  The public interest weighs in favor of ensuring that contractual agreements, especially those between sureties and their indemnitors, are upheld. *L.H. Eng'g Co.,* 2014 WL 12569351, at \*2 (C.D. Cal. Jan. 2, 2014).

61.     In contrast, the Indemnitors agreed to the provisions of the Indemnity Agreement for the express purpose of obtaining various bonds.  Such bonds are required to protect the owner, the public, and the other contracting parties.  Public policy clearly supports protecting sureties and enforcing the explicit terms of agreements entered into by knowledgeable parties. *Merchants Bonding Co. (Mut.) v. Arkansas Constr. Sols., LLC*, 5:18-CV-05078, 2019 WL 452767, at \*7 (W.D. Ark. Feb. 5, 2019) (Court predicting that if collateral provisions are not upheld, "it is likely that, over time, sureties would become reluctant to enter into such contracts at all, and those who entered into contracts with sureties might eventually become emboldened to refuse to post collateral in favor of challenging the demands in court— and waiting out the typically slow grind of the litigation process.").

62.     The Surety is willing to post a bond in the amount the Court deems appropriate.

## IV.     CONCLUSION

For these reasons, Plaintiff, Pennsylvania Insurance Company, requests that, if necessary, the Court set this Motion for hearing at the earliest possible time and, after hearing oral arguments, issue a preliminary injunction. Specifically, the Surety requests that the preliminary injunction:

1.     Order Defendant to pay the Surety the sum of $11,343,949.00 in collateral security, representing an amount as determined by the Surety sufficient to

discharge any Loss or anticipated Loss;

2.     Order Defendant to specifically perform its books and records obligations under the Indemnity Agreement;

3.     Order Defendant not to transfer, encumber or otherwise dissipate any of its assets until such time as it has posted the full amount of the collateral demanded by the Surety; and

4.     Award the Surety such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause.

RESPECTFULLY SUBMITTED this 15th day of November, 2024.

/s/ *Ryan D. Dry*
Ryan D. Dry
State Bar No. 24050532
Fed. No. 618363
Steven M. Beauchamp
State Bar No. 24102924
Fed. No. 3813833
**DRY LAW, PLLC**
909 18th Street
Plano, TX 75074
(972) 797-9517 Telephone
(972) 797-9510 Facsimile
sbeauchamp@drylaw.com
rdry@drylaw.com

**ATTORNEYS FOR PLAINTIFF PENNSYLVANIA INSURANCE COMPANY**