# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | ) ) ) | |
| *Plaintiff*, | ) ) | CIVIL ACTION NO. 4:24-cv-04395 |
| v. | ) ) | |
| W&T OFFSHORE, INC., and W&T ENERGY VI, LLC, | ) ) ) | |
| *Defendants*. | ) ) | |

## PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF AND BRIEF IN SUPPORT

Plaintiff, United States Fire Insurance Company ("Plaintiff" and/or the "Surety"), by and through its undersigned counsel and pursuant to Rule 65 of the Federal Rules of Civil Procedure hereby files this Motion for Injunctive Relief (the "Motion") and Brief in Support of same against Defendants W&T Offshore, Inc. and W&T Energy VI, LLC (collectively "Defendants" and/or "Indemnitors") seeking enforcement of a General Indemnity Agreement (the "Indemnity Agreement"), including specific performance of the collateral security provisions therein, and in support thereof would respectfully state to the Court as follows:

1.       Plaintiff hereby applies for a temporary restraining order and preliminary injunction ordering Defendants, as Indemnitors pursuant to their Indemnity Agreement with Plaintiff, to immediately deposit cash collateral in the amount of $93,665,179.00 with Plaintiff, such amount representing the amount that Plaintiff, in its sole judgment and as mandated by the terms of the Indemnity Agreement, deems sufficient to protect itself from loss in connection with certain bonds for the performance of Defendants' decommissioning and asset retirement obligations, including

the plugging and abandonment of oil and gas wells, executed by Plaintiff at the request of Defendants with a total penal sum liability of $93,665,179.00.

2.      Plaintiff further applies for a preliminary injunction ordering Defendants to specifically perform their books and records obligations under the Indemnity Agreement by providing Plaintiff with access to the books, records, and accounts of Defendants, on an ongoing and continuing basis until all claims and liabilities in connection with the Bonds have been extinguished.

3.      Plaintiff further applies for a preliminary injunction enjoining Defendants from transferring, encumbering or otherwise dissipating any of their assets until such time as they have posted the full amount of the collateral demanded by Plaintiff or it is determined by this Court that all claims and liabilities in connection with the Bonds have been extinguished.

4.      As explained further in Plaintiff's Brief in Support of and made part of this Motion, the injunctive relief requested herein is necessary to preserve the status quo and to prevent significant, imminent, and irreparable harm to Plaintiff. In lieu of collateralizing the Bonds outright, Defendants explicitly agreed and unconditionally promised to deposit collateral with the Surety upon demand. Their failure to do so has resulted in significant, imminent, and irreparable harm to the Surety.

5.      Furthermore, Defendants waived any and all defenses or challenges to the Surety's bargained-for right to collateral upon demand. Paragraph 3 of the Indemnity Agreement provides that:

> Indemnitors waive any and all defenses or challenges to the provision of collateral pursuant to this Agreement. Indemnitors further expressly stipulate and agree that Surety will have no adequate remedy at law should Indemnitors fail to post any collateral required herein, and agree that Surety is entitled to specific performance of the obligation to post collateral.

6. Defendants' financial condition has deteriorated significantly since the Bonds were originally executed and the Surety has concerns regarding Defendants' ability to sustain their capital structure, liquidity, and cash flows long term. As such, the Surety's liability and exposure as secondary obligor has increased significantly as the result of Defendants' precarious financial position and refusal to honor their promises and obligations under the Indemnity Agreement.

7. Plaintiff has no adequate remedy at law, as without the injunction, Plaintiff will forever lose its bargained-for rights to immediate exoneration and collateral upon demand. If Plaintiff is to have the security for which it bargained for, the promise to provide the security must be specifically enforced as promised and agreed by Defendants.

8. Post judgment remedies are of little use to Plaintiff when it is required to expend money in the present, as a result of the Indemnitors' collective failure to perform and fulfill their obligations, including depositing collateral with Plaintiff, as Surety, upon demand.

9. Granting the preliminary injunction will protect Plaintiff's bargained-for benefit of exoneration and collateral security upon demand, avoid imposing the risk and burden of present exposure to liability for which the Indemnitors are primarily liable on Plaintiff, and avoid or otherwise mitigate the risk that the Defendants may become insolvent, not only leaving Plaintiff as a general unsecured creditor, but also ensuring that sufficient funds are set aside for the performance of Defendants' decommissioning and asset retirement obligations..

10. There is a strong likelihood that Plaintiff will prevail on the merits. Plaintiff has no adequate remedy at law and injunctive relief will not adversely affect the public interest. The balance of equities favor enforcement of Plaintiff's unconditional rights under the Indemnity Agreement to enforce Defendants' obligation to post collateral security in connection with the Bonds. Plaintiff is willing to post a bond in the amount the Court deems appropriate.

## TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .............................................. 31

*American Motorists Ins. Co. v. United Furnace Co., Inc.*, 876 F.2d 293 (2nd Cir. 1989) ........... 22

*Arbor-Myrtle Beach PE LLC v. Frydman*, 202 A.D.3d 464 (1st Dept. 2022)……………………18

*Bank of Suffolk County v. Kite*, 49 N.Y.2d 827 (1980)……………………………………………..17

*Bib Constr. v. Fireman's Ins. Co. of Newark, NJ*, 214 A.D.2d 521 (N.Y. 1 App. Div. 1995) ..... 26

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ......................................................................... 31

*Clark v. Prichard*, 812 F.2d 991 (5th Cir. 1987) ......................................................................... 22

*Compagnie Financiere de CIC et de L'Union Europeene v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 188 F.3d 31 (2d Cir. 1999)……………………………………………..………..17

*Cooperative Centrale Raiffeisen-Boernleenbank, B.A. v. Navarro*, 25 N.Y.3d 485 (2015)……..17

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981) ............................ 24

*Doster v. Continental Casualty Co.*, 268 Ala. 123, 105 So.2d 83 (Ala. 1958)...................... 26, 27

*Frontier Ins. Co. in Rehab. v. MC Mgmt.,* No. 3:06-CV-597-H, 2009 WL 541301 (W.D. Ky. Mar. 4, 2009)............................................................................................................................... 19

*First Nat. Ins. Co. of America v. Sappah Bros, Inc.*, 771 F. Supp. 2d 569 (E.D.N.C. 2011)……32

*General  Acc. Ins. Co. of America v. Merritt-Meridian Const. Corp.*, 975 F. Supp. 511 (S.D.N.Y.1997)……………………………………………………………………………………..16

*General Ins. Co. of America v. K. Capolino Cons. Corp.*, 903 F.Supp.623 (S.D.N.Y. 1995)…..16

*Gen. Ins. Co. v. Howard Hampton Inc.,* 185 Cal. App. 2d 426 (Cal. Ct. App. 1960) .................. 20

*Gen. Trading Co., Inc. v. A&D Food Corp.*, 292 A.D.2d 266 (1st Dept. 2002)…………………18

*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007)......................... 23, 24

*Great Am. Ins. Co. v. Conart Inc.*, 2006 U.S. Dist. LEXIS 17787, 2006 WL 839197 (M.D. Ga. Mar. 29, 2006)................................................................................................................... 20, 29

*Hartford Fire Ins. Co. v. 3i Constr., LLC*, No. 3:16-CV-00992-M, 2017 WL 3209522 (N.D. Tex. May 18, 2017)................................................................................................................. 16, 25

*Hartford Fire Ins. Co. v. 4-H Ventures, Inc.*, 2008 U.S. Dist. LEXIS 48602 (S.D. Tex. June 25, 2008) ............................................................................................................................. 20

*In Re Liquidation of Union Indem. Ins. Co. of New York*, 289 A.D.2d 173 (1st Dept. 2001)………...................................................................................................18

*In Re Vargas Realty Enterprises, Inc.*, 440 B.R. 224 (S.D.N.Y 2010) …………………………17

*International Fidelity Ins. Co. v. Spadafina*, 192 A.D.2d 637, 596 N.Y.S.2d 453…...…………16

*Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC,* 2011 WL 4715155 ............................................. 32

*Int'l Fidelity Ins. Co. v. Anchor Environmental, Inc.*, Civ. A. No. 07-04750, 2008 WL 1931004 (E.D. Penn. May 1, 2008) .............................................................................................. 28

*Int'l Fidelity Ins. Co. v. Talbot Constr., Inc.*, Civil Action No. 1:15-cv-3969-LMM, 2016 WL 8814367 (N.D. Ga. Apr. 13, 2016) .................................................................... 25, 27, 29

*Jakobson Shipyard, Inc. v. Aetna Cas. and Sur. Co.*, 775 F. Supp. 606, 609 (S.D.N.Y. 1991), *aff'd,* 96 F.2d 387 (2d Cir. 1992)………………………………………………………...16

*Leiva–Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) ................................................................. 31

*Lewis v. S. S. Baune*, 534 F.2d 1115 (5th Cir. 1976) ................................................................... 26

*Liberty Mutual Fire Insurance Co. v. JDS Construction Group LLC*, Case No. 1:21-cv-01931, 2023 WL 6143559 (S.D.N.Y. Sept. 20, 2023)………...……………………………………19

*Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.,* 534 F. Supp. 2d 1290, 1321-22 (S.D. Fla. 2008) ................................................................................................................... 19

*Liberty Mut. Ins. Co. v. National Pers. of Tex., Inc.*, 2004 WL 583531 at *2............................. 21

*M.M.M. on Behalf of J.M.A. v. Sessions*, 347 F. Supp. 3d 526 (S.D. Cal. 2018) ........................ 31

*Marine Midland Tr. Co. of New York v. Alleghany Corp.*, 28 F. Supp. 680, 683-84 (S.D.N.Y. 1939) ............................................................................................................................. 19

*Maryland Casualty Co. v. Straubinger*, 19 A.D.2d 26, 29-30, 231 (4th Dep't 1963).................. 19

*Merchants Bonding Co. (Mut.) v. Arkansas Constr. Sols., LLC*, No. 5:18-CV-05078, 2019 WL 452767 (W.D. Ark. Feb. 5, 2019) ........................................................... 20, 24, 30, 33

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007). 26

*Milwaukie Construction Co. v. Glens Falls Ins. Co.*, 367 F.2d 964 (9th Cir. 1966).......19, 26, 31

*National Surety Corp. v. Titan Construction Corp.*, 26 N.Y.S.2d 227, 230-31 ......................... 19

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803 (9th Cir. 2018).................... 23

*North American Specialty Ins. Co. v. Montco Const. Co., Ins.*, No. 01CV0246E, 2003 WL 21383231, at *5 (W.D.N.Y. 2003)……………………………………………………………….16

*Northwestern National Ins. Co. of Milwaukee, Wisconsin v. Alberts*, 937 F.2d 77 (2d Cir. 1991) ...................................................................................................................................................... 26

*Northwestern National Ins. Co. of Milwaukee, Wisconsin v. Barney*, No. C86-3936, 1988 WL 215411 (N.D. Ohio 1988) .................................................................................. 26

*Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206 (D. Conn. 2014)............................ 19, 24

*Ohio Cas. Ins. Co. v. L.H. Eng'g Co., Inc.*, SACV1301249CJCANX, 2014 WL 12569351 (C.D. Cal. Jan. 2, 2014) ................................................................................................................. 25, 33

*Red Tulip, LLC v. Neiva*, 44 A.D.3d 204, 209 (1ˢᵗ Dept. 2007)……………………………….18

*Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F2d 380 (7th Cir. 1984) .............................. 24

*Safeco Ins. Co. of Am. v. Criterion Inv. Corp.,* 732 F. Supp. 834, 843 (E.D. Tenn. 1989) .......... 20

*Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433-34 (9th Cir. 1984) .............................. 20, 26

*Safeco Ins. Co. of America v. Hirani/MES, JV*, 480 ed. Appx. 606 (2d Cir. 2012) .................... 22

*Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436, 986 N.E.2d 430, 433 (2013)………….15

*Tantleff v. Truscelli*, 110 A.D.2d 240, 493 N.Y.S.2d 979, 982 (2d Dept. 1985)………………...16

*Ticor Title Ins. Co. v. Middle St. Officer Tower A Assocs.,* 768 F. Supp. 390, 392 (D. Me. 1991) ...................................................................................................................................................... 20

*Travelers Cas. & Sur. Co. of Am. v. C.R. Calderon Constr., Inc.*, No. CV TDC-17-0282, 2017 WL 2256600 (D. Md. May 22, 2017)...................................................................................... 28

*Travelers Cas. & Sur. Co. of Am. v. Desert Gold Ventures, LLC*, CV 09-4224 PSG AJWX, 2010 WL 5017798 (C.D. Cal. Nov. 19, 2010)................................................................................. 30

*Travelers Cas. & Sur. Co. of Am. v. Padron*, 5:15-CV-200-DAE, 2017 WL 9360906 (W.D. Tex.

Aug. 2, 2017) .................................................................................... 21, 23, 24, 27, 30

*Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, 2014 U.S. Dist. LEXIS 49649, 2014 WL 1404473 (N.D. Okla. Apr. 10, 2014) .................................................................. 20

*Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, No. 13-CV-156-JHP-FHM, 2013 WL 12109098 (N.D. Okla. June 17, 2013) ........................................................................ 24

*Travelers Casualty & Surety Company v. Ockerlund*, No. 04-C-3963, 2004 WL 1794915 (N.D. Ill. Aug. 6, 2004) .......................................................................................... 27, 29, 30

*Union Orient Bank v. Bao Lee*, 223 A.D.2d 500, 500 (1st Dept. 1996).............................18

*United Bonding Ins. Co. v. Stein*, 273 F. Supp. 929, 929-30 (E.D. Pa. 1967) ........................ 19

*United Fire v. Coggeshall Construction Co.,* No. 91-3159, 1991 WL 169147 (C.D. Ill. Jun. 28, 1991) .................................................................................................................. 27, 28

*United States v. Vahlco Corp.*, 800 F. 2d 462 (5th Cir. 1986)......................................... 15

*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830 L.Ed.2d 175 (1981)......................... 31

*Upshaw v. Alameda County*, 377 F. Supp. 3d 1027 (N.D. Cal. 2019) ............................... 31

*U.S. ex rel. AWL Industries, Inc. v. Site Remediation Services, Corp.*, 92 F. Supp. 2d 132 (E.D.N.Y. 2000)...............................................................................................15

*US. Fid. & Guar. Co. v. J United Elec. Contracting Corp.,* 62 F. Supp. 2d 915, 921-922 (E.D.N.Y. 1999)........................................................................................ 19, 20, 31

*Western Cas. & Sur. Co. v. Biggs,* 217 F.2d 163 (7th Cir. 1954)...................................... 29

*Wingsco Energy One v. Vanguard Group Resources*, 1989 WL 223756 (S.D. Tex. 1989)............. .................................................................................................................. 17

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365,172 L. Ed. 2d 249 (2008) .... 22, 23, 24, 31

*177th Upper Broadway Holdings, LLC v. Broadway Heights Mixed Use, LLC*, 2021 WL 3080013, at *3 (Sup. Ct., N.Y. County, July 19, 2021)...............................................22

## **Statutes**

RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY, § 21. ........................................ 29

## <u>Other Authorities</u>

*Exoneration and Quia Timet,* in THE LAW OF SURETYSHIP, 2D ED., pg. 471 (Edward G. Gallagher
ed., 2000) ..................................................................................................................... 21

*Introduction to the Surety's Rights as the Foundation for the Indemnity Agreement*, in THE
SURETY'S INDEMNITY AGREEMENT, LAW AND PRACTICE, 2D ED (Marilyn
Klinger, et al, eds., 2008) .......................................................................................... 15

Phillip L. Bruner & Patrick J. O'Connor, Jr., BRUNER & O'CONNOR ON CONSTRUCTION
LAW, § 12:97 (2002)................................................................................................... 15

Phillip L. Bruner & Patrick J. O'Connor, Jr., BRUNER & O'CONNOR ON CONSTRUCTION
LAW, § 12:99 (2002)................................................................................................... 15

## BRIEF IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF

At the heart of this dispute is the performance of Defendants' environmental obligations, including the plugging of oil and gas wells, removal of platforms, pipelines, and other facilities in furtherance of Defendants' decommissioning and other asset retirement obligations. As a matter of public health, safety, and welfare, it is of paramount importance that Defendants not only operate these assets in a safe and responsible manner but ensure that once they cease production and reach the end of their useful life, Defendants not only have a plan, but the means and ability to satisfy these obligations. This includes, but is not limited to, setting aside funds now to secure and ensure performance of those obligations once they arise—which is not a matter of *if*, but *when*. Otherwise, Plaintiff and public taxpayers will be left with the burden of performing those obligations for which Defendants are primarily responsible and required by law to perform as a condition for the exploration, extraction, development, use, and sale of public resources under state and federal oil and gas leases.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff, United States Fire Insurance Company ("Plaintiff" and/or the "Surety"), files this Brief in Support of its Motion for Injunctive Relief (the "Brief"), and respectfully moves this Court for a Preliminary Injunction to not only thwart the dissipation of valuable assets, but ensure that Defendants continue to be responsible stewards over the public resources for which they have been charged—*i.e.*, performance of their decommissioning and asset retirement obligations.

The Surety seeks to enforce its rights under the parties' written Indemnity Agreement by compelling Defendants W&T Offshore, Inc. and W&T Energy VI, LLC (collectively "Defendants" and/or "Indemnitors"), to post contractually-required and agreed collateral security upon demand in an amount sufficient to exonerate and indemnify the Surety for actual and anticipated losses, specifically perform their books and records obligations, and enjoin Defendants

from transferring, encumbering or otherwise dissipating any of its assets until such time as it has posted the full amount of its collateral obligation with the Surety.

## I.  **SUMMARY**

1.      Under the express and unequivocal terms of the Indemnity Agreement, the Indemnitors promised and agreed to, *inter alia*, deposit collateral security with the Surety upon demand and grant the Surety access to their books and records.  Not only did they promise and agree to do so, but Defendants expressly waived the right to challenge any collateral demand from the Surety.

2.      Despite written demand by the Surety, Defendants have wholly failed, refused, and/or neglected to post collateral security with the Surety or grant the Surety reasonable access to their books and records. Through this Motion, the Surety seeks to enforce and have Defendants honor their contractual promises.

3.      Defendants' failure to honor their contractual promises and obligations under the Indemnity Agreement raises significant questions as to whether Defendants are in the process of selling, diverting, or transferring assets, whether the Indemnitors have the financial capability to satisfy their obligations to the Surety, and whether the Indemnitors have the wherewithal to satisfy their obligations to the public at large, including their decommissioning and asset retirement obligations. Defendants' failure to voluntarily post collateral also raises the presumption of inadequate remedy and irreparable harm to the Surety.

4.      Absent injunctive relief, the Surety will suffer the harm of having its bargained-for rights under the Indemnity Agreement effectively nullified, leaving the Surety unsecured against claims and loss while Defendants would be free to sell, transfer or conceal their assets to avoid their obligations. In effect, Defendants will be free to extract all value from assets that are still

producing without ensuring that those assets will be responsibly taken care of once they have reached the end of their useful life.

5.       In light of the applicable case law and the clear and unambiguous terms of the Indemnity Agreement, Defendants' refusal to comply with the Surety's demands since learning of the Surety's intention to exercise its rights under the Indemnity Agreement underscore the Surety's need for a preliminary injunction ordering Defendant to: (a) post collateral in the amount of $93,665,179.00, the amount of security deemed acceptable to the Surety, in its sole judgment, to protect the Surety from loss or anticipated loss; (b) specifically perform their books and records obligations under the Indemnity Agreement by granting the Surety access to the books, records, and accounts of Defendants, on an ongoing and continuing basis, as well as disclose any material changes to their financial condition; and (c) refrain from transferring, encumbering or otherwise dissipating any of Defendants' assets, until such time as they have posted the full amount of collateral security demanded by the Surety.

## II.      FACTS[1]

### A.       The Indemnity Agreement and the Surety's Right to Indemnity, Exoneration, and Collateralization of the Bonds Upon Demand.

6.       As inducement for the Surety's execution of the Bonds, on or about November 5, 2013, and July 10, 2018, Defendants W&T Offshore, Inc. and W&T Energy VI, LLC executed a General Agreement of Indemnity (the "GIA") for the benefit of Aspen American Insurance Company and its successors and/or assigns (the "Surety"). Two riders to the GIA were executed on October 6, 2020 and May 21, 2021 modifying the terms of the GIA, including adding United States Fire Insurance Company as a Surety to the GIA and entitling United States Fire Insurance

---

[1] In the interest of judicial economy, the Surety incorporates the facts, definitions, and exhibits provided in its Verified Complaint in this matter, filed contemporaneously with this motion.

Company to exercise any and all rights and defenses under the GIA, as if United States Fire Insurance Company was an original Surety, as defined in the GIA.

7.      Under the GIA, Defendants, as Indemnitors, promised to, *inter alia*, exonerate, indemnify, and keep the Surety indemnified from and against any and all losses and expenses that the Surety incurs or anticipates that it will incur in connection with the Bonds or enforcement of the GIA.

8.      Specifically, the GIA provides, in relevant part that Defendants, as Indemnitors, jointly and severally promised and agreed as follows:

> [I]n consideration of Surety executing, renewing, continuing, and/or refraining from canceling Bonds for the benefit of any Indemnitor, including all of its present and/or future owned and/or controlled subsidiaries and affiliates, entities, divisions and/or operating units, whether alone or in joint venture with others, and whether or not named herein, and their successors and assigns, Indemnitors agree as follows:
>
> . . .
>
> 2. Indemnity.  Indemnitors shall indemnify the Surety and save it harmless from and against any and all liabilities, claims, demands, payments, losses, damages, expenses, and costs to investigate and/or resolve claims which Surety may at any time incur or pay by reason of or arising out of its execution or non-execution of any Bonds. **Indemnitors shall place the Surety in funds to meet all of its liability under any Bond, promptly upon written request and before the Surety may be required to make any payment thereunder.**

9.      Under the Indemnity Agreement, the Indemnitors promised to exonerate, indemnify, and keep the Surety indemnified from and against all loss that the Surety has incurred or anticipates that it will incur by reason of issuing the Bonds.  Specifically, pursuant to the Indemnity Agreement, the Indemnitors agreed as follows:

> The duty to indemnify and hold harmless also includes, without limitation, payment of Surety's losses, attorney's fees and expenses, and consultant's fees and disbursements incurred and/or paid with respect to any Bond: a) to investigate and/or resolve claims against the Bonds; b) in any action or proceeding between Indemnitors and Surety; and c) in any action or proceeding between Surety and third party. **The duty to indemnify and hold harmless exists whether or not the claim is made against Surety as a joint and/or several obligor and whether or**

**not Indemnitors or any of them is then liable to or demanded to make a payment.**

10.     In addition to indemnifying, exonerating, and holding Plaintiffs harmless from any

and all Losses, Paragraph 3 of the GIA provides:

> Additional Indemnity Terms. The Indemnitors shall remain bound under the terms of this Agreement even if Surety, with or without notice to or knowledge of Indemnitors, may have accepted or released other agreements of indemnity or collateral from one or more Indemnitors or others. The rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to any and all other rights, powers and remedies which Surety may have or acquire against Indemnitors or others by operation of law or otherwise. Unless expressly stated to the contrary, this Agreement is not intended to and shall not be deemed to supersede any other indemnity agreement between one or more Indemnitors and Surety. Upon Surety's written demand, Indemnitors shall promptly deposit with Surety a clean, irrevocable letter of credit ("ILOC") on a form and from a bank acceptable to Surety, or shall provide another form of collateral acceptable to Surety (individually and collectively, the "Collateral") in the amount of any reserve Surety establishes for any existing liability or claim, and or any expenses associated therewith, whether or not any assertion or payment of such liability, claim, or expense has been made at the time of the Surety's demand. **Further, Indemnitors expressly and specifically agree that Surety in its sole discretion and for any reason may, by written demand, require Indemnitors to provide the Surety with Collateral, as defined herein, within ten (10) days of their receipt of said demand, in the amount representing the total of any undischarged liability under the Bonds as determined by the Surety in its sole discretion**. In the event of any increases in Surety's undischarged liability, Indemnitors shall supplement the Collateral to match the increase.

11.     Paragraph 3 of the GIA further provides that Defendants, as Indemnitors, jointly

and severally agreed that:

> Indemnitors waive any and all defenses or challenges to the provision of collateral pursuant to this Agreement. Indemnitors further expressly stipulate and agree that Surety will have no adequate remedy at law should Indemnitors fail to post any collateral required herein, and agree that **Surety is entitled to specific performance of the obligation to post collateral**.

12.     Despite these unambiguous provisions, Defendants have wholly failed, refused,

and/or neglected to provide collateral or otherwise exonerate or indemnify the Surety.

13.     Under the Indemnity Agreement, the Indemnitors also expressly acknowledged and agreed that if the Indemnitors breached their obligation to provide the Surety with the requested collateral, the Surety would have no adequate remedy at law, thus entitling the Surety to specific performance of that obligation:

> Indemnitors waive any and all defenses or challenges to the provision of collateral pursuant to this Agreement. Indemnitors further expressly stipulate and agree that Surety will have no adequate remedy at law should Indemnitors fail to post any collateral required herein, and agree that Surety is entitled to specific performance of the obligation to post collateral.

14.     Finally, Paragraph 5 of the GIA provides, in pertinent part that Defendants, as Indemnitors, further jointly and severally agreed that:

> Surety, in its sole discretion, shall have the right to resolve any claim, demand, and//or assertion of liability arising out of a Bond, including claims in litigation or in another dispute resolution forum. Surety's resolution of any such claim shall be final and binding upon the Indemnitors. Indemnitors shall promptly reimburse Surety upon written demand for any payment by the Surety arising from any Bond.

## B.     The Indemnitors' Breach of the Indemnity Agreement

15.     On October 14, 2024, the Surety made a formal demand upon Defendants, as Indemnitors, to immediately deposit the sum of $89,501,222.00 in money or other acceptable collateral security with the Surety (the "Collateral Demand").

16.     Despite the Collateral Demand, Defendants have failed, refused, and/or neglected to deposit collateral with the Surety in an amount sufficient to discharge any losses and protect it from any potential or anticipated losses as agreed and required in the GIA.  As such, Defendants are in material breach of their joint and several obligations as Indemnitors under the GIA.

17.     All conditions precedent to recovery by the Surety from each Defendant has occurred or has been performed.

### III.    ARGUMENTS AND AUTHORITIES

18.    "At the root of the surety's decision to accept potential liability for its principal's contractual undertakings are both the hope and a rightful expectation" that the surety will suffer no loss. David Slaughter, *Introduction to the Surety's Rights as the Foundation for the Indemnity Agreement*, in THE SURETY'S INDEMNITY AGREEMENT, LAW AND PRACTICE, 2D ED, pg. 8 (Marilyn Klinger, et al, eds., 2008). This bedrock authority is reflected in *United States v. Vahlco Corp.*, 800 F. 2d 462 (5th Cir. 1986):

> A guarantor under Texas law is a so-called favorite of the law and as such, a guaranty agreement is construed strictly in favor of the guarantor.

*Id.* at 465.

19.    "Since at least the time of classical Rome, basic legal rights have existed for the protection of sureties." Phillip L. Bruner & Patrick J. O'Connor, Jr., BRUNER & O'CONNOR ON CONSTRUCTION LAW, § 12:97 (2002). Indemnification is an equitable principal of ancient origin that impliedly obligates an indemnitor to reimburse its surety. *Id.* at § 12:99.

**A.    The Indemnity Agreement is Governed by New York Law.**

20.    As agreed to by the parties and as set forth in the Indemnity Agreement, New York law governs this dispute.  "Under New York law, written agreements are construed in accordance with the parties' intent and '[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436, 986 N.E.2d 430, 433 (2013).

21.    An indemnity agreement is a contract. "Where the terms of a contract are clear and unambiguous, and reasonable people could not disagree as to the meaning of the text, the contract's interpretation is a question of law to be answered by the court. *U.S. ex rel. AWL Industries, Inc. v. Site Remediation Services, Corp.*, 92 F.Supp.2d 132 (E.D.N.Y. 2000). *See also North American*

*Specialty Ins. Co. v. Montco Const. Co., Inc.*, No. 01CV0246E, 2003 WL 21383231, at *5 (W.D.N.Y. 2003) (When "[t]he terms of [an] Indemnity Agreement are unambiguous . . . the Court must give effect to the express rights and obligations of the parties contained therein and such interpretation is an issue of law that may be determined on a motion for summary judgment.") (citing *Tantleff v. Truscelli*, 110 A.D.2d 240, 493 N.Y.S.2d 979, 982 (2d Dept. 1985); *Jakobson Shipyard, Inc. v. Aetna Cas. and Sur. Co.*, 775 F.Supp. 606, 609 (S.D.N.Y. 1991), *aff'd*, 96 F.2d 387 (2d Cir. 1992)).

22.     Under New York law, indemnity agreements are valid and enforceable. *General Acc. Ins. Co. of America v. Merritt-Meridian Const. Corp.*, 975 F.Supp. 511, 515-16 (S.D.N.Y. 1997) ("Indemnity agreements such as those at issue in this case are valid and enforceable under New York law.") (citing *International Fidelity Ins. Co. v. Spadafina*, 192 A.D.2d 637, 596 N.Y.S.2d 453, 454 (1993)). Where, as in the present case, "the [indemnitor] has expressly agreed to indemnify the surety for losses arising from claims made on surety bonds, the indemnity agreement governs the relationship between the surety and [indemnitor]. *Merritt-Meridian*, 975 F.Supp. at 516; *see also General Ins. Co. of America v. K. Capolino Const. Corp.*, 903 F.Supp. 623 (S.D.N.Y. 1995) ("Because General and Capolino entered into an express contract of indemnification, in the absence of bad faith, the 'indemnity agreement governs the relationship between . . . [indemnitor] and . . . surety.").

23.     Where the obligations of the parties are clearly and unambiguously set forth in the indemnity agreement, a court should summarily enforce such indemnification provisions. *Id.* Accordingly, courts have sustained a surety's right to sue for specific performance of an agreement to furnish it indemnity, exoneration, and collateralization. *See, e.g.*, *Hartford Fire Ins. Co. v. 3i Constr., LLC*, No. 3:16-CV-00992-M, 2017 WL 3209522, at *4 (N.D. Tex. May 18, 2017)

("Courts generally grant specific performance to enforce collateral security clauses on the grounds that if a creditor is to have the security position he bargained for, the promise to maintain that security must be specifically enforced."); *see also Wingsco Energy One v. Vanguard Group Resources*, 1989 WL 223756 (S.D. Tex. 1989). When an indemnity agreement is signed, an indemnitor promises to protect its surety not only *from*, but *against* any and all loss or anticipated losses. Because the Indemnitors promised and agreed to protect the Surety, the Surety is entitled to petition the Court for specific enforcement of these promises and obligations.

**B.      Defendants' Waivers in the Indemnity Agreement are Valid and Enforceable Under New York Law.**

24.      Paragraph 3 of the Indemnity Agreement explicitly provides, in relevant part, that:

Indemnitors waive any and all defenses or challenges to the provision of collateral pursuant to this Agreement.

25.      New York courts regularly enforce waivers, including waivers of defenses provisions. *See Cooperatieve Centrale Raiffeisen-Boernleenbank, B.A. v. Navarro*, 25 N.Y.3d 485 (2015) ("Guaranties that contain language obligating the guarantor to payment without recourse to any defenses or counterclaims, i.e., guaranties that are 'absolute and unconditional,' have been consistently upheld by New York courts."); *see also Compagnie Financiere de CIC et de L'Union Europeene v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 188 F.3d 31, 35 (2d Cir. 1999) ("Absolute and unconditional guaranties have in fact been found to preclude guarantors from asserting a broad range of defenses under New York law."); *In re Vargas Realty Enterprises, Inc*., 440 B.R. 224, 243 (S.D.N.Y 2010) ("courts have consistently *upheld* comparable pre-negotiation agreements on the basis of New York's policy favoring the enforcement of unambiguous contracts . . . including waiver of any 'defense, setoff, claim, counterclaim or cause of any kind or nature whatsoever"); *Bank of Suffolk County v. Kite*, 49 N.Y.2d 827, 828 (1980) (defendant could not

assert defense of condition precedent given "its explicit waiver of the right to interpose any defense, set-off or counterclaim whatsoever"); *Arbor-Myrtle Beach PE LLC v. Frydman*, 202 A.D.3d. 464, 465 (1st Dept. 2022) (finding "Defendant waived all defenses to the performance of his obligations under the guaranty"); *Red Tulip, LLC v. Neiva*, 44 A.D.3d 204, 209 (1st Dept. 2007) ("Unfortunately for Neiva, her affirmative defenses [including bad faith and unclean hands] and counterclaims faced an insurmountable obstacle: the guarantee she signed in connection with the mortgage loan waived all defenses and counterclaims except 'actual payment,' which she has never alleged"); *Gen. Trading Co., Inc. v. A&D Food Corp.*, 292 A.D.2d 266, 267 (1st Dept. 2002) (affirming summary judgment where guarantee waived right to interpose any defenses, which "effectively waived the defenses of fraud in the inducement and failure of consideration defendants would now raise"]; *In re Liquidation of Union Indem. Ins. Co. of New York*, 289 A.D.2d 173, 174 (1st Dept. 2001); *Union Orient Bank v. Bao Lee*, 223 A.D.2d 500, 500 (1st Dept. 1996).

26.   The language of the waiver in the Indemnity Agreement is unequivocal and could not be clearer. Defendants are sophisticated parties who were free to negotiate the terms under which they would post collateral and, in lieu of collateralizing the Bonds outright, promised and agreed to do so upon written demand from the Surety. Therefore, Defendants' waiver of "all defenses or challenges" to the Collateral Deposit Requirement in the Indemnity Agreement is valid, enforceable, and serves as evidence to help establish Plaintiff's likelihood to succeed on the merits.

### C.   Necessities for Injunctive Relief Are Satisfied.

27.   In lieu of collateralizing the Bonds outright, Defendants explicitly agreed and unconditionally promised to post collateral with the Surety upon demand. Their failure to do so is

not only a material breach of the Indemnity Agreement, but has caused immediate and irreparable harm to the Surety.

28.     Courts have routinely ordered indemnitors to specifically perform their obligations to post collateral as required in indemnity agreements. *See Liberty Mutual Fire Insurance Co. v. JDS Construction Group LLC*, Case No. 1:21-cv-01931, 2023 WL 6143559, at *6 (S.D.N.Y. Sept. 20, 2023) ("Several courts, both in this circuit and in other circuits, have recognized that the defendants' obligation to provide [a surety] with collateral security is subject to enforcement by specific performance because the damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate") (quoting *Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206, 214 (D. Conn. 2014)).

29.     In contracts involving collateral security, "[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." *Marine Midland Tr. Co. of New York v. Alleghany Corp.*, 28 F. Supp. 680, 683-84 (S.D.N.Y. 1939); *see also U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F.Supp. 2d 915, 922 (E.D.N.Y. 1999) ("Courts in New York have routinely upheld the validity of collateral security clauses and enforced their terms."); *see also Maryland Casualty Co. v. Straubinger*, 19 A.D.2d 26, 29-30, 231 (4th Dep't 1963) (per curiam); *National Surety Corp. v. Titan Construction Corp.*, 26 N.Y.S.2d 227, 230-31.; *Milwaukie Construction Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 966-67 (9th Cir. 1966); *United Bonding Ins. Co. v. Stein*, 273 F. Supp. 929, 929-30 (E.D. Pa. 1967); *see also Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.,* 534 F. Supp. 2d 1290, 1321-22 (S.D. Fla. 2008) ("surety's loss of its right to collateralization cannot be adequately remedied through monetary damages"); *Frontier Ins. Co. in Rehab. v. MC Mgmt.,* No. 3:06-CV-597-H, 2009 WL 541301 (W.D. Ky. Mar. 4, 2009) ("requiring indemnitors to post collateral to

cover an indemnitee's potential liability is the type of specific relief that courts may require"); *US. Fid. & Guar. Co. v. J United Elec. Contracting Corp.,* 62 F. Supp. 2d 915, 921 (E.D.N.Y. 1999); *Ticor Title Ins. Co. v. Middle St. Officer Tower A Assocs.,* 768 F. Supp. 390,392 (D. Me. 1991); *Safeco Ins. Co. of Am. v. Criterion Inv. Corp.,* 732 F. Supp. 834, 843 (E.D. Tenn. 1989); *Gen. Ins. Co. v. Howard Hampton Inc.,* 185 Cal. App. 2d 426 (Cal. Ct. App. 1960) (holding that specific performance ensures the creditor maintains the security position for which it bargained); *Merchants Bonding Co. (Mut.) v. Arkansas Constr. Sols., LLC*, No. 5:18-CV-05078, 2019 WL 452767 at *3 (W.D. Ark. Feb. 5, 2019) ("even if [surety] were to fully recover its monetary damages at the end of the litigation, it still would not be made whole... [t]he issue is not simply one of monetary loss: it is about the right of a surety to the immediate, contracted-for payment of collateral to eliminate the surety's *potential exposure* for a risk of loss"); *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433-34 (9th Cir. 1984).

30. Courts routinely award injunctive relief where—as we have here—the Indemnitors waived their right to contest this requirement. *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, 2014 U.S. Dist. LEXIS 49649, 2014 WL 1404473 (N.D. Okla. Apr. 10, 2014) ("Specific performance is routinely granted to sureties."); *see also, e.g., Hartford Fire Ins. Co. v. 4-H Ventures, Inc.*, 2008 U.S. Dist. LEXIS 48602 (S.D. Tex. June 25, 2008) ("Defendants expressly agreed that the failure to provide the requested collateral constitutes irreparable harm. All of their arguments to the contrary must fall before the plain language of the indemnity agreements."); *Great Am. Ins. Co. v. Conart Inc.*, 2006 U.S. Dist. LEXIS 17787, 2006 WL 839197 (M.D. Ga. Mar. 29, 2006) ("The [undersigned Defendants] agree that the Surety shall be entitled to injunctive relief for specific performance . . .Therefore, the Court finds that absent enforcement of the Agreement, Plaintiff has no adequate remedy at law.")

31.     Similarly, here, the Indemnitors contractually:

    a.   Agreed to procure full and complete discharge of the Surety from the Bonds;

    b.   Agreed to post collateral with the Surety, upon demand;

    c.   Waived the right to contest this requirement;

    d.   Stipulated and agreed that the Surety has no adequate remedy at law; and

    e.   Stipulated and agreed that the Surety is entitled to specific performance.[2]

The Court, therefore, can award injunctive relief based on the clear and unambiguous terms of the Indemnity Agreement.

32.     Even in cases where an indemnity agreement is silent—which in this case it is not—the overwhelming majority of courts have found the requirements for specific performance and injunctive relief are met. *See Liberty Mut. Ins. Co. v. National Pers. of Tex., Inc.*, 2004 WL 583531 at *2 ("Courts have generally granted specific performance to enforce collateral security clauses based on the premise such remedy is required to protect the surety's bargain").

33.     Because the Indemnitors contractually agreed to fully exonerate the Surety and collateralize the Surety under the Bonds, this Court should grant its request for a Preliminary Injunction.

## D.     Standard for Injunctive Relief.

34.     As highlighted above, courts routinely grant injunctive relief compelling indemnitors to provide collateral security to a surety when this obligation has been undertaken pursuant to a written agreement of indemnity. *See Padron*, 2017 WL 9360906, at *10-13.. Despite the more lenient standard applicable to sureties, here the Surety also meets the following four factors which traditionally govern injunctive relief:

---

[2] *See* Exhibit A to Complaint.

a.  the threat of irreparable harm to the movant and that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

b.  the state of the balance between this harm and the injury that granting the injunction will inflict on other parties;

c.  the likelihood that the movant will succeed on the merits; and

d.  the public interest.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008*); Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *see also 177th Upper Broadway Holdings, LLC v. Broadway Heights Mixed Use, LLC*, 2021 WL 3080013, at *3 (Sup. Ct., N.Y. County, July 19, 2021) (To obtain injunctive relief, Plaintiff bears the burden of showing "(1) the likelihood of success on the merits, (2) irreparable injury absent the granting of preliminary injunctive relief, and (3) a balancing of the equities in the movant's favor.").

**a.    *The Threat of Irreparable Harm to the Movant***

35.    "Where a surety bargained for collateral security and . . . failed to receive it, [the surety]'s injury is real and immediate." *Safeco Ins. Co. of America v. Hirani/MES, JV*, 480 ed. Appx. 606 (2d Cir. 2012) (citing *American Motorists Ins. Co. v. United Furnace Co., Inc.*, 876 F.2d 293 (2d Cir. 1989) ("Having bargained for collateral security and failed to receive it, [Surety]'s injury is real and immediate.").

36.    When the Surety executed the Bonds, Defendants promised and agreed to indemnify, defend, exonerate, and hold the Surety harmless from and against any and all loss. The Surety relied upon the ability of the Indemnitors to honor its promises and perform its obligations under the Indemnity Agreement, including, without limitation, protecting the Surety from all loss and expense the Surety may sustain as result of executing the Bonds. In lieu of collateralizing the Bonds outright, Defendants unconditionally promised and agreed to deposit collateral security

with the Surety upon demand. Defendants also waived any right to challenge a collateral demand from the Surety.

37.     The Surety would not have executed the Bonds without the financial guarantees contained within the Indemnity Agreement. Accordingly, should the Court deny the Surety's Application for Preliminary Injunction, the Surety's rights to contractual and common law exoneration and collateralization will be forever lost. The Surety has no adequate remedy at law, and the declaratory and equitable relief sought here constitutes the only means by which the Surety can secure adequate relief and by which furtherance of justice may be served. Defendants further "stipulate[d] and agree[d] that Surety will have no adequate remedy at law should Indemnitors fail to post any collateral required herein and agree that Surety is entitled to specific performance of the obligation to post collateral."

38.     Irreparable harm requires a showing that the harm "is likely in the absence of the injunction." *Winter* at 22 (2008). There must be a "sufficient causal connection" between the alleged irreparable harm and the activity to be enjoined and showing that "the requested injunction would forestall" the irreparable harm qualifies as such a connection. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018).

39.     The injunctive relief requested by the Surety would prevent the suffering of an imminent and irreparable injury typically required for preliminary injunctions. *See Travelers Cas. & Sur. Co. of Am. v. Padron*, 5:15-CV-200-DAE, 2017 WL 9360906, at *10 (W.D. Tex. Aug. 2, 2017) ("The rationale behind finding irreparable harm and that specific performance of a collateral security provision is warranted is that "the surety has specifically bargained for *prejudgment collateralization* and a judgment for money damages alone would deprive the surety of *prejudgment relief* to which it is contractually entitled."); *see also Grand River Enter. Six Nations,*

*Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (to obtain injunctive relief a plaintiff must show that "absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'"). An imminent injury is one that is likely, rather than a mere possibility. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 375−76 (2008). An injury is irreparable if it cannot be prevented or fully rectified by an award of damages at the end of trial, such as when "[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F2d 380, 386 (7th Cir. 1984); *see also Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).

40.     The Surety is entitled to the valuable benefit it contracted for, as "the very nature of an indemnity agreement is that it enables a surety to contract for collateral security *upon demand*—not at a time of the indemnitor's choosing." *Merchants Bonding Co. (Mut.) v. Arkansas Constr. Sols., LLC*, No. 5:18-CV-05078, 2019 WL 452767 at *5 (W.D. Ark. Feb. 5, 2019). The rationale behind finding irreparable harm and that specific performance of a collateral security provision is warranted is that "the surety has specifically bargained for prejudgment collateralization and a judgment for money damages alone would deprive the surety of prejudgment relief to which it is contractually entitled." *Travelers Cas. & Sur. Co. of Am. v. Padron*, 5:15-CV-200-DAE, 2017 WL 9360906 (W.D. Tex. Aug. 2, 2017) at *10, quoting *Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206, 214 (D. Conn. 2014). The Surety "will be effectively denied the benefit of its bargain if it must wait until the conclusion of the case to obtain the letter of credit." *Cas. v. Samson Inv. Co.,* No. 13-CV-156-JHP-FHM, 2013 WL 12109098, at

*2 (N.D. Okla. June 17, 2013). To hold otherwise would render the collateral provision in the Indemnity Agreement meaningless.

41.     By their very nature, the rights to contractual and common law exoneration require pre-judgment relief. *See, e.g., 3i Construction* 2017 WL 3209522, at *4 (holding that, "[m]erely awarding money damages post-judgment would deny [the surety] its contractual right to immediate payment of collateral, and accordingly, [the surety] would forever lose its right to immediate exoneration and would be irreparably injured. This is not simply an issue of a possible monetary loss, but rather is an issue of 'impairing a surety's expectation and requiring it to suffer any loss, even if only temporary, associated with the performance of a primary obligor's duty.'").

42.     In finding irreparable harm and granting injunctive relief courts protect:

> . . . three interests of the surety: the bargained-for benefit of collateral security, avoidance of present exposure to liability during pending litigation against indemnitors, and avoidance of risk that, should indemnitors become insolvent, the surety will be left as a general unsecured creditor, frustrating the purpose of the indemnity agreement.

*Int'l Fidelity Ins. Co. v. Talbot Constr., Inc.*, Civil Action No. 1:15-cv-3969-LMM, 2016 WL 8814367, at *7 (N.D. Ga. Apr. 13, 2016); *see also Ohio Cas. Ins. Co. v. L.H. Eng'g Co., Inc.*, SACV1301249CJCANX, 2014 WL 12569351, at *2 (C.D. Cal. Jan. 2, 2014).

43.     If these rights cannot be enforced at the inception of an action, but rather must await determination by final judgment, then the rights are meaningless. *See Talbot Constr*. at *7 (N.D. Ga. Apr. 13, 2016) ("Damages available after trial and judgment, even if including costs and interest, are of little use to [the Surety] when it is responsible for investigating, defending, and paying claims on bonds in the present – claims arising due to [the bond principal's] alleged failure to fulfill its obligations."). It is well-established that the use of injunctive relief is appropriate to protect a surety's contractual, common-law, and equitable rights of exoneration and *quia timet*.

*Northwestern National Ins. Co. of Milwaukee, Wisconsin v. Alberts*, 937 F.2d 77 (2d Cir. 1991); *Northwestern National Ins. Co. of Milwaukee, Wisconsin v. Barney*, No. C86-3936, 1988 WL 215411 (N.D. Ohio 1988).

44.     Should the Court not grant the Motion for Preliminary Injunction, the rights of the Surety to contractual and common law collateralization will be forever lost.  The Surety has no adequate remedy at law, and the equitable relief sought herein constitutes the only means by which the Surety can secure adequate relief and by which furtherance of justice may be served.

45.     Often times the concepts of "irreparable injury" and "no adequate remedy at law" are indistinguishable in the context of a permanent injunction. *Lewis v. S. S. Baune*, 534 F.2d 1115, 1124 (5th Cir. 1976).  As should be expected, this Court's adequate remedy at law analysis parallels that performed for irreparable harm. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007).

46.     Numerous courts have held that there is an inherent absence of a legal remedy— and the equally inherent existence of an irreparable injury—where an indemnitor refuses to perform its contractual, common-law, and equitable obligations to the surety, including those of exoneration, posting collateral, and *quia timet*. *See, e.g., United Bonding*, 273 F. Supp. at 930 (legal remedy for subsequent damages will not suffice when indemnitor refuses to voluntarily comply with surety's demands); *Milwaukie Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964 (9th Cir. 1966); *Schwab*, 739 F.2d 431 at 433 ("sureties are ordinarily entitled to specific performance of collateral security clauses.  If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced"); *Bib Constr. v. Fireman's Ins. Co. of Newark, NJ*, 214 A.D.2d 521 (N.Y. 1 App. Div. 1995) ("damage resulting from failure to give security is not ascertainable, and the legal remedy is therefore inadequate"); *Doster v.*

*Continental Casualty Co.*, 268 Ala. 123, 105 So.2d 83 (Ala. 1958) ("it is not necessary for the surety to show any fraudulent disposition of property on the part of the principal or any special reason for fearing a loss").

47. The *Padron* court, following the *Tablot* court's finding, found a surety:

> would be irreparably harmed without injunctive relief because it has no adequate remedy at law for a breach of the collateral security provision, "either for recovering for its actual losses or for protecting itself against future losses due to claims on the bonds." Just as the surety did in *Talbot Construction, Inc.*, [the surety] here "specifically sought protection against present exposure to liability on bonds through contractual language requiring deposit of collateral 'on demand,' " and therefore, "[d]amages available after trial and judgment, even if including costs and interest, are of little use" to [the surety] "when it is responsible for investigating, defending, and paying claims on bonds in the present." Accordingly, [the surety] has clearly shown a substantial threat of irreparable harm.

*See Padron*, 2017 WL 9360906, at *11 (citing *Tablot Constr.*, 2016 WL 8814367, at *7).

48. In *Ockerlund*, the court considered the proper means for enforcing obligations created by an indemnity agreement's collateral security provision where the Indemnitors were required to protect the surety against any loss arising by reason of the issuance of the bond and concluded injunctive relief was proper. *Travelers Casualty & Surety Company v. Ockerlund*, No. 04-C-3963, 2004 WL 1794915, *1 (N.D. Ill. Aug. 6, 2004). On the facts before it, the court determined that the surety would suffer irreparable harm if the injunction did not issue as it would be forced to use its own funds to defend and pay claims despite defendants' promises to protect the surety from this risk. The court reasoned that by granting the injunction it was only requiring the defendants to perform the obligations they had contractually agreed to undertake. *Id.* at *4.

49. Similarly, the court in *United Fire v. Coggeshall Construction Co.* found a judgment for money damages at the end of the case—without according the Surety specific performance of the collateral security provision contained in the indemnity agreement before the court—would not be an adequate remedy and would irreparably harm the surety by depriving it of

pre-judgment relief to which it is contractually entitled. *United Fire v. Coggeshall Construction Co.,* No. 91-3159, 1991 WL 169147, *2 (C.D. Ill. Jun. 28, 1991).

50.     Likewise, the court found in *Int'l Fidelity Ins. Co. v. Anchor Environmental, Inc.* that the surety would be irreparably harmed absent a preliminary injunction. The Court explained "[i]f [the surety] is deprived of the bargained-for collective security, it will face the risk of being a general unsecured creditor of Defendants and of not being able to collect. To protect Plaintiff from becoming a general creditor, the grant of specific performance to enforce the collateral security provision is warranted." *Int'l Fidelity Ins. Co. v. Anchor Environmental, Inc.*, Civ. A. No. 07-04750, 2008 WL 1931004 *7 (E.D. Penn. May 1, 2008).

51.     As grounds for granting a surety's request for an injunction directing indemnitors to post collateral, the United States District Court for the District of Maryland in *Travelers Cas. & Sur. Co. of Am. v. C.R. Calderon Constr., Inc.*, No. CV TDC-17-0282, 2017 WL 2256600 (D. Md. May 22, 2017) found:

> Under the reasoning reflected in the great weight of case law, Travelers has shown a likelihood of irreparable harm . . . Travelers is now, in fact, obligated for upwards of $200,000 as a result of that Payment Bond, but does not have the collateral security it was promised under the Indemnity Agreement. Travelers is therefore presently exposed to the risk of non-payment on the part of Defendants, the very risk that the collateral security provision of the Indemnity Agreement was meant to obviate. Money damages are inadequate here, because they cannot compensate Travelers for unduly bearing this risk of non-payment and the loss of its bargained-for security position as compared to other creditors.

*Id.*, at *4.

52.     The Surety's rights to discharge and collateral are absolute under the Indemnity Agreement and Defendants have no reasonable challenge to the enforcement of that provision. In fact, they expressly waived any right to challenge enforcement of the Collateral Deposit Requirement. Further, if Defendant is not required by this Court to post collateral sufficient to

cover their obligations to the Surety under the Indemnity Agreement, it is unlikely the Indemnitors will retain any ability to satisfy their contractual promises later. This is the specific risk the provision requiring posting of collateral is designed to avoid and absent its specific enforcement, the Surety will be irreparably harmed.

### b.    The Balance Of Harms Versus The Potential Injury That Granting The Injunction Will Inflict On Other Parties Weighs In The Surety's Favor

53.    It is evident that the balance of harms in this matter weighs in favor of the Surety. If the Surety is denied an injunction, it is likely no assets will be available to the Surety later to satisfy the Indemnitors' contractual and common law obligations. As several courts and treatises have noted, it is well settled that this is a serious harm to a surety. *See Western Cas. & Sur. Co. v. Biggs,* 217 F.2d 163, 165 (7th Cir. 1954); *Great Am. Ins. Co. v. Conart Inc.*, No. 1:05-CV-038 (WLS), 2006 WL 839197, at *6 (M.D. Ga. Mar. 29, 2006); *Ockerlund,* 2004 WL 1794915 at *5; RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY, § 21.

54.    In *Talbot Constr.*, *supra*, the United States District Court for the Northern District of Georgia acknowledged this principle and ordered indemnitors to post collateral in an amount for both costs and expenses already incurred and anticipated future losses. Reviewing a collateral provision similar to the one in the Indemnity Agreement, the court explained "Indemnitors should not be rewarded for their apparent breach of contract by avoiding contribution of collateral for costs they have thus far evaded." *Tablot Constr.*, 2016 WL 8814367, at *18.

55.    Granting injunctive relief will cause no substantial harm to the Indemnitors. It merely requires Defendants to abide by their promises.  If this Court grants the injunction and orders Defendant to specifically perform their obligations under the Indemnity Agreement's collateral deposit provision, the parties will simply be placed in the positions they bargained for at the time the Indemnity Agreement was executed. Defendants will be required to perform as they

contractually agreed to do, and the Surety will receive the collateral security to which it is entitled. *See Merchants Bonding Co. v. Burnside*, No. 4:22-CV-3651, 2023 WL 4140455, at *5 (S.D. Tex. June 21, 2023) ("There is no doubt that collateralizing the Surety…would be a burden, but ultimately, it is a burden the Indemnitors explicitly bargained when they executed the Indemnity Agreement."); s*ee also Ockerlund*, 2004 WL 1794915 at *6; *Travelers Cas. & Sur. Co. of Am. v. Padron*, No. 5:15-CV-200-DAE, 2017 WL 9360906, at *12 (W.D. Tex. Aug. 2, 2017) ("[I]f Defendants are required to post collateral security here, they are merely being required to perform pursuant to the terms of the otherwise undisputedly clear and valid Indemnity Agreement to which they are a party….").

### c.    *The Probability That The Movant Will Succeed On The Merits*

56.    In the instant action, there is not only a "probability" that the Surety will succeed on the merits–Defendant's breach of the Indemnity Agreement is clear and the Surety's ability to succeed on the merits is readily apparent.   Among the Surety's rights under the Indemnity Agreement is the right to request of the Indemnitors—and thereby obtain the Indemnitors' performance—to collateralize any and all liability under the Bonds.  Here, the Surety has requested that Defendants fulfill their express contractual obligation to do so, but they have refused.  The Surety has met its burden of establishing a probability that it is entitled to specific performance of the Indemnity Agreement's collateral security provision.

57.    There is no dispute that the Indemnity Agreement is a valid, existing contract between the Surety and the Indemnitors. Courts have routinely upheld the validity of collateral security clauses and enforced their terms. *See Travelers Cas. & Sur. Co. of Am. v. Desert Gold Ventures, LLC*, CV 09-4224 PSG AJWX, 2010 WL 5017798, at *7 (C.D. Cal. Nov. 19, 2010);

*Glens Falls Ins.*, 367 F.2d 964 (9th Cir. 1966); *J United Electrical,* 62 F. Supp. 2d 915 (B.D.N.Y. 1999). Accordingly, the Indemnity Agreement in this instance should be upheld and enforced.

58.     "[L]ikelihood of success on the merits is 'the most important' factor; if a movant fails to meet this 'threshold inquiry,' [a court] need not consider the other factors." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018).   While plaintiffs carry the burden of demonstrating a likelihood of success, they are not required to prove their case in full at this stage but only such portions that enable them to obtain the injunctive relief they seek. *M.M.M. on Behalf of J.M.A. v. Sessions*, 347 F. Supp. 3d 526, 532–33 (S.D. Cal. 2018).   To satisfy the first element of the standard for injunctive relief, it is not necessary for the moving party to "prove his case in full," or show that he is "more likely than not" to prevail. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).   At "an irreducible minimum," the party seeking the injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation. *Upshaw v. Alameda County*, 377 F. Supp. 3d 1027, 1031 (N.D. Cal. 2019). "Serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other elements of the *Winter* test are also met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365,172 L. Ed. 2d 249 (2008*)*

59.     As detailed above, numerous federal courts have granted the equitable relief requested by the Surety under facts and contracts substantially the same as those here. These cases demonstrate that—in light of the Surety's unconditional rights and the Indemnitors' specific obligations under the Indemnity Agreement—it is almost certain the Surety will prevail.

### d.   Public Interest

60.   The final factor to be weighed is the interests of public policy in this dispute. The public interest factor clearly weighs in favor of the Surety. The general indemnity agreement is the foundation of modern suretyship, and its enforcement is essential to the procurement of commercial and contract surety bonds to guarantee performance of the obligations of principal obligors in the event they are unable to do so.

61.   This is also a significant matter of public interest as it involves public safety, health, and welfare. Defendants' failure to perform their environmental obligations, including decommissioning and plugging and abandonment of oil and gas assets, could be catastrophic. Not only will the Surety be called upon to perform Defendants' obligations—at least up to the penal limits of the Bonds—but any remaining liabilities will be left as a heavy burden on the public.

62.   At present, Defendants are extracting and developing valuable resources on public lands for substantial profits under the assumption that they will ultimately restore those sites, remediate, and reverse any environmental damage after those operations cease. However, they have failed to ensure that they will be financially capable of doing so once those valuable resources have been exhausted. There is a strong public policy interest in financial transparency, particularly with regard to the allocation of funds for decommissioning, and ensuring that sufficient resources are set aside and available for these activities.

63.   On this point, the court in *Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC* found "enforcing the collateral security provision of an indemnity agreement . . . serves an important public interest: to encourage sureties to continue to provide bonds for [the] public." *Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC,* 2011 WL 4715155 at *5 (citing *First Nat. Ins. Co. of America v. Sappah Bros, Inc.,* 771 F. Supp. 2d 569, 575 (E.D.N.C. 2011)).  The public interest weighs in favor

of ensuring that contractual agreements, especially those between sureties and their indemnitors, are upheld. *L.H. Eng'g Co.,* 2014 WL 12569351, at *2 (C.D. Cal. Jan. 2, 2014).

64.     In contrast, the Indemnitors agreed to the provisions of the Indemnity Agreement for the express purpose of obtaining various bonds.  Such bonds are required to protect the owner, the public, and the other contracting parties.  Public policy clearly supports protecting sureties and enforcing the explicit terms of agreements entered into by knowledgeable parties. *Merchants Bonding Co. (Mut.) v. Arkansas Constr. Sols., LLC,* 5:18-CV-05078, 2019 WL 452767, at *7 (W.D. Ark. Feb. 5, 2019) (Court predicting that if collateral provisions are not upheld, "it is likely that, over time, sureties would become reluctant to enter into such contracts at all, and those who entered into contracts with sureties might eventually become emboldened to refuse to post collateral in favor of challenging the demands in court—and waiting out the typically slow grind of the litigation process.").

65.     The Surety is willing to post a bond in the amount the Court deems appropriate.

## IV.     CONCLUSION

For these reasons, Plaintiff, United States Fire Insurance Company, requests that, if necessary, the Court set this Motion for hearing at the earliest possible time and, after hearing oral arguments, issue a preliminary injunction. Specifically, the Surety requests that the preliminary injunction:

1.     Order Defendants to pay the Surety the sum of $93,665,179.00 in cash or other collateral security acceptable to the Surety, representing an amount as determined by the Surety sufficient to discharge any loss or anticipated loss including but not limited to claims, demands, payments, damages, expenses, and costs to investigate and/or resolve claims which the Surety may at any time incur or pay by reason of or arising out of its execution or non-execution of any Bonds;

2.     Order Defendants to specifically perform their books and records obligations under the Indemnity Agreement;

3.      Order and enjoin Defendants from transferring, encumbering or otherwise dissipating any of their assets until such time as they have posted the full amount of the collateral demanded by the Surety; and

4.      Award the Surety such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause.

RESPECTFULLY SUBMITTED this 14th day of November, 2024.

/s/ *Ryan D. Dry*

Ryan D. Dry
State Bar No. 24050532
Fed. No. 618363
Steven M. Beauchamp
State Bar No. 24102924
Fed. No. 3813833
**DRY LAW, PLLC**
909 18th Street
Plano, TX 75074
(972) 797-9517 Telephone
(972) 797-9510 Facsimile
sbeauchamp@drylaw.com
rdry@drylaw.com

**ATTORNEYS FOR PLAINTIFF
UNITED STATES FIRE INSURANCE
COMPANY**