# Vinson&Elkins

Jason Halper jhalper@velaw.com
**Tel** +1.212.237.0240

October 20, 2025

<u>*Via ECF E-File*</u>

Honorable Dena Hanovice Palermo
U.S. District Court, Southern District of Texas
515 Rusk Avenue, Room 7727
Houston, Texas 77002

Re:   Civil Action No. 4:24-CV-03047; *W&T Offshore, Inc. et al. v. Endurance Assurance Corp., et al.*; in the United States District Court for the Southern District of Texas

Dear Judge Palermo:

    We write on behalf of Defendants Lexon Insurance Company and Endurance Assurance Corporation (together, "Lexon") in response to the October 17, 2025 letter from Plaintiffs W&T Offshore, Inc. and W&T Energy VI, LLC (together, "W&T"). Over the past four months, the parties have engaged in extensive discussions regarding their respective discovery requests.[1] W&T's requests all hinge on supposedly needing to obtain information regarding a market-wide antitrust conspiracy involving harm to other independent oil and gas operators. The problem, for W&T, is that it has not pled a market-wide conspiracy involving *other* oil and gas operators. Nor has W&T suggested in correspondence to Lexon or its submission to this Court any good-faith basis to believe that such a conspiracy exists. Rather, W&T has asserted antitrust claims against a limited number of surety companies, and alleges harm only to W&T. That is too slender a reed to permit W&T to embark on the extensive fishing expedition it proposes, i.e., by obtaining documents and communications between Lexon and every broker, surety company, and reinsurer, regarding every independent oil and gas client over the past five years, regardless of whether those documents have any bearing on the claims in the First Amended Complaint ("FAC"). W&T should not be permitted to use discovery to find an antitrust claim that it has not pled and has not meaningfully articulated to Lexon or the Court. *See Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th

---

[1] W&T has not offered any compromise position on the issues in its submission.

**Vinson & Elkins LLP Attorneys at Law**
Austin Dallas Denver Dubai Dublin Houston London
Los Angeles New York Richmond San Francisco Tokyo Washington

The Grace Building, 1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
**Tel** +1.212.237.0000 **Fax** +1.212.237.0100 velaw.com

V&E

Cir. 2009) ("The role of discovery, however, is to find support for properly pleaded claims, not to find the claims themselves.").

### 1. The relevant start date for W&T's antitrust claims should be January 1, 2024.

W&T requests discovery back to January 1, 2020,[2] despite alleging that the purported conspiracy began "*following the events of April 2024*." FAC, Dkt. 36, ¶84 (emphasis added). As a result, events prior to April 2024 are not relevant to W&T's antitrust or conspiracy claims, and requiring five years of discovery on these issues would impose undue burden on Lexon and would not be proportional to the needs of the case. Lexon has offered a compromise, agreeing to produce documents from January 1, 2024, for conspiracy and antitrust-related requests, and from 2020 for breach of contract-related requests.[3] This is a significant period for pre-conspiracy information, given that the alleged conspiracy would have only lasted a few months before the Complaint was filed in August 2024. Plaintiffs, by contrast, seek pre-conspiracy discovery that is more than four times longer than the alleged conspiracy.

Antitrust discovery is not limitless; it must be tied to the specific allegations and circumstances of the case. *See Phi Theta Kappa Honor Soc'y v. Honorsociety.org, Inc.,* 2024 WL 4527086, at *5 (S.D. Miss. Sept. 24, 2024).[4] An antitrust "plaintiff is ordinarily permitted to discover [a] defendant's activities for a reasonable period of time antedating the earliest possible date of the actionable wrong." *In re Rail Freight Fuel Surcharge*

---

[2] Lexon's requested time period begins on January 1, 2020, in part, because W&T alleges that Lexon's collateral demand was "unprecedented." FAC, Dkt. 36,  ¶1, 90, 91. Lexon seeks information related to collateral demands and other conduct that would test this allegation.

[3] *See e.g.,* Requests for Production 4 (documents concerning Lexon's collateral request), 5 (communications concerning rates or terms of bonds), 6 (communications related to the indemnity agreement), and 25 (rates, collateral terms, pricing, strategy, etc. of bonds).

[4] While W&T relies on *Honor Society* to support broad discovery, the court therein rejected a request for 14 years of discovery, instead tailoring the discovery start date to when the alleged anticompetitive conduct began, which happened to be 10 years previously. *See* 2024 WL 4527086, at *5. W&T ties its start date to before the signing of the Indemnity Agreement in 2020, but W&T alleges the harmful conduct began only a few months before the Complaint was filed, making its Indemnity Agreement argument "a weak thread on which to demand [Lexon] undertake an expensive and unnecessary search for documents[.]" *Id.*

*Antitrust Litig.*, 2009 WL 10703132, at *1 (D.D.C. July 13, 2009). The question, therefore, is "what is a reasonable period under the circumstances." *Honor Society,* 2024 WL 4527086, at *5 (citation omitted). Based on W&T's own allegations, the earliest possible date of actionable wrong is "following the events of April 2024."[5] FAC, Dkt. 36, ¶84.

Here, Lexon's approach, offering discovery starting over four months prior to the start of the alleged conspiracy, would provide W&T with discovery for "a reasonable period of time antedating the earliest possible date of the actionable wrong." *Rail Freight*, 2009 WL 10703132, at *1; *see also In re Diisocyanates Antitrust Litig.,* 2020 WL 7427040, at *3 (W.D. Pa. Dec. 18, 2020). This four months of additional discovery is equal to the amount of time between the beginning of the alleged conspiratorial conduct and the filing of W&T's Complaint in August 2024. Broader discovery would be nothing more than "a fishing expedition . . . merely *hoping* to find a 'crucial,' 'highly relevant' or 'material' document . . . rather than having any true basis to believe that one would be found." *Gen. Elec. Co. v. Wilkins*, 2012 WL 570048, at *6 (E.D. Cal. Feb. 21, 2012).

### 2. *W&T's requests for communications with every "independent oil and gas operator" are irrelevant and not proportional to the needs of this case.*

W&T asks for documents relating to any of Lexon's other clients that are "independent oil and gas operators." Lexon has agreed to search for and produce documents relating to W&T, to the extent responsive documents exist.[6] W&T's broad discovery request for documents relating to unidentified "independent oil and gas operators," claiming that the defendants' alleged conspiracy targeted and impacted unnamed companies, is irrelevant, overly broad, and not proportional to the needs of the

---

[5] W&T's argument that the Indemnity Agreement shows evidence of concerted action is not pled in the FAC, and is raised for the very first time in its letter to the Court and reflects a fundamental misunderstanding of Lexon's position. As indicated above and repeatedly to W&T, Lexon is agreeing to produce documents relating to the Indemnity Agreement starting from 2020. As a result, if any conspiracy-related (or other) documents exist in connection with the Indemnity Agreement, those documents will be produced. It is also worth noting that the fact that multiple sureties may have used similar indemnity agreements is not evidence of an antitrust conspiracy. Rather, the Indemnity Agreement was based on a form provided by Indemco, W&T's broker, and independently agreed to by W&T with each surety.

[6] If in the course of its search, Lexon identifies documents involving other independent oil and gas operators that are relevant to W&T's claims and defenses, Lexon will produce those documents.

V&E

case. W&T has not identified a single other oil and gas operator that supposedly was harmed by the sureties' alleged conduct, and in responding to a request to identify any other parties that may have suffered harm, W&T effectively admitted that it is not aware of any other oil and gas operator harmed by the conduct raised in the FAC. *See* W&T Response to Lexon's Interrogatory 11 ("[A]ll co-conspirators are not currently known to W&T, and so additional harmed companies and individuals may become known through discovery and ongoing investigations."). This is not a class action, and W&T should not be allowed to use the discovery process to force Lexon to undertake the huge burden of sifting through five years of communications with every independent oil and gas operator to which Lexon has provided a bond so that W&T can try to find a document or other evidence, which obviously it currently does not have, that would be supportive of its unpled and to date entirely speculative market-wide "theory" of harm.

The case law is clear that when a discovery request "is overly broad on its face" or when the "relevancy is not readily apparent," it is the party seeking discovery that bears the burden of establishing relevance, and W&T has failed to do so here. *Castillo v. JLG Indus., Inc.*, 2019 WL 13191290, at *3 (S.D. Tex. July 7, 2019) (citation omitted). Further, the burden of reviewing documents for every independent oil and gas operator to which Lexon has provided a bond in the past five years outweighs any purported probative value of the information sought where, as here, W&T offers no good-faith basis to believe that any other companies were harmed by conduct alleged in the Complaint.[7] *Nava v. Allstate Texas Lloyds*, 2021 WL 7906872, at *6 (E.D. Tex. July 14, 2021) ("Although relevancy in the context of discovery is broader than in the context of admissibility, this tenet should not be misapplied as to allow fishing expeditions.") (citations omitted).

### 3. *W&T is not entitled to Lexon's communications with every surety, broker, and reinsurer that Lexon has dealt with.*

W&T also seeks communications with all surety companies, all brokers, and all reinsurers about bonds issued to other oil and gas producers even if wholly unrelated to

---

[7] Notably, although W&T's FAC has been publicly filed for ten months, no other supposedly aggrieved independent oil and gas producers have filed antitrust claims against the sureties sued here.

V&E

W&T. "The role of discovery . . . is to find support for properly pleaded claims, not to find the claims themselves." *See Torch,* 561 F.3d at 392. Lexon's positions are as follows:

- ***Surety Companies:*** Lexon has agreed to produce documents regarding the surety companies named in the FAC. If in the course of searching for documents involving these sureties, Lexon identifies documents involving other sureties and those documents are relevant to the claims and defenses asserted in this action, then Lexon will produce such documents subject to and without waiver of its other objections.

- ***Brokers:*** Lexon has agreed to produce documents relating to brokers engaged for W&T's account. Similar to its position with respect to sureties, if Lexon identifies documents involving other brokers relevant to the claims and defenses asserted in this action through its search, then Lexon will produce such documents subject to and without waiver of its other objections.

- ***Reinsurers:*** Lexon has agreed to produce communications with reinsurers about the premiums charged or collateral demanded from W&T. If Lexon identifies documents involving reinsurers that are relevant to the claims and defenses asserted in this action through its search, then Lexon will produce such documents, even if not specific to W&T, subject to and without waiver of its other objections.

Lexon remains committed to cooperating in discovery and will continue to produce documents relevant to the claims and defenses in this action. Lexon respectfully requests that the Court limit discovery to the scope and time periods Lexon has proposed, which are reasonable, proportional, and consistent with applicable law.

Sincerely,

*/s/ Jason Halper*

Jason Halper