RYAN DRY
PARTNER
972.797.9511 TELEPHONE
972.797.9510 FACSIMILE
rdry@drylaw.com



October 20, 2025

*Via E-mail:* palermochambers@tx.uscourts.gov
The Honorable Dena Hanovice Palermo
United States Magistrate Judge
515 Rusk Avenue, Room 7227
Houston, Texas 77002

      Re:    <u>Response of United States Fire Insurance Company ("U.S. Fire") and Pennsylvania Insurance Company ("Penn") to W&T's Letter Dated October 17, 2025</u>

Dear Judge Palermo:

      Prior to responding to W&T's characterization of the "core issues of impasse," several points bear emphasis.  First, W&T's description of the state of discovery is entirely misleading.  It points to the number of documents to suggest a lack of responsiveness by Penn and U.S. Fire.  Yet, W&T fails to inform the Court that the parties *have not yet completed the process of agreeing on a list of custodians and search terms*.  They have exchanged proposed custodians and search terms but, despite W&T's allegation to this Court, W&T has not yet responded to Penn's and U.S. Fire's proposed lists.  That accounts for the limited number of documents produced.

      Second, the Court should not resolve discovery disputes before ruling on the pending motions to dismiss [Dkts. 57 & 63].  W&T is purporting to justify its requests by reference to an antitrust claim that is conclusory, facially meritless, and subject to pending and fully briefed motions to dismiss filed by Defendants that are *sub judice*.  Those motions show that W&T has failed to state a valid antitrust claim under *Bell Atlantic v. Twombly* because W&T has failed to set forth facts that give rise to a plausible inference of conspiracy.  The facts alleged are fully consistent with the simple truth that Penn and U.S. Fire independently made collateral demands to protect their financial interests, based on their own internal analysis, and months after the other Defendants had done so. More importantly, they did not act until *after W&T filed a lawsuit publicly disclaiming its obligation to comply with a similar indemnity agreement.*

      Indeed, the motions to dismiss [Dkts. 57 & 63] show that W&T's allegations fall well short of the paradigmatic case that is routinely *dismissed* under *Twombly*.  Such cases typically involve conclusory allegations of conspiracy usually based on parallel conduct without alleging facts justifying a plausible inference of conspiracy.  Here, W&T fails even to allege parallel conduct because it is undisputed that Penn and U.S. Fire did not even make their own collateral demands until months after the other sureties and after this lawsuit had been filed against them.

      The allegations also make no economic sense because a joint agreement to make collateral demands would if anything have been *contrary to* the sureties' economic interests.  And the allegations also are incoherent as a matter of antitrust law.  Contrary to W&T's characterization in its October 17th Impasse Letter [Dkt. 185], W&T has not alleged a "price-fixing conspiracy." As

alleged in W&T's Amended Complaint [Dkt. 36], the sureties were not competing for W&T's business at all, much less fixing prices as part of such competition. Rather, they were *already in a contractual relationship with W&T*. This case is about the parties' dispute over the scope of those preexisting rights, not an antitrust conspiracy. Accordingly, any discovery related to the spurious antitrust claim is per se unduly burdensome and disproportionate to the needs of the case.

Nonetheless, Penn and U.S. Fire have agreed to respond to requests that actually relate to the allegations of conspiracy to avoid the need for additional motion practice while the Court considers the motions to dismiss. But as discussed herein, W&T has abused Penn's and U.S. Fire's willingness to do so by making sweeping discovery demands that are wildly disproportionate to the needs of the case, and courts have repeatedly recognized that motions to dismiss such conclusorily asserted claims should be resolved prior to ordering burdensome discovery.[1]

Fourth, and relatedly, W&T's October 17th Impasse Letter is procedurally and substantively deficient. It fails to identify the specific discovery requests in dispute, the precise scope of any alleged disagreement, or the relief it actually seeks.

I. **W&T Has Not Established Entitlement to Discovery As To Pre-2024 Conduct**

W&T first complains that Penn and U.S. Fire have limited their responses to 2024. However, they do not even discuss a single request in this section and thus fail to show that any particular request—much less all of the requests—merit discovery dating back any further. Nor could they. The antitrust claim is about alleged coordinated collateral and premium demands in late 2024. It is undisputed that Penn and U.S. Fire did not even make their collateral demands until October and November of 2024, months after the other defendants and after W&T filed this lawsuit against Lexon seeking a declaratory judgment that it should not have to abide by the agreed-upon terms in the indemnity agreements. Thus, even assuming that some level of pre-overt act discovery is appropriate, Penn and U.S. Fire already have agreed to provide it.

U.S. Fire and Penn have both stated that if anything in discovery provides a basis for expanding the time period with respect to a particular request they would consider such a request at that point. To date, however, W&T has provided no basis for expanding the time period beyond 2024 for any request, much less all of their requests.

W&T thus makes no attempt to demonstrate a need for requested discovery for any period prior to 2024. Instead, they cite inapposite case law for the proposition that courts in some cases allow pre-conspiracy discovery without showing its potential relevance here or tying it to any

---

[1] *See Dowdy & Dowdy P'ship v. Arbitron Inc.*, No. 09-253 KS-MTP, 2010 U.S. Dist. LEXIS 108798, at *5 (S.D. Miss. Sept. 20, 2010) (finding that the "plausibility standard" outlined by Twombly is "intended to avoid the expense of far-reaching discovery in cases where the complaint is insufficient" and that "[p]roving an antitrust conspiracy of unspecified timing and scope is precisely the type of sprawling, costly, and hugely time consuming undertaking that should not be commenced on the strength of a complaint consisting entirely of conclusory allegations and vague generalities.") (cleaned up) *McAlpin v. Am. Hardwoods Indus., LLC,* No. 15-00162, 2016 U.S. Dist. LEXIS 35490, at *6-7 (N.D. Miss. Mar. 16, 2016) ("[A] Rule 12(b)(6) motion to dismiss should be ruled on prior to discovery.") (collecting cases); *Von Drake v. NBC*, No. 04-0652, 2004 U.S. Dist. LEXIS 25090, at *4 (N.D. Tex., May 2004) ("Although the magistrate judge cannot predict the outcome of defendants' motion to dismiss, a cursory review of the motion reveals that defendants have substantial arguments for dismissal of many, if not all, of plaintiff's claims.").

specific request or requests. For example, W&T cites case law stating that a "complex and historically unprecedented change in pricing structure made at the same time by multiple competitors" can sometimes require showing a before-and-after effect and thus justify pre-conspiracy discovery. But they do not attempt to show how this principle is relevant in a case involving late 2024 collateral demands made by U.S. Fire and Penn months after a lawsuit against the other sureties publicly revealed that other sureties had made similar demands and that W&T had no intentions of abiding by the promises in the relevant indemnity agreements.

## II. W&T Has Not Established Entitlement to Discovery As To Penn and U.S. Fire's Relationship With Other Independent Oil & Gas Operators That Compete With W&T

W&T further demonstrates the harassing nature of their discovery requests in claiming entitlement to wide-ranging discovery related to Penn's and U.S. Fire's relationships with other independent oil companies. As an initial matter, W&T ignores Penn's and U.S. Fire's response to W&T's request for documents "reflecting any allegations or complaints received by Your company about antitrust violations or anticompetitive conduct." As Penn explained, other than W&T's, it is unaware of "any formal complaints, regulatory inquiries, or legal proceedings alleging that Penn engaged in anticompetitive or collusive conduct related to the issuance of surety bonds to independent oil and gas operators." The absence of complaints shows that W&T is grasping at straws.

Nor does W&T offer anything to justify any discovery request as to other independent oil and gas operators, much less all of the requests that mention them. This case is about W&T, not its competitors. In support, W&T points only to its own bare conclusory allegation that "Defendants' conspiracy targeted not only W&T but also other 'smaller oil and gas companies.'" W&T does not, even in conclusory fashion, name a single specific operator that was the target of such an alleged conspiracy, or even of multiple collateral demands. The inability to name a single such company, much less provide factual basis for the claim, confirms that it has no basis for its allegation given that if it actually had a basis for its claim that there were other targets, it would presumably be able to name one such operator (and they presumably would have complained). W&T claims it is not required to do so because "this information is in Defendants' hands not W&T's." This is nonsense. The law requires that W&T actually have a basis for its allegations before seeking discovery. W&T has none.

Further, W&T's allegations sweep well beyond allegations of coordination with respect to other oil and gas companies. Instead, they effectively seek *all information about Penn's and U.S. Fire's relationship with independent oil and gas operators*. Examples include a request for all information about all collateral demands as to all independent oil and gas operators and "[a]ll documents reflecting consideration or analysis of rate or premium increases to independent oil & gas operators, including W&T, whether implemented or not." Further, the requests sweep even beyond collateral demands to encompass all "communications with Brokers relating to *rates, premiums, collateral, or other terms of Bonds for independent oil & gas operators*."

W&T does not even begin to justify such requests. This information is irrelevant, unduly burdensome to produce, and competitively sensitive both as to U.S. Fire and Penn *and* as to their

The Hon. Dena Hanovice Palermo  
October 20, 2025                                                                                                                    Page 4

competitors. The discovery W&T seeks would expose highly confidential, competitively sensitive information far outside the scope of this case. It includes non-public financial data about the sureties and their accounts—assets, liabilities, banking relationships, business plans, and proprietary underwriting practices—as well as account-specific information on other oil and gas operators, such as bond pricing, estimated reserves, and field life. This is among the most closely guarded data in the industry and is neither shared among the sureties themselves nor disclosed to oil and gas operators. Disclosure would give W&T an unfair competitive advantage by revealing how W&T's competitors conduct business and how sureties evaluate credit risk and are able to provide capacity in the offshore market.

In sum, W&T's requests amount to an unjustified fishing expedition for confidential competitive intelligence with no bearing on its claims and no place in this litigation even apart from W&T's failure to allege a plausible or coherent antitrust claim.

### III. W&T Has Not Established Entitlement to Any of the Other Discovery That It Seeks

W&T attempts to portray the remaining disputes as about its entitlement to discovery about "co-conspirators" and "motive," but never even explains the ruling it is seeking, much less provides a basis for that relief. Further, for the two requests it actually addresses, it entirely misstates the basis for Penn's and U.S. Fire's objections in suggesting they are rooted in a general refusal to provide information about "co-conspirators" or "motive."

The only two requests that W&T actually mentions in this subsection are:

Request No. 1: "All communications with Brokers about demanding collateral or increasing premiums on W&T and/or other independent oil and gas operators."

Request No. 26: "All documents related to communications with any other Surety regarding Bonds, including rates, collateral, terms, pricing, strategy, profits, capacity, issuance of Bonds, or decisions not to issue Bonds."

On Request No. 1, W&T argues that communications with "brokers" can be relevant because "brokers" can act as "conduits for anticompetitive conduct" and because brokers are involved in the "typical process for procuring bonds." This is entirely irrelevant both because Request No. 1 does not involve "procuring bonds" and because the "process for procuring bonds" would not in any event be at issue in this case. Instead, the request and this case are about collateral demands in connection with preexisting bonds, and U.S. Fire and Penn do not object to providing communications with any brokers about collateral demands or increasing premiums on W&T. They object only as to "other independent oil and gas operators" not because communications with "brokers" are per se irrelevant but instead for the reasons discussed in Section II above.[2]

W&T characterizes Request No. 26 as seeking "Defendants' communications related to offshore bonds with other sureties" and characterizes the "core issue" as Defendants' refusal to

---

[2] W&T notably omits discussion of other sweeping requests for discovery with brokers that it includes "all contracts, terms of engagement, or other authorizations." *See* Request No. 31.

produce communications with sureties other than those mentioned in the First Amended Complaint [Dkt. 36]. This sidesteps the absurdly overbroad nature of this request. This is not even remotely a case about everything "related to offshore bonds" or *any* of the issues identified in Request No, 26, with the exception of collateral demands on W&T. Specifically, it does not involve "rates, terms, pricing, strategy, profits, capacity, issuance of Bonds, or decisions not to issue Bonds." Such request is therefore entirely overbroad and disproportionate to the needs of the case.

Nor does W&T offer any credible basis for seeking communications with sureties other than those at issue in the First Amended Complaint. Again, W&T simply points to its own conclusory allegation that "Defendants colluded with a broader set of sureties other than those specifically identified in the FAC." W&T presumably would be able to do so if that surety had engaged in conduct that had any impact on W&T or had anything to do with the collateral demands made in this case. Yet it again fails to name a single such surety, much less provide a factual basis for the claim that others were involved or even what that would mean when those sureties either were not in a relationship with W&T or did not make demands on W&T. That said, Penn and U.S. Fire do not object to searching for communications with other sureties about W&T. But there is no basis for seeking communications with other sureties about anything else.

Finally, W&T asserts that it has "sought information about the sureties' reinsurers, because W&T's own investigation since filing its complaint has revealed that reinsurers may have contributed to the financial pressures and motive for the sureties to collude regarding the terms and rates offered to Independents." But this statement only shows why W&T fails to plausibly allege a conspiracy—*i.e.*, W&T fails to explain how alleged financial pressure from reinsurers would provide an incentive *to collude* rather than *to make independent collateral demands*.

Further, W&T does not even reference a particular request on this issue and thus leaves the Court and parties at sea as to how its argument would apply to any request. As even W&T recognizes, Penn and U.S. Fire do not claim that communications with reinsurers are per se irrelevant. Far from it, W&T acknowledges that "Defendants have offered to produce communications with reinsurers about the premiums charged or collateral demanded from W&T, but only of the documents specifically reference W&T."

Instead, the issue is W&T's demands for communications about subject matter that sweeps well beyond the case's scope. W&T is reduced to complaining, without identifying the particular request at issue, that Defendants "have not agreed to search for and produce communications related to reinsurers that *discuss the offshore bond market dynamics generally*." But W&T is not entitled to all communications with reinsurers about "offshore bond market dynamics generally" in a case about an alleged 2024 agreement to make joint collateral demands on W&T.

Sincerely,

Ryan Dry

cc: Counsel of Record