# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| **W&T OFFSHORE, INC., AND** | § | |
| **W&T ENERGY VI, LLC,** | § | |
| | § | |
| | § | |
| **v.** | § | **LEAD CASE NO. 4:24-cv-3047** |
| | § | **CONSOLIDATED ACTION** |
| **ENDURANCE ASSURANCE** | § | |
| **CORPORATION and LEXON** | § | |
| **INSURANCE CO., et al.** | § | |

**ENDURANCE ASSURANCE CORPORATION AND LEXON INSURANCE
COMPANY'S ANSWER AND AFFIRMATIVE AND OTHER DEFENSES
TO PLAINTIFFS' FIRST AMENDED COMPLAINT FOR
DECLARATORY RELIEF AND DAMAGES
AND SECOND AMENDED COUNTERCLAIM**

Defendants and Counterclaim-Plaintiffs Endurance Assurance Corporation

("**Endurance**") and Lexon Insurance Company (together with Endurance,

"**Lexon**,") file this Answer and Affirmative and Other Defenses (the "**Answer**") to

Plaintiffs and Counterclaim-Defendants W&T Offshore, Inc. and W&T Energy VI,

LLC's ("**Plaintiffs**" or "**W&T**") First Amended Complaint for Declaratory Relief

and Damages (the "**Complaint**") and Second Amended Counterclaim.

# ANSWER

## SUMMARY[1]

1.      Lexon denies the allegations in Paragraph 1 of the Complaint, except to the extent these allegations constitute conclusions of law to which no response is required.

2.      Lexon denies knowledge and lacks information sufficient to form a belief as to the first and third sentences of Paragraph 2 of the Complaint, and therefore denies them, except to the extent the allegations therein constitute conclusions of law to which no response is required. Lexon denies knowledge and lacks information sufficient to form a belief as to the second sentence of Paragraph 2 of the Complaint to the extent that sentence is referring to W&T's indemnity agreements with sureties other than Lexon. Lexon otherwise denies the allegations in the second sentence of Paragraph 2 of the Complaint and denies that W&T has complied with its indemnity agreement with Lexon and paid all required premiums, except admits that it entered into certain indemnity agreements with W&T and refers the Court to such agreements for the full and complete contents thereof.

3.      Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 3 that are referring to actions of sureties

---

[1] Lexon states that the headings throughout the Complaint do not constitute well-pleaded allegations of fact and, therefore, require no response. To the extent a response is required, Lexon denies the allegations in the headings of the Complaint. Notwithstanding the foregoing, Lexon has included the headings used in the Complaint in this Answer for the Court's convenience.

other than Lexon, and therefore denies them, except to the extent the allegations therein constitute conclusions of law to which no response is required. Lexon otherwise denies the allegations in Paragraph 3 of the Complaint that are referring to Lexon's actions.

4.      Lexon denies the allegations in Paragraph 4 of the Complaint, except that it denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to actions of sureties other than Lexon, and therefore denies them, except to the extent the allegations therein constitute conclusions of law to which no response is required.

5.      Lexon denies the allegations in Paragraph 5 of the Complaint, except to the extent these allegations constitute conclusions of law to which no response is required.

6.      Lexon denies the allegations in Paragraph 6 of the Complaint, except to the extent they constitute conclusions of law to which no response is required.

**JURISDICTION AND VENUE**

7.      Paragraph 7 of the Complaint constitutes conclusions of law to which no response is required, except Lexon admits that W&T alleges that this Court has jurisdiction over this action pursuant to the statutes cited in this Paragraph.

8.    Paragraph 8 of the Complaint constitutes conclusions of law to which no response is required, except Lexon admits that W&T alleges that this Court has jurisdiction over this action pursuant to the statutes cited in this Paragraph.

9.    Paragraph 9 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the third and fourth sentences of Paragraph 9 of the Complaint, and therefore denies them, and admits that the Indemnity Agreement between Lexon and W&T provides that each Principal "IRREVOCABLY CONSENTS TO THE EXCLUSIVE VENUE AND JURISDICTION OF THE FEDERAL AND STATE COURTS SITTING IN HARRIS COUNTY, TEXAS, AND DOES FURTHER WAIVE ANY AND ALL RIGHTS TO OBJECT TO SUCH VENUE OR JURISDICTION," except denies knowledge and lacks information sufficient to form a belief regarding whether a substantial part of the events or omissions give rise to W&T's claims occurred in this District, and except admits that all parties have consented to the consolidation of the parties' lawsuits in this District.

10.    Paragraph 10 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 10 of the Complaint, except admits that W&T purports to

seek certain relief in the Complaint and refers the Court to the Complaint for the true and correct contents thereof.

## THE PARTIES

11.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 11 of the Complaint, and therefore denies them.

12.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 12 of the Complaint, and therefore denies them.

13.    Lexon denies the allegations in Paragraph 13 of the Complaint, except admits that Endurance is a corporation organized under the laws of the State of Delaware.

14.    Lexon admits the allegations in Paragraph 14 of the Complaint.

15.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 15 of the Complaint, and therefore denies them.

16.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 16 of the Complaint, and therefore denies them.

17.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 17 of the Complaint, and therefore denies them.

18.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 18 of the Complaint, and therefore denies them.

## INTERSTATE COMMERCE

19.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 19, and therefore denies them, except to the extent the allegations constitute conclusions of law to which no response is required.

20.    Paragraph 20 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 20 of the Complaint.

## BACKGROUND

**A.    The U.S. Offshore Regulatory Environment and Offshore Surety Market.**

21.    Paragraph 21 of the Complaint constitutes conclusions of law to which no response is required.

22.    Paragraph 22 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize certain actions of Congress and the contents of

the Outer Continental Shelf Lands Act ("OCS Lands Act"), but denies the remainder of allegations in Paragraph 22, and refers the Court to the OCS Lands Act for the true and correct contents thereof.

23.     Paragraph 23 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize the OCS Lands Act but denies the remainder of allegations in Paragraph 23, and refers the Court to the OCS Lands Act for the true and correct contents thereof.

24.     Paragraph 24 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize the OCS Lands Act but denies the remainder of allegations in Paragraph 24, and refers the Court to the OCS Lands Act for the true and correct contents thereof.

25.     Paragraph 25 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize the OCS Lands Act but denies the remainder of allegations in Paragraph 25, and refers the Court to the OCS Lands Act for the true and correct contents thereof.

26.     Paragraph 26 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the

Complaint purports to characterize the Secretary of the Department of the Interior's Order 3299 but denies the remainder of allegations in Paragraph 26, and refers the Court to that Order for the true and correct contents thereof.

27.    Paragraph 27 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize the Secretary of the Department of the Interior's Order 3299 but denies the remainder of allegations in Paragraph 27, and refers the Court to that Order for the true and correct contents thereof.

28.    Paragraph 28 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize certain activities conducted by the Bureau of Safety and Environmental Enforcement ("**BSSE**") and BOEM but denies the remainder of allegations in Paragraph 28.

29.    Paragraph 29 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize certain responsibilities on the part of BOEM but denies the remainder of allegations in Paragraph 29.

30.    Paragraph 30 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the

Complaint purports to characterize certain activities performed by BSSE but denies the remainder of allegations in Paragraph 30.

31.    Paragraph 31 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize 62 Fed. Reg. 27948 but denies the remainder of allegations in Paragraph 31 and refers the Court to 62 Fed. Reg. 27948 for the true and correct contents thereof.

32.    Paragraph 32 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize Minerals Management Service ("**MMS**") regulations but denies the remainder of allegations in Paragraph 32 and refers the Court to those regulations for the true and correct contents thereof.

33.    Paragraph 33 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize 62 Fed. Reg. 27948 but denies the remainder of allegations in Paragraph 33 and refers the Court to 62 Fed. Reg. 27948 for the true and correct contents thereof.

34.    Paragraph 34 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize 89 Fed. Reg. 31544 but denies the remainder of

allegations in Paragraph 34 and refers the Court to 89 Fed. Reg. 31544 for the true and correct contents thereof.

35.     Paragraph 35 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 35 of the Complaint, except admits that Endurance and Lexon are members of the Surety & Fidelity Association of America ("**SFAA**") and that the Complaint purports to quote an excerpt of material on the SFAA's website and refers the Court to the SFAA website for the true and correct contacts thereof. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in the second sentence of Paragraph 35 to the extent they concern the actions of sureties other than Lexon.

36.     Lexon denies the allegations in Paragraph 36 of the Complaint, except denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 36 to the extent they concern the actions of sureties other than Lexon, and except admits that: (i) certain of Lexon's employees previously were employed by a different surety company; and (ii) the Complaint purports to quote certain press releases from SFAA and refers the Court to the SFAA website for the true and correct contents thereof.

37.     Lexon denies the allegations in Paragraph 37 of the Complaint, except denies knowledge and lacks information sufficient to form a belief as to the

allegations in Paragraph 37 to the extent they concern the actions of sureties other than Lexon, and except to the extent the allegations in Paragraph 37 constitute conclusions of law to which no response is required.

**B.    Insurance Regulations.**

38.    Paragraph 38 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 38 of the Complaint except admits that the Complaint purports to describe the contents of Tex. Ins. Code §§ 3503.001 – 3503.204 and refers the Court to Tex. Ins. Code §§ 3503.001 – 3503.204 for the true and correct contents thereof.

39.    Paragraph 39 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 39 of the Complaint except admits that this Paragraph purports to describe the contents of Tex. Ins. Code § 101.051(b)(2) and refers the Court to Tex. Ins. Code § 101.051(b)(2) for the true and correct contents thereof.

40.    Paragraph 40 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 40 of the Complaint except admits that the Complaint purports to describe the contents of Tex. Ins. Code §§ 541.001 – 541.454 and refers

the Court to Tex. Ins. Code §§ 541.001 – 541.454 for the true and correct contents thereof.

41.     Paragraph 41 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 41 of the Complaint except admits that the Complaint purports to describe the contents of Tex. Ins. Code § 541.151 and refers the Court to Tex. Ins. Code § 541.151 for the true and correct contents thereof.

**C.     The Relationship Between Sompo and W&T.**

42.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 42 of the Complaint, and therefore denies them.

43.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 43 of the Complaint, and therefore denies them.

44.     Lexon denies the allegations in Paragraph 44 of the Complaint, except admits that Endurance is not incorporated pursuant to the laws of the State of Texas and has issued surety bonds with respect to certain entities' business activities.

45.     Lexon denies the allegations in Paragraph 45 of the Complaint, except admits that Lexon is incorporated pursuant to the laws of the State of Texas and has issued surety bonds with respect to certain entities' business activities.

46.    Paragraph 46 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 46 of the Complaint.

47.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 47 of the Complaint, and therefore denies them, except admits that Lexon and Endurance have issued surety bonds with respect to certain of W&T's business activities (the "**Bonds**").

48.    Lexon admits that Lexon has issued surety bonds with respect to certain of W&T's business activities.

49.    Paragraph 49 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 49 except admits that certain of the Bonds discuss what are defined as "P&A Obligations," and refers the Court to such Bonds for their true and correct contents.

50.    Paragraph 50 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 50 of the Complaint, except admits that Lexon and W&T are parties to Payment and Indemnity Agreement No. 1380 (the "***Indemnity Agreement***") and refers the Court to the Indemnity Agreement for the true and correct contents thereof.

51.     Lexon denies the allegations in Paragraph 51 of the Complaint, except admits that the Complaint purports to quote from the Indemnity Agreement and refers the Court to the Indemnity Agreement for the true and correct contents thereof.

52.     Lexon denies the allegations in Paragraph 52 of the Complaint, except admits that the Complaint alleges that Exhibit A thereto is a true and correct copy of the Indemnity Agreement and that the Indemnity Agreement contains the quoted language, and Lexon refers the Court to the Indemnity Agreement for the true and correct contents thereof.

53.     Paragraph 53 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 53, except admits that the Complaint purports to quote from Paragraph 5 of the Indemnity Agreement and refers the Court to the Indemnity Agreement for the true and correct contents thereof.

54.     Paragraph 54 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 54.

55.     Lexon denies the allegations in Paragraph 55 of the Complaint, except admits that Endurance and W&T are parties to the Indemnity Agreement with respect to certain bonds issued by Endurance.

56.     Paragraph 56 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 56, except admits that W&T and Endurance are parties to the Indemnity Agreement with respect to certain bonds issued by Endurance, and refers the Court to the Indemnity Agreement for the true and correct contents thereof.

57.     Lexon denies the allegations in Paragraph 57 of the Complaint, except admits that Lexon and W&T are parties to the Indemnity Agreement with respect to certain bonds issued by Lexon.

58.     Paragraph 58 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 58, except admits that W&T and Lexon are parties to the Indemnity Agreement with respect to certain bonds issued by Lexon, and refers the Court to the Indemnity Agreement for the true and correct contents thereof.

59.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 59 of the Complaint, and therefore denies them.

**D.     The Sompo Sureties Issue BOEM-Required Bonds on W&T's Behalf.**

60.     Lexon admits that Endurance issued Bond Nos. EACX226000039, EACX226000040, EACX226000038, EACX226000025, EACX226000047, EACX226000044, and EACX226000022, but otherwise denies the allegations in

Paragraph 60, except to the extent they constitute conclusions of law to which no response is required.

61.    Lexon admits that the Complaint purports to attach in Exhibit B certain bonds issued by Endurance with respect to W&T's business activities and refers the Court to those bonds for their true and correct contents, but otherwise denies the allegations in Paragraph 61.

62.    Lexon admits that Endurance issued Bond No. EACX226000043, but otherwise denies the allegations in Paragraph 62 except to the extent they constitute conclusions of law to which no response is required.

63.    Lexon admits that the Complaint purports to attach in Exhibit C Bond No. EACX226000043 and refers the Court to that bond for its true and correct contents, but otherwise denies the allegations in Paragraph 63.

64.    Lexon admits that Endurance issued Bond No. EACX226000045, but otherwise denies the allegations in Paragraph 64 except to the extent they constitute conclusions of law to which no response is required.

65.    Lexon admits that the Complaint purports to attach in Exhibit D Bond No. EACX226000045 and refers the Court to that bond for its true and correct contents, but otherwise denies the allegations in Paragraph 65.

66.    Lexon admits that Lexon issued Bond Nos. 1156846, 1136949, 1136950, 1159776, and 1097677, but otherwise denies the allegations in Paragraph 66 except to the extent they constitute conclusions of law to which no response is required.

67.    Lexon admits that the Complaint purports to attach in Exhibit E certain bonds issued by Lexon with respect to W&T's business activities and refers the Court to those bonds for their true and correct contents, but otherwise denies the allegations in Paragraph 67.

68.    Lexon admits that Lexon issued Bond No. 1152011 and Bond No. 1152010, but otherwise denies the allegations in Paragraph 68 except to the extent they constitute conclusions of law to which no response is required.

69.    Lexon admits that the Complaint purports to attach in Exhibit F certain bonds issued by Lexon with respect to W&T's business activities and refers the Court to those bonds for their true and correct contents, but otherwise denies the allegations in Paragraph 69.

E.    **Sompo's Bad Faith Collateral Demands**

70.    Paragraph 70 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 70.

71.    Paragraph 71 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 71.

72.    Paragraph 72 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 72 of the Complaint, and therefore denies them.

73.    Lexon denies the allegations in the first sentence of Paragraph 73 of the Complaint and denies knowledge and lacks information sufficient to form a belief as to the remainder of the allegations in Paragraph 73 of the Complaint, and therefore denies them.

74.    Lexon denies the allegations in Paragraph 74 of the Complaint.

75.    Lexon denies the allegations in the first sentence of Paragraph 75 of the Complaint, except admits that Lexon issued bonds with respect to certain business activities conducted by Fieldwood. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in the second sentence of Paragraph 75, and therefore denies them.

76.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 76 of the Complaint, and therefore denies them.

77.    Paragraph 77 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 77.

78.    Paragraph 78 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 78, except admits that the Complaint purports to attach as Exhibit G an email chain between Mr. Ryan Varela and Mr. Todd Grabois, which includes the language quoted in Paragraph 78, and Lexon refers the Court to the emails for the true and correct contents thereof.

79.    Lexon denies the allegations in Paragraph 79 of the Complaint, except admits the Complaint attaches as Exhibit G an email chain between Mr. Ryan Varela and Mr. Todd Grabois, and refers the Court to Exhibit G for the true and correct contents thereof.

80.    Lexon denies the allegations in Paragraph 80 of the Complaint.

81.    Lexon admits that the Complaint attaches as Exhibit G an email chain between Mr. Ryan Varela and Mr. Todd Grabois, and refers the Court to Exhibit G for the true and correct contents thereof, but otherwise denies the allegations in Paragraph 81 of the Complaint.

82.    Lexon denies the allegations in Paragraph 82 of the Complaint.

83.    Lexon denies the allegations in Paragraph 83 of the Complaint.

**F.     Sompo Causes the Sureties To Jointly Pursue Unreasonable Collateral Demands.**

84.     Paragraph 84 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 84.

85.     Lexon denies the allegations in Paragraph 85 of the Complaint, except admits that Lexon sent W&T the letter dated July 9, 2024 and attached as Exhibit H to the Complaint and refers the Court to that letter for the true and correct contents thereof.

86.     Lexon denies the allegations in Paragraph 86 of the Complaint.

87.     Paragraph 87 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 87.

88.     Lexon denies the allegations in Paragraph 88 of the Complaint.

89.     Lexon denies the allegations in Paragraph 89 of the Complaint.

90.     Lexon denies the allegations in Paragraph 90 of the Complaint, except admits that the Complaint purports to quote part of one sentence from Dkt. 30, which is Lexon's Motion for Preliminary Injunction, and refers the Court to Dkt. 30 for the true and correct contents thereof.

91.     Paragraph 91 of the Complaint constitutes legal conclusions to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 91.

**G.     Sureties Try to Cripple W&T with Baseless Claims.**

92.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 92 of the Complaint, and therefore denies them.

93.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 93 of the Complaint, and therefore denies them.

94.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 94 of the Complaint, and therefore denies them.

95.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 95 of the Complaint, and therefore denies them.

96.     Paragraph 96 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 96 of the Complaint, and therefore denies them.

97.     Paragraph 97 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 97 of the Complaint, and therefore denies them.

98.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 98 of the Complaint, and therefore denies them.

99.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 99 of the Complaint, and therefore denies them.

100.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 100 of the Complaint, and therefore denies them, except denies the allegations in the second sentence of Paragraph 100 to the extent they purport to relate to Lexon.

101.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 101 of the Complaint, and therefore denies them.

102.    Lexon denies the allegations in Paragraph 102.

103.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 103 of the Complaint, and therefore denies them.

104.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 104 of the Complaint, and therefore denies them.

105.   Paragraph 105 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 105 of the Complaint, and therefore denies them.

106.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 93 of the Complaint, and therefore denies them, except admits that Lexon asserted in its Original Counterclaim and Amended Counterclaim a cause of action seeking collateral from W&T in the amount of $55,902,578.

107.   Lexon denies the allegations in Paragraph 107 of the Complaint and the corresponding footnote, except to the extent these allegations constitute conclusions of law to which no response is required.

**H.      The Sureties' Joint Demands Are Part of an Illegal Conspiracy.**

108.   Lexon denies the allegations in the first sentence of Paragraph 108 of the Complaint and denies knowledge and lacks information sufficient to form a belief as to the allegations set forth in the second sentence of Paragraph 108 of the Complaint, and therefore denies them. Lexon further denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 108 to the extent the allegations concern sureties other than Lexon, and therefore denies them.

109.   Lexon denies the allegations in the first sentence of Paragraph 109 of the Complaint, except denies knowledge and lacks information sufficient to form a belief as to these allegations to the extent these allegations concern sureties other than Lexon and therefore denies them. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations set forth in the second sentence of Paragraph 109 of the Complaint, and therefore denies them.

110.   Lexon denies the allegations in Paragraph 110.

111.   Paragraph 111 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 111, except admits that Paragraph 111 purports to characterize requirements of a rule that the BOEM proposed in 2020 (the "**2020 Proposed Rule**") and refers the Court to the 2020 Proposed Rule for the true and correct contents thereof.

112.    Paragraph 112 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 112, except admits that Paragraph 112 purports to characterize certain requirements of a rule that the BOEM proposed in 2023 (the "**2023 Proposed Rule**") and refers the Court to the 2023 Proposed Rule for the true and correct contents thereof.

113.    Paragraph 113 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 113, except admits that Paragraph 113 purports to characterize certain requirements of the 2023 Proposed Rule and refers the Court to the 2023 Proposed Rule for the true and correct contents thereof.

114.    Lexon denies the allegations in Paragraph 114 of the Complaint, except admits that the Complaint purports to quote an excerpt from Dkt. 30, which is Lexon's Motion for Preliminary Injunction, and Lexon refers the Court to Lexon's Motion for Preliminary Injunction for the true and correct contents thereof.

115.    Lexon denies the allegations in Paragraph 115 of the Complaint, except admits that Paragraph 115 purports to characterize certain requirements of the 2023 Proposed Rule, and certain statements in a filing from a lawsuit captioned *State of Louisiana, et al. v. Haaland, et al.*, No. 2:2024-cv-00820 (W.D. La.), and Lexon

refers the Court to the 2023 Proposed Rule and the filing in question for the true and correct contents thereof.

116.    Lexon denies the allegations in Paragraph 116 of the Complaint, except admits that Patrick Hennesy was a panel member at a virtual seminar titled "Oil and Gas Industry Update on BOEM Regulations" in November 2024.

117.    Lexon denies the allegations in Paragraph 117 of the Complaint, except admits that Patrick Hennesy was a panel member at a virtual seminar titled "Oil and Gas Industry Update on BOEM Regulations" in November 2024.

118.    Lexon denies the allegations in Paragraph 118 of the Complaint, except admits that Patrick Hennesy was a panel member at a virtual seminar titled "Oil and Gas Industry Update on BOEM Regulations" in November 2024.

119.    Lexon denies the allegations in Paragraph 119 of the Complaint.

120.    Lexon denies the allegations in Paragraph 120 of the Complaint, except admits that Patrick Hennesy is the Co-Chair of SFAA's Energy Subcommittee.

121.    Lexon denies the allegations in Paragraph 121 of the Complaint.

122.    Lexon denies the allegations in Paragraph 122 of the Complaint.

123.    Lexon denies the allegations in Paragraph 123 of the Complaint, except admits Patrick Hennesy was employed by Philadelphia Insurance Companies from 2007 to 2008 and RLI Insurance from 2008 to 2016.

124.    Lexon denies the allegations in Paragraph 124 of the Complaint.

I.   **The Sureties Have Market Power in a Relevant Product and Geographic Market That Has Been Harmed by Sureties' Anticompetitive Conduct.**

125.   Paragraph 125 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 125.

126.   Paragraph 126 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 126.

127.   Paragraph 127 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 127.

128.   Paragraph 128 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 128.

129.   Lexon denies the allegations in Paragraph 129 of the Complaint.

## CAUSES OF ACTION

## COUNT ONE – DECLARATION RELIEF

130.   Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1–129 above as if fully repeated herein.

131.   Paragraph 131 of the Complaint constitutes conclusions of law to which no response is required.

132.    Paragraph 132 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that it and W&T are parties to the Indemnity Agreement, but otherwise denies the remaining allegations in Paragraph 132 of the Complaint, including the implication that the Indemnity Agreement provides the sole source of rights and obligations with respect to W&T and Lexon's relationship.

133.    Paragraph 133 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 133, except admits that the Indemnity Agreement imposes certain obligations and confers certain rights on W&T and Lexon.

134.    Paragraph 134 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 134.

135.    Paragraph 135 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 135.

136.    Paragraph 136 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 136.

137.    Paragraph 137 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 137 or that W&T is entitled to the relief sought in Paragraph 137.

## COUNT TWO – VIOLATIONS OF THE SHERMAN ANTITRUST ACT (GROUP BOYCOTT)

138.    Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1–137 above as if fully repeated herein.

139.    Paragraph 139 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 139.

140.    Paragraph 140 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 140.

141.    Paragraph 141 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 141.

142.    Paragraph 142 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 142.

143.    Paragraph 143 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 143.

## COUNT THREE – VIOLATION OF THE SHERMAN ANTITRUST ACT (PRICE-FIXING)

144.    Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1–143 above as if fully repeated herein.

145.    Paragraph 145 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 145.

146.    Paragraph 146 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 146.

147.    Paragraph 147 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 147.

148.    Paragraph 148 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 148.

149.   Paragraph 149 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 149.

## COUNT FOUR – VIOLATION OF THE TEXAS FREE ENTERPRISE AND ANTITRUST ACT (TEX. BUS. & COM. CODE § 15.05)

150.   Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1–149 above as if fully repeated herein.

151.   Paragraph 151 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 151 except admits that Paragraph 151 purports to restate text from Tex. Bus. & Comm. Code § 15.05(a) and refers the Court to that statute for the true and correct contents thereof.

152.   Paragraph 152 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 152.

153.   Paragraph 153 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 153.

154.   Paragraph 154 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 154.

155.    Lexon denies the allegations in Paragraph 155 of the Complaint.

156.    Paragraph 156 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 156.

157.    Paragraph 157 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 157.

## COUNT FIVE –VIOLATION OF THE TEXAS INSURANCE CODE SECTION 541

158.    Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1–157 above as if fully repeated herein.

159.    Paragraph 159 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 159 except admits that Paragraph 159 purports to characterize the language of Tex. Ins. Code § 541.051(1) and refers the Court to that statute for the true and correct contents thereof.

160.    Lexon denies the allegations in Paragraph 160 of the Complaint.

161.    Paragraph 161 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 161.

162.   Paragraph 162 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in and relief claimed by Paragraph 162.

### COUNT SIX – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS AND PROSPECTIVE BUSINESS RELATIONSHIPS

163.   Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1–162 above as if fully repeated herein.

164.   Paragraph 164 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 164.

165.   Paragraph 165 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 165.

166.   Paragraph 166 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 166.

167.   Paragraph 167 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 167.

168.    Paragraph 168 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 168.

169.    Paragraph 169 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 169.

## COUNT SEVEN – CONSPIRACY

170.    Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1–169 above as if fully repeated herein.

171.    Paragraph 171 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 171.

172.    Paragraph 172 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 172.

173.    Paragraph 173 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 173.

174.    Paragraph 174 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 174.

175.    Paragraph 175 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 175.

176.    Paragraph 176 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 176.

177.    Paragraph 177 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 177.

## **PRAYER**

The Prayer constitutes conclusions of law to which no response is required; however, to the extent an answer is required, Lexon denies the allegations and that W&T is entitled to the relief sought in the Prayer.

## AFFIRMATIVE AND OTHER DEFENSES

Lexon asserts the following defenses and reserves the right to amend this Answer and these Affirmative and Other Defenses, and to assert other and further defenses, when and if, in the course of its investigation, discovery, or preparation for trial, it becomes appropriate. By designating these matters as defenses, Lexon does not intend to assume a burden of proof it does not otherwise have or to suggest either that W&T does not bear the burden of proof as to such matters or that such matters are not elements of W&T's prima facie case against Lexon.

To the extent necessary, Lexon alleges W&T's claims are barred because the acts W&T alleges Lexon undertook in furtherance of the alleged conspiracy were in Lexon's unilateral business interest.

## FIRST DEFENSE

W&T's claims are barred, in whole or in part, on the grounds that the Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

W&T's claims are barred, in whole or in part, by the doctrine of estoppel.

## THIRD DEFENSE

W&T's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTH DEFENSE

W&T's claims are barred, in whole or in part, by the doctrine of laches.

## FIFTH DEFENSE

W&T's claims are barred, in whole or in part, by the doctrine of waiver. W&T, by its actions, accepted the benefits of an ongoing relationship with Lexon and relinquished its rights to bring suit.

## SIXTH DEFENSE

W&T's claims are barred, in whole or in part, because Lexon at all times acted reasonably and in good faith.

## SEVENTH DEFENSE

W&T's claims are barred, in whole or in part, because Lexon's conduct was unilateral and was undertaken solely for Lexon's legitimate, lawful business purpose. Lexon's conduct was, at all times, procompetitive and had a rational business justification.

## EIGHTH DEFENSE

W&T's claims are barred, in whole or in part, because W&T has insufficiently alleged a relevant product market and/or geographic market.

## NINTH DEFENSE

W&T's claims are barred, in whole or in part, because W&T has not suffered any injury in fact and/or any injury cognizable under the antitrust laws. W&T cannot establish actual injury.

## TENTH DEFENSE

W&T's claims are barred, in whole or in part, because W&T failed to exercise reasonable care to mitigate any alleged damages it may have suffered. W&T's failure to exercise reasonable care to mitigate damages was the complete or partial cause of any damages W&T may have suffered.

## ELEVENTH DEFENSE

W&T's claims are barred, in whole or in part, because any alleged injuries and damages were not legally or proximately caused by any acts or omissions of Lexon and/or were caused, if at all, solely and proximately by the conduct of W&T or other persons, including, without limitation, the prior intervening, or superseding conduct of W&T or other persons.

## TWELFTH DEFENSE

Some of W&T's claims fail to the extent that the Indemnity Agreement, a binding and enforceable contract, exists between W&T and Lexon and bars some or all of W&T's claims.

## THIRTEENTH DEFENSE

Without admitting the existence of any contract, combination, or conspiracy in restraint of trade, and expressly denying the same, W&T's claims are barred, in

whole or in part, by Lexon's right to set off any amounts paid to W&T by any Defendants who have settled, or do settle, W&T's claims against them in this action.

## FOURTEENTH DEFENSE

To the extent that any actionable conduct occurred, W&T's claims are barred to the extent that such conduct was committed by any individual acting ultra vires or beyond the scope of any individual's express or implied authority as an agent or employee of Lexon.

## FIFTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by W&T's knowing acquiescence or ratification of the restraints of trade alleged in the Complaint.

## SIXTEENTH DEFENSE

Lexon adopts and incorporates by reference any and all other defenses asserted by any other Defendant to the extent that the defense would apply to Lexon.

## SEVENTEENTH DEFENSE

Lexon reserves the right to assert other defenses as this action proceeds up to and including the time of trial.

## SECOND AMENDED COUNTERCLAIM

Pursuant to Federal Rule of Civil Procedure 13(a), Lexon Insurance Company and Endurance Assurance Corporation ("**Endurance**," collectively with Lexon Insurance Company, "**Lexon**"), on knowledge as to their own actions and otherwise on good-faith information and belief, hereby assert this Second Amended Counterclaim against W&T Offshore, Inc., and W&T Energy VI, LLC (collectively, "**W&T**" or "**Counterclaim-Defendants**").

## INTRODUCTION

1.    This action arises from W&T's breach of its obligations under the terms of Payment and Indemnity Agreement No. 1380 (the "**Indemnity Agreement**" or "**Agreemen**t"), which was executed by each of the Counterclaim-Defendants on September 14, 2020.[2] W&T executed the Indemnity Agreement "to induce the Surety," *i.e.*, Lexon, to issue bonds (the "**Bonds**") with respect to W&T's operations on the Outer Continental Shelf ("**OCS**"). In reliance on the protections afforded to Lexon under the Indemnity Agreement, Lexon issued bonds that, as of now, expose Lexon to over $41 million in potential liability (referred to as the "penalty amount" on the Bonds) should W&T default on the bonded obligations.

---

[2] A true and correct copy of Indemnity Agreement is attached hereto as Exhibit 1, the terms of which are incorporated herein by reference.

2.      W&T is required to provide "financial assurance" in order to conduct oil and gas exploration operations on the OCS pursuant to the OCS Lands Act, which charges the Secretary of the Interior with the administration of leases authorizing private parties to explore the OCS for oil and natural gas and with the regulation of such activities. The financial assurance requirements address, among other things, decommissioning liabilities, which are overseen by the Bureau of Ocean Energy Management ("**BOEM**"). These regulations ensure that exploration companies, rather than taxpayers, fund the restoration of the land and infrastructure associated with offshore oil, gas, or sulfur development.

3.      Surety bonds are one of several types of financial assurance acceptable to BOEM. W&T chose to utilize surety bonds (over other types of financial assurance) issued by Lexon and other sureties to provide the requisite financial assurance, which not only enabled W&T to satisfy regulatory requirements and thereby conduct oil and gas operations on the OCS but also had the effect of freeing up liquidity on W&T's balance sheet that otherwise would have had to be dedicated to satisfying financial assurance requirements.

4.      The Bonds at issue here secure W&T's obligations to, among other things, restore and remediate properties once W&T completes its oil and gas operations, including plugging and abandoning wells, removing equipment, and restoring surface, subsurface, and sites to their original condition.

5.      As a general matter, Lexon remains potentially responsible for W&T's obligations under the Bonds until W&T satisfies such obligations or the Regional Director of BOEM issues a written cancellation in favor of Lexon. If W&T defaults on the obligations covered by the Bonds, Lexon is responsible for performing the underlying obligations and potentially can be sued by BOEM or other relevant parties in connection with W&T's failure to perform. Lexon's obligations under the Bonds cannot be cancelled unilaterally by Lexon and remains in full force and effect, even if, among other things, Lexon suffers any loss "by reason of any law limiting, qualifying, or discharging"[3] its obligations or W&T stops paying premiums due under the Bonds.

6.      In light of the risk borne by Lexon as surety, chief among the bargained-for protections in the Indemnity Agreement is Lexon's right to demand collateral from W&T, which provides security for Lexon before any event of default occurs. In fact, the requirement to provide collateral in response to a surety's demand is so integral to the surety receiving the benefit of its contractual bargain that courts repeatedly have found that the refusal to provide such collateral constitutes irreparable harm. Here, in the Indemnity Agreement, Lexon has the right, "at any time and from time to time hereafter, in its sole and absolute discretion, [to] require

---

[3] *See, e.g.,* Outer Continental Shelf Mineral Lessee's or Operator's Supplemental Bond, ¶ 6(e) (Dkt. 36-2).

the Principals [*i.e.*, W&T] to provide collateral, in forms and amounts acceptable to [Lexon] . . . to secure the Principals' obligations to [Lexon] hereunder and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond." Agreement ¶ 3 (the "**Collateral Demand Provision**"). On its face, the Collateral Demand Provision—contained in a section in the Indemnity Agreement titled "Security"—could hardly be clearer: it entitles Lexon "at any time" to use its "sole and absolute discretion" to determine the amount of collateral necessary "to secure the Principals' obligations" to Lexon and the form that such collateral must take.

7.    However, perhaps because the Collateral Demand Provision plainly confers on Lexon the right to demand the collateral it is seeking, W&T has adopted a strategy of obfuscation, attempting to focus this action on a host of issues having nothing to do with Lexon's right to demand collateral under the terms of the Indemnity Agreement.

8.    By way of further background, the key parties to the surety relationship are the (i) obligee, which is the entity to whom the obligation is owed (often, as here, a state or local government), (ii) principal, which is the primary party charged with performing the obligation (*i.e.*, W&T), and (iii) surety (*i.e.*, Lexon), which, according to the bond's terms, is responsible for the principal's obligations in the

event of the principal's default, subject to the surety's right to seek indemnification from the principal.

9.     As a surety, Lexon agrees to incur exposure based in part on the contractual obligation of the principal created in the Indemnity Agreement to repay the surety for any payments the surety makes towards the principal's bonded obligations. This contractual reimbursement obligation seeks to ensure that the principal bears the ultimate financial responsibility for any claims relating to the surety bond.

10.     This is a key difference between surety, which essentially serves as a form of credit, and insurance, which provides financial protection against potential future losses. Insurance protects the insured from unforeseen risks, such as accidents, natural disasters, or health issues. When an insurance claim is made, the insurer compensates the insured for covered losses according to the policy terms. This compensation is typically final, and the insured does not have to repay the insurer.

11.     In contrast, surety bonds ensure that contractual obligations are met, often in the context of construction, environmental projects, or other business agreements, to assure the obligee that the principal will fulfill their commitments, either through performance or financial compensation. Therefore, when a claim is made against a surety bond, the surety may cover the costs of the principal's

obligations, but, unlike insurance, the principal is contractually obligated to repay the surety for all loss, costs, fees and any amounts paid on its behalf.

12.    Lexon's sole compensation for undertaking these obligations in connection with issuance of bonds is the payment of premiums by the principal to Lexon. Premiums are charged annually on each bond for as long as the bond remains outstanding. However, regardless of whether a principal pays premiums or not, the surety's obligation exists and the bonds remain outstanding until the underlying obligations of the principal are satisfied. Therefore, W&T owes premium payments to Lexon and premiums continue to accrue until the Bonds are released or repaid.

13.    While Lexon's sole compensation is the principal's payment of premium, Lexon has other rights under the Indemnity Agreement.  In particular, a surety has the right to demand collateral to secure the principal's obligations. Given the nature of the surety's obligations, Lexon generally exercises its contractual right to procure collateral from the principal *prior to* a potential default in order to protect the surety against any actual or potential liability that the principal would otherwise not be able to repay due to financial hardship or bankruptcy proceedings.

14.    Consistent with its contractual rights, when Lexon had concerns about W&T's ability to fulfill its obligations, Lexon spent months attempting to reach an agreement with W&T on a collateral payment schedule that would provide Lexon security if W&T were to default on its obligations. Despite Lexon proposing at least

five different payment options, W&T never agreed to provide additional collateral other than a subordinate lien on certain assets—an offer that did not provide Lexon with any meaningful security. Having spent months attempting but making no real progress toward reaching an agreement with W&T, Lexon demanded, in a letter dated July 9, 2024 (the "**July 9 Demand**"), that W&T provide as collateral $7.5 million cash via wire transfer or an irrevocable letter of credit within 30 days. A true and correct copy of the July 9 Demand is attached hereto as Exhibit 2.

15.     W&T did not provide the collateral within 30 days, and, to date, has not provided any of the collateral to Lexon.

16.     In addition to failing to comply with Lexon's July 9 Demand, W&T also is in default of its premium obligations to Lexon. In particular, W&T has not paid any premiums to Lexon since Lexon increased W&T's premiums by 2%. To date, W&T owes Lexon $1,068,971.50 in accrued but unpaid premiums.

17.     W&T's failure to satisfy the July 9 Demand and its failure to pay outstanding premium obligations constitute material breaches of the Indemnity Agreement.

18.     W&T's breaches, in turn, have additional consequences.

19.     First, the Agreement provides that if "any Principal fails to pay within thirty (30) days after written demand any premium or portion thereof, or fails to pay within thirty (30) days after written demand of any other sum becoming due [to

46

Lexon] hereunder, then," absent securing the release and discharge of all of Lexon's liability under the bonds and paying Lexon all amounts then owed, Lexon "may require there be paid, and the Principals jointly and severally agree they shall forthwith pay to [Lexon], an amount equal to the full penalty amount of the Bonds, to be held as collateral until (i) all sums due and to become due to [Lexon] have been paid and (ii) [Lexon] shall be wholly discharged and released from all liability under the Bonds." Agreement ¶ 1. By virtue of having failed to provide collateral in response to the July 9 Demand, W&T triggered the obligation to provide collateral "equal to the full penalty amount of the Bonds," or in excess of $41 million.

20.    Second, W&T's failure to provide collateral in response to the July 9 Demand or pay the premiums due and owing to Lexon entitles Lexon to recover the costs and fees it incurs to enforce its rights under the Indemnity Agreement. Specifically, the Indemnity Agreement provides that the "Principals shall jointly and severally indemnify and keep indemnified [Lexon] and hold and save it harmless from and against any and all liability, damage, loss, cost and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which [Lexon] may at any time sustain or incur or in enforcing this Agreement against any Principal." Indemnity Agreement ¶ 2.

21.    Likewise, the Agreement separately provides that in "the event any action is instituted to enforce any of the provisions of this Agreement or to recover

damages for the breach of any provision hereof, the prevailing party therein shall be entitled to recover any costs or expenses incurred, including without limitation, costs of court and reasonable attorneys' fees." Agreement ¶ 26.

22.     Despite Lexon's clear and unambiguous right to the demanded collateral and payment of premiums owed, to date, Lexon has gone to great lengths to resolve the issue without resorting to litigation, including demanding less collateral than is necessary to adequately secure W&T's performance obligations under the Bonds and proposing a variety of structures whereby W&T could satisfy the July 9 Demand. In response, W&T not only has refused to honor its obligations to Lexon but—adding insult to injury—instituted this action to, in effect, declare its "right" not to abide by its obligations under the Agreement.

23.     W&T's ongoing refusal to satisfy the July 9 Demand and continuing non-payment of premiums—and initiating the present action—make clear that it has no intention of honoring its contractual commitments.

24.     As set forth further below, Lexon is entitled to recover in excess of $41 million, constituting the penalty amount of the Bonds, plus the attorneys' fees and other costs it has incurred to enforce its rights under the Agreement, including in connection with this action, and all outstanding premiums that are owed, including those that come due during the course of this action and thereafter.

## PARTIES

25.    W&T Offshore, Inc., is a corporation organized under the laws of the State of Texas, with its principal place of business in Houston, Texas. W&T Energy VI, LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

26.    Endurance is a corporation organized under the laws of the State of Delaware with its principal place of business in Purchase, New York. Lexon is a corporation organized under the laws of the State of Texas with its principal place of business in Mt. Juliet, Tennessee. As relevant here, Endurance and Lexon issue surety bonds with respect to companies operating in a wide range of industries, including construction; home building; financial services; service companies with an emphasis on transportation, waste, and security; renewable energy, as well as oil and gas exploration and production; and hard-rock mining and waste. Lexon and Endurance are wholly owned subsidiaries of Sompo International Holdings Ltd. ("**Sompo**"), a global specialty provider of property and casualty insurance and reinsurance.

## JURISDICTION

27.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 43 U.S.C. § 1349 because this dispute arises out of or in connection with operations conducted on the Outer Continental Shelf ("**OCS**"). This Court also has

supplemental jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1367(a).

28.     Venue is proper because W&T initially filed its action in this District, and the Indemnity Agreement mandates exclusive venue in federal and state courts in Harris County, Texas. Agreement ¶ 17.

## FACTUAL BACKGROUND

### I.     Lexon Provides Surety Bonds to W&T in Connection with W&T's Offshore Operations

29.     As explained, surety bonds cover the performance of specified obligations.

30.     As relevant here, in order for W&T to conduct operations on the OCS, it must meet general financial assurance requirements.

31.     The BOEM requires that lessees demonstrate financial reliability according to its regulations and provide acceptable financial assurances to assure satisfaction of lease obligations. These obligations may include decommissioning operations, plugging and abandoning wells, removing and disposing of equipment and facilities, and restoring and remediating surface and subsurface properties used for oil and gas exploration and production.

32.     Thus, in order to obtain permits to conduct drilling on the OCS from the United States Department of the Interior (obligee), W&T (principal) was required to obtain financial assurance and chose to obtain surety bonds to secure its

performance of the various obligations under the permits.[4] Should W&T default on its obligations, according to the terms of the bond, Lexon (surety) is responsible for arranging to fulfill W&T's obligations under the permits, as well as defending against any legal proceedings initiated by the obligee in connection with the principal's defaults.

33.    Nothing required W&T to obtain surety bonds. W&T could have satisfied BOEM's regulatory financial assurance requirements in other ways, including by posting cash or letters of credit. W&T chose to access the surety market, presumably to free up liquidity on its balance sheet. Even today, W&T could replace Lexon's Bonds by posting cash or letters of credit with the BOEM.

34.    The surety receives compensation in the form of premiums in exchange for undertaking these obligations, and often also requires, as Lexon did here, two forms of financial protection. First, the surety typically demands that the principal post collateral as security to protect against a potential bond default. In that event, the collateral could be used toward payment of losses, costs, or expenses incurred in discharging the principal's obligations should a default occur. Second, the principal

---

[4] W&T also obtained surety bonds from Lexon in connection with work performed for Exxon Mobil Corporation and Woodside Energy USA, and to secure certain obligations and bifurcate sellers from the chain of title when purchasing assets on the OCS.  Absent these surety bonds or another form of financial assurance (e.g., cash or letter of credit), it is unlikely that W&T could have acquired these assets from these sellers because, in that event, the sellers would have remained liable with respect to obligations attaching to those bonds.

agrees to indemnify the surety against losses and expenses incurred in connection with the bond. All these obligations on the part of the principal, *i.e.*, payment of premiums, provision of collateral and indemnification, typically are memorialized, as here, in a general indemnity agreement.

35.    Since 2014, Lexon has issued Bonds, currently with a total exposure in excess of $41 million, in connection with energy exploration operations conducted by W&T on the OCS.

36.    The Bonds at issue here include the following:[5]

| Bond Number | Principal Name | Obligee Name | Bond Amount |
|---|---|---|---|
| EACX226000022 | W & T Energy VI LLC | US Department of Interior | $1,461,000 |
| EACX226000025 | W & T Energy VI LLC | US Department of Interior | $3,000,000 |
| 1156846 | W & T Energy VI LLC | US Department of Interior | $5,000,000 |
| 1097677 | W & T Energy VI LLC | US Department of Interior | $9,000,000 |
| 1159776 | W & T Energy VI LLC | US Department of Interior | $3,000,000 |
| EACX226000038 | W & T Energy VI LLC | US Department of Interior | $1,482,000 |
| EACX226000039 | W & T Energy VI LLC | US Department of Interior | $3,830,148 |
| EACX226000044 | W & T Energy VI LLC | US Department of Interior | $3,000,000 |
| 1152010 | W&T Offshore Inc | Woodside Energy USA Inc. | $1,931,562 |
| 1152011 | W&T Offshore Inc | Woodside Energy USA Inc. | $376,688 |
| EACX226000043 | W&T Offshore Inc | Exxon Mobile Corporation et al | $7,000,000 |
| EACX226000045 | W&T Offshore Inc | Railroad Commission of Texas | $125,000 |
| EACX226000047 | W&T Offshore Inc | US Department of Interior | $2,285,584 |

37.    Paragraph 3 of the Indemnity Agreement, entitled "Security," provides:

The Surety may at any time and from time to time hereafter, in its sole and absolute discretion, require the Principals to provide collateral, in form and amounts acceptable to the Surety . . . to secure the Principals'

---

[5] At the start of this case, Lexon's total exposure surpassed $55 million. Since then, Bond No. EACX22000040, in the amount of $13,126,457, Bond No. 113950 in the amount of $117,279, and Bond No. 1136949, in the amount of $1,166,860 have been discharged, thereby reducing Lexon's exposure.

obligations to the Surety hereunder and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond. Within thirty (30) days after the Surety has made written demand on Principals, each Principal shall execute such documents and take such further action as may be necessary in order to provide such collateral. Each Principal hereby grants to the Surety a security interest in all money and other property now or hereafter delivered by such Principal to the Surety, and all income (if any) thereon. If a Principal provides the Surety with a letter of credit or similar instrument, such Principal agrees that the Surety has the right to call on the same from time to time, in whole or in part and for any reason or no reason, and to hold the proceeds thereof as collateral for the obligations of the Principals hereunder. Any collateral provided at any time by any Principal shall be available, in the discretion of the Surety, as collateral security on any or all Bonds heretofore or hereafter executed for or at the request of such Principal or any other Principal.

Agreement ¶ 3.

38.    Paragraph 4 of the Indemnity Agreement provides Lexon the right to

inspect the financial records of W&T at any time, providing, in relevant part:

Until the Surety shall have been furnished with evidence of its full, final and complete discharge without loss from any and all Bonds, the Surety and its agents shall have reasonable access, at any and all reasonable times, to the financial books and records (including but not limited to reserve reports, engineering data and like information) of each Principal relevant to the obligations under this Agreement . . .

Agreement ¶ 4.

39.    The Indemnity Agreement also provides that W&T "shall pay to

[Lexon] premiums and charges at the rates and at the times specified by [Lexon]

with respect to each Bond (as [Lexon] may specify at any time before or after the

issuance of the Bond), continuing until [Lexon] shall be discharged or released from any and all liability under the Bonds[.]" Agreement ¶ 1.

40.    The Indemnity Agreement also expressly affords Lexon indemnification rights, stating in relevant part,

> The Principals shall jointly and severally indemnify and keep indemnified the Surety and hold and save it harmless from and against any and all liability, damage, loss, cost, and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which the Surety may at any time sustain or incur or in enforcing this Agreement against any Principal or in procuring or in attempting to procure the Surety's release from liability or a settlement under any Bonds. . . .

Agreement ¶ 2.

41.    The Indemnity Agreement also entitles Lexon to "recover any costs or expenses incurred, including without limitation, costs of court and reasonable attorneys' fees" for any action "to enforce any of the provisions of this Agreement or to recover damages for the breach of any provision hereof" should it prevail in such action. Agreement ¶ 26.

42.    Finally, the Indemnity Agreement entitles Lexon to interest on "[a]ny and all sums not paid when due" in the amount of "the lesser of (a) ten percent (10%) per annum, or (b) the maximum non-usurious rate of interest allowed by applicable law." Agreement ¶ 23.

## II.    <u>Lexon's Concern Over the Adequacy of Its Collateral with Regards to the Bonds</u>

43.    A number of factors led Lexon to conclude that it was appropriate and necessary to demand additional collateral from W&T, leading to the July 9 Demand. These included, among others, the following:

44.    First, Lexon's Bond exposure had increasingly become a concern given W&T's financial performance. According to its 2023 annual report,[6] W&T's Total Revenues declined from $920.9 million in 2022 to $532.7 million in 2023; Operating Income declined from $454 million in 2022 to $29.5 million in 2023; and Net Income decreased from $231.2 million in 2022 to $15.6 million in 2023. Ex. 3, pp. 47, 67. W&T also reported, "We have a significant amount of indebtedness and limited borrowing capacity under our Credit Agreement. Our leverage and debt service obligations may have a material adverse effect on our financial condition, results of operation and business prospects, and we may have difficulty paying our debts as they become due." *Id.*, p. v.

45.    In that same report, W&T acknowledged its collateral obligations to Lexon, stating:

> In prior years, some of the sureties that provide us surety bonds used for supplemental financial assurance purposes have requested and received collateral from us and may request additional collateral from us in the future, which could be significant and could impact our liquidity. In addition, pursuant to the terms of our agreements with various sureties under our existing bonds or under any

---

[6] A true and correct copy of W&T's Report on Form 10-K for the fiscal year ended December 31, 2023, is attached hereto as Exhibit 3.

> additional bonds we may obtain, we are required to post collateral at any time, on demand, at the surety's discretion. In both 2023 and 2022, we have not had to post collateral for sureties . . . . [C]ollateral requests from surety bond providers and collateral requests from other third-parties may require the posting of cash collateral, which may be significant . . . .

*Id.* at 46.

46.    In May 2024, W&T reported a first quarter 2024 net loss of $11.5 million, down 144% from a Q1 2023 profit, while revenue and earnings per share missed analysts' consensus estimates. Since prior to the July 9 Demand and through today, credit-ratings provider Fitch Ratings has maintained a B- rating on W&T, indicating that "material default risk is present, but a limited margin of safety remains. Financial commitments are currently being met; however, capacity for continued payment is vulnerable to deterioration in the business and economic environment."[7] Credit ratings provider S&P Global likewise has given W&T a B- rating since prior to the July 9 Demand.

47.    W&T's financial condition continued to decline. In its 2024 annual report,[8] W&T reported a Net Loss of $87.1 million and an Operating Income loss of $42.2 million. Ex. 4, p. 65. W&T again expressed concern about its "level of

---

[7] *See Issuer Default Ratings,* FITCH RATINGS, https://your.fitch.group/rating-definitions.html (last visited Jan. 9, 2025); *see also Fitch Affirms W&T Offshore Inc.'s Long-Term IDR at 'B-'; Outlook Stable,* FITCH RATINGS, https://www.fitchratings.com/research/corporate-finance/fitch-affirms-w-t-offshore-inc-long-term-idr-at-b-outlook-stable-24-07-2025 (July 24, 2025).

[8] A true and correct copy of W&T's Report on Form 10-K for the fiscal year ended December 31, 2024, is attached hereto as Exhibit 4.

indebtedness," noting that "[w]e cannot be certain that our cash flow will be sufficient to allow us to pay the principal and interest on our debt or otherwise meet our future obligations." Ex. 5, p. 20. Most recently, W&T reported a Net Loss of $71.5 million for the third quarter of 2025, with a total Net loss for 2025 of $122.9 million.[9]

48.　　Second, Lexon issued surety bonds on behalf of Fieldwood Energy LLC ("*Fieldwood*"), another oil and gas operator. After Fieldwood filed for bankruptcy in 2020, its bankruptcy plan provided for the sale of some of its oil and gas assets free and clear of any debts, including any subrogation rights of the sureties. In other words, whatever companies acquired Fieldwood's assets out of the bankruptcy would not be bound to any underlying obligations of any surety bond (including, for instance, to pay premiums or provide collateral), while the sureties' obligations on these bonds remained in force and effect. This result in the Fieldwood bankruptcy led Lexon to conclude that it faced generally increased risk in connection with surety bonds issued with respect to energy exploration and production activities.

---

[9] A true and correct copy of W&T's Report on Form 10-Q for the quarterly period ended September 30, 2025, is attached hereto as Exhibit 5. *See also* W&T Offshore, Inc., Quarterly Report (Form 10-Q) (Mar. 31, 2025) (reporting a net loss of $30.6 million in the first quarter of 2025); W&T Offshore, Inc., Quarterly Report (Form 10-Q) (June 30, 2025) (reporting a net loss of $20.9 million in the second quarter of 2025).

49.    Third, the BOEM proposed a new rule in June 2023, which was finalized in April 2024, to determine if and how much supplemental financial assurance is required for offshore operations on the OCS.[10] Under the Risk Management and Financial Assurance for OCS Lease and Grant Obligations rule—which toughened the supplemental financial assurance requirements for offshore operations on the OCS—supplemental financial assurance is waived for companies only if (1) the companies meet an investment grade credit rating of at least BBB- (under S&P Global Ratings and Fitch Ratings, Inc.) or Baa3 (Moody's Investors Service, Inc.) or (2) the companies' proved reserves exceed the estimated decommissioning costs by a 3-to-1 ratio. The new rule also imposed additional obligations, including an updated calculation for the amount required as supplemental financial assurance and instituting a phase-in period with strict deadlines. Under this new rule, Lexon reasonably (and, it turns out, accurately) concluded that W&T would be required to secure additional bonds or post another form of additional financial assurance, in turn requiring W&T to divert assets to these other financial obligations, further straining it financially and thus increasing Lexon's risk.

---

[10] After the filing of this litigation, the Trump Administration changed the financial assurance rules again. Regardless of what the BOEM regulations require, however, regulatory volatility such as has occurred with BOEM regulations creates significant uncertainty, leaving Lexon with less ability to rely on historical precedent and necessitating that Lexon protect itself through mechanisms like collateral.

III.    **Lexon Seeks Collateral and Premiums According to the Terms of the Indemnity Agreement**

50.    As noted, under the Indemnity Agreement, W&T was required to provide Lexon with collateral as security for its obligations. Agreement, ¶ 3. W&T's obligations under the Indemnity Agreement are absolute and unconditional. Specifically, under the Collateral Demand Provision, Lexon "may at any time and from time to time hereafter, in its sole and absolute discretion, require [W&T] to provide collateral, in form and amounts acceptable to [Lexon] . . . to secure [W&T's] obligations to [Lexon] hereunder." Agreement, ¶ 3. The Collateral Demand Provision further provides that "[w]ithin thirty (30) days after [Lexon] has made written demand on [W&T], [W&T] shall execute such documents and take such further action as may be necessary in order to provide such collateral." *Id.*

51.    Notwithstanding Lexon's "sole and absolute" right to demand additional collateral, as well as its reasonable conclusion that additional collateral was appropriate in light of, among other things, W&T's financial condition (although such a demand by Lexon is not subject to a reasonableness standard under the Agreement's clear terms), Lexon did not immediately send a formal collateral demand to W&T. Instead, Lexon provided W&T with a slate of options for potential collateral structures over several months of discussions.

52.    On or about June 20, 2024, Lexon offered W&T five different collateral replacement options:

     i.     $7.5 million upfront collateral deposit;

     ii.    $5 million upfront collateral deposit followed by two annual installments of $2.5 million;

     iii.   Replacement or release of Bond Nos. 1152010, 1152011, EACX226000022, 1136949, 1136950, and EACX226000038; and payment of $1 million collateral deposit followed by three annual installments of $1 million;

     iv.   Replacement or release of Bond Nos. 1097677, 1156846, 1159776, EACX226000025, EACX226000039, EACX226000044, and EACX226000047; and payment of $2 million collateral deposit followed by four annual installments of $1 million; or

     v.    Replacement or release of all bonds except for Bond Nos. EACX226000043 and EACX226000040.

53.    In addition, Lexon expressed to W&T its willingness to work on an "all surety solution" and offered to provide suggestions on a framework for any such collaboration. W&T failed to express any interest in this approach.

54.    Despite the variety of options presented, W&T instead insisted that Lexon take a third lien position in W&T's debt as "additional security" in lieu of cash or a letter of credit (the same debt rated B- by Fitch as being in material risk of default). Lexon rejected that proposal because a third lien did not actually provide Lexon with the additional security it deemed necessary and appropriate and which it was seeking.

55.    In response, Lexon reiterated to W&T the five potential options for collateral and set a revised deadline for W&T to select their preferred option with

the "original" collateral installment due by close of business July 5, 2024. W&T refused to provide collateral and was unresponsive to Lexon's suggestion to engage all sureties to arrive at an amenable collateral structure for all parties.

56.    On or about July 9, 2024, Lexon followed up with the July 9 Demand for $7,500,000 of collateral pursuant to the Collateral Demand Provision, which represented a fraction of Lexon's total exposure (at the time of over $55 million) and was well within Lexon's rights under the Indemnity Agreement. The collateral demanded was to be provided to Lexon no later than August 9, 2024.

57.    To date, W&T has not provided any collateral to Lexon in response to the July 9 Demand, in material breach of the Indemnity Agreement. Instead, W&T instituted this action.

58.    W&T has also failed to timely and fully pay the premiums that it owes to Lexon. In fact, W&T has not paid any premiums to Lexon since the July 9 Demand and currently owes Lexon $1,068,971.50 in outstanding but unpaid premiums. W&T has no legitimate basis under the Indemnity Agreement or otherwise not to pay the premiums it undisputedly owes to Lexon. Instead, as it has done with respect to its collateral payment obligations, W&T has simply chosen to renege on its contractual premium commitments. In doing so, W&T again has materially breached the Indemnity Agreement.

59.     By virtue of W&T's material breaches of the Indemnity Agreement, Lexon is entitled to collateral in excess of $41 million, constituting the penalty amount of the Bonds, the unpaid premiums it is owed (currently in excess of $1 million), plus the attorneys' fees and other costs it has incurred and continues to incur to enforce its rights under the Agreement, including in connection with this action.

## COUNT I
## (BREACH OF THE INDEMNITY AGREEMENT - SPECIFIC PERFORMANCE OF COLLATERAL DEMAND PROVISION)

60.     Lexon incorporates and re-alleges each of the preceding paragraphs of the Second Amended Counterclaim as if fully set forth herein.

61.     The Indemnity Agreement is a valid, binding, and enforceable contract.

62.     Under the Indemnity Agreement, Lexon "may at any time and from time to time hereafter, in its sole and absolute discretion, require [W&T] to provide collateral, in form and amounts acceptable to [Lexon] . . . to secure [W&T's] obligations to [Lexon] and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond." Agreement ¶ 3. Further, "[w]ithin thirty (30) days after [Lexon] has made written demand on [W&T], [W&T] shall execute such documents and take such further action as may be necessary in order to provide such collateral." *Id.*

63.    The Agreement also provides that if "any Principal . . . fails to pay within thirty (30) days after written demand of any other sum becoming due [to Lexon] hereunder, then," absent securing the release and discharge of all of Lexon's liability under the bonds, Lexon "may require there be paid, and the Principals jointly and severally agree they shall forthwith pay to [Lexon], an amount equal to the full penalty amount of the Bonds, to be held as collateral until (i) all sums due and to become due to [Lexon] have been paid and (ii) [Lexon] shall be wholly discharged and released from all liability under the Bonds." Agreement ¶ 1.

64.    Lexon sent W&T the July 9 Demand asking that W&T provide collateral under the Collateral Demand Provision in the form of cash or an irrevocable letter of credit.

65.    W&T has never provided collateral to Lexon in response to the July 9 Demand.

66.    The failure of W&T to provide to Lexon the demanded collateral constitutes a material breach of the Indemnity Agreement.

67.    Lexon has been and remains at all times ready, willing, and able to perform, and has performed, under the Indemnity Agreement.

68.    As a direct and proximate result of W&T's breach, Lexon has suffered and will continue to suffer harm. Lexon has no adequate remedy at law that would compensate it for its injury.

69.     Lexon is therefore entitled to entry of a judgment compelling W&T to specifically perform its duties under the Indemnity Agreement, including to provide collateral in the amount equal to the full penalty amount of the Bonds to be held as collateral.

## COUNT II
## (BREACH OF THE INDEMNITY AGREEMENT - PREMIUM PAYMENTS)

70.     Lexon incorporates and re-alleges each of the preceding paragraphs of the Second Amended Counterclaim as if fully set forth herein.

71.     The Indemnity Agreement is a valid, binding, and enforceable contract.

72.     The Agreement provides that "[t]he Principals shall pay to [Lexon] premiums and charges at the rates and at the times specified by [Lexon] with respect to each Bond[.]" Agreement ¶ 1.

73.     To date, W&T has failed to fully and timely make payment of outstanding premiums that it owes to Lexon in connection with the Bonds.

74.     W&T's failure to fully and timely pay premiums that have accrued and continue to accrue in connection with the Bonds constitutes a material breach of the Indemnity Agreement.

75.     Lexon has been and remains at all times ready, willing, and able to perform, and has performed, under the Indemnity Agreement.

76.     As a direct and proximate result of W&T's breach, Lexon has suffered and will continue to suffer damages.

## COUNT III
## (DECLARATORY JUDGMENT – LEXON'S CONTRACTUAL RIGHT TO COLLATERAL)

77.     Lexon incorporates and re-alleges each of the preceding paragraphs of the Second Amended Counterclaim as if fully set forth herein.

78.     The Indemnity Agreement is a valid, binding, and enforceable contract.

79.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Lexon requests that the Court enter an order declaring its rights with respect to the Indemnity Agreement.

80.     Under the Indemnity Agreement, Lexon "may at any time and from time to time hereafter, in its sole and absolute discretion, require [W&T] to provide collateral, in form and amounts acceptable to [Lexon] . . . to secure [W&T's] obligations to [Lexon] and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond." Agreement ¶ 3. Further, "[w]ithin thirty (30) days after [Lexon] has made written demand on [W&T], [W&T] shall execute such documents and take such further action as may be necessary in order to provide such collateral." *Id.*

81.     W&T disputes its obligations under the Agreement to provide collateral and/or to provide collateral in the form Lexon requested, claiming that Lexon's

demand for collateral is unreasonable. However, the Agreement does not contain a requirement that Lexon's demand must satisfy a reasonableness test—instead, it provides that Lexon "in its sole and absolute discretion" may "require" W&T to provide collateral "in form and amounts acceptable" to Lexon.

82.    To the extent that less than the full penalty amount of the Bonds is provided to Lexon pursuant to Count I, the relationship between W&T and Lexon is ongoing, and the Indemnity Agreement will continue to govern aspects of the future relationship between W&T and Lexon with regard to the Bonds at issue in this litigation or potential future bonds that may be issued. As such, Lexon may demand collateral payment from W&T in the future under the Agreement, and W&T disputes Lexon's right to do so.

83.    An actual, justiciable controversy has arisen and presently exists concerning Lexon's aforementioned rights and W&T's obligations under the Indemnity Agreement.

84.    Accordingly, the Court should declare that W&T has an ongoing and future obligation under the Indemnity Agreement to provide Lexon collateral in form and amounts acceptable to Lexon within 30 days of Lexon's written demand.

## COUNT IV
## (DECLARATORY JUDGMENT – LEXON'S CONTRACTUAL RIGHT TO PREMIUM PAYMENTS)

85.    Lexon incorporates and re-alleges each of the preceding paragraphs of the Second Amended Counterclaim as if fully set forth herein.

86.    The Indemnity Agreement is a valid, binding, and enforceable contract.

87.    Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Lexon requests that the Court enter an order declaring its rights with respect to the Indemnity Agreement.

88.    Under the Indemnity Agreement, "Principals shall pay to [Lexon] premiums and charges at the rates and at the times specified by [Lexon] with respect to each Bond . . . continuing until the Surety shall be discharged or released from any and all liability and responsibility under the Bonds[.]" Agreement ¶ 1.

89.    W&T disputes its obligations under the Agreement to provide premiums to Lexon.

90.    To the extent that W&T continues to refuse to timely and fully pay premiums to Lexon in connection with the Bonds as required by the Indemnity Agreement, the relationship between W&T and Lexon is ongoing, and the Indemnity Agreement will continue to govern aspects of the future relationship between W&T and Lexon with regard to the Bonds at issue in this litigation or potential future bonds that may be issued. As such, W&T will owe premium payments to Lexon that accrue

in the future under the Agreement and, based on its conduct to date, W&T disputes its obligation to make such payments.

91.     An actual, justiciable controversy has arisen and presently exists concerning Lexon's aforementioned rights and W&T's obligations under the Indemnity Agreement.

92.     Accordingly, the Court should declare that W&T has an ongoing and future obligation under the Indemnity Agreement to fully and timely pay premiums to Lexon in connection with the Bonds at the rates and times specified by Lexon.

## COUNT V
## (DECLARATORY JUDGMENT – LEXON'S CONTRACTUAL RIGHT TO INDEMNITY)

93.     Lexon incorporates and re-alleges each of the preceding paragraphs of the Second Amended Counterclaim as if fully set forth herein.

94.     The Indemnity Agreement is a valid, binding, and enforceable contract.

95.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Lexon requests that the Court enter an order declaring its rights with respect to the Indemnity Agreement.

96.     Specifically, under the Indemnity Agreement, W&T "shall jointly and severally indemnify and keep indemnified [Lexon] and hold and save it harmless from and against any and all liability, damage, loss, cost and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which [Lexon] may

at any time sustain or incur or in enforcing this Agreement against [W&T.]" Agreement ¶ 2.

97.    Lexon has incurred and continues to incur costs, expenses, and fees, including attorneys' fees, as a result of W&T's breach of the Indemnity Agreement and to enforce its rights thereunder, including as a result of W&T's failure to provide collateral in forms and amounts acceptable to Lexon and to timely and fully pay premiums owed.

98.    W&T denies that it has breached the Indemnity Agreement and that it owes Lexon any costs, fees, or expenses incurred by Lexon in enforcing the Agreement and/or as a result of W&T's breaches of the Agreement.

99.    An actual, justiciable controversy has arisen and presently exists concerning Lexon's aforementioned rights and W&T's obligations under the Indemnity Agreement.

100.    Accordingly, the Court should declare that W&T must indemnify Lexon for:

a)    all liability, damage, loss, cost, and expense of whatsoever kind or nature suffered by Lexon as a result of having to enforce the Indemnity Agreement, including reasonable attorney's fees, costs, and other expenses;

b)    all losses and expenses resulting from the issuance of the Bonds; and

c)    the amounts sustained or incurred by Lexon as a result of W&T's breaches of the Indemnity Agreement.

## COUNT VI
## (*QUIA TIMET*)

101.   Lexon incorporates and re-alleges each of the preceding paragraphs of the Second Amended Counterclaim as if fully set forth herein.

102.   Lexon faces a risk of significant loss under the Bonds. W&T has outstanding performance obligations and associated liability under the Bonds. W&T's failure to honor the express and unequivocal terms of the Indemnity Agreement, as well as its indemnity agreements with other sureties, indicates that sufficient funds to cover W&T's principal obligations under the Bonds may not be available at the conclusion of the litigation.

103.   Given W&T's precarious financial condition, the financial obligations associated with newly finalized regulatory requirements, and the financial demands placed on W&T by other sureties, Lexon anticipates that demand may be made by the bond obligees against Lexon for performance of W&T's principal obligations for which W&T has primary responsibility due to W&T's inability to fund its own obligations.

104.   W&T has failed to provide Lexon with adequate assurance that it will be able to perform its obligations under the Bonds.

105.   Therefore, the Court should order W&T and its agents to deposit collateral with Lexon in an amount of $41,491,982.

## COUNT VII
## ATTORNEYS' FEES AND COSTS

106.    Lexon incorporates and re-alleges each of the preceding paragraphs of the Second Amended Counterclaim as if fully set forth herein.

107.    The Indemnity Agreement is a valid, binding, and enforceable contract.

108.    Pursuant to Paragraph 26 of the Indemnity Agreement, Lexon is entitled to the recovery of costs, expenses, and attorneys' fees incurred to enforce its rights under the Agreement, including via this action. Agreement ¶ 26.

109.    Lexon has incurred and continues to incur costs, expenses, fees, including attorneys' fees, as a result of W&T's breach of the Indemnity Agreement and Lexon having to enforce its rights thereunder. As such, Lexon respectfully requests that this Court award such fees, costs, and expenses.

110.    Lexon is also entitled to attorneys' fees, costs, and expenses under any and all bases provided by law or equity, under all applicable state and federal laws, including, but not limited to, Federal Rule of Civil Procedure 54(d) and Texas Civil Practices & Remedies Code § 38.001.

111.    As a direct and proximate result of Lexon's breach of the Indemnity Agreement, Lexon has suffered and will continue to suffer damages, including having incurred and continuing to incur the costs, fees, and expenses referred to herein.

## **PRAYER**

WHEREFORE, premises considered, Lexon prays that W&T take nothing by way of its claims, and respectfully requests relief and judgment as follows:

a) Dismiss W&T's claims with prejudice and enter judgment in Lexon's favor;

b) Enter an order compelling W&T and its agents to specifically perform their obligations under the Indemnity Agreement by providing to Lexon the collateral in an amount equal to $41,491,982, the full penalty amount of the Bonds;

c) Enter a judgment against W&T in the amount of the premiums due and owing to Lexon at the conclusion of this action;

d) Enter an order pursuant to the common law doctrine of *quia timet* directing W&T and its agents to immediately deposit cash collateral with Lexon in an amount equal to $41,491,982, the full penalty amount of the Bonds;

e) Enter a judgment declaring that, to the extent that less than the full penalty amount of the Bonds is provided to Lexon pursuant to Count I, W&T has an ongoing and future obligation under the Indemnity Agreement to provide Lexon collateral in form and amounts acceptable to Lexon within 30 days of Lexon's written demand;

f) Enter a judgment declaring that W&T is required under the Indemnity Agreement to pay to Lexon premiums currently owed and that accrue in the future at the rates and times specified by Lexon;

g) Enter a judgment declaring that W&T is required to indemnify Lexon for all liability, damage, loss, cost and expense of whatsoever kind or nature suffered by Lexon as a result of having to enforce the Indemnity Agreement;

h) Enter a judgment declaring that W&T is required to indemnify Lexon for all amounts sustained or incurred by Lexon as a result of W&T's breaches of the Indemnity Agreement;

i)    Pursuant to Paragraph 26 of the Indemnity Agreement, award Lexon its costs, expenses and fees (including the reasonable fees and expenses of its counsel) to enforce its rights under the Indemnity Agreement, including fees incurred in connection with this action;

j)    Award Lexon its attorneys' fees under all available and applicable state and federal laws;

k)    Award Lexon pre- and post-judgment interest on all amounts due and owing to Lexon, including pursuant to Paragraph 23 of the Indemnity Agreement; and

l)    Such other and further relief as the Court deems proper and just.

Dated: January 12, 2026               Respectfully submitted,

**VINSON & ELKINS LLP**

*/s/Jason M. Halper*
Jason M. Halper*
Sara E. Brauerman*
Nicole Castle*
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel.: (212) 237-0000
Fax: (212) 237-0100
jhalper@velaw.com
sbrauerman@velaw.com
ncastle@velaw.com

Christopher V. Popov
Texas Bar No. 24032960
Federal ID No. 34615
Alyx E. Eva
Texas Bar No. 24116334
Federal ID No. 3544812
845 Texas Avenue, Suite 4700
Houston, Texas 77002-2947
Tel.: (713) 758-2636
Fax: (713) 615-5033
cpopov@velaw.com
aeva@velaw.com

*Admitted pro hac vice*

**ATTORNEYS FOR ENDURANCE
ASSURANCE CORPORATION AND
LEXON INSURANCE COMPANY**

74

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2026, a true and correct copy of the above and foregoing document was served on all counsel of record in compliance with the Federal Rules of Civil Procedure.

*/s/ Jason M. Halper*_____
Jason M. Halper