**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, | § § § | |
| v. | § § § | LEAD CASE NO. 4:24-CV-3047 CONSOLIDATED ACTION **REDACTED COPY** |
| ENDURANCE ASSURANCE CORPORATION, AND LEXON INSURANCE CO., *ET AL.* | § § § § | |

## PLAINTIFFS' MOTION TO APPOINT SPECIAL MASTER

Plaintiffs W&T Offshore, Inc. and W&T Energy VI, LLC (collectively, "W&T") respectfully move the Court to appoint a special master pursuant to Federal Rule of Civil Procedure 53, for the limited purpose of overseeing the discovery process going forward and to preside over all discovery-related issues and disputes. As set forth below, the discovery responses of Defendants Endurance Assurance Corporation and Lexon Insurance Company (collectively "Sompo"), Pennsylvania Insurance Company ("Penn"), and U.S. Fire Insurance Company ("USFIC") are woefully deficient and numerous discovery disputes continue to exist.

### INTRODUCTION

This Court has explained that

> Courts rely on the good faith and diligence of counsel and the parties to follow discovery rules and conduct themselves honestly before the court. Discovery in civil litigation takes place largely on faith—the faith that each party will voluntarily provide all relevant and responsive

1

evidence to its opponent, even when that evidence is prejudicial to the producing party's case.

*Calsep, Inc. v. Intelligent Petroleum Software Sols., LLC*, No. 4:19-CV-1118, 2021 WL 1729169, at *2 (S.D. Tex. Apr. 29, 2021), *report and recommendation adopted*, 2021 WL 3493153 (S.D. Tex. Aug. 6, 2021), *aff'd sub nom. Calsep Inc. v. Dabral*, 84 F.4th 304 (5th Cir. 2023).

Unfortunately, despite numerous hearings with the Court and being ordered to produce documents and move forward with discovery, Defendants have continued to delay and obstruct discovery from proceeding forward as the Court directed. During the January 13, 2026, hearing regarding Defendants' failure to produce documents that the Court had ordered them to produce in October 2025 in response to discovery requests W&T served in June 2025, the Court stated that:

- "I want the documents produced. I'm telling you. I've been patient. I've been here listening to all of them, and how many hearings – I can't even count how many hearings we've had in this case already. This case has taken up more time of my law clerk, my career law clerk, mind you, who's very efficient –it has taken up more time of hers than any other case on my docket. I want the documents produced." Jan. 13, 2026, Hr'g Tr. 72:18-25;

- "All of Lexon's [Sompo's] documents should have been produced already," *id.* at 76:10-15, and;

- Penn and USFIC had "just been totally recalcitrant," *id.* at 105:11-14.

Despite the Court's clear direction, Defendants' approach to discovery is, unfortunately, unchanged.  For example, despite being ordered expressly to produce unredacted documents by January 30, 2026, counsel for Penn, Ryan Dry,

2

nevertheless produced redacted documents.  Mr. Dry also has refused to respond to a February 9, 2026, deficiency letter regarding his clients' discovery responses, including his clients' failure to amend or supplement discovery responses and he has refuse to engage in additional document collection and production required by W&T's outstanding discovery.  And his co-counsel has indicated that she does not believe it is worth her time to respond to W&T's counsel's attempts to resolve outstanding discovery issues.

Similarly, Sompo has continued to refuse to comply with this Court's directions regarding discovery, rely on boilerplate objections and refuse to identify when documents are being withheld based on an objection and which objection is the basis for withholding, refuse to comply with document production and written responses required by W&T's outstanding discovery, and continue to abuse the required meet and confer process to delay and obstruct discovery.

The limited documents W&T has finally received in the last few weeks (after two orders of this Court), however, has shed light on why Defendants have taken such an obstructionist approach to discovery. As explained in greater detail in W&T's motion for leave to file a second amended complaint ("Motion to Amend") and the proposed second amended complaint, being filed contemporaneously with this motion, the documents produced to date provide direct and circumstantial evidence of how Defendants and their co-conspirators have engaged in price fixing

and other illegal and anticompetitive behavior since at least 2020. For example, produced documents reveal that Defendants and other sureties coordinated price increases with one another, using brokers as conduits and concealing their conduct.

Perhaps this is why Sompo's counsel argued in October 2025 that W&T should not be entitled to discovery of Sompo's dealings with brokers and other sureties until after W&T "articulate[d] any basis to believe that relevant documents . . . exist." Exhibit 1 (Sompo October 8, 2025 Letter) at 2.[1] Similarly, Penn and USFIC have resisted discovery at every turn, suggesting that there was no basis for W&T's valid discovery requests "if there is no evidence of an unlawful conspiracy in restraint of trade targeting W&T in 2024. . . ." *See* Exhibit 2 (Penn/USFIC September 18, 2025 Letter) at 2. Setting aside the fact that those comments do not even remotely state the proper standard for discovery under Rule 26, the reason for their resistance is now clear—the Defendants knew such documents existed and what those documents show, as further detailed in W&T's Motion to Amend.

Defendants' continued and ongoing pattern of obstruction and non-compliance, which has forced W&T to expend substantial time and resources and delayed progress of this case, is sanctionable under Rule 37 (and W&T reserves the right to seek sanctions). However, at this time, W&T seeks simply to obtain the

---

[1] Out of an abundance of caution, in light of the protective order in this matter, W&T is filing the parties' discovery responses and correspondence under seal.

discovery to which it is entitled, stop the Defendants from wasting the Court's time and resources on needless discovery disputes, and get to the merits of this case so that Defendants' illegal conduct can be stopped and W&T can be compensated for its harm.

Discovery in this case has just begun, with the first significant productions of documents only being received by W&T last month in February. As the Court previously made clear, "[w]e got to get the ball rolling. It doesn't mean that you can't come back if you can't agree to broaden the discovery later based on what is produced." *See* Oct. 22, 2025 Hr'g Tr. at 58:24-59:8. W&T's proposed Second Amended Complaint puts to rest Defendants' unfounded objections about the scope of W&T's antitrust claims. However, regardless of whether the Motion to Amend is granted, discovery in this case is far from completed—the Defendants have not complied with W&T's existing discovery requests, and numerous discovery disputes are currently unresolved and will unfortunately require judicial intervention.

Because of the extensive time this Court has already devoted to this case and Defendants' demonstrated unwillingness to follow this Court's guidance, W&T requests that the Court appoint a special master to address the parties' numerous pending and forthcoming discovery disputes, to enforce compliance with this Court's orders and admonitions to the parties about discovery given the rampant gamesmanship and discovery-related misconduct by Defendants, and to facilitate the

orderly and expeditious completion of discovery in this matter without placing unnecessary burdens upon this Court.

## BACKGROUND

The current discovery period remains ongoing, as the current DCO sets the close of discovery at May 29, 2026. ECF No. 225. Nevertheless, as of W&T's last meet and confer with Defendants on March 3, 2026, Defendants unilaterally declared that they are done with discovery, despite the fact that the discovery period is not over, and their productions remain woefully deficient.

**I.    Defendants' Continued Abuse of the Court's Procedures and False Representations About Not Being at Impasse Have Continued to Stall the Progress of Discovery**

The Court's Procedures understandably require the parties meet and confer and only bring issues to the Court once the parties have reached impasse. *See* Judge Palermo's Court Procedures V. However, Defendants quickly realized that they could preclude W&T from advancing its case and shield from the Court's view their full noncompliance simply by saying that they were not at impasse or that they were willing to meet and confer further, even where they had no intention of changing their position or producing documents.

This delaying tactic dates back to the parties' very first meet and confer in July 2025. Then, Sompo suggested that it was willing to reconsider its position on numerous requests, only to double down on its objections weeks later. *See* Exhibit

3 (W&T August 19, 2025 Letter). Indeed, early in the discovery period, W&T proposed a cadence by which the parties would agree to respond to each other, and the Defendants rejected it. *See* Exhibit 4 (Sompo September 9, 2025 Email).

Instead, Defendants continued their campaign of delay and obstruction. In August 2025, W&T first attempted to bring to the Court's attention the stonewalling that it was receiving from the Defendants. *See* ECF No. 151. The Court denied W&T's motion based on Sompo's representation that "the parties have not reached an impasse." *See* ECF No. 156. Yet Sompo's ultimate position on the issues that W&T sought to have the Court address was virtually identical to their position in August, when they purportedly were not at impasse. *Compare* Exhibit 5 (Sompo August 7, 2025 Letter) to Exhibit 1 (Sompo October 8, 2025 Letter) (remaining at impasse on same core issues).

The Court ultimately took up and decided that narrow set of issues in W&T's favor, ordering Defendants to produce documents in October 2025. *See* ECF No. 199. Yet Defendants still did not comply, and W&T continued to encounter unfounded resistance. W&T attempted to come back to the Court promptly, and filed a motion for a discovery conference on November 21, 2025, based on Defendants' "failure to comply with this Court's Order, dated Oct. 23, 2025." ECF No. 213. But again, Defendants claimed not to be at impasse, and the Court again

7

denied W&T's request for a discovery conference based that representation.  ECF No. 228.

W&T had to return to the Court yet another time in January 2026 and obtain a second order requiring the Defendants to produce documents under penalty of sanctions.  ECF No. 248.  Despite having been reprimanded by the Court, the Defendants have continued to abuse the meet and confer process.  For example, on February 9, 2026, W&T sent deficiency letters to Sompo and Penn and USFIC, identifying numerous deficiencies in all Defendants' productions.  Sompo did not respond until over a month later, on March 16, 2026.  And, to this date, Penn/USFIC Fire have refused to respond to the issues raised in W&T's February 9 deficiency letter except for a cryptic email from a new lawyer for Penn/USFIC who first appeared in this case on February 10, 2026, in which she stated that "We will stand on our positions with the court."  Exhibit 6 (Email from Mo Lovett dated March 10, 2026).

Also on February 9, W&T had proposed a process and format for privilege review and logging, as required by the Court's prior order.  *See* ECF No. 165 ("The parties shall meet and confer regarding the exchange of privilege logs, including the timing for service and format of the privilege logs.").  W&T did not get a response from Penn/USFIC until February 19 and from Sompo until February 26, 2026.

## II. Defendants Continued to Refuse to Produce Documents in Accordance with the Court's Orders

As the Court knows, despite this Court's October 2025 order compelling Defendants to produce documents in response to W&T's June 2025 document requests, Defendants failed to produce documents until the Court held another hearing on January 13, 2026, and ordered them for a second time to produce documents. As the Court noted, Defendants already should have produced their documents by that point and noted that Penn/USFIC had been "totally recalcitrant." Jan. 13, 2026 Hr'g Tr. at 76:10-15, 105:11-14. In no uncertain terms, the Court stated that "I want the documents produced. If I have to have another hearing, I am going to start sanctioning your client. . . . I'm talking about real money." *Id.* at 72:25–73:5.

Despite the Court's direction, after the hearing, W&T did not receive any documents from Penn until just before midnight on January 30, 2026 (the Court's ordered deadline) (and received no documents from USFIC until February 22, 2026). And W&T only received a partial production of a handful of responsive documents from Sompo on February 6, 2026. Most remarkably, despite the Court unequivocally prohibiting Defendants from redacting the documents they produced, Penn did exactly that in its January 30 production. During the January hearing the Court stated:

THE COURT:  I said, give them the stats and give them the documents.  I said that very clearly and wherever it is that you cited to me.

Now, listen to me.

No redacting.  We've got a Protective Order. These are honorable lawyers, and you – and we're all Officers of the Court.  If somebody violates the Protective Order, then you come down here with a motion saying, they violated the Protective order.  That's why you have a Protective Order. It's an Order of the Court.

MR. DRY:  Understood, Your Honor.

*Id.* at 75:12–22 (emphasis added).  In its written order dated January 15, 2026 that required Penn to produce the documents by January 30, 2026, the Court warned that "[f]ailure to comply may lead to the imposition of sanctions."  ECF No. 248, at 4.

Yet, despite this explicit instruction, the production that W&T received on January 30, 2026 ***contained multiple redactions for confidentiality***—not privilege. On January 30, when W&T finally received a production of documents from Penn, Penn had redacted and withheld information from the production, in direct violation of the Court's orders and instructions.  In the cover letter for the production, Penn's counsel stated:

> Due to the nature of the responsive documents and communications, certain of the produced documents contain sensitive and proprietary information that is not responsive to the Court's order and unrelated to "collateral calls and rate increases tied to collateral calls." **Penn has redacted information** in these documents that is highly sensitive, not responsive to the Court's order, and otherwise unrelated to "collateral calls and rate increases tied to collateral calls." Additionally, certain responsive email communications contained highly sensitive and

proprietary attachments that are not responsive to the court's order, or related to "collateral calls or rate increases tied to collateral calls." **Penn has withheld these attachments** as being non-responsive and has denoted such in the production. Further, to the extent certain documents containing some responsive information identifying other clients of Penn that are not independent oil and gas operators, or did not have any collateral calls or rate increases tied to collateral calls, **Penn has redacted the names of these clients** because they are highly sensitive and proprietary and not responsive to the Court's order.

Exhibit 7 (R. Dry January 30, 2026 Letter) (emphases added).

When W&T's counsel immediately raised this issue to Mr. Dry as a violation of the Court's orders, he refused to correct these issues. Instead, Mr. Dry insisted that Penn's January 30 production "fully complie[d] with the Court's order." Exhibit 8 (R. Dry February 3, 2026 Letter).

Because W&T has been consistently mindful of the Court's admonitions to try to work out disputes, W&T engaged with Defendants to try to reach a resolution that did not require a third round of judicial intervention. Although the Court's prior order prohibiting redactions was clear, in an attempt to avoid having to ask the Court to devote more effort and time to address Defendants' continued unwillingness to follow this Court's guidance, W&T suggested an Amended Protective Order that would change the Highly Confidential designation to one of "Outside Counsel Only." This was the very position that Penn/USFIC's counsel himself had taken at the outset of the litigation when he delayed entry of the original protective order by several months.

Yet instead of this being an easy agreement to reach, suddenly Mr. Dry opposed this change and refused to remove USFIC's businessperson designee, Robert Lavitt, from the Highly Confidential designation—the very same businessperson who submitted a false verification on a discovery response (*see*, *infra*, section V). This refusal led to an overly complex three-level designation system in the current protective order. W&T, in an effort simply to move things along and avoid having to further burden the Court with addressing Defendants' continued refusal to comply with their obligations, agreed to create a new "Outside Counsel Only" designation, which is the version of the Amended Protective Order that the Court ultimately entered. *See* ECF No. 269. But from January 30, 2026 until February 21, 2026, when Penn's counsel finally produced unredacted copies of the documents that had been ordered produced in October 2025, Penn was in violation of the Court's orders.

W&T should not have even needed to suggest or agree to an Amended Protective Order to get Penn to produce unredacted documents that the Court had already ordered be produced unredacted. The needless resistance on the Amended Protective Order not only increased W&T's litigation costs, but it prolonged the amount of time that Penn's counsel was in violation of the Court's Orders against redactions, and further stalled and delayed the process of discovery as a whole. At this point, one can only conclude that Defendants' continued obstruction and

recalcitrance is part of an intentional strategy to run out the clock on discovery and, based on the limited documents already produced, shield from discovery their internal documents that will prove their illegal conduct.

## III.    Defendants' Refusal to Properly Review Text Messages

Text messages are one of the key sources of evidence in conspiracy cases, and in the year 2026, it is no surprise to any litigating party that mobile device data is within the scope of the Federal Rules.  From the outset, W&T's discovery has sought text messages within its definition of "documents" and "communications."  *See* W&T Discovery Requests dated June 9, 2025, Definition 7 ("The terms "document" or "documents" includes all electronic data, metadata, system data, residual data, e-mails, text messages, or other electronic communication, whether stored on personal devices, a computer network or backup system, or computer tapes or discs, thumb drives, any other storage device, or any cloud-based storage.").  None of the Defendants had objected to the production of text messages; thus, W&T was surprised to learn for the first time on February 24, 2026, that the Defendants had not searched for or produced text messages from their agreed-upon custodians, despite representing to W&T that their productions were "substantially complete." Exhibit 9 (A. Eva Email February 24, 2026); Exhibit 10 (R. Dry Email February 26, 2026) (falsely asserting that W&T had not produced text messages).  Amazingly, Sompo's counsel first stated that "We believe it is too late in the discovery process

to pursue text messages" even though discovery does not close under the current scheduling order until late May 2026. *See* A. Eva Email February 24, 2026.

W&T has never agreed to nor suggested that it was foregoing pursuing text messages. The parties' negotiations related to search terms was for custodial **email** searches, not text messages. *See, e.g.*, Exhibit 11 (W&T Letter September 22, 2025) (stating that "Nor is W&T representing that by the parties agreeing to exchange these search terms that it is agreeing that search terms are the appropriate tool for identifying all documents."); Exhibit 12 (W&T Letter November 5, 2025) ("W&T's proposal of these additional terms is not intended to supplant or modify the Defendants' obligations to search for and produce responsive documents."). Further, this Court's ESI order expressly states that "[t]he Parties understand and acknowledge that over the course of discovery other types of ESI (including, but not limited to, **mobile device data** . . .) may need to be preserved, collected, and produced." ECF No. 165, at 10 (emphasis added). Further, on February 9, 2026, W&T expressly raised this issue in a deficiency letter to the Defendants: stating that "[w]hile W&T understands that the parties' dialogue regarding search terms has been ongoing, those documents do not encompass the universe of documents sought by W&T's Requests. For example, W&T has sought documents . . . [that will be identified] not through the use of search terms. Non-exhaustively, these may include . . . Text-chat messages."

14

Only after a meet and confer on February 11, a subsequent letter from W&T on February 19, and another meet and confer on March 3 (after Defendants declared in late February that their productions that did not include any text messages were "substantially complete"), did Defendants nominally agree to produce some text messages. But even now the parties are at impasse over Defendants' insistence that they use email-style search terms and connectors to identify text messages, which are notoriously inadequate for identifying conspiratorial text messages. As of the time of this filing, while W&T has produced text messages, W&T still does not have a production of any text messages from Defendants.

## IV. Defendants' Continued Refusal to Provide Discovery Responses Required by the Federal Rules and this Court's Orders

W&T has repeatedly informed the Defendants that they have not complied with the Court's Procedures on boilerplate objections, including the instruction that parties must identify with specificity what documents are being withheld on the basis of an objection (and which objection).

While all of the Defendants' discovery responses suffer from these deficiencies, Penn and USFIC's are the most egregious. Both parties repeat the same boilerplate refrain, claiming without any explanation that every single one of W&T's interrogatories is "not relevant . . . or proportional" and an "impermissible fishing expedition." *See generally* Exhibit 13 (Penn's Second Supplemental Objections & Responses to W&T's First Set of Interrogatories (Jan. 30, 2026)); Exhibit 14

15

(USFIC's First Supplemental Objections & Responses to W&T's First Set of Interrogatories (Jan. 30, 2026)).

The Southern District has repeatedly cautioned that "rote and non-specific objections" are "inadequate" and impermissible under the Federal Rules. *Wolt v. Embankscape Equip.*, *LLC*, No.4:22-cv-2503, 2024 WL 1096563, at *1 (S.D. Tex. Mar. 13, 2024). And this Court's published procedures expressly reiterate this "ban on boilerplate or general objections." Judge Palermo's Court Procedures V.7.

Penn and USFIC's objections track verbatim the language that the Court has prohibited:

| Judge Palermo's Court Procedures: | Penn/USFIC Responses dated 2/23/26: |
|---|---|
| "A party may not object and state, 'Subject to these objections and without waiving them, the response is as follows.'" | "Subject to and without waiving these objections and the objections to the Instructions and Definitions above, Penn . . ." |
| | "Subject to and without waiving these objections and the objections to the Instructions and Definitions above, US Fire . . ." |

The Court's Procedures require that "the response must specifically identify whether information is withheld based on the objections and if so provide enough information about what is not produced or provided to enable further inquiry if appropriate." Judge Palermo's Court Procedures V.7. *Without that specificity*, **W&T has no visibility into what the Defendants are withholding or why**.

16

On February 11, 2026, during a meet and confer, W&T proposed to the Defendants that the parties agree to a schedule by which the parties could evaluate each others' productions, amend previous written responses and objections, and articulate with clarity where documents were being withheld. W&T expressly included itself in this proposal as well, and it is in the process of preparing amended written responses and objections. On February 19, 2026, W&T followed up with a written proposed amended DCO. And yet, despite a proposal that would place *all* parties on equal footing and comply with the Court's Procedures, Defendants have neither agreed nor offered any counterproposal, with Sompo expressly stating that they do not intend to correct their prior deficient responses and objections.

Moreover, on February 23, 2026 (more than a month after the January 13 hearing), Defendants served their written responses to discovery served by W&T in January. And once again, despite the Court's procedures and admonitions, Defendants again refused to provide proper responses and objections to W&T's discovery. Instead, many of their responses stated only that Defendants were willing to meet and confer regarding the requests, or that they had already produced sufficient documents (despite that being flatly incorrect). No specific objections or indications about what documents were being withheld based on any particular objection. In other words, Defendants' responses were to state both that they were done with discovery while simultaneously suggesting more meet and confers. Those

17

are not the meaningful responses required by the Federal Rules or this Court.

## V.      Defendant USFIC Submitted a False Sworn Discovery Response

The importance of having specific objections that comply with the Court's Procedures was underscored by the false sworn verification that USFIC submitted. On August 6, 2025, and again on November 19, 2025, USFIC provided this interrogatory response about prior antitrust allegations, which were verified under oath by Robert Lavitt, USFIC's Senior Vice President of Surety Legal and Claims:



USFIC's **sworn** response that ███████████████████████ ██████ is astonishing, given that as recently as November 2025, USFIC appears to be entering a settlement agreement in *In re: Calif. Bail Bond Antitrust Litig.*, 4:19-cv-00717, ECF No. 615 (N.D. Cal. Nov. 11, 2025).

| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION | Case No. 4:19-cv-00717-JST-DMR |
|---|---|
| THIS DOCUMENT RELATES TO: | STIPULATION AND [PROPOSED] ORDER REGARDING SETTLEMENT WITH UNITED STATES FIRE INSURANCE COMPANY, THE NORTH RIVER INSURANCE COMPANY, AND |
| ALL ACTIONS | SENECA INSURANCE COMPANY |

*Id.* (emphasis added).

After W&T requested that USFIC correct its response and explain its false verification, USFIC finally amended its response on January 30, 2026, to admit ██

████████████████████████████████████████████████████████████████████

████████   W&T was able in this instance to hold USFIC accountable to the truth—however, W&T may not have public information to challenge other responses that USFIC may be hiding behind its improper "subject to and without waiving these objections" convention.  Not only did this gamesmanship necessitate extra work by W&T to finally obtain a truthful response, but it underscores why this type of gamesmanship is sanctionable.

## VI.   Defendants Announce They Believe Discovery is Over

Despite all of these unresolved issues, Defendants have now taken the position that it is now "too late in the discovery process" to produce highly relevant documents W&T has sought for months, Exhibit 9 (A. Eva Email February 24, 2026), and are refusing to respond to W&T's long-pending discovery requests unless W&T "t[ies] its requests to a specific basis in the documents produced to date," Exhibit 10 (R. Dry Email February 26, 2026).

It is absurd for Defendants to simultaneously suggest that they are willing to meet and confer on discovery responses—in order to preclude W&T from seeking relief from the Court on issues of impasse—while also saying that they are

19

substantially completed and they will not provide requested discovery. Both cannot be true, and those statements are inconsistent with the Defendants' representations to the Court in the Docket Control Orders that "[t]he parties have agreed to work cooperatively to propose reasonable extensions to the discovery schedule to the extent necessary as the litigation progresses." ECF No. 162 and 225. This is precisely the type of gamesmanship that W&T wishes to end—W&T asks for the Court's assistance in setting clear deadlines by which the parties will amend written responses and objections to indicate clearly what information is being withheld and on the basis of what objections, and allow all parties to meet each other on the merits and obtain judicial resolution of areas of dispute as appropriate. That is all W&T is seeking to do—to get discovery to which it is entitled and not allow the Defendants to hide the evidence of their conspiracy behind ambiguous objections.

For example, in February 2026, W&T discussed with Defendants the fact that it was unlikely that discovery would be fully completed in light of the parties' as-yet-unresolved objections on various sets of documents, the post-complaint time period, and on the process and format for privilege logs. *See* Exhibit 15 (W&T Email February 19, 2026). However, all Defendants rejected this proposal—in effect, their position seems to suggest that even though W&T only received the discovery to which it had long been entitled just last month in February 2026, suddenly, discovery is over. Moreover, Defendants seem to be treating the Court's

October 23, 2025 order as the outer limit of discovery, rather than an order compelling its beginning. **Those documents—which W&T had to obtain two Court orders to compel—are only a small fraction of the documents at issue in discovery.** Defendants must be precluded from continuing to delay resolution of disputes and resist discovery that is well within the scope of Fed. R. Civ. P. 26.

## ARGUMENT

Courts have the authority, based on both the Federal Rules and their inherent equitable powers, to appoint a special master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C); *see also Moore ex rel. Moore v. Tangipahoa Parish Sch. Bd.*, 912 F.3d 247, 250 (5th Cir. 2018) ("A district court may appoint special masters and other agents pursuant to the court's inherent authority in fashioning equitable remedies.") (internal quotation marks omitted). A special master's "duties may include 'matters that could be addressed by a judge, such as reviewing discovery documents for privilege, or duties that might not be suitable for a judge.'" *Texas v. Google LLC*, No. 4:20-cv-957, 2024 WL 3843728, at *1 (E.D. Tex. Jan. 26, 2024) (quoting Fed. R. Civ. P. 53 advisory committee's note to 2003 amendment). "'[T]he appointment of masters to participate in pretrial proceedings has developed extensively' over recent decades,

21

to assist district courts in 'managing complex litigation.'" *Id.* (quoting Fed. R. Civ. P. 53 advisory committee's note to 2003 amendment).

Appointing a special master to preside over all discovery-related issues and disputes until the completion of discovery is warranted in this case for two key reasons.

*First*, as discussed above and in W&T's Motion to Amend, there are numerous discovery disputes in this case that would require substantial assistance from the Court to resolve. While this Court has already held two hearings and issued several orders to address certain discovery disputes, there are many more that have yet to be resolved.

As noted above, the consequence of Defendants' delay tactics has been that W&T has had to prioritize seeking Court intervention for only the most important discovery issues. But a number of additional deficiencies in Defendants' discovery responses remain outstanding, including, e.g. their failure to (i) adequately review text messages, (ii) identify with specificity what documents are being withheld on the basis of their objections, and (iii) Penn/USFIC's refusal to produce responsive documents post-dating W&T's complaint. Defendants also raised several purported deficiencies in W&T's productions during the parties' March 3, 2026 meet and confer. As the parties continue to review document productions, respond to written discovery, and commence depositions, more discovery disputes are sure to arise.

22

W&T continues to strive to resolve its disputes with Defendants and reach compromises where possible. But as explained above, it is evident that W&T cannot achieve timely resolution of these many disputes simply by continuing to engage with Defendants, who have adopted the tactic of digging in on their positions while continuing to insist the parties are not at impasse, in an effort to run out the clock on discovery. Relying on the Court to resolve all of these disputes would be a substantial drain on the Court and would result in those disputes continuing to drag out and further stall the progress of discovery, given the Court's full docket.

Given the large number of unresolved discovery disputes in this matter, appointing a special master is warranted to facilitate the expeditious completion of discovery and resolution of the parties' disputes, without straining the Court's limited resources. *Google*, 2024 WL 3843728, at *3–4 (appointing special master in an antitrust case based in part on the fact that "the parties have . . . identified a number of discovery issues that will likely require substantial assistance from the Court as the case moves forward," including review of privilege issues, deficiencies in document productions, and future disputes regarding depositions and expert discovery); *DFW Dance Floors, LLC v. Suchil*, No. 3:22-cv-1775, 2024 WL 6044684, at *5 (N.D. Tex. July 2, 2024) (appointing special master to oversee discovery dispute that "has needlessly squandered the resources of the parties, prejudiced Plaintiff['s] attempts to uncover information central to [its] claims, and

put an extraordinary drain on the Court's resources." (quoting *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 113 (D.N.J. 2006))); *United States ex rel. Taylor v. Healthcare Assocs. of Texas LLC*, No. 3:19-cv-2486, 2023 WL 11987209, at *1 (N.D. Tex. Sept. 14, 2023) ("In light of the burden already imposed on the Court and the parties' seeming inability thus far to meaningfully cooperate, coupled with a future trial date and the likelihood of future motion practice, the Court finds that the appointment of a special master is essential to address discovery disputes that cannot be effectively and timely addressed by the Court.").

*Second*, as explained above, Defendants' discovery conduct has been marred by egregious gamesmanship and violations of the Court's orders and admonitions regarding discovery. To list only a few examples, (i) Defendant USFIC submitted a false sworn discovery response; (ii) Defendant Penn failed to comply with the Court's order prohibiting redactions; and (iii) all Defendants have falsely represented they are not at impasse to preclude W&T from resolving discovery disputes sooner. These tactics have necessitated a substantial drain on W&T's resources to secure the discovery to which it is entitled and have (by design) dramatically slowed the pace of discovery in this case.

Given this track record of gamesmanship and misconduct by Defendants, appointing a special master is thus necessary to provide close supervision of Defendants' discovery conduct going forward and to ensure compliance with the

24

Court's orders regarding discovery. *See Suchil*, 2024 WL 6044684, at *5 (appointing special master to oversee discovery where the parties' discovery conduct had "devolved" and Defendants have engaged in "gamesmanship" regarding discovery); *see also Wachtel*, 239 F.R.D. at 113 (appointing a special master where the defendants' obstructionist discovery tactics had "led to a serious disruption in this Court's functioning"); *Moreland v. State Farm Mut. Auto Ins. Co.*, No. 06-cv-01075, 2007 WL 1033453, at *4 (D. Colo. Apr. 3, 2007) (appointing a special master to oversee discovery based on the parties' inability "to proceed in an orderly fashion in conducting discovery"); *Omnium Lyonnais D'Etancheite Et Revetement Asphalte v. Dow Chem. Co.*, 73 F.R.D. 114, 117–18 (C.D. Cal. 1977) (appointing a special master due to the nature of the discovery disputes and "repeated charges of bad faith made by each set of counsel against the other.").

## CONCLUSION

For the reasons set forth above, W&T respectfully asks the Court to grant this motion and enter the attached order appointing a special master pursuant to Federal Rule of Civil Procedure 53 for the limited purpose of overseeing the discovery process going forward and to preside over all discovery-related issues and disputes. W&T respectfully suggests Diana Marshall, The Honorable Vanessa Gilmore, The Honorable Barbara Lynn, or any other individual the Court may determine.

25

Respectfully submitted,

McGuireWoods LLP

*/s/ Megan S. Lewis*
Megan S. Lewis
*Admitted Pro Hac Vice*
mlewis@mcguirewoods.com
888 16th Street N.W., Suite 500
Washington, DC 20006
(202) 857-1716 Telephone
(202) 857-1737 Facsimile

Nicholas J. Giles
*Admitted Pro Hac Vice*
ngiles@mcguirewoods.com
800 East Canal Street
Richmond, Virginia 23219
(804) 775-4760 Telephone
(804) 698-2040 Facsimile

**ATTORNEYS FOR W&T OFFSHORE, INC. AND W&T ENERGY VI, LLC**

**OF COUNSEL:**

Marc Tabolsky
Texas State Bar No. 24037576
S.D. Texas Bar No. 37154
Hicks Johnson PLLC
1550 Lamar Street, Suite 1900
Houston, Texas 77010
(713) 357-5150 Telephone
(713) 357-5160 Facsimile

26

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on March 19, 2026, and in the days that followed, undersigned counsel conferred with Defendants via email regarding the filing of the instant motion, including speaking telephonically with counsel for Defendant Sompo on March 22, 2026.  Counsel for Sompo confirmed by email dated March 22, 2026, that their position is opposed, and requested that W&T indicate in the certificate of conference that "[W&T] declined [Sompo's] request to share the draft motions before filing."

No counsel for Defendants Penn or USIFC agreed to speak with undersigned counsel, and instead responded by email.  On March 21, 2026, counsel for Defendants Penn and USFIC conveyed their position by email that "[w]e would prefer W&T focus on curing [alleged] deficiencies [in W&T's discovery productions] before seeking to expand the scope of this case. As we informed you last week, we are at an impasse on several of those issues given W&T's [alleged] refusal to abide by prior court orders.  Filing new motions while those violations remain unresolved is not productive."  On March 22, 2026, Counsel further requested that "please note in the certificate of conference that you declined to share the proposed motions in advance as well as our request for a Wednesday conference to discuss."  W&T takes this response as opposition.

*/s/ Megan S. Lewis*
Megan S.  Lewis

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2026, Plaintiffs filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

*/s/ Megan S. Lewis*
Megan S.  Lewis