United States District Court
Southern District of Texas

**ENTERED**

May 07, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| W&T Offshore, Inc. and<br>W&T Energy VI, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>Endurance Assurance Corporation, *et al.*,<br><br>*Defendants*. | § § § § § § § § § § § | CIVIL NO. 4:24-CV-3047 |

## <u>ORDER</u>

Pending before the Court is Plaintiffs W&T Offshore Inc. and W&T Energy VI LLC's (together, "W&T") motion for leave to amend, ECF Nos. 276, 278 (sealed), motion to appoint a special master, ECF Nos. 278, 279 (sealed), and motion to expedite review of the motion for sanctions, ECF No. 304. For the reasons discussed below, the Court grants W&T's motion for leave to amend, denies its motion to appoint a special master, and denies its motion for expedited review.

## I.    BACKGROUND

This is an antitrust case. In 1953, Congress passed the Outer Continental Shelf Lands Act ("OCSLA"), permitting the Department of the Interior to "issue[] leases to private companies that allow them to explore, develop, and extract oil and gas from . . . submerged lands in the Outer Continental Shelf (OCS)." *Am. Petroleum*

1

*Inst. v. U.S. Dep't of Interior*, 81 F.4th 1048, 1056 (10th Cir. 2023). "In exchange for receiving these mineral rights, the companies (often called lessees) pay the federal government royalties—a share of their profits based on the 'value' of the oil and gas produced." *Id.*; *see* 43 U.S.C. § 1337(a)(1). In addition to paying royalties, lessees must comply with a plethora of related regulations issued by the Secretary of the Interior. 43 U.S.C. § 1334(b). Some of those regulations require lessees to post bonds sufficient to "guarantee[] compliance with all the terms and conditions of the[ir] lease[s]." 30 C.F.R. § 556.900(a); *id.* § 556.901.

W&T is an oil and gas company that leases land from the federal government in the Gulf of Mexico. To meet its regulatory financial-assurance obligations, W&T obtained bonds from Endurance Assurance Corporation ("Endurance") and Lexon Insurance Company ("Lexon"). ECF No. 36 ¶ 47. W&T also signed an indemnity agreement with U.S. Specialty Insurance Company ("U.S. Specialty") "in connection with any . . . bonds executed . . . on behalf of [W&T]." *Id.* ¶ 51. The indemnity agreement provides that U.S. Specialty "may at any time . . . , in its sole and absolute discretion, require [W&T] to provide collateral, in form and amounts acceptable to [U.S. Specialty] . . . to cover any actual or potential liability, claim, suit, or judgment under any Bond." *Id.* ¶ 52 (original emphasis omitted). It also permits U.S. Specialty "to move some bond obligations to other entities," who in

2

turn become parties to the indemnity agreement, giving "them a direct right of action against [W&T] to enforce [its] provisions." *Id.* ¶ 53. Endurance, Lexon, and other surety companies subsequently joined and issued bonds under this provision. *Id.* ¶¶ 55–59. According to W&T, it has complied with the indemnity agreement, "paid all premiums for all bonds issued," and "remained solvent and capable of meeting its financial obligations." *Id.* ¶ 73.

In April 2024, Endurance and Lexon "demanded that W&T replace" bonds they had previously issued to an unrelated company that went bankrupt. *Id.* ¶¶ 75–78. Believing it had no obligation to do so, W&T declined. *Id.* ¶ 83.

This caused, W&T alleges, Endurance and Lexon to "conspir[e] with others in the offshore surety market to retaliate against W&T, interfere with its contracts and business relationships, and force W&T back into submission." *Id.* ¶ 84. In July 2024, Endurance and Lexon "demanded that W&T pay collateral of $7.5 million in cash without any support or explanation." *Id.* ¶ 85. They also allegedly "encouraged and enlisted the support of other Sureties, in rapid succession, to demand additional collateral," including U.S. Specialty, Pennsylvania Insurance Company ("Penn. Ins."), and United States Fire Insurance Company ("U.S. Fire"). *Id.* ¶ 86. For example, Penn. Ins. demanded an additional $276,000 from W&T. *Id.* ¶ 98. When W&T refused, Penn. Ins. demanded that W&T either release it from its bonds

3

"within 30 days" or provide $11,343,949 in collateral. *Id.*

Similarly, U.S. Specialty "demanded that W&T immediately deposit $23,000,000 in collateral." *Id.* ¶ 103. Likewise, "U.S. Fire demanded that W&T immediately deposit $89,501,222[] as collateral." *Id.* ¶ 104. When W&T refused, they sued, and U.S. Fire increased its collateral demand to $93,492,509. *Id.* ¶¶ 103–05. In total, the sureties have demanded about $250 million in collateral from W&T since 2024. *Id.* ¶ 107.

Despite W&T's attempts to resolve their demands, the surety companies "held fast" and continued to demand cash collateral. *Id.* ¶ 87. W&T contends that this is a part of a conspiracy between sureties to "jointly squeez[e] smaller oil and gas companies," alleging that they "met one or more times in 2024 to jointly increase their premiums, expedite their collateral demands, and change the terms of their contracts and dealings." *Id.* ¶¶ 90, 110, 119.

W&T sued Endurance and Lexon on August 14, 2024, for a declaratory judgment that they could not make unreasonable demands for collateral. ECF No. 1. W&T filed its first amended complaint on December 11, 2024, adding Penn. Ins., U.S. Specialty, and U.S. Fire as Defendants and asserting new claims for illegal boycotting and price fixing under the Sherman Antitrust Act, violations of the Texas Free Enterprise and Antitrust Act and Texas Insurance Code, tortious interference

4

with existing contracts and prospective business relationships, and civil conspiracy. ECF No. 36.

## II.    W&T MAY FILE ITS SECOND AMENDED COMPLAINT.

W&T now moves for leave to file a second amended complaint that will add three new Defendants—IndemCo LP ("IndemCo"), Applied Surety Underwriters LLC ("Applied"), and Amynta Holdings LLC ("Amynta")—and two new claims for unlawful information exchange under the Sherman Antitrust Act and breach of contract based on new, eleventh-hour evidence produced by Defendants. ECF No. 278 at 11–12; ECF No. 276-1 at 1–2, 81–85.

As an initial matter, the parties disagree about which standard applies. Federal Rules of Civil Procedure 15(a) and 16(b) govern pleading amendments. Rule 15(a) applies when the moving party "is not subject to an expired deadline for seeking leave to amend." *Golden v. Westlake Fin. Servs., LLC*, No. 4:24-CV-4093, 2025 WL 2598047, at *2 (S.D. Tex. Aug. 5, 2025), *adopted*, No. 4:24-CV-04093, 2025 WL 2597699 (S.D. Tex. Sept. 8, 2025). "However, when a party seeks to file an amended pleading after the scheduling order deadline for such amendments has passed, the party must meet the more stringent requirements of Rule 16(b) before the Court can apply the liberal Rule 15 standard." *Id.*

Here, the Court's original docket control order set the deadline to amend

pleadings on November 20, 2024. ECF No. 24.  After the case was transferred and reassigned, the Court entered a new agreed docket control order that set the deadline to amend as "N/A," noting in a footnote that "[t]his [agreed] docket control order is not intended to preclude plaintiff's ability to file a motion to amend the complaint under the Federal Rules or orders of this Court." ECF No. 162 at 1 n.2. The Court later entered an Amended Docket Control Order on November 26, 2025, which now governs the case. ECF No. 225. The Amended Docket Control Order also sets the amendment deadline as "N/A" and includes the same footnote from the previous order. *Id.* at 1 n.1.

W&T argues that Rule 15(a)(2) governs its motion to amend because "no deadline for amended pleadings exists under the [Amended Docket Control Order]." ECF No. 278 at 15. Defendants contend that Rule 16(b) applies because the amendment deadline in the original docket control order, ECF No. 24, has passed. ECF No. 289 at 5. Defendants assert that the "Amended Docket Control Order . . . did not reference the amended pleadings deadline . . . because the deadline had passed over a year earlier," and apparently "all parties agreed [that] the deadline had passed." *Id.* at 5 & n.5 (original emphasis omitted).

Defendants miss the mark. True enough, all parties may have understood that the original amendment deadline had passed. Nonetheless, the parties—including

6

Defendants—expressly agreed to list the operative amendment deadline as "N/A" in the Amended Docket Control Order. They also agreed the "N/A" amendment deadline was "*not intended to preclude plaintiff's ability to file a motion to amend the complaint under the Federal Rules or orders of this Court.*"  ECF No. 225 at 1 & n.2 (emphasis added). This language indicates the parties intended Rule 15 to apply to future amendments since Rule 16 would have applied if the parties had not included the footnote. But they did include the footnote.

Additionally, Defendants could have insisted that the parties keep the original docket control order's November 20, 2024 amendment deadline—i.e., simply copy and pasted the expired deadline—but they did not. Defendants might claim this was not necessary because the deadline had already passed. But then why did they include an "initial disclosures" deadline of June 30, 2025, which had also already passed, in the Amended Docket Control Order? *See* ECF Nos. 162, 225. Clearly, Defendants treated the amendment deadline differently than other expired deadlines. Hence the footnote.

In sum, Defendants agreed to a docket control order that expressly permits W&T to move to amend. This language would mean nothing, however, if the Court applied Rule 16 because Rule 16 would have applied even without the footnote.  The Court declines to read the parties' agreed language as superfluous. Rule 15(a)

7

applies.

Rule 15(a) "provides that a district court 'should freely give leave [to amend] when justice so requires.'" *Golden*, 2025 WL 2598047, at \*1 (alteration in original) (quoting FED. R. CIV. P. 15(a)(2)). Generally, courts allow liberal amendments "to facilitate the determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Id.* (quoting *Carter v. H2R Rest. Holdings, LLC*, No. 3:16-cv-1554, 2017 WL 1653622, at \*2 (N.D. Tex. Apr. 3, 2017), *adopted*, No. 3:16-cv-1554, 2017 WL 1608751 (N.D. Tex. Apr. 28, 2017)). In other words, "Rule 15(a) evinces a bias in favor of granting leave to amend, and the Court must have a substantial reason for denying such a request." *Id.* (internal quotation marks omitted) (quoting *Amaru Ent., Inc. v. Brent*, No. 3:22-cv-2677-B, 2023 WL 3575562, at \*2 (N.D. Tex. May 19, 2023)). In determining whether substantial reason exists to deny leave under Rule 15(a), "[c]ourts consider factors such as 'undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party.'" *Id.* at \*2 (quoting *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 770 (5th Cir. 1999)). Each factor favors amendment here.

First, W&T maintains that it "moved for leave promptly after receiving the discovery that supports its proposed amendments" and that it "could not have sought

these amendments earlier." ECF No. 278 at 15–16. Defendants argue that W&T could have sought its amendments earlier because the "two new claims are based on the same underlying facts as the antitrust and declaratory judgment claims in [W&T's] [first amended complaint]" and because "publicly available information predating the [first amended complaint] made clear Applied and Amynta were separate entities" and "W&T was well aware of IndemCo's role . . . before filing the [first amended complaint]." ECF No. 289 at 18.

Defendants' arguments ring hollow. Defendants do not dispute that W&T served them discovery requests in June 2025. ECF No. 278 at 5. They do not dispute that W&T had to seek—and win—two Court orders to compel that discovery. *Id.*; ECF Nos. 199, 248. They do not dispute that they did not produce, at least partially, the requested documents until February 23, 2026. ECF No. 278 at 11. They do not dispute that W&T's proposed second amended complaint is based on information learned from that belated production. *Id.* at 11–12. The fact that W&T's new claims are based on the same underlying facts means nothing since they are based on information recently obtained. Nor does the fact that W&T knew Applied and Amynta are separate entities or knew IndemCo's "role" in the surety business mean that W&T knew whether or how Applied, Amynta, or IndemCo were involved in the alleged antitrust scheme at issue. **In any event, Defendants cannot complain**

9

**about a delay they have caused**. The Court concludes that W&T seeks to file its second amended complaint in good faith and without undue delay or dilatory motive.

Second, Defendants argue permitting W&T to amend will cause them undue prejudice. For example, Endurance and Lexon contend that "[r]estarting the discovery process" when "the parties are near the end [of discovery] would be highly prejudicial, particularly as the [second amended complaint] largely retreads the [first amended complaint]." ECF No. 289 at 14. Similarly, Penn. Ins. and U.S. Fire assert that the second amended complaint "drastically alter[s] the scope of the case in terms of subject matter, time period, and number of involved parties." ECF No. 293 at 14.

These arguments fall flat. While the second amended complaint may require additional discovery to investigate the expanded time period and new Defendants, it hardly amounts to a "restart" of discovery. In fact, Endurance and Lexon admit the second amended complaint "largely *retreads* the FAC," more or less conceding that it does *not* drastically alter the scope or nature of the case. ECF No. 289 at 14 (emphasis added). As the Court made clear, the discovery deadline can be extended to provide more time as needed. Oct. 16, 2025 Hr'g Tr., ECF No. 192 at 20:10–14. Defendants also agreed "to work cooperatively to propose reasonable extensions to the discovery schedule to the extent necessary as the litigation progresses." ECF No. 225 at 1 n.1. While the litigation is progressing, albeit slowly due to Defendants'

sluggish discovery production, it can hardly be said as Defendants claim that the parties are near the end of discovery. Instead, Plaintiffs have requested the appointment of a Special Master because Defendants have not complied with this Court's order to produce documents and, therefore, an extension for additional discovery appears inevitable. That is not prejudice; it is just the reality of litigation.

Defendants also argue "the delay inherent in W&T's proposed amendment would prejudice" them because "it would continue to diminish [their] prospects of ever receiving [their] contractually owed collateral from W&T." ECF No. 289 at 14; ECF No. 293 at 14–15. But Defendants put the cart before the horse. They have not proven they are likely, much less actually are, contractually owed collateral from W&T. Nor have they proven that W&T is likely insolvent. In fact, the Court denied Penn. Ins. and U.S. Fire's motion for a preliminary injunction, finding they "offered no evidence that Plaintiffs are insolvent, dissipating or transferring assets, preparing to file for bankruptcy, facing bond claims or even soon-to-be filed bond claims." R&R, ECF No. 140 at 12, adopted, Order, ECF No. 275. Endurance and Lexon then *voluntarily withdrew* their motion for a preliminary injunction that sought to force W&T to put up collateral. ECF No. 105 (withdrawing ECF No. 30). Defendants' fear that W&T is on the verge of collapse currently appears to be unfounded.

Accordingly, W&T may file its second amended complaint.

### III.   THE COURT WILL NOT APPOINT A SPECIAL MASTER.

W&T also asks the Court to "appoint a special master to address the parties' numerous pending and forthcoming discovery disputes, to enforce compliance with this Court's orders and admonitions to the parties about discovery given the rampant gamesmanship and discovery-related misconduct by Defendants, and to facilitate the orderly and expeditious completion of discovery." ECF No. 279 at 5–6.

"Federal Rule of Civil Procedure 53(a)(1) permits a district court to appoint a special master only to (1) 'perform duties consented to by the parties,' (2) 'hold trial proceedings and make or recommend findings of fact if appointment is warranted by: some exceptional condition; or the need to perform an accounting or resolve a difficult computation of damages,' or (3) 'address pretrial and posttrial matters that cannot be effectively and timely addressed by the assigned judge.'" *Osorio v. Martin*, No. 5:25-CV-1191-DAE, 2026 WL 326712, at *3 (W.D. Tex. Jan. 6, 2026) (quoting *Ricks v. DMA Cos.*, No. 1:22-CV-773-LY, 2023 WL 105100, at *1 (W.D. Tex. Jan. 3, 2023)). Courts may appoint special masters "only in exceptional circumstances." *Id.*; FED. R. CIV. P. 53(b) (providing that referral to a master "shall be the exception and not the rule"); *Goins v. Hitchcock I.S.D.*, 191 F. Supp. 2d 860, 866–67 (5th Cir. 2002).

The Court finds no exceptional circumstances to warrant a special master. The Court acknowledges that discovery is lagging, but that is an issue the Court is well-

equipped to handle. To that end, W&T should inform the Court of any outstanding discovery disputes and the Court will schedule hearings to resolve them. The Court already admonished Defendants for their dilatory stonewalling. Jan. 13, 2026 Hr'g Tr., ECF No. 249 at 69:20–70:4, 71:14–15, 72:8–73:6. The Court will not tolerate further obstruction. **Any party failing to comply with this Court's orders to produce discovery will suffer the appropriate sanctions**. *Id.* at 73:1–6.

## IV.    CONCLUSION

Accordingly, the Court **GRANTS** W&T's motion for leave to amend. ECF Nos. 276, 278. W&T may file its second amended complaint.

The Court further **DENIES** W&T's motion to appoint a special master, ECF Nos. 277, 279.

The Court further **DENIES** W&T's motion to expedite consideration of its motion for sanctions. ECF No. 304. The Court will consider W&T's motion for sanctions, ECF No. 302, when it is ripe.

**IT IS SO ORDERED.**

Signed on May 6, 2026, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**