# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ENDURANCE ASSURANCE CORPORATION AND LEXON INSURANCE CO., <br><br> Defendants. | Civil Action No. 4:24-CV-03047 |
| U.S. SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, <br><br> Defendants. | Civil Action No. 4:24-CV-04113 |
| UNITED STATES FIRE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, <br><br> Defendants. | Civil Action No. 4:24-CV-04395 |
| PENNSYLVANIA INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> W&T OFFSHORE, INC., <br><br> Defendant. | Civil Action No. 4:24-CV-04400 |

## PENNSYLVANIA INSURANCE COMPANY AND UNITED STATES FIRE INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO W&T's MOTION FOR SANCTIONS AND DEPOSITION ORDER

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................1

    I.     W&T Provides No Basis For Sanctions.................................................1

          A.     Penn Did Not Violate the Court's Discovery Orders...................1

               1.     Penn Did Not Violate the October 23, 2025 Order ..........1

               2.     Penn Did Not Violate the January 2026 Orders ...............4

               3.     The Timing of Production of Documents to Third Parties Did Not Violate the Court's January Orders.....................8

               4.     The Discovery Ultimately Confirmed That W&T Had No Basis For Alleging a Collateral Demand Conspiracy.......8

          B.     USFIC's Response to Interrogatory No. 13 Does Not Provide A Basis For Sanctions...................................................................9

          C.     Penn and USFIC's Discovery Objections Did Not Violate the Federal Rules or Otherwise Provide a Basis for Sanctions ......11

          D.     Penn and USFIC Did Not Violate the Court's Procedures. ......14

                1.     Penn/USFIC Did Not Violate Section V.7 of the Court's Procedures.....................................................................14

                2.     Penn/USFIC Did Not Violate Section V.1 of the Court's Procedures.....................................................................16

                3.     A Single Inadvertent Email Does Not Warrant Sanctions ....................................................................................18

          E.     Penn and USFIC Have Not Violated the Duty of Candor ........19

           F.     The Whole of W&T's Motion Does Not Exceed the Sum of Its Demonstrably Inadequate Parts ...............................................23

          G.     The Request for a 30(b)(6) Deposition on Discovery Should Be

Denied ..................................................................................................................25

II. Penn/USFIC Should Be Awarded Their Fees and Costs for
Responding to the Motion ..................................................................................26

CONCLUSION ..............................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Calsep, Inc. v. Intelligent Petroleum Software Sols., LLC*, No. 4:19-CV-1118, 2021 WL
1729169, at *2 n.3 (S.D. Tex. Apr. 29, 2021)..................................................................20

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)................................................20, 28

*Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995).............................................................20

*Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008)........................................................27

*In re Moore*, 739 F.3d 724, 730 (5th Cir. 2014) ................................................................20

*Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ...................................................18

*N. Alabama Fabricating Co., Inc. v. Bedeschi Mid-W. Conveyor Co., LLC*, 2018 WL
276772, at *5 (D. Kan. Jan. 3, 2018)............................................................................. 11

*Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, 2018 WL 741795, at *2
(D. Kan. Feb. 7, 2018) .................................................................................................28

*Richard v. Inland Dredging Co., LLC*, 2016 WL 5477750, at *4 (W.D. La. Sept. 29,
2016) .......................................................................................................................... 11

*Romero v. Atchison*, 2019 WL 13155647, at *2 (N.D. Ill. Jan. 24, 2019) ........................ 11

*United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, No. 4:21-CV-02024, 2023 WL
2563239, at *9 (S.D. Tex. Feb. 10, 2023)......................................................................13

**Other Authorities**

Judge Palermo's Court Procedures at V.1 ........................................................................ 17

Judge Palermo's Court Procedures at V.7 ........................................................................ 15

**Rules**

Fed. R. Civ. P. 37(a)(5)(B) ............................................................................................. 27

Fed. R. Civ. P. 37(b)(2)(C) ............................................................................................. 27

## INTRODUCTION

W&T Offshore, Inc. and W&T Energy VI, LLC's (collectively "W&T") Motion for Sanctions (the "Motion") is meritless because it is factually inaccurate and makes no serious attempt to demonstrate that the conduct it alleges warrants sanctions. Instead, it pairs (i) a lengthy "background" section rife with misstatements and omitted context with (ii) a brief "argument" section relying on sweeping, conclusory, and unsupported assertions with no attempt to apply the applicable standard for imposing sanctions to any specific conduct alleged. Lacking a credible basis for sanctions, W&T has instead thrown a grab bag of factually unfounded and legally insufficient allegations at the wall, hoping that something sticks.

The Motion is therefore itself sanctionable. Sanctions are a serious business requiring a showing of "bad faith" or "willful misconduct." W&T had no credible basis for seeking such relief here. Far from it, the Motion's deficient content, together with its timing and other circumstances, strongly suggest a highly suspect motivation for its filing. The Motion should therefore be denied, and Penn/USFIC should be awarded the fees and costs they have incurred in responding to it.

## ARGUMENT

I.    **W&T Provides No Basis for Sanctions**

A.    **Penn Did Not Violate the Court's Discovery Orders**

1.    **Penn Did Not Violate the October 23, 2025 Order**

Penn complied with the Court's October 23, 2025, Order by searching for and

producing the documents the Order required.[1]  W&T takes issue with the pace of production, but there was no date in the Court's Order, and the timing of production did not reflect a refusal to comply with it.  Instead, it reflected the various steps in the process that had to be completed for the production required by the Order to occur.  Those included (i) agreeing on search terms and custodians, (ii) conducting the search, (iii) identifying and reviewing responsive documents pursuant to the agreed parameters, (iv) the holiday season; and (v) clarifying which accounts needed to be produced under the Court's Order.

W&T ignores this context—including that Penn/USFIC first proposed search terms and custodians on September 24, 2025, Ex. 1, and then sent multiple interim follow-ups through November 5, 2025, when it did not hear back.  *See* Exs. 2-4; App. A (providing full timeline).  The parties then negotiated terms and custodians for all of W&T's 60+ requests (including but not limited to the documents that were the subject of the Court's October 23 Order) until the parties reached agreement on December 15, 2025. Ex. 12.  A party seeking to shirk its duties in bad faith does not repeatedly attempt to push the process forward by seeking agreement on a search protocol.

---

[1] The Court's October 23, 2025, Order required Pennsylvania Insurance Company ("Penn") to produce "documents sufficient to show collateral calls and rate increases tied to collateral call they made to independent oil and gas operators, and documents sufficient to show communications with other sureties, reinsurers, McGriff and IndemCo."  Dkt. 199 at 2.

Just as it ignores the timing of agreement to the search protocol, W&T does not even attempt to show that the 45 days between that agreement and the production somehow reflected disobedience of the Court Order. Nor could it. Penn/USFIC still had to identify, review, and produce the documents during this period, much of which occurred over the holiday season, and, until the January 15 Order required a complete focus on the documents addressed in the October 23 Order, *see* Dkt. 248 at 3-4, those documents were part of the processing of all documents responsive to W&T's 60+ document requests. Further, the accounts that needed to be produced were still in flux until the January 15, 2025 hearing (two weeks before production) when the Court narrowed the number of accounts involving collateral demands that needed to be produced from 27 to 7. *Id*. at 3–4.

W&T's Motion ignores this background in favor of misleading assertions that ignore the relevant context. <u>First</u>, it asserts that Penn had only produced eight documents and that it had not provided notice to operators under the NDAs as of December 19, 2025. Mot. at 4. It ignores that this was just four days after W&T had agreed to Penn's proposal on search terms and custodians. Further, Penn could not tell oil and gas operators what was to be produced until it completed its search and review of the documents and knew what was to be produced.

<u>Second</u>, W&T asserts that on November 14, 2025, "counsel conveyed that he had not even begun reviewing documents and made no proposal, nor any specific

3

date, by which he intended to comply with the Court's order." Mot. at 3. Yet on the same page of the cited transcript, Penn/USFIC counsel stated: "If we can agree today on search terms, then we would get you something within 30 days."[2] W&T misrepresents what happened by ignoring the search-terms issue.

Third, as a supposed showing of the inaccuracy of earlier representations of Penn counsel that Penn was complying with the Court's Order, W&T quotes the Court's January 15, 2026 observation that "Counsel did not even know the volume of documents that is responsive to the Court's order." Mot. at 4 (quoting Dkt. 248 at 3). Again, W&T misleads. Counsel's statement came just after the Court had, at the hearing, substantially narrowed the universe of accounts involving collateral demands requiring production—from 27 down to approximately 7. See Dkt. 248 at 3–4. The statement referred to Counsel's lack of knowledge of how many documents there were for the subset of responsive accounts once the Court had narrowed it. It is entirely reasonable that Counsel did not know offhand the number for the narrowed group given that the narrowing had just happened.

## 2. Penn Did Not Violate the January 2026 Orders

W&T asserts that Penn should be sanctioned for violation of January 2026 Orders of the Court by limited redactions that Penn made in its January 30

---

[2] Mot. Ex. 1, Nov. 14, 2025 Meet & Confer (M&C) Tr. at 00:03:18.187–00:03:24.627; *id*. at 00:03:55.787–00:04:15.827 (stating that the parties had agreed that agreement to search terms would precede production and that "if you want a quicker production, let's get through it and we can get started.").

production of information that was (i) competitively sensitive and/or (ii) was nonresponsive because it involved accounts that the Court said that Penn did not have to produce. Mot. at 5–6. That is wrong. Those redactions did not violate the Court's Orders, nor did withholding nonresponsive attachments. Further, W&T fails to tell the Court that Penn immediately offered to produce them to opposing counsel on an outside-counsel's eyes only basis.

W&T relies on the Court's statement, "Now, listen to me. No redacting. We've got a Protective Order." Mot. at 4 (citing Jan. 13, 2026 Hr'g Tr. at 75:15–16). In context, however, it is clear in at least three ways that the Court was not referring to the type of information that Penn redacted. <u>First</u>, the only discussion of redaction to that point did not involve that type of information but rather came in the context of discussing Penn counsel's previous offer to redact the names of oil and gas operators to allow for production of documents at an earlier point pending compliance with NDA requirements. Jan. 13, 2026, Hr'g Tr. at 70:19-25.

<u>Second</u>, at the hearing, the Court substantially narrowed the universe of accounts requiring production and stated that Penn did not have to produce "anything" from those accounts.[3] Where the Court said Penn was not required to

---

[3] Specifically, the Court expressly excluded (i) onshore accounts ("Fourteen and a half were onshore. They're irrelevant. *You don't need to produce anything there.*" *Id.* at 74:4–5); (ii) accounts outside the relevant timeframe ("The two outside the timeframe *you don't have to produce that.*" *Id.* at 74:15–16); and (iii) preexisting collateral arrangements ("Then, *I don't think you need to produce anything there.*" *Id.* at. 74:23–24) (emphases added).

produce "anything" from certain accounts, Penn was certainly justified in believing it was not required to produce information from those accounts.

Third, immediately after the "No redacting" statement, the Court said the following: "We've got a Protective Order. These are honorable lawyers, and you— and we're all officers of the Court." *Id*. at 75:16–21. This rationale necessarily did not apply to competitively sensitive information that Penn offered to provide to those very officers of the Court.

W&T itself further confirmed the reasonableness of Penn/USFIC's approach at the parties' February 11, 2026 meet and confer where W&T counsel insisted that competitively sensitive information of exactly the type Penn had redacted *must* be designated as "Outside Counsel Eyes Only":

> "[W]hat we need is an agreement that all parties are going to designate information that is competitively sensitive under that outside counsel only provision, which means that you are not going to be then producing information to Lexon that can go to their business people . . . . That's highly competitive."

Ex. 13 (Feb. 11, 2026 M&C Tr.) at 00:05:31.191–00:05:52.231; 00:08:56.111– 00:09:13.471.

The Amended Protective Order now codifies that designation. *See* Dkt. 269 at 3–4 (¶ 2(b)). Penn simply applied redactions in lieu of producing competitively sensitive proprietary information when the Protective Order had not yet been adapted to protect it. Penn then immediately informed W&T of what was withheld

6

and offered to produce it to outside counsel.[4]  W&T has never disputed that the redacted information falls into one or both categories.

W&T fails to inform the Court of any of this.  Instead, it states "When W&T immediately raised this as a violation of the Court's orders, Mr. Dry simply stated that it was not a violation." Mot. at 5.  That is false.  Mr. Dry did not "*simply* state that it was not a violation."  Mr. Dry *also* offered to provide the information to outside counsel in the same letter.  Mot. Ex. 4  (R. Dry Feb. 3, 2026 Letter) at 1–2.  W&T also misleadingly tells the Court that the information was not produced until February 21st, while omitting this was just after the entry of the Amended Protective Order providing for the outside counsel eyes only designation.

Finally, W&T asserts that the "improper redactions necessitated additional expense by W&T to negotiate and accommodate processes that it should never have had to incur." Mot. at 5.  "Negotiate and accommodate processes" deliberately uses vague terminology to obscure what happened—*i.e.*, the offer to produce the documents to outside counsel and that the the documents after entry of an Amended Protective Order providing for the designation.

---

[4] *See* Mot. Ex. 3 (R. Dry Jan. 30, 2026 Letter) at 1–2 (letter describing the nature of the redactions); Mot. Ex. 4 (R. Dry Feb. 3, 2026 Letter) at 2 ("[I]n the interest of avoiding unnecessary motion practice, Penn is willing to make the unredacted materials available for review by W&T's outside counsel only …. If, after that review, you identify any redaction you believe contains responsive information, I have no problem discussing it further."); Mot. Ex. 16 (R. Dry Feb. 19, 2026 Email) (upon entry of amended protective order "[W]e will produce the unredacted, non-privileged documents from our last production to you by Monday.").

7

### 3. The Timing of Production of Documents to Third Parties Did Not Violate the Court's January Orders.

W&T also faults Penn for the timing of NDA notices to third parties without any explanation of how it violated the January Orders. Mot. at 6. Nor could it given that the Order set a production deadline that Penn met. The Court did not prescribe any procedure related to NDAs and instead made clear that its sole concern was that Penn could not use the NDAs to delay production past the Court-ordered deadline. Jan. 13, 2026 Hr'g Tr. at 72:12–15 ("I'm not waiting for your NDA and for you to go negotiate whatever you want to negotiate. Let those people come into court and file something in front of me. That's what I am here for."). Nor was there anything unreasonable about the timing of production to the third parties. Penn devoted substantial resources to meeting the Court's deadline between the January 15 Order and the date of production, and it produced the documents to be produced to the third parties when they were ready.

### 4. The Discovery Ultimately Confirmed That W&T Had No Basis For Alleging a Collateral Demand Conspiracy

Finally, nothing in the party or third-party discovery produced supported W&T's claim of a collateral-demand conspiracy. *See* Dkt. 293 at 14-17. Penn/USFIC's lack of any motive to delay the production of documents that supported their position further refutes any suggestion that Penn/U.S. Fire were trying to delay the production of documents.

8

**B.     USFIC's Response to Interrogatory No. 13 Does Not Provide A Basis For Sanctions**

W&T additionally seeks sanctions against USFIC (eight months after the fact) based on its response to Interrogatory No. 13.  Mot. at 16.  That interrogatory asked USFIC to "Identify any allegations of antitrust violations, anticompetitive behavior, or unlawful conduct that have been made against You."  Mot. Ex. 8 (Aug. 6, 2025 Resp.) at 13.   USFIC's response objected on multiple grounds—vagueness, overbreadth, lack of relevance, lack of proportionality, and as an impermissible fishing expedition.  *See id.*; Mot. Ex. 9 (Nov. 19, 2025 Suppl. Resp.) at 13.  USFIC then answered "subject to and without waiving these objections," and "aside from W&T's baseless allegations herein, *and based on USFIC's investigation to date*, none." Mot. Ex. 9 at 13 (emphasis added).  W&T claims that the declaration was "false" because it did not include *In re California Bail Bond Antitrust Litig.*, 4:19-cv-00717 (N.D. Cal.), where USFIC was a defendant.  Mot. at 7.

This response provides no basis for sanctions.  It was accurate because USFIC expressly qualified it as "based on USFIC's investigation to date," and the investigation was focused on markets relevant to this case.  USFIC also made clear that to the extent the request was intended to encompass markets beyond this case, USFIC objected to the request as vague, overbroad, and calling for irrelevant information.  Mot. Ex. 8 at 13.

The focus also was reasonable given the irrelevance of that market.  W&T

9

itself confirmed its reasonableness by acknowledging the irrelevance of the bail bond litigation at the October 22, 2025 hearing:

> Lexon Insurance Company does a lot of business, including the bail bonds business that they're sued for in California. *We're not asking for any of that.* This is a slice of their business dealing with offshore surety bonds for independent oil and gas operators in the Gulf of America. It's not everything.

Oct. 22, 2025 Hr'g Tr. at 55:8–13. W&T asserts that a statement made at an October hearing could not have provided for an August discovery response. Mot. at 16. That misses the point that W&T's later response confirms that USFIC's declarant was reasonable in focusing his investigation on relevant markets.

Inadvertent omissions of irrelevant information from interrogatory responses are not a basis for sanctions.[5] Knowing this, W&T asserts that USFIC's "obfuscation was a unilateral determination to hide unfavorable information in its sworn response." Mot. at 16. This is entirely unsupported. There is no basis for claiming that USFIC was deliberately trying to "hide" the existence of the bail bond lawsuit. Nor would USFIC have had any incentive to try to do so when the information was

---

[5] *See Richard v. Inland Dredging Co., LLC*, 2016 WL 5477750, at *4 (W.D. La. Sept. 29, 2016) (finding that "plaintiff has not met the 'high' threshold for the imposition of sanctions" where "it appears to this Court that any such deficiencies in its discovery responses was inadvertent and that the responses were not provided in bad faith, or in any willful attempt to abuse the judicial process"); *Romero v. Atchison*, 2019 WL 13155647, at *2 (N.D. Ill. Jan. 24, 2019) ("Pointing to errors and inaccuracies is not enough to conclude that defense counsel acted in bad faith"); *N. Alabama Fabricating Co., Inc. v. Bedeschi Mid-W. Conveyor Co., LLC*, 2018 WL 276772, at *5 (D. Kan. Jan. 3, 2018) (denying sanctions for allegedly false and misleading interrogatory responses, finding "no evidence that at the time of signing Defendants knew their answers and objections to Plaintiff's First Interrogatories . . . were inaccurate").

both irrelevant to this case and a matter of public record.

Finally, W&T was not prejudiced by the response. The bail bond lawsuit is a matter of public record (and thus could not have required substantial resources to identify), and W&T's quoted statements confirm it is irrelevant to this litigation. USFIC also agreed to supplement its response upon request from W&T in response to its December 23, 2025 letter. Mot. Ex. 10 (R. Dry Jan. 8, 2026 Letter) at 4–5.[6]

### C.    Penn and USFIC's Discovery Objections Did Not Violate the Federal Rules or Otherwise Provide a Basis for Sanctions

W&T briefly claims that Penn and USFIC committed violations of the Federal Rules. Yet it fails to identify any such violations, much less any that merit sanctions. The Motion first asserts that "Penn and USFIC objected to all of W&T's First Requests for Production of documents on the basis that they would not respond to discovery until a ruling on a motion to dismiss." Mot. at 8 (citing Mot. Ex. 11 (July 9, 2025 First RFP Responses)). W&T fails to acknowledge that the parties resolved that objection the same month it was raised after Penn and U.S. Fire elected not to

---

[6] The Motion quotes a four-word fragment from that letter ("side disputes over semantics") while ignoring the rest. Mot. at 7. The full passage reads:

> "[T]o avoid side disputes over semantics and to the extent Interrogatory No. 13 is interpreted as calling for disclosure of any antitrust allegations of any kind, USFIC will supplement its response to identify that matter, while expressly stating that it is unrelated to the claims and markets alleged here and was resolved without admission of wrongdoing."

Mot. Ex. 10 (R. Dry Jan. 8, 2026 Letter) at 4–5.

11

seek a stay of discovery pending the motion to dismiss.[7]

The Motion next asserts that Penn and USFIC objected to most of W&T's Second RFPs as a "fishing expedition."  Mot. at 8–9.  But there is nothing wrong with that objection; it is firmly rooted in the Court's authority.  *See United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, No. 4:21-CV-02024, 2023 WL 2563239, at *9 (S.D. Tex. Feb. 10, 2023).  Further, it simply elaborated on the objection in the requests that the request was not "proportional to the needs of this case."

Further, Penn/USFIC asserted these objections in good faith and in most instances either (i) agreed to produce a subset of documents tailored to the conspiracy that W&T alleged (Ex. 12 at Resp Nos. 3, 7, 10–12, 14–15, 18–20, 22, 24–25, 29–30, 33–34); (ii) stated that there were no such documents (*Id*. at Resp. Nos. 6, 24, 26), or (iii) offered to meet and confer to see if the parties could agree on a narrower request (*Id*. at Resp. Nos. 23, 31–32).  W&T does not even attempt to identify a single instance where the objection was not asserted in good faith.  This is presumably because W&T knows there was a good-faith basis for asserting the objection when so many of W&T's requests were not properly tailored to the actual conspiracy W&T alleged in the First Amended Complaint—*i.e.*, a conspiracy to

---

[7] By email dated July 30, 2025, W&T counsel wrote: "Ryan, yes, we take your email as confirmation that you are withdrawing your objection to W&T's discovery requests based on the motions to dismiss." Ex. 14 at 2.  The objection also was omitted from Penn and USFIC's responses to W&T's Second and Third RFPs.  *See* Mot. Ex. 12 (Penn and USFIC's Objections and Responses to W&T's Second RFPs (Aug. 6, 2025)).

coordinate collateral demands on W&T in 2024.

Finally, W&T complains that Penn and USFIC have "refused to produce documents within the scope of discovery, claiming the need for a threshold evidentiary showing that does not exist under Rule 26." Mot. at 9. W&T ignores that the Court itself relied on this formulation. *See* Mot. Ex. 13 at 2 (stating in September 2025, as "the case progresses, if documents and information dated prior to 2024 become relevant, then, as I stated, we can discuss broadening our responses.").[8] And again, W&T both (i) fails to point to any specific request where Penn asserted the objection in bad faith and (ii) ignores that it simply elaborated on the objection that the requests called for information that was irrelevant and disproportionate to the needs of the case.

W&T then argues, "Yet even when W&T has pointed to evidence of conspiracy, they insist they are entitled to dismiss it, based only on their subjective opinion." Mot. at 9. W&T then provides no citation or further explanation. It is absurd to offer this type of unsupported assertion to support a motion for sanctions.

W&T then pivots to argue that "Penn withheld documents for months based on improper objections based on NDAs that related to relevance and confidentiality."

---

[8] The Court then expanded that period by six months at the October 22, 2025 hearing, by setting it at "June 29, 2023 through 'the filing of the lawsuit'" (Oct. 22, 2025 Hr'g Tr. at 54:17–19), while expressly acknowledging the possibility of broadening "discovery later based on what is produced" (id. at 59:6–8).

13

Mot. at 9. W&T provides no support for this assertion, and it is untrue. The production timing for the documents resulted not from NDA obligations but rather from the amount of time required to agree on a search protocol, review and identify responsive documents, and then produce them based on the accounts identified by the Court.

### D. Penn and USFIC Did Not Violate the Court's Procedures.

#### 1. Penn/USFIC Did Not Violate Section V.7 of the Court's Procedures

W&T argues that Penn and USFIC "ignored" § V.7 of the Court's procedures in its responses to W&T's Second Requests for Production and then "rejected" W&T's proposals for mutual supplementation instead engaging in "gamesmanship and delay." Mot. at 9–10, 11 n.2. Neither is true. <u>First</u>, Penn and USFIC did not "ignore" the rule. As an initial matter, the rule was not part of the Court's procedures until September 15, 2025, and responses to W&T's second set of requests were served on August 6, 2025. *See* Mot. Ex. 8.

Further, the rule does not prohibit use of the "subject to" phrase altogether. Instead, it provides that a "party who objects to a discovery request and also responds 'subject to the objections' must indicate whether the response is complete" and "must specifically identify whether information is withheld based on the objections and if so provide enough information about what is not produced or provided to enable further inquiry if appropriate." Judge Palermo's Court Procedures at V.7.

14

Penn and USFIC's responses used the "subject to" phrase but then generally made clear in the cited set of requests either that no documents existed that the parties were aware of (*See* Mot. Ex. 12, at USFIC Nos. 1, 4–5, 17–18, 22, 26–27; Penn Nos. 1, 17, 18, 22, 26, 27); that all responsive documents would be produced (*Id.* at USFIC No. 2; Penn Nos. 2, 4), that the request was being limited to a particular subject matter and time period (*Id.* at USFIC Nos. 3, 7, 10–12, 14–15, 19–20, 24–25, 29–30, 33; Penn Nos. 3, 5, 7, 10-12, 14-15, 19-20, 24-25, 29-30, 33); or that the Surety was willing to meet and confer (USFIC Nos. 21, 23, 31-32; Penn Nos. 21, 23, 31–32).

Further, to address the instances where all parties complained either about what was withheld or that it was unclear what was withheld, the parties agreed to mutually supplement their responses based on a framework agreed to at the February 11, 2026 meet and confer.[9]  W&T asserts that Penn and USFIC "rejected W&T's proposal" for supplementation.  Mot. at 10.  That assertion is untrue.

Instead, on February 19, 2026—four days before the substantial completion deadline that W&T itself had pushed the Court to maintain—W&T Counsel sent a draft "Unopposed Motion for Second Amended Docket Control Order" proposing

---

[9] *See* Mot. Ex. 18 (R. Dry Mar. 10, 2026 Email) at 3 ("At our February 11 meet and confer, the parties discussed and generally agreed to a mutual supplementation process to be completed after the February 23 substantial completion deadline — precisely because both sides acknowledged that the same deficiencies existed across their respective responses").

both (i) a three-month extension of the substantial completion deadline and (ii) a schedule for amending objections and responses. *See* Mot. Ex. 14 (M. Lewis Feb. 19, 2026 Email). In response, Penn and USFIC rejected *the extension of the substantial completion deadline*.[10] It did *not* reject establishing a schedule for supplementation and instead specifically proposed that the parties agree on an interim schedule for amending objections and responses in between the substantial completion deadline and the close of discovery.[11] W&T again misstates the record.

### 2. Penn/USFIC Did Not Violate Section V.1 of the Court's Procedures

W&T asserts that "Penn and USFIC have refused to engage in genuine compromise discussions with W&T on their discovery responses and rebuffed attempts to reach the merits." Mot. at 11. According to W&T, this violated section V.1 of the Court's rules which encourages working out disputes and states that "Compromise is encouraged." *Id*.; Judge Palermo's Court Procedures at V.1.

It is unclear whether W&T really means to assert this as a basis for sanctions, but if so, it is legally and factually baseless. To begin with, W&T cites no authority

---

[10] *See* Mot. Ex. 16 at 1 ("[W]e do not agree that the February 23 deadline needs to be moved. . . .We have expended a tremendous amount of time and resources to comply with the February 23 deadline, and we intend to meet it.")

[11] *See* Mot. Ex. 16 (R. Dry Feb. 19, 2026 Email) at 1 ("While I do not think we need to amend the DCO, *I do think it makes sense to set interim deadlines that fall somewhere between the substantial completion date and the close of discovery, so that all parties have sufficient time to work through objections, make supplemental requests if needed, and efficiently address any remaining areas of dispute*." (emphasis added)).

stating that a violation of the Court's rule "encourag[ing]" the parties to engage in compromise can properly provide a basis for sanctions.  Absent assertion of a frivolous position or a wholesale failure to confer that not even W&T claims exists here, it is unclear how there could be meaningful standards for sanctioning when a party has insufficiently "compromised."

The claim also is factually baseless.  Penn and USFIC have continuously conferred with W&T and sought to resolve issues throughout this case.  As its sole alleged contrary example, W&T points to its February 9, 2026 letter.  Mot. at 11.  It ignores that the parties conferred on the subjects of the letter two days later in a transcribed meet and confer, including the form-of-response and supplementation issues that are the subject of the Motion's IV.A and IV.B arguments.  *See* Mot. Ex. 17 (M. Lewis Feb. 9, 2026 Letter); Ex. 13 (Feb. 11, 2026 M&C Tr.).  Penn/USFIC also engaged in subsequent written communications on those subjects.  *See e.g.*, Mot. Ex. 18 (R. Dry Mar. 10, 2026 Email).

W&T's sole response to the subsequent responses is to label these efforts "self-serving" and "performative" without offering any discussion of the content of the communications in light of the alleged deficiencies that were being discussed. Mot. at 11–12. W&T thus does nothing to show that the numerous communications between the parties on the issues in the February 9 letter collectively amounted to a failure to compromise in violation of the Court's procedures.  Instead, it only violates

17

the Court's caution against leaving it to the Court and parties to "hunt through this record like pigs hunting for truffles." Dkt. 195 (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)).

Nor would that hunt yield truffles. The March 10 email cited by W&T addresses each issue then in dispute by name—text-message methodology, OCEO designations, the end-date expansion, the mutual-supplementation framework, the substantial-completion deadline, the settlement-privilege theory—each with specific record citations and proposed paths forward. *See* Mot. Ex. 18 (R. Dry Mar. 10, 2026 Email) at 1–7. The same is true of the April 14, 2026 email cited in the Motion's footnote (Mot. Ex. 15), which works through eleven numbered substantive items raised in W&T's prior correspondence.

### 3. A Single Inadvertent Email Does Not Warrant Sanctions

W&T asserts that counsel for Penn/USFIC violated Appendix C of the Court's rules based on an email that a lawyer with only limited involvement in the case sent inadvertently to counsel for Plaintiff. Mot. at 12. The email used a figurative expression to convey his impression that Mr. Dry had "hit the mark" with a response sent to W&T counsel. *See* Mot. Ex. 20 (T. Duke Mar. 20, 2026 Email Thread) ("Ryan: The hit dog yelps. Tom"). The email was not meant as an insult but rather as a private internal communication intended as a light-hearted comment on the

18

perceived effectiveness of Mr. Dry's advocacy.[12]  As such it does not rise to the level of "willful misconduct" or "bad faith" warranting sanctions.  *See In re Moore*, 739 F.3d 724, 730 (5th Cir. 2014) (sanctions reserved for "willful misconduct" or "bad faith").  Counsel for Penn/ USFIC have been and remain committed to Appendix C's standards and to conducting the remainder of this litigation accordingly.

### E.       Penn and USFIC Have Not Violated the Duty of Candor

The Motion further asserts that counsel for Penn and USFIC "have repeatedly made factual misrepresentations and obfuscated" and "have repeatedly attempted to misrepresent the positions and history of negotiations during transcribed meet and confers and in correspondence." Mot. at 13.  That is simply not true, and none of the examples provided support it.  Further, and even apart from W&T's misstatements, W&T does not even attempt to show that the statements meet the demanding standard for sanctions which require a showing that the statement was not just misleading but actually made in "bad faith."[13]  For this reason alone, it fails to state

---

[12] That said, the motion appropriately reminded Penn and USFIC (as well as the attorney who sent the email) that the email merited an apology rather than the response originally provided which thanked counsel for calling it to his attention and stated it was not directed to her personally or meant to cause offense.  Penn/USFIC Counsel has offered his apology to W&T Counsel in a May 14th email, a copy of which is attached to this response. *See* Ex. 15.

[13] *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (sanctions appropriate for "willful disobedience" or conduct "in bad faith, vexatiously, wantonly, or for oppressive reasons"); *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995) (reversing and vacating imposition of sanctions because while the representations to the court were "disingenuous and misleading" the district court failed to make the requisite finding that the attorney acted in "bad faith"); *Calsep, Inc. v. Intelligent Petroleum Software Sols., LLC*, No. 4:19-CV-1118, 2021 WL 1729169, at *2 n.3 (S.D. Tex. Apr. 29, 2021) (sanctions "limited to instances involving bad faith or a willful abuse of the judicial process") (Palermo, J.).

a basis for sanction.

W&T begins by citing emails between counsel without elaboration.  Mot. at 13.[14]  Then for the challenged statements that USFIC or Penn actually made to the Court, W&T again outright misrepresents the statement or mischaracterizes the subject that it was referencing.  First, the Motion identifies as a misrepresentation the statement at Dkt. 294 that W&T "selectively produced fourteen (14) documents containing text message excerpts—limited to communications involving Todd Grabois and McGriff—without disclosing its collection, search methodology, or custodial scope." Mot. at 14. It asserts that this is inaccurate because W&T has produced "149 text messages." *Id*.

Here, W&T fails to provide the Court with the critical language of the sentence:  "**Just prior to the February 23 deadline**," W&T "selectively produced fourteen (14) documents containing text message excerpts—limited to communications involving Todd Grabois and McGriff—without disclosing its collection, search methodology, or custodial scope." Dkt. 294 at 7 (emphasis added). Properly quoted, the statement is indisputably true.  W&T thus misstates what Penn/USFIC said, which violates *W&T's* duty of candor to the Court.[15]

---

[14] Exhibit 21 simply cites counsel's own characterization, to which Penn/USFIC responded by quoting the meet-and-confer transcript; and Exhibit 22 reflects, at most, a perceived ambiguity in counsel correspondence that Penn/USFIC immediately clarified. *See* Exs. 16, 17. Neither exhibit raises any issue of candor, much less supports the extraordinary remedy of sanctions.

20

<u>Second</u>, the Motion challenges the statement at Dkt. 294 at 6 that "[t]he Sureties likewise confirmed that text messages were not within the agreed scope of production." Mot. at 13–14. To demonstrate the supposed contradiction, W&T asserts that its RFP definitions included text messages. *Id*. at 13–14; Mot. Exs. 23, 24. There is no contradiction. Penn/USFIC never said that W&T had agreed that Penn/USFIC would never have to produce text messages. Instead, the statement refers to what the parties had agreed upon to that point, and the fact that the parties had not yet agreed on a reciprocal methodology for text-message collection and production.[16]  This is why no party, including W&T, had produced text messages when the parties first met and conferred on the issue on February 11, 2026. W&T also fails to quote the statement in full. *See* Dkt. 294 at 6 ("The Sureties likewise confirmed that text message were not within the agreed scope of production *and would not be included in the February 23 production absent further agreement*" (emphasis added)). The omitted text (shown in italics) further confirms that the statement was addressing where the parties had reached agreement. It was not

---

[15] It also is untrue that W&T disclosed its methodology for its limited production of text messages. It says it did so in the March 3, 2026, meet and confer on the issue, but it provides no citation or written support for that proposition. Further, as the transcript of the meet and confer reflects, W&T counsel interrupted attempts to understand the methodology based on the claim that the sureties had not yet committed to doing so. *See* Ex. 18 (March 3, 2026 M&C Tr.) at 9:13.235–9:22.035 ("Happy to have the conversation about methodologies, but not unless the sureties are committed to providing text messages").

[16] W&T's counsel confirmed there had been no agreement on a procedure for text-message production at the February 11, 2026 meet and confer. Ex. 13 (Feb. 11, 2026 M&C Tr.) at 40:20.831–40:45.551 (also referenced in Mot. Ex. 25 and Mot. Ex. 21).

claiming that W&T had agreed to forego production of text messages.

Third, the Motion references the statement at Dkt. 294 at 7–8 that "[t]he Sureties agreed to proceed with production of their text messages subject to reciprocal protocols, requiring W&T to disclose its custodians, collection methodology, and any exclusions. Counsel memorialized that agreement in writing. W&T has not provided that information." Mot. at 14. The Motion claims that that was "false" because there "is no agreement with W&T on text messages. W&T has been clear with the sureties that it did not, and does not, agree to any methodology that involves their use of email-style search terms." Mot. at 14 (citing Mot. Ex. 25).

Again, what Penn/USFIC said was true, and again, W&T misrepresents it. The statement is about what the Sureties had agreed to do—*i.e.*, produce text messages according to "reciprocal protocols." It does not claim that there had been agreement as to what that methodology would be, much less that W&T had agreed to an exclusively search-term based methodology.[17]

In other places, W&T accurately quotes the statement but then misrepresents the record. Specifically, it disputes that a "cadence" for responding to opposing

---

[17] Ex. 18 (Mar. 3, 2026 M&C Tr.) at 00:48:31.395–00:49:01.675 (emphasis added):

> Dry: "But I also think, I I don't think we we still have a defined protocol on how it works as far as what to search. So I don't know if that's something you guys want to put in the e-mail and send it to everybody, but I think it would help **if *we all know the rules everybody's gonna play with*** as far as how to pull it, what to look for, stuff like that."

> Lewis: "Yeah, I mean, I'm happy to put something in writing as a proposal."

counsel was "refined through discussion and agreed upon" by the parties. Mot. at 15–16.  Instead, W&T says, Penn/USFIC "rejected W&T's proposal." *Id*. (emphasis in original).  The email it cites, however, referred to rejection of *one* proposal made by W&T.  Then, just as Penn/USFIC said, the parties refined the cadence through discussion and came to agreement.  Following the email referenced by W&T, counsel for W&T replied with: "How about 5 business days instead of 3?" Mot. Ex. 26 at 2 (M. Lewis Sept. 9, 2025 Email).  This was substantively the same as the "one week" proposal originally presented by the Sureties.  *Compare* Mot. Ex. 26 (R. Dry Sept. 3, 2025 Email) ("Would it make sense to agree on an informal schedule: *one week to respond in writing to a letter*, followed by a 'meet and confer' the next week?" (emphasis added)).  The parties then agreed to target five business days in a subsequent meet and confer.  *See* Ex. 19 (Sept. 10, 2025 M&C Tr.) at 2:3:26.680-48:31.395–2:5:3:640).[18]

F.    **The Whole of W&T's Motion Does Not Exceed the Sum of Its Demonstrably Inadequate Parts**

The cursory "Argument" section of W&T's motion rests on broad conclusory assertions with no attempt to tie specific violations to any standard for awarding sanctions.  The clear hope is that the Court will avoid analyzing the individual

---

[18] The Motion also disputes the statement at Dkt. 294 at 9 that Penn and USFIC's counsel agreed to a mutual supplementation process "on the express condition that the process be mutual and that the deadline fall after the February 23 substantial completion date." Mot. at 15.  As shown above, W&T misrepresents the February 19, 2026 email (Mot. Ex. 16) and what it "rejected" and did not reject.

conduct alleged and simply rely on the number of allegations thrown at the proverbial wall colored by the stream of conclusory rhetoric in the "argument."  That approach is entirely inappropriate in a motion for sanctions, which must demonstrate that specific sanctionable misconduct has occurred that meets the specific standard for the imposition of sanctions.

W&T states, "*Each* of the violations listed above have layered on top of each other and compounded their impact—obstructing this case from getting to the merits and greatly increasing the costs to get there."  Mot. at 22 (emphasis added).  That is obviously wrong.  W&T devotes many pages to statements and conduct that even if fully credited, would not even have arguably delayed the production of responsive, relevant information.  For example:

- Redacted information provided to opposing counsel.

- An interrogatory response that left out an irrelevant lawsuit.

- Statements that appeared in a recently filed opposition to W&T's motion for leave to appoint special master (which the Court denied).

- The inadvertent sending of an email to opposing counsel that had nothing to do with delaying the merits.

W&T's statement is thus oblivious to the content that precedes it.

W&T asserts that it has had to "fight at every turn" for documents.  Mot. at 23.  W&T did not even respond to Penn/USFIC's proposed search terms and custodians for six weeks, then the parties reached agreement once W&T did respond,

24

and then Penn/USFIC produced 4,053 pages 45 days later (on January 30).  By the substantial completion deadline several weeks later, Penn/USFIC had produced more than 67,000 pages of documents.

W&T likewise does nothing in the brief to show that Penn/USFIC have improperly withheld any documents.  It again complains about Penn/USFIC's use of the term "fishing expedition."  Mot. at 22.  But as we show above, it tellingly fails to identify any specific examples where it was used inappropriately, much less in a manner that is sanctionable.

Then, W&T randomly complains that at the January 2026 hearing, Penn/USFIC's counsel supposedly offered a "sudden recitation of a laundry list of 'accounts' for a snap ruling by the Court," which it says "left W&T without sufficient information to test the merits of those assertions."  Mot. at 23.  This complaint receives no other mention—much less support—in the Motion.  W&T failed to complain about this development at the time or at any time in the three months since the hearing.  The complaint's first and only appearance at the end of a sanctions brief epitomizes the "throw it at the wall" character of the Motion.

### G.    The Request for a 30(b)(6) Deposition on Discovery Should Be Denied

The Motion separately seeks an order directing Penn and USFIC to produce 30(b)(6) witnesses for depositions of "records custodians on discovery issues" within two weeks of the Court's ruling.  Mot. at 1, 25.  That request is not tied to any

25

cognizable discovery dispute the Motion identifies.   It is imprecisely described, randomly thrown in, not even remotely justified, and further confirmatory of the Motion's grab bag character.

Discovery-on-discovery depositions are reserved for circumstances in which, unlike here, a party has demonstrated specific, document-level reasons to question the other side's compliance, and even then, speculation is not enough.  *See, e.g.,* *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) (discovery-on-discovery requires more than "speculation"). The Motion does not allege spoliation, does not identify a custodial gap with particularity, and does not identify improperly withheld documents.  Therefore, the Court should deny the request.

## II.     Penn/USFIC Should Be Awarded Their Fees and Costs for Responding to the Motion

This Motion is improper, and Penn and USFIC are entitled to recover their reasonable fees and costs incurred in opposing it.  Federal Rule of Civil Procedure 37(a)(5)(B) provides that the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless the motion was "substantially justified" or other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(B); *see also* Fed. R. Civ. P. 37(b)(2)(C) (analogous expense-shifting in sanctions proceedings).  Courts apply this fee-shifting framework to denied Rule 37 sanctions motions.  *See, e.g.,*

26

*Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, 2018 WL 741795, at \*2 (D. Kan. Feb. 7, 2018) (imposing sanctions under Rule 37(a)(5)(B) against party that frivolously sought Rule 37 sanctions).   The Court also has inherent authority to sanction a party who has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

W&T lacked substantial justification for filing this Motion.  This can be seen in multiple ways.  First, W&T relies throughout on general statements without tying the request for sanctions to a particular response.  For example:

- Complaints about the "fishing expedition" objection without identifying where it was not substantially justified;

- General descriptions of Penn/USFIC's meet-and-confer efforts as "self-serving" and "performative" with no meaningful attempt to justify the characterization;

- Asserting "Yet even when W&T has pointed to evidence of conspiracy, they insist they are entitled to dismiss it" with no support; and

- Its entire "argument" section.

Litigants with a basis for moving for sanctions do not need to rely on generalities.  Instead, they are able to document precisely the misconduct that supposedly meets the high threshold for sanctions.

Second, W&T relies throughout on outright misstatements and omission of critical context.  Examples include:

- Omitting critical language from Penn/USFIC's statement as to W&T's production of text messages;

27

- Mischaracterizing Penn/USFIC's statements about "the agreed scope of production" and "reciprocal protocols";

- Falsely asserting that Penn/USFIC rejected W&T's proposal for supplementation;

- Failing to inform the Court that Penn/UFIC offered to provide the redacted information to outside counsel and instead using deliberatively vague formulations to talk around the issue;

- Failing to inform the Court of Penn/USFIC's efforts to agree on search terms and custodians and attempts to push that process forward.

Litigants with a substantial basis for moving for sanctions do not need to mislead or omit critical context.

Third, W&T relies on conduct that could not under any circumstances provide a basis for sanctions because it did not reflect bad faith on the part of Penn/USFIC. Only a litigant determined to find fault would seek sanctions over (i) a dispute over whether an order allowed redactions over nonresponsive and competitively sensitive information provided to opposing counsel; (ii) an inadvertently sent email; or (iii) the inadvertent omission of an irrelevant lawsuit from an interrogatory response.

Additionally, and while the Court need not reach the issue to decide this Motion, there is ample reason to believe that W&T filed it in bad faith and for oppressive reasons. That is reflected in everything already mentioned. But it is further reflected in its timing and its bizarre request for expedited briefing when there was zero urgency.

28

Most of the conduct cited in the complaint occurred months ago. Yet W&T did not bring the motion until just one week after the filing of Penn/USFIC's opposition to W&T's Motion for Leave to Amend. The Court has since granted leave applying the liberal Rule 15 standard. Dkt. 309. In that motion, however, Penn/USFIC showed the Court in various ways that W&T had no credible basis for alleging that there was a collateral demand conspiracy between the sureties in 2024, including that (i) the absence of any support from any party or third-party discovery obtained; (ii) W&T's interrogatory responses, and (iii) W&T's withdrawal of the so-called direct evidence it used to secure denial of Penn/USFIC's original motion to dismiss. *See* Dkt. 293 at 1, 4, 6, 14-17 (Defs.' Opp'n to Mot. to Amend).

W&T would dearly like to blame Penn/USFIC for the lack of any support for its antitrust claim. But that is nonsense. As we show above, the conduct alleged does not involve the withholding of documents, and as shown, often involves irrelevant information. W&T at most alleges a delay, not a withholding, of the production of communications with sureties and oil and gas operators. Further, before this Motion, Penn/USFIC had produced over 67,000 pages of documents. Additionally, substantial third-party discovery (pursuant to *67* third-party subpoenas) likewise has yielded zero support for its claim of a conspiracy against W&T, much less a market-wide conspiracy against oil and gas operators.

Further, it is W&T that withdrew the purported "direct evidence" that it

originally proffered to the Court as a basis for denying Penn/USFIC's original Motion to Dismiss. And it is W&T that acknowledged in its own interrogatory responses it had no evidence of conspiracy beyond the bare allegations of its complaint. Dkt. 293 at 6. It is therefore likely no coincidence that W&T chose to accuse W&T of alleged discovery misconduct one week after Penn/USFIC demonstrated that there is nothing to W&T's case.

But regardless of its motive, it had no substantial justification for seeking sanctions, and so it should required to pay the costs of filing this response.

## CONCLUSION

Penn/USFIC respectfully request that the Court deny W&T's Motion in all respects, award Penn/USIFC the fees and expenses they incurred in defending against it, and grant such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 15th day of May, 2026.

/s/ Ryan D. Dry
Ryan D. Dry
Texas Bar No. 24050532
S.D. Tex. Bar No. 618363
Steven K. Cannon
Texas Bar No. 24086997
S.D. Tex Bar No. 3356957
**DRY LAW, PLLC**
909 18th Street
Plano, TX 75074
(972) 797-9510 Tele/Fax
rdry@drylaw.com
scannon@drylaw.com
***ATTORNEYS FOR PENNSYLVANIA
INSURANCE COMPANY AND UNITED
STATES FIRE INSURANCE COMPANY***

and

**BOIES SCHILLER FLEXNER LLP**

/s/ Samuel C. Kaplan
Samuel C. Kaplan
1401 New York Ave, NW
Washington, DC 20005
Email: skaplan@bsfllp.com
Telephone: (202) 274-1163
***ATTORNEYS FOR PENNSYLVANIA
INSURANCE COMPANY***

and

Mary-Olga Lovett
Texas Bar No. 00789289
S.D. Tex. Bar No. 17731
**MO LOVETT LAW, PLLC**
2001 Kirby Drive, Ste. 700
Houston, Texas 77019

31

(713) 589-5103 (office)
(713) 553-1882 (cell)
mo@molovettlaw.com
dnixon@molovettlaw.com
***ATTORNEYS FOR PENNSYLVANIA***
***INSURANCE COMPANY and UNITED***
***STATES FIRE INSURANCE COMPANY***

## CERTIFICATE OF SERVICE

I hereby certify that, on May 15, 2026, a true and correct copy of the foregoing document was filed and served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas on those parties registered to receive electronic notice.

*/s/ Ryan D. Dry*
Ryan D. Dry