# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ENDURANCE ASSURANCE CORPORATION, LEXON INSURANCE COMPANY, PENNSYLVANIA INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, APPLIED SURETY UNDERWRITERS LLC, AMYNTA HOLDINGS LLC D/B/A AMYNTA SURETY SOLUTIONS, AND INDEMCO, LP <br><br> Defendants | § § § § § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO. 4:24-CV-3047** |

## ENDURANCE ASSURANCE CORPORATION AND LEXON INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE AND OTHER DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT <u>AND THIRD AMENDED COUNTERCLAIM</u>

Defendants and Counterclaim-Plaintiffs Endurance Assurance Corporation ("**Endurance**") and Lexon Insurance Company (together with Endurance, "**Lexon**") file this Answer and Affirmative and Other Defenses (the "**Answer**") to Plaintiffs and Counterclaim-Defendants W&T Offshore, Inc., and W&T Energy VI, LLC's ("**Plaintiffs**" or "**W&T**") Second Amended Complaint (the "**Complaint**") and Third Amended Counterclaim.

## ANSWER

## INTRODUCTION[1]

1.      Paragraph 1 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 1 of the Complaint.

**a.      Independent Oil and Gas Producers Play a Critical Role in American Energy Independence**

2.      Paragraph 2 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to Paragraph 2 of the Complaint, except admits that the Complaint purports to cite a news release on the United States Department of Interior website, and Lexon refers the Court to the news release for the true and correct contents thereof.

3.      Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in the first and second sentences of Paragraph 3 of the Complaint. The allegations in the third sentence of Paragraph 3 constitute conclusions of law to which no response is required. To the extent a response is

---

[1]      Lexon states that the headings throughout the Complaint do not constitute well-pleaded allegations of fact and, therefore, require no response. To the extent a response is required, Lexon denies the allegations in the headings of the Complaint. Notwithstanding the foregoing, Lexon has included the headings used in the Complaint in this Answer for the Court's convenience.

2

required, Lexon denies the allegations in the third sentence of Paragraph 3 of the Complaint.

### b. Insurance Companies Have Been Colluding on Rates and Terms for Independent Oil and Gas Producers to Increase their Own Profits

4. Lexon denies the allegations in the first, second, and fourth sentences of Paragraph 4 of the Complaint, except to the extent the allegations therein constitute conclusions of law to which no response is required. The allegations in the third sentence of Paragraph 4 of the Complaint constitute conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the third sentence of Paragraph 4 of the Complaint, and therefore denies it, except admits that "financial assurance" is a condition to conducting oil and gas exploration operations on the Outer Continental Shelf pursuant to the OCS Lands Act, and Lexon refers the Court to that Act for the true and correct contents thereof.

5. Paragraph 5 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 5 of the Complaint.

6. Lexon denies the allegations in Paragraph 6 of the Complaint, except to the extent the allegations therein constitute conclusions of law to which no response is required.

7.      Paragraph 7 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 7 of the Complaint.

**c.      This Conduct Has Harmed Competition and Violated Antitrust Laws**

8.      Paragraph 8 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 8 of the Complaint.

9.      Paragraph 9 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 9 of the Complaint, except admits that the Complaint purports to quote part of a decision, and Lexon refers the Court to the decision for the true and correct contents thereof.

10.      Paragraph 10 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 10 of the Complaint.

11.      Paragraph 11 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 11 of the Complaint.

12.     Paragraph 12 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 12 of the Complaint.

**PARTIES**

13.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 13 of the Complaint, and therefore denies them.

14.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 14 of the Complaint, and therefore denies them.

15.     To the extent there are any allegations contained within Paragraph 15, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 15 of the Complaint, and therefore denies them.

16.     Lexon denies the allegations in Paragraph 16 of the Complaint, except admits that Endurance Assurance Corporation is a corporation organized under the laws of the State of Delaware and admits that Endurance Assurance Corporation is a wholly owned subsidiary of Sompo International Holdings Ltd.

17.     Lexon admits the allegations in Paragraph 17 of the Complaint.

18.     Lexon admits the allegations in the first sentence of Paragraph 18 of the Complaint. Lexon denies the allegations in the second sentence of Paragraph 18 of

the Complaint, except admits that Lexon Insurance Company is a wholly owned subsidiary of Sompo International Holdings Ltd.

19.    Lexon admits the allegations in Paragraph 19 of the Complaint.

20.    Lexon denies the allegations in Paragraph 20 of the Complaint, except admits that the Complaint purports to use defined terms to refer to Lexon and Endurance.

21.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 21 of the Complaint, and therefore denies them.

22.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 22 of the Complaint, and therefore denies them.

23.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 23 of the Complaint, and therefore denies them.

24.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 24 of the Complaint, and therefore denies them.

25. To the extent there are any allegations contained within Paragraph 25, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 25 of the Complaint, and therefore denies them.

26. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 26 of the Complaint, and therefore denies them.

27. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 27 of the Complaint, and therefore denies them.

28. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 28 of the Complaint, and therefore denies them.

29. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 29 of the Complaint, and therefore denies them.

30. To the extent there are any allegations contained within Paragraph 30 of the Complaint, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 30 of the Complaint, and therefore denies them.

31. Lexon denies the allegations in Paragraph 31 of the Complaint, except admits that the Complaint purports to use a defined term to refer to Sompo, Applied, and Amynta.

32. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 32 of the Complaint, and therefore denies them.

33. Lexon denies the allegations in Paragraph 33 of the Complaint as to itself, and denies knowledge and lacks information sufficient to form a belief as to the actions of other sureties, and therefore denies them.

**OTHER RELEVANT ENTITIES AND INDIVIDUALS**

34. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 34 of the Complaint, and therefore denies them.

35. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 35 of the Complaint, and therefore denies them.

36. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 36 of the Complaint, and therefore denies them.

37. Lexon denies the allegations in Paragraph 37 of the Complaint.

38.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 38 of the Complaint, and therefore denies them.

39.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 39 of the Complaint, and therefore denies them.

40.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 40 of the Complaint, and therefore denies them.

41.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 41 of the Complaint, and therefore denies them.

42.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 42 of the Complaint, and therefore denies them.

43.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 43 of the Complaint, and therefore denies them.

44.     Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 44 of the Complaint, and therefore denies them.

**JURISDICTION AND VENUE**

45.     Paragraph 45 of the Complaint constitutes conclusions of law to which no response is required, except Lexon admits that W&T alleges that this Court has jurisdiction over this action pursuant to the statutes cited in this Paragraph.

46.     Paragraph 46 of the Complaint constitutes conclusions of law to which no response is required, except Lexon admits that W&T alleges that this Court has jurisdiction over this action pursuant to the statutes cited in this Paragraph.

47.     Paragraph 47 of the Complaint constitutes conclusions of law to which no response is required, except Lexon admits that W&T alleges that this Court has jurisdiction over this action pursuant to the statutes cited in this Paragraph.

48.     Paragraph 48 of the Complaint constitutes conclusions of law to which no response is required.

49.     Paragraph 49 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 49 of the Complaint, except denies knowledge and lacks information sufficient to form a belief as to the third sentence of Paragraph 49 of the Complaint, and therefore denies it, and admits that the Indemnity Agreement

between Lexon and W&T provides that each Principal "IRREVOCABLY CONSENT TO THE EXCLUSIVE VENUE AND JURISDICTION OF THE FEDERAL AND STATE COURTS SITTING IN HARRIS COUNTY, TEXAS, AND DOES FURTHER WAIVE ANY AND ALL RIGHTS TO OBJECT TO SUCH VENUE OR JURISDICTION," and admits that all previously named parties have consented to the consolidation of the parties' lawsuits in this District.

50.    Paragraph 50 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 50 of the Complaint, except admits that W&T purports to seek certain relief in the Complaint, and Lexon refers the Court to the Complaint for the true and correct contents thereof.

## I.    FACTUAL BACKGROUND

### a.    Oil & Gas Production in the Gulf of America

51.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 51 of the Complaint, and therefore denies them.

52.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 52 of the Complaint, and therefore denies them.

53. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 53 of the Complaint, and therefore denies them, except admits that the Complaint purports to quote a BOEM 2026 Assessment Fact Sheet and a news release on the Department of Interior website, and Lexon refers the Court to the Fact Sheet and news release for the true and correct contents thereof.

54. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 54 of the Complaint, and therefore denies them.

55. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 55 of the Complaint, and therefore denies them, except admits that the Complaint purports to cite the IPAA website, and Lexon refers the Court to the IPAA website for the true and correct contents thereof.

**b.    Governmental Requirements to Operate in the OCS**

56. Paragraph 56 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize certain actions of Congress and the contents of the Outer Continental Shelf Lands Act ("OCS Lands Act"), but denies the remainder of allegations in Paragraph 56 of the Complaint, and Lexon refers the Court to the OCS Lands Act for the true and correct contents thereof.

57.    Paragraph 57 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize the OCS Lands Act, but denies the remainder of allegations in Paragraph 57 of the Complaint, and Lexon refers the Court to the OCS Lands Act for the true and correct contents thereof.

58.    Paragraph 58 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize the OCS Lands Act, but denies the remainder of allegations in Paragraph 58 of the Complaint, and Lexon refers the Court to the OCS Lands Act for the true and correct contents thereof.

59.    Paragraph 59 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize the Secretary of the Department of the Interior's Order 3299, but denies the remainder of allegations in Paragraph 59 of the Complaint, and Lexon refers the Court to that Order for the true and correct contents thereof.

60.    Paragraph 60 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize the Secretary of the Department of the Interior's Order 3299, but denies the remainder of allegations in Paragraph 60 of the

13

Complaint, and Lexon refers the Court to that Order for the true and correct contents thereof.

### c.    Plugging and Abandonment ("P&A") Obligations

61.    Paragraph 61 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize obligations under certain federal statutes and regulations, but denies the remainder of allegations in Paragraph 61 of the Complaint, and Lexon refers the Court to those federal statutes and regulations for the true and correct contents thereof.

62.    Paragraph 62 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize certain activities conducted by BSEE and BOEM and purports to characterize 62 Fed. Reg. 27948, but denies the remainder of allegations in Paragraph 62 of the Complaint, and Lexon refers the Court to 62 Fed. Reg. 27948 for the true and correct contents thereof.

### d.    Surety Bonds

63.    Paragraph 63 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon admits that the Complaint purports to characterize 89 Fed. Reg. 31544, but denies the remainder of

allegations in Paragraph 63 of the Complaint, and Lexon refers the Court to 89 Fed. Reg. 31544 for the true and correct contents thereof.

64. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 64 of the Complaint, except admits that the Complaint purports to quote content from the SFAA website, and Lexon refers the Court to the SFAA website for the true and correct contents thereof.

65. Lexon admits that the Complaint purports to quote parts of three sentences from ECF Nos. 57 and 82 in Paragraph 65 of the Complaint, and Lexon refers the Court to those ECF numbers for the true and correct contents thereof.

66. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 66 of the Complaint, and therefore denies them.

67. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 67 of the Complaint, and therefore denies them.

68. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 68 of the Complaint, and therefore denies them.

69. Paragraph 69 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies

15

knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 69 of the Complaint, and therefore denies them.

70.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 70 of the Complaint, and therefore denies them, except admits that with respect to GIAs to which Lexon is a party, the purpose of collateral and Lexon's right to demand collateral is, among other things, to protect Lexon against risk of loss.

71.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 71 of the Complaint, and therefore denies them.

72.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 72 of the Complaint, and therefore denies them.

### e.    The Role of Surety Bond Brokers

73.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 73 of the Complaint, and therefore denies them.

74.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 74 of the Complaint, and therefore denies them, except to the extent the allegations in Paragraph 74 of the Complaint purport

to fully describe the relationship of brokers, sureties, and principals, to which Lexon denies that the allegations contained in Paragraph 74 of the Complaint are the full and complete description of how the relationships of brokers, sureties, and principals work and are therefore not accurate, and except admits that Lexon has a broker intermediary to facilitate the relationship between W&T and Lexon.

75.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 75 of the Complaint, and therefore denies them.

76.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 76 of the Complaint, and therefore denies them.

77.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 77 of the Complaint, and therefore denies them.

78.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 78 of the Complaint, and therefore denies them.

79.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 79 of the Complaint, and therefore denies them, except admits that the Complaint purports to quote certain language from

CAC's website, and Lexon refers the Court to the CAC website for the true and correct contents thereof.

80.    Lexon denies knowledge and lacks information regarding sureties other than Lexon, and therefore, denies the allegations contained in Paragraph 80 of the Complaint, except Lexon admits that IndemCo has acted as a broker for Lexon in connection with the placement of surety bonds in the time period relevant to this Complaint.

81.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 81 of the Complaint, and therefore denies them.

## II.    W&T'S HISTORY OF LEADERSHIP IN THE GULF

82.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 82 of the Complaint, and therefore denies them.

83.    Lexon denies knowledge and lacks information sufficient to form a belief as to the first sentence of Paragraph 83 of the Complaint and therefore denies them, except to the extent the allegations therein constitute conclusions of law to which no response is required. Lexon denies the allegations in the second sentence of Paragraph 83 of the Complaint.

18

84.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 84 of the Complaint, and therefore denies them.

85.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 85 of the Complaint, and therefore denies them.

86.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 86 of the Complaint, and therefore denies them.

87.    Paragraph 87 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 87 of the Complaint.

## III. W&T'S BONDING WITH THE DEFENDANT SURETIES

### a.    W&T and the Sompo Sureties

88.    Paragraph 88 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 88 of the Complaint, except admits that Lexon and W&T are parties to the Payment and Indemnity Agreement No. 1380 (the "*Indemnity Agreement*"), and Lexon refers the Court to the Indemnity Agreement for the true and correct contents thereof.

19

89.     Lexon admits the allegations in Paragraph 89 of the Complaint.

90.     Lexon admits that it issued Bond Nos. EACX226000039, EACX226000038, EACX226000025, EACX226000047, EACX226000044, EACX226000022, EACX226000043, EACX226000045, 1156846, 1159776, 1097677, 1152011, 1152010, but otherwise denies the allegations in Paragraph 90 of the Complaint, except to the extent they constitute conclusions of law to which no response is required, and Lexon refers the Court to such Bonds for their true and correct contents thereof.

91.     Paragraph 91 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 91 of the Complaint, except admits that Lexon and W&T are parties to the Indemnity Agreement and Lexon refers the Court to the Indemnity Agreement for the true and correct contents thereof.

92.     Lexon denies the allegations in Paragraph 92 of the Complaint, except admits that the Complaint alleges that Exhibit 1.A thereto is a true and correct copy of the Indemnity Agreement and that the Indemnity Agreement contains the quoted language, and Lexon refers the Court to the Indemnity Agreement for the true and correct contents thereof.

93.     Paragraph 93 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the

20

allegations in Paragraph 93 of the Complaint, except admits that W&T, Lexon, and Endurance are parties to the Indemnity Agreement with respect to certain bonds issued by Lexon and Endurance, and Lexon refers the Court to the Indemnity Agreement for the true and correct contents thereof.

### b.    W&T and Penn/Applied

94.    Paragraph 94 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 94 of the Complaint, and therefore denies them.

95.    Paragraph 95 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 95 of the Complaint, and therefore denies them.

96.    Paragraph 96 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 96 of the Complaint, and therefore denies them.

97.    Paragraph 97 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in

Paragraph 97 of the Complaint, and therefore denies them, except admits that the Complaint alleges that Exhibit 1.B thereto is a true and correct copy of the Applied Indemnity Agreement and that the Applied Indemnity Agreement contains the quoted language, and Lexon refers the Court to the Applied Indemnity Agreement for the true and correct contents thereof.

### c.     W&T and USFIC/Amynta and its Predecessor Aspen

98.     Paragraph 98 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 98 of the Complaint, and therefore denies them.

99.     Paragraph 99 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 99 of the Complaint, and therefore denies them.

100.    Paragraph 100 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 100 of the Complaint, and therefore denies them.

101.    Paragraph 101 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies

knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 101 of the Complaint, and therefore denies them.

102.   Paragraph 102 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 102 of the Complaint, and therefore denies them, except admits that the Complaint alleges that Exhibit 1.C thereto is a true and correct copy of the Amynta Indemnity Agreement and that the Amynta Indemnity Agreement contains the quoted language, and Lexon refers the Court to the Amynta Indemnity Agreement for the true and correct contents thereof.

## IV. DEFENDANTS' ANTICOMPETITIVE SCHEME

### a.   Direct Evidence of Collusion

103.   Paragraph 103 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 103 of the Complaint.

### i.   *Rate Fixing*

104.   Paragraph 104 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 104 of the Complaint.

105.    Lexon denies the allegations in Paragraph 105 of the Complaint, except admits that the Complaint purports to quote part of an email between Michele Tyson and Patrick Hennesy, and Lexon refers the Court to the email for the true and correct contents thereof.

106.    Lexon denies the allegations in Paragraph 106 of the Complaint, except admits that the Complaint purports to quote part of an email between Patrick Hennesy and Michele Tyson, and Lexon refers the Court to the email for the true and correct contents thereof.

107.    Lexon denies the allegations in Paragraph 107 of the Complaint, except admits that the Complaint purports to quote part of an email between Meredith Anderson and Patrick Hennesy, and Lexon refers the Court to the email for the true and correct contents thereof.

108.    Paragraph 108 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 108 of the Complaint.

109.    Paragraph 109 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 109 of the Complaint.

110. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 110 of the Complaint, and therefore denies them.

111. Paragraph 111 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 111 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

112. Lexon denies the allegations in Paragraph 112 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

113. Lexon denies the allegations in Paragraph 113 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

114. Lexon denies the allegations in Paragraph 114 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

115. Lexon denies the allegations in Paragraph 115 of the Complaint.

116. Lexon denies the allegations in Paragraph 116 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

### ii.    *Anticompetitive Information Sharing*

117.    Paragraph 117 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 117 of the Complaint.

118.    Paragraph 118 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 118 of the Complaint.

119.    Paragraph 119 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 119 of the Complaint.

120.    Lexon denies the allegations in Paragraph 120 of the Complaint, except admits that the Complaint purports to quote parts of emails between IndemCo and Lexon personnel, and Lexon refers the Court to the emails for the true and correct contents thereof.

121.    Lexon denies the allegations in Paragraph 121 of the Complaint, except admits that the Complaint purports to quote part of an email from Patrick Hennesy, and Lexon refers the Court to the email for the true and correct contents thereof.

122.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 122 of the Complaint, and therefore denies them.

123.   Lexon denies the allegations in Paragraph 123 of the Complaint, except admits that the Complaint purports to cite part of an email between Michele Tyson and Patrick Hennesy, and Lexon refers the Court to the email for the true and correct contents thereof.

124.   Paragraph 124 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 124 of the Complaint.

125.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 125 of the Complaint, and therefore denies them.

126.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 126 of the Complaint, and therefore denies them.

127.   Lexon denies the allegations in Paragraph 127 of the Complaint, except admits that the Complaint purports to quote part of an email between Jamie Morrison and Pablo Gomez, and Lexon refers the Court to the emails for the true and correct contents thereof.

128.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 128 of the Complaint, and therefore denies them.

129.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 129 of the Complaint, and therefore denies them.

130.    Paragraph 130 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 130 of the Complaint.

### b.    The Surety Defendants' Parallel Behavior

131.    Paragraph 131 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 131 of the Complaint.

132.    Paragraph 132 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 132 of the Complaint.

### i.    *The Surety Defendants agreed to use form indemnity agreements authored by the same broker.*

133.    Paragraph 133 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 133 of the Complaint.

134. Lexon denies the allegations in Paragraph 134 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

135. Paragraph 135 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 135 of the Complaint.

136. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 136 of the Complaint, and therefore denies them.

137. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 137 of the Complaint, and therefore denies them.

138. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 138 of the Complaint, and therefore denies them.

139. Paragraph 139 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 139 of the Complaint.

140. Paragraph 140 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 140 of the Complaint.

141. The first sentence of Paragraph 141 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in the first sentence of Paragraph 141 of the Complaint. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in the second sentence of Paragraph 141 of the Complaint, and therefore denies them.

142. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in the first and second sentences of Paragraph 142, and therefore denies them. Lexon denies the allegations in the third sentence of Paragraph 142 of the Complaint, except admits that the Complaint purports to quote the Sompo website, and Lexon refers the Court to the website for the true and correct contents thereof.

143. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 143, and therefore denies them.

144. Paragraph 144 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 144 of the Complaint.

30

### ii.   The Surety Defendants implemented premium rate increases and made collateral demands to W&T and other Independents in similar amounts and at similar times.

145.   Paragraph 145 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 145 of the Complaint to the extent they purport to relate to Lexon and denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to the actions of entities other than Lexon, and therefore denies them.

146.   Paragraph 146 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 146 of the Complaint to the extent they purport to relate to Lexon and denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to the actions of entities other than Lexon, and therefore denies them.

147.   Paragraph 147 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 147 of the Complaint, except admits that Paragraph 147 of the Complaint purports to characterize certain requirements of a rule that the BOEM proposed in 2023 (the "**2023 Proposed Rule**"), and Lexon refers the Court to the 2023 Proposed Rule for the true and correct contents thereof.

31

148.    Paragraph 148 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 148 of the Complaint, except admits that Paragraph 148 of the Complaint purports to characterize certain requirements of the 2023 Proposed Rule, and Lexon refers the Court to the 2023 Proposed Rule for the true and correct contents thereof.

149.    Paragraph 149 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 149 of the Complaint.

150.    Paragraph 150 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 150 of the Complaint.

151.    Paragraph 151 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 151, except admits that Lexon made a collateral demand on July 9, 2024, consistent with its contractual rights under the Indemnity Agreement.

152.    Lexon denies the allegations in Paragraph 152 of the Complaint, except admits that the first sentence of Paragraph 152 purports to quote a communication from Lexon to W&T, and Lexon refers the Court to the communication for the true and correct contents thereof.

32

153.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 153 of the Complaint, and therefore denies them.

154.    Lexon denies the allegations in Paragraph 154, except admits that Lexon made a collateral demand on July 9, 2024, consistent with its contractual rights under the Indemnity Agreement, and admits that the Complaint purports to cite Exhibit 1.F, and Lexon refers the Court to Exhibit 1.F for the true and correct contents thereof.

155.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 155 of the Complaint, and therefore denies them.

156.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 156 of the Complaint, and therefore denies them.

157.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 157 of the Complaint, and therefore denies them.

158.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 158 of the Complaint, and therefore denies them.

33

159. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 159 of the Complaint, and therefore denies them.

160. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 160 of the Complaint, and therefore denies them.

161. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 161 of the Complaint, and therefore denies them.

162. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 162 of the Complaint, and therefore denies them.

163. Paragraph 163 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 163 of the Complaint.

### iii.    The rate increases and collateral demands were not based on any independent triggering event or changed circumstance.

164.    Paragraph 164 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 164 of the Complaint.

165.    Paragraph 165 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 165 of the Complaint to the extent they purport to relate to Lexon and denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to the actions of sureties other than Lexon, and therefore denies them.

166.    Paragraph 166 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 166 of the Complaint.

167.    Paragraph 167 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 167 of the Complaint.

168.    Paragraph 168 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 168 of the Complaint.

c.    **Plus Factors Indicating Collusion**

169.    Paragraph 169 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 169 of the Complaint.

i.    *Market events between 2020 and 2024 gave sureties a strong motive to conspire and a pretext for their conspiratorial actions.*

170.    Lexon denies the allegations in Paragraph 170 of the Complaint, except admits that Fieldwood Energy LLC and Cox Operating LLC filed petitions under the United States Bankruptcy Code in 2020 and 2023, respectively.

171.    Paragraph 171 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 171 of the Complaint, except admits that the Complaint purports to characterize the bankruptcy plan affirmed in *Matter of Fieldwood Energy LLC*, 93 F.4th 817, 820 (5th Cir. 2024), and Lexon refers the Court to the case for the true and correct contents thereof.

172.    Lexon denies the allegations in Paragraph 172 of the Complaint, except admits that Patrick Hennesy was panel member at a June 2024 seminar sponsored by CAC and that the Complaint purports to quote parts of materials related to a June 2024 seminar sponsored by CAC, and Lexon refers the Court to the materials for the true and correct contents thereof.

173. Paragraph 173 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 173 of the Complaint.

174. Paragraph 174 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 174 of the Complaint.

175. Paragraph 175 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 175 of the Complaint.

176. Paragraph 176 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 176 of the Complaint.

177. Paragraph 177 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 177 of the Complaint to the extent they purport to relate to Lexon and denies knowledge and lacks information sufficient to form a belief as to the remaining allegations in Paragraph 177.

178. Paragraph 178 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 178 of the Complaint.

179. Paragraph 179 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 179 of the Complaint.

### ii. *An already concentrated market contracted even further, leaving it even more susceptible to collusion.*

180. Paragraph 180 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 180 of the Complaint.

181. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 181 of the Complaint, and therefore denies them, except admits that the Complaint purports to cite Treasury Department Circular 570, and Lexon refers the Court to Treasury Department Circular 570 for the true and correct contents thereof.

182. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 182 of the Complaint, and therefore denies them, except admits that there was a June 2024 CAC seminar.

183. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 183 of the Complaint, and therefore denies them, except admits that there was a June 2024 CAC seminar.

184.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 184 of the Complaint, and therefore denies them, except admits that there was a June 2024 CAC seminar.

185.   Paragraph 185 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 185 of the Complaint.

### iii.    *The network of relationships between and among sureties and brokers further facilitated collusion.*

186.   Paragraph 186 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 186 of the Complaint.

187.   Lexon denies the allegations in the first sentence of Paragraph 187 of the Complaint. Lexon admits that Patrick Hennesy previously worked at PHLY and RLI and that other employees of Lexon previously worked for QBE, Tokio Marine, and Chubb, but otherwise denies the allegations in the second and third sentences of Paragraph 187 of the Complaint.

188.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 188 of the Complaint, and therefore denies them.

189. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 189 of the Complaint, and therefore denies them, except admits that Patrick Hennesy and Amanda Wickman were both employed at RLI for some time.

190. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 190 of the Complaint, and therefore denies them.

191. Lexon denies the allegations in Paragraph 191 of the Complaint to the extent they purport to relate to Lexon and denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to entities other than Lexon, and therefore denies them.

192. Lexon admits that Lexon Insurance Company and Endurance Assurance Corporation are members of the Surety & Fidelity Association of America and admits that Patrick Hennesy has served on the Energy & Mining Working Group of that organization, but denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 192 of the Complaint that are referring to sureties other than Lexon, and therefore denies them.

193. Lexon admits that Lexon Insurance Company and Endurance Assurance Corporation are affiliate members of the National Association of Surety Bond Producers, but denies knowledge and lacks information sufficient to form a

belief as to the allegations in Paragraph 193 of the Complaint that are referring to entities other than Lexon, and therefore denies them, except admits that Paragraph 193 purports to quote language from the NASBP website, to which Lexon refers the Court to that website for the full and complete contents thereof.

194.    Paragraph 194 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 194 of the Complaint.

195.    Paragraph 195 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 195 of the Complaint.

> ### iv.    *Trade associations and industry events gave sureties and brokers even further opportunities to conspire under the guise of legitimate educational and advocacy activities.*

196.    Lexon denies the allegations in the first and second sentences of Paragraph 196 of the Complaint, except denies knowledge and lacks information sufficient to form a belief as to the allegations in the first and second sentences of Paragraph 196 to the extent they concern entities other than Lexon, and therefore denies them. Lexon admits that SFAA and NASBP host periodic meetings and events, including a Legislative Fly-In on or around February 29, 2024, but otherwise denies the allegations in the third sentence of Paragraph 196.

197.   Lexon denies the allegations in the first sentence of Paragraph 197 of the Complaint, except denies knowledge and lacks information sufficient to form a belief as to the allegations in the first sentence of Paragraph 197 to the extent they concern sureties other than Lexon, and therefore denies them. Lexon admits that it has hosted an event in March 2024 at the Aria Resort & Casino but otherwise denies the allegations in the second sentence of Paragraph 197.

198.   Lexon denies the allegations in Paragraph 198 of the Complaint, except denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 198 to the extent they concern entities other than Lexon, and therefore denies them, except Lexon admits that NASBP held its annual meeting between April 30, 2024 and May 3, 2024 and that Lexon hosted or sponsored events during this time period.

199.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 199 of the Complaint, and therefore denies them, except admits that SFAA hosted its annual meeting on May 9, 2024.

200.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 200 of the Complaint, and therefore denies them.

201.   Lexon admits the allegations in Paragraph 201 of the Complaint.

202.   Lexon denies the allegations in Paragraph 202 of the Complaint.

203.    Lexon denies the allegations in Paragraph 203 of the Complaint, except admits that it hosted an event at the Westwood Golf Club in Houston in August 2024.

204.    Lexon denies the allegations in Paragraph 204 of the Complaint, except admits that it hosted an event in New Orleans in September 2024.

205.    Lexon denies the allegations in Paragraph 205 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

206.    The second and fourth sentences of Paragraph 206 of the Complaint constitute conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in the second and fourth sentences of Paragraph 206 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in the first and third sentences of Paragraph 206 of the Complaint, and therefore denies them, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

207.    Lexon denies the allegations in the first sentence of Paragraph 207 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations. The second sentence of Paragraph 207 of the Complaint constitutes conclusions of law to which no response is required. To

the extent a response is required, Lexon denies the allegations in the second sentence of Paragraph 207 of the Complaint.

208.   Lexon denies the allegations in Paragraph 208 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

209.   Lexon denies the allegations in Paragraph 209 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

210.   Lexon denies the allegations in the first and third sentences of Paragraph 210 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations. The second sentence of Paragraph 210 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in the second sentence of Paragraph 210 of the Complaint.

211.   The first sentence of Paragraph 211 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in the first sentence of Paragraph 211 of the Complaint. Lexon denies the allegations in the second and third sentences of Paragraph 211 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

44

212.    Lexon denies the allegations in the first through third sentences of Paragraph 212 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations. The fourth sentence of Paragraph 212 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in the fourth sentence of Paragraph 212 of the Complaint.

213.    Lexon denies the allegations in Paragraph 213 of the Complaint, except admits that there was a virtual November 2024 NASBP presentation regarding BOEM regulations.

214. Paragraph 214 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 214 of the Complaint.

### v.    *The sureties routinely exchanged competitively sensitive information, using brokers as conduits.*

215.    Paragraph 215 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 215 of the Complaint.

216.    Paragraph 216 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 216 of the Complaint.

217. The first and second sentences of Paragraph 217 of the Complaint constitute conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in the first and second sentences of Paragraph 217 of the Complaint. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in the third sentence of Paragraph 217 of the Complaint, and therefore denies them, except admits that Lexon entered into certain agreements with W&T, and Lexon refers the Court to said agreements for the true and correct contents thereof.

218. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 218 of the Complaint, and therefore denies them.

219. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 219 of the Complaint, and therefore denies them.

220. Paragraph 220 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 220 of the Complaint, except admits that the Complaint purports to quote the SFAA Antitrust Compliance Guidelines and cites ECF No. 513 in *In re California Bail Bond Antitrust Litigation*, and Lexon refers the Court to the

46

SFAA Antitrust Compliance Guidelines and ECF No. 513 in *In re California Bail Bond Antitrust Litigation* for the true and correct contents thereof.

221.    Paragraph 221 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 221 of the Complaint.

### vi.    The sureties' actions would have been against their own self-interest unless they were coordinating.

222.    Paragraph 222 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 222 of the Complaint.

223.    Paragraph 223 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 223 of the Complaint, except admits that it is not in Lexon's interest to put its longstanding customers out of business and Lexon further avers that it did not take any actions to do so.

### vii.    This is not the first time that several of these defendants have been accused of violating antitrust laws.

224.    Paragraph 224 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 224 of the Complaint, except admits that it was a party in

*In re California Bail Bond Antitrust Litigation*, and Lexon refers the Court to that docket for the true and correct contents thereof.

225. Paragraph 225 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 225 of the Complaint, except admits that Paragraph 225 purports to characterize certain filings in *In re California Bail Bond Antitrust Litigation*, and Lexon refers the Court to those filings for the true and correct contents thereof.

## V. THE RELEVANT MARKET, ANTITRUST INJURY & INTERSTATE COIMMERCE [SIC]

226. Paragraph 226 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 226 of the Complaint.

### a. The Market for Offshore Surety Bonds

#### i. *The relevant product is surety bonds for oil and gas companies in the Gulf.*

227. Paragraph 227 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 227 of the Complaint.

228.    Paragraph 228 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 228 of the Complaint.

229.    Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 229 of the Complaint, and therefore denies them, except admits that surety bonds are one of several types of financial assurance acceptable to BOEM.

### ii.    The relevant geographic market is nationwide.

230.    Paragraph 230 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 230 of the Complaint.

231.    Paragraph 231 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 231 of the Complaint, except that it denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to sureties other than Lexon, and therefore denies them, and except admits that Lexon Insurance Company and Endurance Assurance Corporation have offices in more than one location in the United States.

232.    Paragraph 232 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the

allegations in Paragraph 232 of the Complaint, except admits that the Complaint purports to reference guidelines related Treasury Circular 570, and Lexon refers the Court to the guidelines for the true and correct contents thereof.

> **b.    The Surety Defendants and Other Surety Co-Conspirators Have Market Power in the Offshore Surety Bond Market**

233.    Paragraph 233 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 233 of the Complaint.

234.    Paragraph 234 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 234 of the Complaint.

235.    Paragraph 235 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 235 of the Complaint.

236.    Paragraph 236 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 236 of the Complaint.

237.    Paragraph 237 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 237.

**c.     W&T's Antitrust Injury**

> **i.     *As a direct purchaser of surety bonds, W&T's injury from increased prices is classic competitive harm.***

238.   Paragraph 238 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 238 of the Complaint.

239.   Paragraph 239 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 239 of the Complaint.

240.   Paragraph 240 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 240 of the Complaint.

241.   Paragraph 241 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 241 of the Complaint.

> **ii.     *The Defendants' scheme also caused other competitive harms, including decreased output and diminished competition.***

242.   Paragraph 242 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 242 of the Complaint.

243.　Paragraph 243 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 243 of the Complaint.

244.　Paragraph 244 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 244 of the Complaint.

### d.　Interstate Commerce

245.　Lexon denies the allegations in Paragraph 245 of the Complaint, except Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 245 of the Complaint that are referring to the actions of sureties other than Lexon, and therefore denies them, and except admits Endurance Assurance Corporation is a corporation organized under the laws of the State of Delaware, Lexon Insurance Company is a corporation organized under the laws of the State of Texas, and Endurance Assurance Corporation and Lexon Insurance Company have issued surety bonds with respect to certain of W&T's business activities.

246.　Paragraph 246 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 246 of the Complaint.

## VI.   OTHER VIOLATIONS

### a.   The Sureties' Breach of Indemnity Agreements

#### i.   *The sureties demanded W&T pay full collateral without any triggering event.*

247.   Paragraph 247 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 247 of the Complaint.

248.   Paragraph 248 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 248 of the Complaint.

249.   Paragraph 249 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 249 of the Complaint.

250.   Paragraph 250 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 250 of the Complaint.

251.   Paragraph 251 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 251 of the Complaint.

252.   Paragraph 252 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 252 of the Complaint.

253.   Paragraph 253 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 253 of the Complaint.

254.   Lexon denies the allegations in the first sentence of Paragraph 254 of the Complaint, except admits that Lexon issued bonds with respect to certain business activities conducted by Fieldwood. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in the second sentence of Paragraph 254 of the Complaint, and therefore denies them.

255.   Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 255 of the Complaint, and therefore denies them.

256.   Paragraph 256 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 256, except admits that the Complaint purports to quote a communication from Patrick Hennesy, and Lexon refers the Court to the email for the true and correct contents thereof.

257.   Lexon denies the allegations in Paragraph 257 of the Complaint.

54

258. Lexon denies the allegations in Paragraph 258 of the Complaint.

259. Paragraph 259 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 259, except admits that the Complaint purports to quote a statement from W&T's broker, and Lexon refers the Court to the statement from W&T's broker for the true and correct contents thereof.

260. Lexon denies the allegations in Paragraph 260 of the Complaint, except that it denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to the actions of W&T, and therefore denies them.

261. Lexon denies the allegations in Paragraph 261 of the Complaint, except that it denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to the actions of W&T, and therefore denies them, and except that it admits W&T and Sompo representatives met on April 29, 2024.

262. Lexon denies the allegations in Paragraph 262 of the Complaint, except admits that Lexon exercised its contractual right to demand collateral and delivered a collateral demand to W&T in the amount of $7.5 million on July 9, 2024.

263. Lexon denies the allegations in Paragraph 263 of the Complaint.

264. Lexon denies the allegations in Paragraph 264 of the Complaint.

265. Paragraph 265 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 265 of the Complaint.

266. Paragraph 266 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 266 of the Complaint to the extent they purport to relate to Lexon and denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to sureties other than Lexon, and therefore denies them.

267. Paragraph 267 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 267 of the Complaint to the extent they purport to relate to Lexon and denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to Applied, and therefore denies them, and except admits that the Complaint purports to cite the Applied Indemnity Agreement, and Lexon refers the Court to the Applied Indemnity Agreement for the true and correct contents thereof.

268. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 268 of the Complaint, and therefore denies them.

269. Lexon denies the allegations in Paragraph 269 of the Complaint.

270. Paragraph 270 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 270 of the Complaint, and therefore denies them.

271. Lexon denies the allegations in Paragraph 271 of the Complaint to the extent they purport to relate to Lexon and denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to the actions of sureties other than Lexon, and therefore denies them.

272. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 272 of the Complaint, and therefore denies them.

273. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 273 of the Complaint, and therefore denies them.

274. Lexon denies knowledge and lacks information sufficient to form a belief as to the allegations in Paragraph 274 of the Complaint, and therefore denies them.

275.    Paragraph 275 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 275 of the Complaint.

276.    Paragraph 276 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 276 of the Complaint.

### b.    The Defendants' Interference with W&T's Other Contracts and Business Opportunities

#### i.    *Defendants knew their coordinated scheme would render it impossible for W&T to secure bonding.*

277.    Lexon denies the allegations in Paragraph 277 of the Complaint, except that it denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to entities other than Lexon, and therefore denies them.

278.    Paragraph 278 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 278 of the Complaint to the extent they purport to relate to Lexon and denies knowledge and lacks information sufficient to form a belief as to the allegations that are referring to entities other than Lexon, and therefore denies them.

### ii.    *Defendants knew that their actions would impair financial opportunities for W&T.*

279.   Paragraph 279 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 279 of the Complaint.

280.   Paragraph 280 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 280 of the Complaint.

281.   Paragraph 281 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 281 of the Complaint.

## CAUSES OF ACTION

### FIRST CLAIM
### Violation of Sherman Act, Section 1, 15 U.S.C. § 1
### (Price Fixing Against All Defendants)

282.   Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1-281 above as if fully repeated herein.

283.   Paragraph 283 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 283 of the Complaint.

284. Paragraph 284 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 284 of the Complaint.

285. Paragraph 285 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 285 of the Complaint.

286. Paragraph 286 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 286 of the Complaint.

287. Paragraph 287 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 287 of the Complaint.

## SECOND CLAIM
### Violation of Sherman Act, Section 1, 15 U.S.C. § 1
### (Group Boycott Against Surety Defendants)

288. Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1-287 above as if fully repeated herein.

289. Paragraph 289 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 289 of the Complaint.

60

290.    Paragraph 290 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 290 of the Complaint.

291.    Paragraph 291 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 291 of the Complaint.

292.    Paragraph 292 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 292 of the Complaint.

293.    Paragraph 293 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 293 of the Complaint.

### THIRD CLAIM
### Violation of Sherman Act, Section 1, 15 U.S.C. § 1
### (Unlawful Information Exchange Against All Defendants)

294.    Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1-293 above as if fully repeated herein.

295.    Paragraph 295 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 295 of the Complaint.

61

296.  Paragraph 296 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 296 of the Complaint.

297.  Paragraph 297 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 297 of the Complaint.

298.  Paragraph 298 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 298 of the Complaint.

299.  Paragraph 299 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 299 of the Complaint.

## FOURTH CLAIM
### Violation of the Texas Free Enterprise and Antitrust Act, Texas Business & Commerce Code § 15.05
### (All Defendants)

300.  Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1-299 above as if fully repeated herein.

301.  Paragraph 301 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 301 of the Complaint, except admits that the Complaint

62

purports to restate text from Tex. Bus. & Comm. Code § 15.05(a), and Lexon refers the Court to that statute for the true and correct contents thereof.

302. Paragraph 302 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 302 of the Complaint.

303. Paragraph 303 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 303 of the Complaint.

304. Paragraph 304 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 304 of the Complaint.

## FIFTH CLAIM
### Breach of Contract and Obligation of Good Faith
### (Surety Defendants)

305. Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1-304 above as if fully repeated herein.

306. Paragraph 306 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 306 of the Complaint.

307. Paragraph 307 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 307 of the Complaint.

308. Paragraph 308 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 308 of the Complaint.

309. Paragraph 309 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 309 of the Complaint.

310. Paragraph 310 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 310 of the Complaint, except admits that W&T purports to quote selective portions of the Indemnity Agreement, and Lexon refers the Court to the Indemnity Agreement for the true and correct contents thereof.

311. Paragraph 311 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 311 of the Complaint.

312. Paragraph 312 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 312 of the Complaint.

313. Paragraph 313 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 313 of the Complaint.

314. Paragraph 314 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 314 of the Complaint.

315. Paragraph 315 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 315 of the Complaint.

316. Paragraph 316 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 316 of the Complaint.

317. Paragraph 317 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 317 of the Complaint.

318. Paragraph 318 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 318 of the Complaint.

## SIXTH CLAIM
### Tortious Interference with Contracts and Business Relations
### (All Defendants)

319.   Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1-318 above as if fully repeated herein.

320.   Paragraph 320 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 320 of the Complaint.

321.   Paragraph 321 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 321 of the Complaint.

322.   Paragraph 322 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 322 of the Complaint.

323.   Paragraph 323 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 323 of the Complaint.

324.   Paragraph 324 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 324 of the Complaint.

325.    Paragraph 325 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 325 of the Complaint.

**SEVENTH CLAIM**
**Civil Conspiracy**
**(All Defendants)**

326.    Lexon repeats and realleges and incorporates by reference its answers and responses to Paragraphs 1-325 above as if fully repeated herein.

327.    Paragraph 327 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 327 of the Complaint.

328.    Paragraph 328 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 328 of the Complaint.

329.    Paragraph 329 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 329 of the Complaint.

330.    Paragraph 330 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 330 of the Complaint.

331. Paragraph 331 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 331 of the Complaint.

332. Paragraph 332 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 332 of the Complaint.

333. Paragraph 333 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 333 of the Complaint.

334. Paragraph 334 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 334 of the Complaint.

## EIGHTH CLAIM
### Declaratory Judgment
### (Surety Defendants)

335. Paragraph 335 of the Complaint constitutes conclusions of law to which no response is required.

336. Paragraph 336 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 336 of the Complaint, except admits that Lexon and W&T are parties to a valid and enforceable Indemnity Agreement.

68

337.   Paragraph 337 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 337 of the Complaint, except admits that Lexon and W&T are parties to a valid and enforceable Indemnity Agreement.

338.   Paragraph 338 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 338 of the Complaint.

339.   Paragraph 339 of the Complaint constitutes conclusions of law to which no response is required. To the extent a response is required, Lexon denies the allegations in Paragraph 339 of the Complaint.

340.   Paragraph 340 of the Complaint constitutes conclusions of law to which no response is required. To the extent an answer is required, Lexon denies the allegations and that W&T is entitled to the relief sought in Paragraph 340 of the Complaint.

The Prayer constitutes conclusions of law to which no response is required. To the extent an answer is required, Lexon denies the allegations and that W&T is entitled to the relief sought in the Prayer.

## AFFIRMATIVE AND OTHER DEFENSES

Lexon asserts the following defenses and reserves the right to amend this Answer and these Affirmative and Other Defenses, and to assert other and further defenses, when and if, in the course of its investigation, discovery, or preparation for trial, it becomes appropriate. By designating these matters as defenses, Lexon does not intend to assume a burden of proof it does not otherwise have or to suggest either that W&T does not bear the burden of proof as to such matters or that such matters are not elements of W&T's prima facie case against Lexon.

To the extent necessary, Lexon alleges that W&T's claims are barred because the acts W&T alleges that Lexon undertook in furtherance of the alleged conspiracy were in Lexon's unilateral business interest.

## FIRST DEFENSE

W&T's claims are barred, in whole or in part, on the grounds that the Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

W&T's claims are barred, in whole or in part, by the doctrine of estoppel.

## THIRD DEFENSE

W&T's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTH DEFENSE

70

W&T's claims are barred, in whole or in part, by the doctrine of laches.

## FIFTH DEFENSE

W&T's claims are barred, in whole or in part, by the doctrine of waiver. W&T, by its actions, accepted the benefits of an ongoing relationship with Lexon and relinquished its rights to bring suit.

## SIXTH DEFENSE

W&T's claims are barred, in whole or in part, because Lexon at all times acted reasonably and in good faith.

## SEVENTH DEFENSE

W&T's claims are barred, in whole or in part, because Lexon's conduct was unilateral and was undertaken solely for Lexon's legitimate, lawful business purpose. Lexon's conduct was, at all times, procompetitive and had a rational basis justification.

## EIGHTH DEFENSE

W&T's claims are barred, in whole or in part, because W&T has insufficiently alleged a relevant product market and/or geographic market.

## NINTH DEFENSE

W&T's claims are barred, in whole or in part, because W&T has not suffered any injury in fact and/or any injury cognizable under the antitrust laws. W&T cannot establish actual injury.

71

## TENTH DEFENSE

W&T's claims are barred, in whole or in part, because W&T failed to exercise reasonable care to mitigate any alleged damages it may have suffered. W&T's failure to exercise reasonable care to mitigate damages was the complete or partial cause of any damages W&T may have suffered.

## ELEVENTH DEFENSE

W&T's claims are barred, in whole or in part, because any alleged injuries and damages were not legally or proximately caused by any acts or omissions of Lexon and/or were caused, if at all, solely and proximately by the conduct of W&T or other persons, including, without limitation, the prior intervening, or superseding conduct of W&T or other persons.

## TWELFTH DEFENSE

Some of W&T's claims fail to the extent that the Indemnity Agreement, a binding and enforceable contract, exists between W&T and Lexon and bars some or all of W&T's claims and/or permits the actions by Lexon complained of by W&T.

## THIRTEENTH DEFENSE

Without admitting the existence of any contract, combination, or conspiracy in restraint of trade, and expressly denying the same, W&T's claims are barred, in whole or in part, by Lexon's right to set off any amounts paid to W&T by any Defendants who have settled, or do settle, W&T's claims against them in this action.

72

## FOURTEENTH DEFENSE

To the extent that any actionable conduct occurred, W&T's claims are barred to the extent that such conduct was committed by any individual acting ultra vires or beyond the scope of any individual's express or implied authority as an agent or employee of Lexon.

## FIFTEENTH DEFENSE

W&T's claims are barred, in whole or in part, by W&T's knowing acquiescence or ratification of the restraints of trade alleged in the Complaint.

## SIXTEENTH DEFENSE

Lexon adopts and incorporates by reference any and all other defenses asserted by any other Defendant to the extent that the defense would apply to Lexon.

## SEVENTEENTH DEFENSE

Lexon reserves the right to assert other defenses as this action proceeds up to and including the time of trial.

## THIRD AMENDED COUNTERCLAIM

Pursuant to Federal Rule of Civil Procedure 13(a), Lexon Insurance Company and Endurance Assurance Corporation ("**Endurance**," collectively with Lexon Insurance Company, "**Lexon**"), on knowledge as to their own actions and otherwise on good-faith information and belief, hereby assert this Third Amended Counterclaim against W&T Offshore, Inc., and W&T Energy VI, LLC (collectively, "**W&T**" or "**Counterclaim-Defendants**").

## INTRODUCTION

1.      This action arises from W&T's breach of its obligations under the terms of Payment and Indemnity Agreement No. 1380 (the "**Indemnity Agreement**" or "**Agreement**"), which was executed by each of the Counterclaim-Defendants on September 14, 2020.[2] W&T executed the Indemnity Agreement "to induce the Surety," *i.e.*, Lexon, to issue bonds (the "**Bonds**") with respect to W&T's operations on the Outer Continental Shelf ("**OCS**"). In reliance on the protections afforded to Lexon under the Indemnity Agreement, Lexon issued bonds that, as of now, expose Lexon to over $40 million in potential liability (referred to as the "penalty amount" on the Bonds) should W&T default on the bonded obligations.

---

[2] A true and correct copy of the Indemnity Agreement is attached hereto as Exhibit 1, the terms of which are incorporated herein by reference.

2.      W&T is required to provide "financial assurance" in order to conduct oil and gas exploration operations on the OCS pursuant to the OCS Lands Act, which charges the Secretary of the Interior with the administration of leases authorizing private parties to explore the OCS for oil and natural gas and with the regulation of such activities. The financial assurance requirements address, among other things, decommissioning liabilities, which are overseen by the Bureau of Ocean Energy Management ("**BOEM**"). These regulations ensure that exploration companies, rather than taxpayers, fund the restoration of the land and infrastructure associated with offshore oil, gas, or sulfur development.

3.      Surety bonds are one of several types of financial assurance acceptable to BOEM. W&T chose to utilize surety bonds (over other types of financial assurance) issued by Lexon and other sureties to provide the requisite financial assurance, which not only enabled W&T to satisfy regulatory requirements and thereby conduct oil and gas operations on the OCS but also had the effect of freeing up liquidity on W&T's balance sheet that otherwise would have had to be dedicated to satisfying financial assurance requirements.

4.      The Bonds at issue here secure W&T's obligations to, among other things, restore and remediate properties once W&T completes its oil and gas operations, including plugging and abandoning wells, removing equipment, and restoring surface, subsurface, and sites to their original condition.

5.      As a general matter, Lexon remains potentially responsible for W&T's obligations under the Bonds until W&T satisfies such obligations or the Regional Director of BOEM issues a written cancellation in favor of Lexon. If W&T defaults on the obligations covered by the Bonds, Lexon is responsible for performing the underlying obligations and potentially can be sued by BOEM or other relevant parties in connection with W&T's failure to perform. Lexon's obligations under the Bonds cannot be cancelled unilaterally by Lexon and remain in full force and effect, even if, among other things, Lexon suffers any loss "by reason of any law limiting, qualifying, or discharging"[3] its obligations or W&T stops paying premiums due under the Bonds.

6.      In light of the risk borne by Lexon as surety, chief among the bargained-for protections in the Indemnity Agreement is Lexon's right to demand collateral from W&T, which provides security for Lexon before any event of default occurs. In fact, the requirement to provide collateral in response to a surety's demand is so integral to the surety receiving the benefit of its contractual bargain that courts repeatedly have found that the refusal to provide such collateral constitutes irreparable harm. Here, in the Indemnity Agreement, Lexon has the right, "at any time and from time to time hereafter, in its sole and absolute discretion, [to] require

---

[3] *See, e.g.,* Outer Continental Shelf Mineral Lessee's or Operator's Supplemental Bond, ¶ 6(e) (Dkt. 36-2).

the Principals [*i.e.*, W&T] to provide collateral, in forms and amounts acceptable to [Lexon] . . . to secure the Principals' obligations to [Lexon] hereunder and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond." Agreement ¶ 3 (the "**Collateral Demand Provision**"). On its face, the Collateral Demand Provision—contained in a section in the Indemnity Agreement titled "Security"—could hardly be clearer: it entitles Lexon "at any time" to use its "sole and absolute discretion" to determine the amount of collateral necessary "to secure the Principals' obligations" to Lexon and the form that such collateral must take.

7.      However, perhaps because the Collateral Demand Provision plainly confers on Lexon the right to demand the collateral it is seeking, W&T has adopted a strategy of obfuscation, attempting to focus this action on a host of issues having nothing to do with Lexon's right to demand collateral under the terms of the Indemnity Agreement.

8.      By way of further background, the key parties to the surety relationship are the (i) obligee, which is the entity to whom the obligation is owed (often, as here, a state or local government), (ii) principal, which is the primary party charged with performing the obligation (*i.e.*, W&T), and (iii) surety (*i.e.*, Lexon), which, according to the bond's terms, is responsible for the principal's obligations in the

event of the principal's default, subject to the surety's right to seek indemnification from the principal.

9.    As a surety, Lexon agrees to incur exposure based in part on the contractual obligation of the principal created in the Indemnity Agreement to repay the surety for any payments the surety makes towards the principal's bonded obligations. This contractual reimbursement obligation seeks to ensure that the principal bears the ultimate financial responsibility for any claims relating to the surety bond.

10.    This is a key difference between surety, which essentially serves as a form of credit, and insurance, which provides financial protection against potential future losses. Insurance protects the insured from unforeseen risks, such as accidents, natural disasters, or health issues. When an insurance claim is made, the insurer compensates the insured for covered losses according to the policy terms. This compensation is typically final, and the insured does not have to repay the insurer.

11.    In contrast, surety bonds ensure that contractual obligations are met, often in the context of construction, environmental projects, or other business agreements, to assure the obligee that the principal will fulfill their commitments, either through performance or financial compensation. Therefore, when a claim is made against a surety bond, the surety may cover the costs of the principal's

obligations, but, unlike insurance, the principal is contractually obligated to repay the surety for all loss, costs, fees and any amounts paid on its behalf.

12. Lexon's sole compensation for undertaking these obligations in connection with issuance of bonds is the payment of premiums by the principal to Lexon. Premiums are charged annually on each bond for as long as the bond remains outstanding. However, regardless of whether a principal complies with its obligation to pay premiums or not, the surety's obligation exists and the bonds remain outstanding until the underlying obligations of the principal are satisfied. Therefore, W&T owes premium payments to Lexon and premiums continue to accrue until the Bonds are released or repaid.

13. While Lexon's sole compensation is the principal's payment of premium, Lexon has other rights under the Indemnity Agreement. In particular, a surety has the right to demand collateral to secure the principal's obligations. Given the nature of the surety's obligations, Lexon generally exercises its contractual right to procure collateral from the principal *prior to* a potential default in order to protect the surety against any actual or potential liability that the principal would otherwise not be able to repay.

14. Consistent with its contractual rights, when Lexon had concerns about W&T's ability to fulfill its obligations, Lexon spent months attempting to reach an agreement with W&T on a collateral payment schedule that would provide Lexon

security if W&T were to default on its obligations. Despite Lexon proposing at least five different payment options, W&T never agreed to provide additional collateral other than a subordinate lien on certain assets—an offer that did not provide Lexon with any meaningful security. Having spent months attempting but making no real progress toward reaching an agreement with W&T, Lexon demanded, in a letter dated July 9, 2024 (the "**July 9 Demand**"), that W&T provide as collateral $7.5 million cash via wire transfer or an irrevocable letter of credit within 30 days. A true and correct copy of the July 9 Demand is attached hereto as Exhibit 2.

15.     W&T did not provide the collateral within 30 days, and, to date, has not provided any of the requested collateral to Lexon.

16.     In addition to failing to comply with Lexon's July 9 Demand, W&T also is in default of its premium obligations to Lexon. In particular, W&T has failed to pay the full amount of premiums owed to Lexon since Lexon increased W&T's premiums by 2%. To date, W&T owes Lexon $778,457.47 in accrued but unpaid premiums.

17.     W&T's failure to satisfy the July 9 Demand and its failure to pay outstanding premium obligations constitute material breaches of the Indemnity Agreement.

18.     W&T's breaches, in turn, have additional consequences.

19.     First, the Agreement provides that if "any Principal fails to pay within thirty (30) days after written demand any premium or portion thereof, or fails to pay within thirty (30) days after written demand of any other sum becoming due [to Lexon] hereunder, then," absent securing the release and discharge of all of Lexon's liability under the bonds and paying Lexon all amounts then owed, Lexon "may require there be paid, and the Principals jointly and severally agree they shall forthwith pay to [Lexon], an amount equal to the full penalty amount of the Bonds, to be held as collateral until (i) all sums due and to become due to [Lexon] have been paid and (ii) [Lexon] shall be wholly discharged and released from all liability under the Bonds." Agreement ¶ 1. By virtue of having failed to provide collateral in response to the July 9 Demand, W&T triggered the obligation to provide collateral "equal to the full penalty amount of the Bonds," or in excess of $40 million.

20.     Second, W&T's failure to provide collateral in response to the July 9 Demand or pay the premiums due and owing to Lexon entitles Lexon to recover the costs and fees it incurs to enforce its rights under the Indemnity Agreement. Specifically, the Indemnity Agreement provides that the "Principals shall jointly and severally indemnify and keep indemnified [Lexon] and hold and save it harmless from and against any and all liability, damage, loss, cost and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which [Lexon] may

81

at any time sustain or incur or in enforcing this Agreement against any Principal." Indemnity Agreement ¶ 2.

21. Likewise, the Agreement separately provides that in "the event any action is instituted to enforce any of the provisions of this Agreement or to recover damages for the breach of any provision hereof, the prevailing party therein shall be entitled to recover any costs or expenses incurred, including without limitation, costs of court and reasonable attorneys' fees." Agreement ¶ 26.

22. Despite Lexon's clear and unambiguous right to the demanded collateral and payment of premiums owed, to date, Lexon has gone to great lengths to resolve the issue without resorting to litigation, including demanding less collateral than is necessary to adequately secure W&T's performance obligations under the Bonds and proposing a variety of structures whereby W&T could satisfy the July 9 Demand. In response, W&T not only has refused to honor its obligations to Lexon but—adding insult to injury—instituted this action to, in effect, declare its "right" not to abide by its obligations under the Agreement.

23. W&T's ongoing refusal to satisfy the July 9 Demand and continuing non-payment of premiums—and initiating the present action—make clear that it has no intention of honoring its contractual commitments.

24. As set forth further below, Lexon is entitled to recover in excess of $40 million, constituting the penalty amount of the Bonds, plus the attorneys' fees and

other costs it has incurred to enforce its rights under the Agreement, including in connection with this action, and all outstanding premiums that are owed, including those that come due during the course of this action and thereafter.

## PARTIES

25.    W&T Offshore, Inc. is a corporation organized under the laws of the State of Texas, with its principal place of business in Houston, Texas. W&T Energy VI, LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

26.    Endurance is a corporation organized under the laws of the State of Delaware with its principal place of business in Purchase, New York. Lexon is a corporation organized under the laws of the State of Texas with its principal place of business in Mt. Juliet, Tennessee. As relevant here, Endurance and Lexon issue surety bonds with respect to companies operating in a wide range of industries, including construction; home building; financial services; service companies with an emphasis on transportation, waste, and security; renewable energy, as well as oil and gas exploration and production; and hard-rock mining and waste. Lexon and Endurance are wholly owned subsidiaries of Sompo International Holdings Ltd., a global specialty provider of property and casualty insurance and reinsurance.

## JURISDICTION

27.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 43 U.S.C. § 1349 because this dispute arises out of or in connection with operations conducted on the Outer Continental Shelf ("**OCS**"). This Court also has supplemental jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1367(a).

28.     Venue is proper because W&T initially filed its action in this District, and the Indemnity Agreement mandates exclusive venue in federal and state courts in Harris County, Texas. Agreement ¶ 17.

## FACTUAL BACKGROUND

**I.      Lexon Provides Surety Bonds to W&T in Connection with W&T's Offshore Operations**

29.     As explained, surety bonds cover the performance of specified obligations.

30.     As relevant here, in order for W&T to conduct operations on the OCS, it must meet general financial assurance requirements.

31.      The BOEM requires that lessees demonstrate financial reliability according to its regulations and provide acceptable financial assurances to assure satisfaction of lease obligations. These obligations may include decommissioning operations, plugging and abandoning wells, removing and disposing of equipment

and facilities, and restoring and remediating surface and subsurface properties used for oil and gas exploration and production.

32.    Thus, in order to obtain permits to conduct drilling on the OCS from the United States Department of the Interior (obligee), W&T (principal) was required to obtain financial assurance and chose to obtain surety bonds to secure its performance of the various obligations under the permits.[4] Should W&T default on its obligations, according to the terms of the bond, Lexon (surety) is responsible for arranging to fulfill W&T's obligations under the permits, as well as defending against any legal proceedings initiated by the obligee in connection with the principal's defaults.

33.    Nothing required W&T to obtain surety bonds. W&T could have satisfied BOEM's regulatory financial assurance requirements in other ways, including by posting cash or letters of credit. W&T chose to access the surety market, presumably to free up liquidity on its balance sheet. Even today, W&T could replace Lexon's Bonds by posting cash or letters of credit with the BOEM.

---

[4] W&T also obtained surety bonds from Lexon in connection with work performed for Exxon Mobil Corporation and Woodside Energy USA, and to secure certain obligations and bifurcate sellers from the chain of title when purchasing assets on the OCS. Absent these surety bonds or another form of financial assurance (e.g., cash or letter of credit), it is unlikely that W&T could have acquired these assets from these sellers because, in that event, the sellers would have remained liable with respect to obligations attaching to those bonds.

85

34.    The surety receives compensation in the form of premiums in exchange for undertaking these obligations, and often also requires, as Lexon did here, two forms of financial protection. First, the surety typically demands the right to require that the principal post collateral as security to protect against a potential bond default. In that event, the collateral could be used toward payment of losses, costs, or expenses incurred in discharging the principal's obligations should a default occur. Second, the principal agrees to indemnify the surety against losses and expenses incurred in connection with the bond. All these obligations on the part of the principal, *i.e.*, payment of premiums, provision of collateral and indemnification, typically are memorialized, as here, in a general indemnity agreement.

35.    Since 2014, Lexon has issued Bonds, currently with a total exposure in excess of $40 million, in connection with energy exploration operations conducted by W&T on the OCS.

36.    The Bonds at issue here include the following:[5]

| Bond Number | Principal Name | Obligee Name | Bond Amount |
| --- | --- | --- | --- |
| EACX226000025 | W & T Energy VI LLC | US Department of Interior | $3,000,000 |
| 1156846 | W & T Energy VI LLC | US Department of Interior | $5,000,000 |
| 1097677 | W & T Energy VI LLC | US Department of Interior | $9,000,000 |
| 1159776 | W & T Energy VI LLC | US Department of Interior | $3,000,000 |
| EACX226000038 | W & T Energy VI LLC | US Department of Interior | $1,482,000 |

[5] At the start of this case, Lexon's total exposure surpassed $55 million. Since then, Bond No. EACX226000040, in the amount of $13,126,457, Bond No. 1136950 in the amount of $117,279, Bond No. 1136949, in the amount of $1,166,860, and Bond No. EACX226000022, in the amount of $1,461,000 have been discharged, thereby reducing Lexon's exposure.

| EACX226000039 | W & T Energy VI LLC | US Department of Interior | $3,830,148 |
| EACX226000044 | W & T Energy VI LLC | US Department of Interior | $3,000,000 |
| 1152010 | W&T Offshore Inc | Woodside Energy USA Inc. | $1,931,562 |
| 1152011 | W&T Offshore Inc | Woodside Energy USA Inc. | $376,688 |
| EACX226000043 | W&T Offshore Inc | Exxon Mobil Corporation et al | $7,000,000 |
| EACX226000045 | W&T Offshore Inc | Railroad Commission of Texas | $125,000 |
| EACX226000047 | W&T Offshore Inc | US Department of Interior | $2,285,584 |

37.    Paragraph 3 of the Indemnity Agreement, entitled "Security," provides:

The Surety may at any time and from time to time hereafter, in its sole and absolute discretion, require the Principals to provide collateral, in form and amounts acceptable to the Surety . . . to secure the Principals' obligations to the Surety hereunder and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond. Within thirty (30) days after the Surety has made written demand on Principals, each Principal shall execute such documents and take such further action as may be necessary in order to provide such collateral. Each Principal hereby grants to the Surety a security interest in all money and other property now or hereafter delivered by such Principal to the Surety, and all income (if any) thereon. If a Principal provides the Surety with a letter of credit or similar instrument, such Principal agrees that the Surety has the right to call on the same from time to time, in whole or in part and for any reason or no reason, and to hold the proceeds thereof as collateral for the obligations of the Principals hereunder. Any collateral provided at any time by any Principal shall be available, in the discretion of the Surety, as collateral security on any or all Bonds heretofore or hereafter executed for or at the request of such Principal or any other Principal.

Agreement ¶ 3.

38.    Paragraph 4 of the Indemnity Agreement provides Lexon the right to inspect the financial records of W&T at any time, providing, in relevant part:

> Until the Surety shall have been furnished with evidence of its full, final and complete discharge without loss from any and all Bonds, the Surety and its agents shall have reasonable access, at any and all reasonable times, to the financial books and records (including but not limited to reserve reports, engineering data and like information) of each Principal relevant to the obligations under this Agreement . . .

Agreement ¶ 4.

39.     The Indemnity Agreement also provides that W&T "shall pay to [Lexon] premiums and charges at the rates and at the times specified by [Lexon] with respect to each Bond (as [Lexon] may specify at any time before or after the issuance of the Bond), continuing until [Lexon] shall be discharged or released from any and all liability under the Bonds[.]" Agreement ¶ 1.

40.     The Indemnity Agreement also expressly affords Lexon indemnification rights, stating in relevant part,

> The Principals shall jointly and severally indemnify and keep indemnified the Surety and hold and save it harmless from and against any and all liability, damage, loss, cost, and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which the Surety may at any time sustain or incur or in enforcing this Agreement against any Principal or in procuring or in attempting to procure the Surety's release from liability or a settlement under any Bonds. . . .

Agreement ¶ 2.

41.     The Indemnity Agreement also entitles Lexon to "recover any costs or expenses incurred, including without limitation, costs of court and reasonable attorneys' fees" for any action "to enforce any of the provisions of this Agreement

88

or to recover damages for the breach of any provision hereof" should it prevail in such action. Agreement ¶ 26.

42.    Finally, the Indemnity Agreement entitles Lexon to interest on "[a]ny and all sums not paid when due" in the amount of "the lesser of (a) ten percent (10%) per annum, or (b) the maximum non-usurious rate of interest allowed by applicable law." Agreement ¶ 23.

## II.    Lexon's Concern Over the Adequacy of Its Collateral with Regard to the Bonds

43.    A number of factors led Lexon to conclude that it was appropriate and necessary to demand additional collateral from W&T, leading to the July 9 Demand. These included, among others, the following:

44.    First, Lexon's Bond exposure had increasingly become a concern given W&T's financial performance. According to its 2023 annual report,[6] W&T's Total Revenues declined from $920.9 million in 2022 to $532.7 million in 2023; Operating Income declined from $454 million in 2022 to $29.5 million in 2023; and Net Income decreased from $231.2 million in 2022 to $15.6 million in 2023. Ex. 3, pp. 47, 67. W&T also reported, "We have a significant amount of indebtedness and limited borrowing capacity under our Credit Agreement. Our leverage and debt

---

[6] A true and correct copy of W&T's Report on Form 10-K for the fiscal year ended December 31, 2023, is attached hereto as Exhibit 3.

service obligations may have a material adverse effect on our financial condition, results of operation and business prospects, and we may have difficulty paying our debts as they become due." *Id.*, p. v.

45.   In that same report, W&T acknowledged its collateral obligations to Lexon, stating:

> In prior years, some of the sureties that provide us surety bonds used for supplemental financial assurance purposes have requested and received collateral from us and may request additional collateral from us in the future, which could be significant and could impact our liquidity. In addition, pursuant to the terms of our agreements with various sureties under our existing bonds or under any additional bonds we may obtain, we are required to post collateral at any time, on demand, at the surety's discretion. In both 2023 and 2022, we have not had to post collateral for sureties . . . . [C]ollateral requests from surety bond providers and collateral requests from other third-parties may require the posting of cash collateral, which may be significant . . . .

*Id.* at 46.

46.   In May 2024, W&T reported a first quarter 2024 net loss of $11.5 million, down 144% from a Q1 2023 profit, while revenue and earnings per share missed analysts' consensus estimates. Since prior to the July 9 Demand and through today, credit-ratings provider Fitch Ratings has maintained a B- rating on W&T, indicating that "material default risk is present, but a limited margin of safety remains. Financial commitments are currently being met; however, capacity for

90

continued payment is vulnerable to deterioration in the business and economic environment."[7] Credit ratings provider S&P Global likewise has given W&T a B- issuer credit rating since prior to the July 9 Demand.

47.   W&T's financial condition continued to decline during 2024. In its 2024 annual report,[8] W&T reported a Net Loss of $87.1 million and an Operating Income loss of $42.2 million. Ex. 4, p. 65. W&T again expressed concern about its "level of indebtedness," noting that "[w]e cannot be certain that our cash flow will be sufficient to allow us to pay the principal and interest on our debt or otherwise meet our future obligations." *Id*. at p. 20.

48.   W&T's financial condition fared even worse in 2025. In its 2025 annual report,[9] W&T reported a Net Loss of $150.1 million and an Operating Income loss of $52.8 million. Ex. 5, p. 63. Yet again, W&T expressed concern about its "level of indebtedness," noting that "[w]e cannot be certain that our cash flow will be

---

[7] *See Issuer Default Ratings,* FITCH RATINGS, https://your.fitch.group/rating-definitions.html (last visited May 20, 2026); *see also Fitch Affirms W&T Offshore Inc.'s Long-Term IDR at 'B-' ; Outlook Stable,* FITCH RATINGS, https://www.fitchratings.com/research/corporate-finance/fitch-affirms-w-t-offshore-inc-long-term-idr-at-b-outlook-stable-24-07-2025 (July 24, 2025); *Fitch Affirms Four North American E&P Companies and Five North American OFS*, FITCH RATINGS, https://www.fitchratings.com/research/corporate-finance/fitch-affirms-four-north-american-e-p-companies-five-north-american-ofs-companies-06-02-2026 (Feb. 6, 2026).

[8] A true and correct copy of W&T's Report on Form 10-K for the fiscal year ended December 31, 2024, is attached hereto as Exhibit 4.

[9] A true and correct copy of W&T's Report on Form 10-K for the fiscal year ended December 31, 2025, is attached hereto as Exhibit 5.

sufficient to allow us to pay the principal and interest on our debt or otherwise meet our future obligations." *Id*. at p. 20. Most recently, W&T reported a Net Loss of $22.5 million for the first quarter of 2026.[10]

49.    Second, Lexon issued surety bonds on behalf of Fieldwood Energy LLC ("**Fieldwood**"), another oil and gas operator. After Fieldwood filed for bankruptcy in 2020, its bankruptcy plan provided for the sale of some of its oil and gas assets free and clear of any debts, including any subrogation rights of the sureties. In other words, whatever companies acquired Fieldwood's assets out of the bankruptcy would not be bound to any underlying obligations of any surety bond (including, for instance, to pay premiums or provide collateral), while the sureties' obligations on these bonds remained in force and effect. This result in the Fieldwood bankruptcy led Lexon to conclude that it faced generally increased risk in connection with surety bonds issued with respect to energy exploration and production activities.

---

[10] A true and correct copy of W&T's Report on Form 10-Q for the quarterly period ended March 31, 2026, is attached hereto as Exhibit 6. *See also* W&T Offshore, Inc., Quarterly Report (Form 10-Q) (Sep. 30, 2025) (reporting a net loss of $71.5 million in the third quarter of 2025); W&T Offshore, Inc., Quarterly Report (Form 10-Q) (June 30, 2025) (reporting a net loss of $20.9 million in the second quarter of 2025); W&T Offshore, Inc., Quarterly Report (Form 10-Q) (Mar. 31, 2025) (reporting a net loss of $30.6 million in the first quarter of 2025); W&T Offshore, Inc., Quarterly Report (Form 10-Q) (Sep. 30, 2024) (reporting a net loss of $36.9 million in the third quarter of 2024); W&T Offshore, Inc., Quarterly Report (Form 10-Q) (June 30, 2024) (reporting a net loss of $15.4 million in the second quarter of 2024).

50.     Third, the BOEM proposed a new rule in June 2023, which was finalized in April 2024, to determine if and how much supplemental financial assurance is required for offshore operations on the OCS.[11] Under the Risk Management and Financial Assurance for OCS Lease and Grant Obligations rule— which toughened the supplemental financial assurance requirements for offshore operations on the OCS—supplemental financial assurance is waived for companies only if (1) the companies meet an investment grade credit rating of at least BBB- (under S&P Global Ratings and Fitch Ratings, Inc.) or Baa3 (Moody's Investors Service, Inc.) or (2) the companies' proved reserves exceed the estimated decommissioning costs by a 3-to-1 ratio. The new rule also imposed additional obligations, including an updated calculation for the amount required as supplemental financial assurance and instituting a phase-in period with strict deadlines. Under this new rule, Lexon reasonably (and, it turns out, accurately) concluded that W&T would be required to secure additional bonds or post another form of additional financial assurance, in turn requiring W&T to divert assets to

---

[11] After the filing of this litigation, the Trump Administration changed the financial assurance rules again. Regardless of what the BOEM regulations require, however, regulatory volatility such as has occurred with BOEM regulations creates significant uncertainty, leaving Lexon with less ability to rely on historical precedent and necessitating that Lexon protect itself through mechanisms like collateral.

these other financial obligations, further straining it financially and thus increasing

Lexon's risk.

### III.   Lexon Seeks Collateral and Premiums According to the Terms of the Indemnity Agreement

51.    As noted, under the Indemnity Agreement, W&T was required to provide Lexon with collateral as security for its obligations. Agreement, ¶ 3. W&T's obligations under the Indemnity Agreement are absolute and unconditional. Specifically, under the Collateral Demand Provision, Lexon "may at any time and from time to time hereafter, in its sole and absolute discretion, require [W&T] to provide collateral, in form and amounts acceptable to [Lexon] . . . to secure [W&T's] obligations to [Lexon] hereunder." Agreement, ¶ 3. The Collateral Demand Provision further provides that "[w]ithin thirty (30) days after [Lexon] has made written demand on [W&T], [W&T] shall execute such documents and take such further action as may be necessary in order to provide such collateral." *Id.*

52.    Notwithstanding Lexon's "sole and absolute" right to demand additional collateral, as well as its reasonable conclusion that additional collateral was appropriate in light of, among other things, W&T's financial condition (although such a demand by Lexon is not subject to a reasonableness standard under the Agreement's clear terms), Lexon did not immediately send a formal collateral

94

demand to W&T. Instead, Lexon provided W&T with a slate of options for potential collateral structures over several months of discussions.

53.    On or about June 20, 2024, Lexon offered W&T five different collateral replacement options:

i.    $7.5 million upfront collateral deposit;

ii.    $5 million upfront collateral deposit followed by two annual installments of $2.5 million;

iii.    Replacement or release of Bond Nos. 1152010, 1152011, EACX226000022, 1136949, 1136950, and EACX226000038; and payment of $1 million collateral deposit followed by three annual installments of $1 million;

iv.    Replacement or release of Bond Nos. 1097677, 1156846, 1159776, EACX226000025, EACX226000039, EACX226000044, and EACX226000047; and payment of $2 million collateral deposit followed by four annual installments of $1 million; or

v.    Replacement or release of all bonds except for Bond Nos. EACX226000043 and EACX226000040.

54.    In addition, Lexon expressed to W&T its willingness to work on an "all surety solution" and offered to provide suggestions on a framework for any such collaboration. W&T failed to express any interest in this approach.

55.    Despite the variety of options presented, W&T instead insisted that Lexon take a third lien position in W&T's debt as "additional security" in lieu of cash or a letter of credit (the same debt rated B- by Fitch as being in material risk of

default). Lexon rejected that proposal because a third lien did not actually provide Lexon with the additional security it deemed necessary and appropriate and which it was seeking.

56.    In response, Lexon reiterated to W&T the five potential options for collateral and set a revised deadline for W&T to select their preferred option with the "original" collateral installment due by close of business July 5, 2024. W&T refused to provide collateral and was unresponsive to Lexon's suggestion to engage all sureties to arrive at an amenable collateral structure for all parties.

57.    On or about July 9, 2024, Lexon followed up with the July 9 Demand for $7,500,000 of collateral pursuant to the Collateral Demand Provision, which represented a fraction of Lexon's total exposure (at the time of over $55 million) and was well within Lexon's rights under the Indemnity Agreement. The collateral demanded was to be provided to Lexon no later than August 9, 2024.

58.    To date, W&T has not provided any collateral to Lexon in response to the July 9 Demand, in material breach of the Indemnity Agreement. Instead, W&T instituted this action.

59.    W&T has also failed to timely and fully pay the premiums that it owes to Lexon and currently owes Lexon $778,457.47 in outstanding but unpaid premiums. W&T has no basis under the Indemnity Agreement or otherwise not to pay the premiums it undisputedly owes to Lexon. Instead, as it has done with respect

96

to its collateral payment obligations, W&T has simply chosen to renege on its contractual premium commitments. In doing so, W&T again has materially breached the Indemnity Agreement.

60.    By virtue of W&T's material breaches of the Indemnity Agreement, Lexon is entitled to collateral in excess of $40 million, constituting the penalty amount of the Bonds, the unpaid premiums it is owed (currently in excess of $750,000), plus the attorneys' fees and other costs it has incurred and continues to incur to enforce its rights under the Agreement, including in connection with this action.

**COUNT I**
**(BREACH OF THE INDEMNITY AGREEMENT - SPECIFIC PERFORMANCE OF COLLATERAL DEMAND PROVISION)**

61.    Lexon incorporates and re-alleges each of the preceding paragraphs of the Third Amended Counterclaim as if fully set forth herein.

62.    The Indemnity Agreement is a valid, binding, and enforceable contract.

63.    Under the Indemnity Agreement, Lexon "may at any time and from time to time hereafter, in its sole and absolute discretion, require [W&T] to provide collateral, in form and amounts acceptable to [Lexon] . . . to secure [W&T's] obligations to [Lexon] and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond." Agreement ¶ 3. Further, "[w]ithin thirty (30) days after [Lexon] has made written demand on [W&T], [W&T]

97

shall execute such documents and take such further action as may be necessary in order to provide such collateral." *Id.*

64.    The Agreement also provides that if "any Principal . . . fails to pay within thirty (30) days after written demand of any other sum becoming due [to Lexon] hereunder, then," absent securing the release and discharge of all of Lexon's liability under the bonds, Lexon "may require there be paid, and the Principals jointly and severally agree they shall forthwith pay to [Lexon], an amount equal to the full penalty amount of the Bonds, to be held as collateral until (i) all sums due and to become due to [Lexon] have been paid and (ii) [Lexon] shall be wholly discharged and released from all liability under the Bonds." Agreement ¶ 1.

65.    Lexon sent W&T the July 9 Demand asking that W&T provide collateral under the Collateral Demand Provision in the form of cash or an irrevocable letter of credit.

66.    W&T has never provided collateral to Lexon in response to the July 9 Demand.

67.    The failure of W&T to provide to Lexon the demanded collateral constitutes a material breach of the Indemnity Agreement.

68.    Lexon has been and remains at all times ready, willing, and able to perform, and has performed, under the Indemnity Agreement.

69.    As a direct and proximate result of W&T's breach, Lexon has suffered and will continue to suffer harm. Lexon has no adequate remedy at law that would compensate it for its injury.

70.    Lexon is therefore entitled to entry of a judgment compelling W&T to specifically perform its duties under the Indemnity Agreement, including to provide collateral in the amount equal to the full penalty amount of the Bonds to be held as collateral.

## COUNT II
## (BREACH OF THE INDEMNITY AGREEMENT - PREMIUM PAYMENTS)

71.    Lexon incorporates and re-alleges each of the preceding paragraphs of the Third Amended Counterclaim as if fully set forth herein.

72.    The Indemnity Agreement is a valid, binding, and enforceable contract.

73.    The Agreement provides that "[t]he Principals shall pay to [Lexon] premiums and charges at the rates and at the times specified by [Lexon] with respect to each Bond[.]" Agreement ¶ 1.

74.    To date, W&T has failed to fully and timely make payment of outstanding premiums that it owes to Lexon in connection with the Bonds.

75.    W&T's failure to fully and timely pay premiums that have accrued and continue to accrue in connection with the Bonds constitutes a material breach of the Indemnity Agreement.

76.     Lexon has been and remains at all times ready, willing, and able to perform, and has performed, under the Indemnity Agreement.

77.     As a direct and proximate result of W&T's breach, Lexon has suffered and will continue to suffer damages.

## COUNT III
## (DECLARATORY JUDGMENT – LEXON'S CONTRACTUAL RIGHT TO COLLATERAL)

78.     Lexon incorporates and re-alleges each of the preceding paragraphs of the Third Amended Counterclaim as if fully set forth herein.

79.     The Indemnity Agreement is a valid, binding, and enforceable contract.

80.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Lexon requests that the Court enter an order declaring its rights with respect to the Indemnity Agreement.

81.     Under the Indemnity Agreement, Lexon "may at any time and from time to time hereafter, in its sole and absolute discretion, require [W&T] to provide collateral, in form and amounts acceptable to [Lexon] . . . to secure [W&T's] obligations to [Lexon] and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond." Agreement ¶ 3. Further, "[w]ithin thirty (30) days after [Lexon] has made written demand on [W&T], [W&T] shall execute such documents and take such further action as may be necessary in order to provide such collateral." *Id.*

100

82.   W&T disputes its obligations under the Agreement to provide collateral and/or to provide collateral in the form Lexon requested, claiming that Lexon's demand for collateral is unreasonable. However, the Agreement does not contain a requirement that Lexon's demand must satisfy a reasonableness test—instead, it provides that Lexon "in its sole and absolute discretion" may "require" W&T to provide collateral "in form and amounts acceptable" to Lexon.

83.   To the extent that less than the full penalty amount of the Bonds is provided to Lexon pursuant to Count I, the relationship between W&T and Lexon is ongoing, and the Indemnity Agreement will continue to govern aspects of the future relationship between W&T and Lexon with regard to the Bonds at issue in this litigation or potential future bonds that may be issued. As such, Lexon may demand collateral payment from W&T in the future under the Agreement, and W&T disputes Lexon's right to do so.

84.   An actual, justiciable controversy has arisen and presently exists concerning Lexon's aforementioned rights and W&T's obligations under the Indemnity Agreement.

85.   Accordingly, the Court should declare that W&T has an ongoing and future obligation under the Indemnity Agreement to provide Lexon collateral in form and amounts acceptable to Lexon within 30 days of Lexon's written demand.

## COUNT IV
## (DECLARATORY JUDGMENT – LEXON'S CONTRACTUAL RIGHT TO PREMIUM PAYMENTS)

86.    Lexon incorporates and re-alleges each of the preceding paragraphs of the Third Amended Counterclaim as if fully set forth herein.

87.    The Indemnity Agreement is a valid, binding, and enforceable contract.

88.    Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Lexon requests that the Court enter an order declaring its rights with respect to the Indemnity Agreement.

89.    Under the Indemnity Agreement, "Principals shall pay to [Lexon] premiums and charges at the rates and at the times specified by [Lexon] with respect to each Bond . . . continuing until the Surety shall be discharged or released from any and all liability and responsibility under the Bonds[.]" Agreement ¶ 1.

90.    W&T disputes its obligations under the Agreement to provide premiums to Lexon.

91.    To the extent that W&T continues to refuse to timely and fully pay premiums to Lexon in connection with the Bonds as required by the Indemnity Agreement, the relationship between W&T and Lexon is ongoing, and the Indemnity Agreement will continue to govern aspects of the future relationship between W&T and Lexon with regard to the Bonds at issue in this litigation or potential future bonds that may be issued. As such, W&T will owe premium payments to Lexon that accrue

102

in the future under the Agreement and, based on its conduct to date, W&T disputes its obligation to make such payments.

92.    An actual, justiciable controversy has arisen and presently exists concerning Lexon's aforementioned rights and W&T's obligations under the Indemnity Agreement.

93.    Accordingly, the Court should declare that W&T has an ongoing and future obligation under the Indemnity Agreement to fully and timely pay premiums to Lexon in connection with the Bonds at the rates and times specified by Lexon.

## COUNT V
## (DECLARATORY JUDGMENT – LEXON'S CONTRACTUAL RIGHT TO INDEMNITY)

94.    Lexon incorporates and re-alleges each of the preceding paragraphs of the Third Amended Counterclaim as if fully set forth herein.

95.    The Indemnity Agreement is a valid, binding, and enforceable contract.

96.    Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Lexon requests that the Court enter an order declaring its rights with respect to the Indemnity Agreement.

97.    Specifically, under the Indemnity Agreement, W&T "shall jointly and severally indemnify and keep indemnified [Lexon] and hold and save it harmless from and against any and all liability, damage, loss, cost and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which [Lexon] may

103

at any time sustain or incur or in enforcing this Agreement against [W&T.]" Agreement ¶ 2.

98.    Lexon has incurred and continues to incur costs, expenses, and fees, including attorneys' fees, as a result of W&T's breach of the Indemnity Agreement and to enforce its rights thereunder, including as a result of W&T's failure to provide collateral in forms and amounts acceptable to Lexon and to timely and fully pay premiums owed.

99.    W&T denies that it has breached the Indemnity Agreement and that it owes Lexon any costs, fees, or expenses incurred by Lexon in enforcing the Agreement and/or as a result of W&T's breaches of the Agreement.

100.    An actual, justiciable controversy has arisen and presently exists concerning Lexon's aforementioned rights and W&T's obligations under the Indemnity Agreement.

101.    Accordingly, the Court should declare that W&T must indemnify Lexon for:

a)    all liability, damage, loss, cost, and expense of whatsoever kind or nature suffered by Lexon as a result of having to enforce the Indemnity Agreement, including reasonable attorneys' fees, costs, and other expenses;

b)    all losses and expenses resulting from the issuance of the Bonds; and

c)    the amounts sustained or incurred by Lexon as a result of W&T's breaches of the Indemnity Agreement.

104

## COUNT VI
## (*QUIA TIMET*)

102.  Lexon incorporates and re-alleges each of the preceding paragraphs of the Third Amended Counterclaim as if fully set forth herein.

103.  Lexon faces a risk of significant loss under the Bonds. W&T has outstanding performance obligations and associated liability under the Bonds. W&T's failure to honor the express and unequivocal terms of the Indemnity Agreement, as well as its indemnity agreements with other sureties, indicates that sufficient funds to cover W&T's principal obligations under the Bonds may not be available at the conclusion of the litigation.

104.  Given W&T's precarious financial condition, the financial obligations associated with applicable regulatory requirements, and the financial demands placed on W&T by other sureties, Lexon anticipates that demand may be made by the bond obligees against Lexon for performance of W&T's principal obligations for which W&T has primary responsibility due to W&T's inability to fund its own obligations.

105.  W&T has failed to provide Lexon with adequate assurance that it will be able to perform its obligations under the Bonds.

106.  Therefore, the Court should order W&T and its agents to deposit collateral with Lexon in an amount of $40,030,982.

## COUNT VII
## ATTORNEYS' FEES AND COSTS

107.   Lexon incorporates and re-alleges each of the preceding paragraphs of the Third Amended Counterclaim as if fully set forth herein.

108.   The Indemnity Agreement is a valid, binding, and enforceable contract.

109.   Pursuant to Paragraph 26 of the Indemnity Agreement, Lexon is entitled to the recovery of costs, expenses, and attorneys' fees incurred to enforce its rights under the Agreement, including via this action. Agreement ¶ 26.

110.   Lexon has incurred and continues to incur costs, expenses, fees, including attorneys' fees, as a result of W&T's breach of the Indemnity Agreement and Lexon having to enforce its rights thereunder. As such, Lexon respectfully requests that this Court award such fees, costs, and expenses.

111.   Lexon is also entitled to attorneys' fees, costs, and expenses under any and all bases provided by law or equity, under all applicable state and federal laws, including, but not limited to, Federal Rule of Civil Procedure 54(d) and Texas Civil Practice & Remedies Code § 38.001.

112.   As a direct and proximate result of W&T's breach of the Indemnity Agreement, Lexon has suffered and will continue to suffer damages, including having incurred and continuing to incur the costs, fees, and expenses referred to herein.

# **PRAYER**

WHEREFORE, premises considered, Lexon prays that W&T take nothing by way of its claims, and respectfully requests relief and judgment as follows:

a) Dismiss W&T's claims with prejudice and enter judgment in Lexon's favor;

b) Enter an order compelling W&T and its agents to specifically perform their obligations under the Indemnity Agreement by providing to Lexon the collateral in an amount equal to $40,030,982, the full penalty amount of the Bonds;

c) Enter a judgment against W&T in the amount of the premiums due and owing to Lexon at the conclusion of this action;

d) Enter an order pursuant to the common law doctrine of *quia timet* directing W&T and its agents to immediately deposit cash collateral with Lexon in an amount equal to $40,030,982, the full penalty amount of the Bonds;

e) Enter a judgment declaring that, to the extent that less than the full penalty amount of the Bonds is provided to Lexon pursuant to Count I, W&T has an ongoing and future obligation under the Indemnity Agreement to provide Lexon collateral in form and amounts acceptable to Lexon within 30 days of Lexon's written demand;

f) Enter a judgment declaring that W&T is required under the Indemnity Agreement to pay to Lexon premiums currently owed and that accrue in the future at the rates and times specified by Lexon;

g) Enter a judgment declaring that W&T is required to indemnify Lexon for all liability, damage, loss, cost and expense of whatsoever kind or nature suffered by Lexon as a result of having to enforce the Indemnity Agreement;

h) Enter a judgment declaring that W&T is required to indemnify Lexon for all amounts sustained or incurred by Lexon as a result of W&T's breaches of the Indemnity Agreement;

i)    Pursuant to Paragraph 26 of the Indemnity Agreement, award Lexon its costs, expenses and fees (including the reasonable fees and expenses of its counsel) to enforce its rights under the Indemnity Agreement, including fees incurred in connection with this action;

j)    Award Lexon its attorneys' fees under all available and applicable state and federal laws;

k)    Award Lexon pre- and post-judgment interest on all amounts due and owing to Lexon, including pursuant to Paragraph 23 of the Indemnity Agreement; and

l)    Such other and further relief as the Court deems proper and just.

Dated: May 21, 2026        Respectfully submitted,

**VINSON & ELKINS LLP**

*/s/ Jason M. Halper*
Jason M. Halper*
Sara E. Brauerman*
Nicole Castle*
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel.: (212) 237-0000
Fax: (212) 237-0100
jhalper@velaw.com
sbrauerman@velaw.com
ncastle@velawcom

Christopher V. Popov
Texas Bar No. 24032960
Federal ID No. 34615
Alyx E. Eva
Texas Bar No. 24116334
Federal ID No. 3544812
845 Texas Avenue, Suite 4700
Houston, Texas 77002-2947
Tel.: (713) 758-2060

Fax: (713) 615-5068
cpopov@velaw.com
aeva@velaw.com

*Admitted pro hac vice*

**ATTORNEYS FOR ENDURANCE
ASSURANCE CORPORATION AND
LEXON INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2026, I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

*/s/ Jason M. Halper*
Jason M. Halper