**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| W&T OFFSHORE, INC., AND<br>W&T ENERGY VI, LLC, | §<br>§<br>§ | |
| v. | §<br>§ | LEAD CASE NO. 4:24-CV-3047<br>CONSOLIDATED ACTION |
| ENDURANCE ASSURANCE<br>CORPORATION, AND LEXON<br>INSURANCE CO., *ET AL.* | §<br>§<br>§<br>§ | |

**W&T's REPLY TO OPPOSITION TO THE**
**MOTION FOR SANCTIONS AND DEPOSITION ORDER**

In their Opposition, ECF No. 318, Defendants Penn, USFIC, and their counsel try to downplay their conduct of discovery in this matter as a "grab bag" of isolated incidents. Opp. at 1. But, in fact, their conduct reflects an intentional and pervasive pattern of delay, denial, and disregard of the Court's orders and the rules of discovery. Each instance has built upon the ones that preceded it. And each instance has compounded the overall effect of delaying the progress of this litigation, needlessly requiring repeated court resources and intervention, and unnecessary multiplication of W&T's legal fees and expenses. To date, W&T has spent more than $1.7 million in legal fees on discovery-related tasks—and even this is a conservative estimate. While some amount of expense is unavoidable, the dogged resistance of Penn and USFIC to making timely productions of relevant material, and their habit of forcing unnecessary motions practice and hearings unquestionably

1

proliferated those costs. Granting this motion will send a well-timed message to Penn and USFIC (and others who appear in this Court) that such conduct must not be repeated in the new discovery period as the litigation progresses under W&T's Second Amended Complaint.

## I. Penn's Continued Insistence That It Did Not Violate This Court's October and January Orders Is Meritless

Penn's opening remark that "Penn complied with the Court's October 23, 2025, Order by searching for and producing the documents the Order required," Opp. at 1-2, almost needs no reply. If that were true, a second hearing in January, and a second order compelling them to produce the documents under penalty of sanctions, would not have been necessary.

Penn's assertions and exhibits regarding the search term exchanges between the parties do not show compliance with the Court's orders—they show the opposite. W&T welcomes the Court's full review of the exhibits that Penn has attached that show their repeated noncompliance, unfounded redactions, and refusals to search for or produce information within the scope of the Court's order. *See*, e.g., Opp. Ex. 6, Nov. 14, 2025 Meet and Confer Tr. at 00:05:58.187 -- 00:06:17.787 (W&T's counsel stating "I have yet to see any proposal from you, Ryan, about what your proposed search terms are to comply with the court's order."); Opp. Ex. 8, Dec. 1, 2025 Letter from W&T (stating that "your search term proposal from November 19 is deficient and does not comport with the Court's October 23, 2025 Order"); Opp. Ex. 10, Dec.

2

5, 2025 Email from W&T ("To be clear, that counterproposal is separate from the issue that we have been discussing, which is your compliance with the order that was issued over a month ago.  W&T is not 'demanding 100% of its positions' – W&T is asking for date by which we can expect a production of documents that complies with the Court's order.  Please provide a date by which you will comply."); Opp. Ex. 12, Dec. 15, 2025 Letter from W&T ("We wholly disagree with your suggestion that complying with the Court's order and your discovery obligations are 'contingent' upon W&T agreeing to add its General Counsel, George Hittner, as a custodian.").  The above-cited documents and others reflect that Penn viewed compliance with the Court's October 2025 order as optional—and that it could withhold its compliance in order to use it as a negotiation point to extract concessions from W&T.

With regard to Penn's violation of the January 2026 Order, nothing in Penn's Opposition refutes what transpired.  Not only were NDAs never a valid basis for refusing to produce discovery, but there is no basis for Penn's claim that it had to finalize document sets before providing notice—Penn's counsel had taken the extreme position that even the identity of their other oil and gas clients could not be disclosed without notice.  *See* Opp. Ex. 7, Nov. 23, 2025 R. Dry Email (refusing to disclose even names of other independents without notice); Opp. Ex. 9, Dec. 5, 2025 R. Dry letter (continuing to refuse disclosure and claiming that the refusal comported

with "the direction provided by Judge Palermo"). Such notice therefore could have and should have been provided promptly once it was known in June 2025 that W&T's discovery sought such information, and at the latest, in October 2025 immediately after the Court's first ruling. W&T rests on the facts set forth in its opening Motion regarding the unnecessary delays and expense that Penn's improper redactions and late notice to third parties caused, as well as Penn and USFIC's unfounded resistance to the Amended Protective Order that caused additional delay in its entry.[1]

## II. Penn and USFIC's Continued Assertion That W&T Had "No Basis For Alleging a Collateral Demand Conspiracy" Shows Their Continued Intention to Resist Discovery on an Improper Basis

Penn and USFIC continue to advance the circular and inappropriate argument that their view of the evidence and merits of W&T's claims justifies their refusal to produce discovery. *See* Opp. at 8 (suggesting that "nothing in the party or third-party discovery produced supported W&T's claim of a collateral-demand

---

[1] Penn and USFIC's counsel delayed entry of the original protective order for months by trying to exclude all of W&T's in-house counsel from access to materials, despite the fact that W&T's designated in-house counsel did not have business-facing roles. Unlike W&T, USFIC had designated an individual who did have a business-facing role as a person with access to highly confidential information under the original protective order. Thus, when third parties expressed concern with the adequacy of the protective order, W&T suggested that USFIC remove their business-facing individual. Instead of agreeing to the very proposition that they had originally sought, because it no longer served their own purposes, USFIC suddenly opposed W&T's proposal, and fought to keep access for its business-facing individual, ultimately resulting in the parties agreeing to a third level of outside-counsel-only protection. This type of gamesmanship and protracted battle over what should have been a simple negotiation is emblematic of the approach Penn and USFIC have taken throughout this litigation.

conspiracy" as basis for their refusals to provide discovery).  This dismissive approach to W&T's claims has been a pervasive theme of Penn and USFIC throughout this case.  But Penn and USFIC are not the arbiters of the merits of this case.  It is astonishing that Penn and USFIC continue to beat this drum after this Court has ruled that W&T's claims are validly pleaded and denied their motion to dismiss, ECF No. 283, and after this Court has permitted W&T to file an even more detailed Second Amended Complaint, ECF No. 309.  That they continue to advance this argument as justification for resisting discovery underscores why sanctions are necessary—it appears that nothing short of sanctions will compel them to comply with the proper scope of discovery under the Federal Rules and the Court's Orders.

### III.    USFIC's Response to Interrogatory 13 is Sanctionable

There can be little doubt that USFIC's response to Interrogatory 13, which asked the straightforward question about prior allegations of antitrust violations— without limitation to any "market"—was intended to mislead.[2]  It strains credulity to suggest that USFIC was unaware of an active antitrust matter for which they had made a filing as recently as June 2, 2025—less than 30 days prior to W&T's initial discovery request.  *See In re Cal. Bail Bond Antitrust Litig.*, 4:19-cv-717 (N.D. Cal) at ECF No. 565, June 2, 2025 (stipulation signed by attorney for Defendant United

---

[2] Discovery on the existence of prior antitrust violations by a company is routine and appropriate— antitrust recidivism and evidence of repeated violations of the antitrust laws is highly relevant.

States Fire Insurance Company); *see also id.* at ECF No. 615, Nov. 11, 2025 (stipulation of proposed settlement with United States Fire Insurance Company, filed only <u>eight days</u> before the <u>second</u> false verification to the interrogatory in this case dated Nov. 19, 2025). USFIC's muddled opposition on this point shows the extent to which their responses and inappropriate "subject to" objections have obfuscated the truth: were they unaware of the *Bail Bonds Antitrust Litigation* "based on [their] investigation to date," Opp. at 9, or were they aware but withholding the information on the basis of a relevance objection, *id.* at 9-10? Was it an inadvertent omission, *id.* at 10 n.5, or an intentional decision based on an objection, *id.* at 9-10? If fact-finding is needed, that is precisely why W&T is asking for a deposition under oath from records custodians—to get to the bottom of what Penn and USFIC possess that is within the scope of discovery in this matter since W&T has not received clear responses and objections in the discovery responses filtered through counsel.

IV. **Penn and USFIC's Discovery Objections Did Not Have a Valid Basis and Were Not Made in Good Faith**

Penn and USFIC appear to suggest that their objections to producing discovery were merely based on relevance objections. Opp. at 13. But it is irrefutable that Penn and USFIC have continued their repeated, pervasive pattern of attempting to argue the merits of the antitrust claims as a basis to refuse discovery—including mere pages earlier in their Opposition. *See* Opp. at 8. At virtually every hearing, and in virtually every discovery response, Penn and USFIC have expressed

6

disdain for W&T's antitrust claims and have called the entire set of claims baseless. *See, e.g.*, Oct. 22, 2025 Hr'g Tr. at 23:2-4 (counsel for Penn and USFIC calling W&T's allegations "wild" and "conclusory"); Mot. at 8-9 (summarizing Penn and USFIC's objections to discovery requests). It is telling that there is not a single citation in their Opposition of any case that suggests their interpretation of relevance was supported by case law. Nor is there any citation to case law that suggests they were correct in their position that they could refuse to comply with discovery (and the Court's orders) by withholding or redacting documents on the basis of NDAs.

## V.    Penn and USFIC's Gamesmanship and Delays With Discovery Wasted Months of Time

It is beyond dispute that W&T did not receive the vast bulk of discovery from Penn and USFIC until January and February 2026. W&T also tried repeatedly to obtain clear responses about what had been produced and what had been withheld. The Opposition states that it is "untrue" that Penn and USFIC refused to supplement their written responses. Opp. at 15. But if Penn and USFIC had agreed to supplement their written responses in February, why did W&T not receive amended written responses from them until three months later, on May 8, 2026? It should not take W&T filing a motion for appointment of a special master and a sanctions motion to get movement on discovery responses.[3]

---

[3] W&T does not concede that the amended responses it received in May are sufficient, but it is continuing to attempt to reach compromises and work out discovery disputes with Defendants.

7

Moreover, despite the fact that Penn and USFIC purport to state that they have addressed the issues raised by W&T's February 9 letter, those substantive issues remain unresolved. Again, W&T is attempting to continue to engage in compromise discussions with the Defendants to avoid burdening the Court, but as of the time of this filing, <u>none of the Defendants has produced a single text message to W&T. Nor has any Defendant produced a single document since February 23, 2026</u>. Moreover, even if they had addressed and resolved the issues raised by W&T, none of it should have taken the months required and associated multitude of thousands of dollars in legal fees and expenses, as well as the potential for sanctions to get them to do so. Sanctioning Penn and USFIC for their delays and failure to productively engage will send the message that such conduct cannot continue in the new discovery period.

## VI. Penn and USFIC's Defense of their Misleading Statements Underscores their Cavalier Approach in this Litigation

W&T will not reiterate the detailed bases it set forth in its opening Motion about why the identified statements by Penn and USFIC evince a lack of candor. But as one example, Penn and USFIC's defense of their assertion about W&T's text message productions shows how misleading the overall effect of their statements are. Penn and USFIC lean heavily on their prefatory statement "Just prior to the February 23 deadline" to suggest that their statement that W&T only produced 14

---

But Penn and USFIC should not be permitted to continue to repeat the pattern of requiring W&T to take extreme measures to get minimal engagement.

text messages was truthful.  Opp. at 20 (quoting ECF No. 294 at 7).  But nowhere in the quoted filing did Penn and USFIC ever state, concede, or suggest that W&T had in fact produced 149 text messages, despite the fact that those messages were produced well before ECF No. 294 was filed.

Instead, throughout that filing, Penn and USFIC perpetrated the misleading statement that W&T had produced only 14 text messages, stating that the production "was limited to a narrow subset of communications," ECF No. 294 at 7, and repeating that W&T "selectively produced fourteen text message documents," *id.* at 10.  W&T would be surprised if the Court came away with any impression other than the misleading one that W&T produced only 14 text messages and refused to disclose its methodology.[4]  Equally misleading were Penn and USFIC's assertions that they "confirmed" or "memorialized" an "agreement" in writing regarding text messages.  *Id.* at 6, 8.  Unilaterally declaring a position and calling that an agreement

---

[4] Penn and USFIC claim that W&T provided no citation for the fact that it disclosed its search term methodology during the March 3, 2026 meet and confer.  Again, W&T welcomes the Court's review of the transcripts attached by Penn and USFIC as exhibits.  *See* Opp. Ex. 18, March 3, 2026 Meet and Confer Tr. at 00:08:24.755 -- 00:08:35.355 (W&T describing that "[w]ith sureties and brokers, we collected those text messages and did a manual review and where they were responsive, we produced the responsive exchanges in 24 hour snippets."); *id.* at 00:10:23.995 -- 00:10:39.275 (stating that W&T "conducted an appropriate internal investigation and evaluated which of our custodians that are at issue in the civil litigation used text messages to communicate with brokers and sureties about bonding related issues. So that is what we did."); *id.* at 00:11:18.715 -- 00:11:37.115 (stating that text messages "were part of the broader ESI set for which we did apply search terms. And so some of those obviously did hit on search terms, which is why those went into that production that you got whatever it was 2 weeks ago, one week ago, . . . but having realized that […] was not capturing the full scope of the text messages that we believed were with the brokers . . . we went back and we did a manual review and you will be getting a supplement of additional text messages.")

is extremely misleading.

## VII.  Penn and USFIC's Claim that They Should Be Awarded Fees and Costs on this Motion is Wholly Meritless

Penn and USFIC's claim that this Motion was filed in bad faith or without adequate basis is yet another example of their attitude that the best defense is a good offense.  Time and time again, W&T has had to respond to Penn and USFIC's attempt to deflect attention from their own deficiencies by attacking W&T's claims or character.  There is zero basis for their assertion that this motion is gamesmanship. W&T did not want to file a sanctions motion.  W&T did not want to file a special master motion.  W&T did not want to write multiple discovery letters and burden the Court with two lengthy hearings just to get the bare minimum of discovery it was entitled to.  The Court has witnessed the delays and the conduct of counsel firsthand—and invited W&T to file a motion for sanctions if Defendants did not comply.  *See* Jan. 13, 2026 Hr'g Tr. at 97:24-98:3.

Penn and USFIC close their Opposition with the utterly unfounded and false statements that (1) discovery has revealed no evidence of a conspiracy (it has), (2) that W&T purportedly "withdrew" "direct evidence" (it has not), and (3) that W&T "acknowledged in its own interrogatory responses that it had no evidence of conspiracy" (it has made no such statement).  Opp. at 29-30.  W&T wants to get to the merits of this case.  It has already spent an inordinate amount of legal fees to get to this point, and it should not have to spend even more countless hours correcting

blatant misstatements and proving its case to the satisfaction of the Defendants before it obtains the discovery to which it is entitled. Enough is enough. Penn and USFIC have shown that they have no intention of stopping their obstructionist and misleading conduct absent sanctions by the Court.

## CONCLUSION

For the reasons set forth above, W&T respectfully asks the Court to grant this motion and impose monetary sanctions on Defendants USFIC and Penn and/or their counsel, as well as order prompt 30(b)(6) records custodian depositions. As this case progresses, W&T is continuing to work with experts to calculate its damages, and its estimated potential damages from the sureties' collusive and illegal actions are in the range of hundreds of millions of dollars in lost business opportunities, higher premium rates, and other harms. The Defendants' delays and unfounded resistance to discovery speak volumes about their motives to avoid producing relevant materials. It is time to bring the full scope of evidence of this conspiracy to light.

Dated: May 22, 2026      Respectfully submitted,

           McGuireWoods LLP

           */s/ Megan S. Lewis*
           Megan S. Lewis
           *Admitted Pro Hac Vice*
           mlewis@mcguirewoods.com
           888 16th Street N.W., Suite 500
           Washington, DC 20006

(202) 857-1716 Telephone
(202) 857-1737 Facsimile

Nicholas J. Giles
*Admitted Pro Hac Vice*
ngiles@mcguirewoods.com
800 East Canal Street
Richmond, Virginia 23219
(804) 775-4760 Telephone
(804) 698-2040 Facsimile

**ATTORNEYS FOR W&T OFFSHORE, INC. AND W&T ENERGY VI, LLC**

**OF COUNSEL:**

**Marc Tabolsky**
Texas State Bar No. 24037576
S.D. Texas Bar No. 37154
mtabolsky@hicksjohnson.com
Hicks Johnson PLLC
1550 Lamar Street
Suite 1900
Houston, TX 77010
(713) 357-5150

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2026, Plaintiffs filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

*/s/ Megan S. Lewis*
Megan S.  Lewis

12