# Vinson&Elkins

Jason Halper jhalper@velaw.com
**Tel** +1.212.237.0240

June 5, 2026

*<u>Via ECF E-File</u>*
Judge Dena Hanovice Palermo
U.S. District Court, Southern District of Texas

Re:    *W&T Offshore, Inc. et al. v. Endurance Assurance Corp., et al.*, 4:24-cv-3047

Dear Judge Palermo:

Endurance Assurance Corp. and Lexon Insurance Co. ("Lexon") respectfully request a status conference regarding W&T Offshore, Inc. and W&T Energy VI, LLC's ("W&T") persistent refusal to disclose its text message review methodology.[1] For three months, W&T has stonewalled Defendants' requests for basic transparency while simultaneously demanding Lexon adopt a different methodology than W&T's own (a position W&T can take only because Lexon provided the disclosure W&T refuses to make).

**Background.** Since March 3, 2026, Defendants[2] have repeatedly requested W&T's text message review methodology. W&T's response at the parties' March 3rd meet and confer is emblematic of the last three months.  When asked to explain its review, W&T responded:

> So no, I cannot. []I will not explain that to you at this moment because, Chris, I am not here to justify our text message production to you. I can tell you that we conducted an internal investigation and we have pulled the relevant text messages from the custodians who had text messages with sureties and brokers. So I'm not going [to] get into any details of what we did during our internal investigation. You're not entitled to that . . . .

Penn and USFIC then requested in writing that W&T explain its collection methodology, identify searched custodians, and describe the basis for any exclusions. W&T refused – instead demanding Defendants conduct "a manual review of all communications with brokers and other sureties" while disclosing nothing about its own methodology. On March 20, Lexon raised more questions, including whether W&T would search George Hittner's and Sameer Parasnis's devices, texts with third parties, and texts among W&T employees. W&T stated it needed to "confer with [its] team" and went silent until Lexon followed up

---

[1] Lexon joins W&T's request to set a status conference on the Court's first available date after June 23, 2026.  *See* Dkt. 328.
[2] "Defendants" means Lexon, Pennsylvania Insurance Co. ("Penn"), and United States Fire Insurance Co. ("USFIC").

**Vinson & Elkins LLP Attorneys at Law**                                    The Grace Building, 1114 Avenue of the Americas, 32nd Floor
Austin Dallas Denver Dubai Dublin Houston London                      New York, NY 10036
Los Angeles New York Richmond San Francisco Tokyo Washington          **Tel** +1.212.237.0000 **Fax** +1.212.237.0100 velaw.com

on April 17. On March 26, Penn and USFIC again requested W&T "explain [its] methodology in writing so the parties can either agree on parameters going forward or present the dispute to Judge Palermo with a clear record." Again, W&T did not respond until Penn and USFIC followed up on April 14.

Not until April 23—nearly two months after the first ask—did W&T offer even a partial explanation: it identified custodians with "some communications with sureties or bonding or responsibilities with regard to bonding" and said it manually reviewed those custodians' external text messages with sureties and brokers, excluding all internal and third-party communications, including those that are highly likely to be responsive such as communications with lenders and financial advisors (as to which W&T agreed to produce documents). During the meet and confer, W&T agreed to review internal communications if Defendants provided a list of topics (notwithstanding Lexon's service of document requests). Almost two weeks after receiving that list, W&T unilaterally narrowed the scope to internal messages "that pertain to bonding (including collateral or premiums) or W&T's financial status." On May 20, W&T reversed course entirely, announcing it would "run search terms across [its] text message set," while refusing to disclose those terms, demanding Defendants manually review their communications, and refusing to engage on Lexon's search-term-based methodology.

**W&T cannot criticize Lexon's proposed methodology while refusing to adequately explain its own.** Despite repeated requests, W&T has *still* never disclosed: (1) the sureties or brokers it reviewed; (2) its responsiveness criteria; (3) its scope limitations; or (4) its search terms. Yet W&T aggressively demands that Defendants manually review every text message between individuals W&T deems relevant without subject matter limitation. W&T limited its own review to external communications with unidentified sureties and brokers, excluded entire categories of responsive communications, and has since adopted search terms itself. By contrast, Lexon disclosed its proposed methodology on March 11, explained it would utilize search terms tailored for text messages, invited W&T to propose any additional terms, and has since agreed to consider manual review of certain threads identified by W&T. W&T never accepted that invitation.

Lexon respectfully requests a status conference at which the Court should order W&T to provide: (1) a written description of its text message collection, search, and review methodology, including any search terms; (2) identification of the recipients who were reviewed; (3) its responsiveness criteria and scope limitations; and (4) confirmation whether W&T will expand its review to encompass internal and third-party communications, including with lenders and financial advisors. In the alternative, the Court should order W&T to perform a comprehensive review of all collected text messages for any responsive material using agreed upon search terms.



Sincerely,

*/s/ Jason Halper*

Jason Halper