**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ENDURANCE ASSURANCE CORPORATION, LEXON INSURANCE COMPANY, PENNSYLVANIA INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, APPLIED SURETY UNDERWRITERS LLC, AMYNTA HOLDINGS LLC D/B/A AMYNTA SURETY SOLUTIONS, AND INDEMCO, LP <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:24-CV-3047 (Consolidated) |

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND
AMENDED COMPLAINT BY PENNSYLVANIA INSURANCE COMPANY
AND UNITED STATES FIRE INSURANCE COMPANY**

Plaintiffs W&T Offshore, Inc. ("W&T Offshore") and W&T Energy VI, LLC ("W&T Energy") (collectively, "W&T") file this Opposition to the Motion to Dismiss W&T's Second Amended Complaint ("Motion" or "Mot.") (Dkt. 339), jointly filed by Defendants Pennsylvania Insurance Company, Applied Surety

Underwriters LLC, (together "Penn" or "Applied")[1] and United States Fire Insurance Company and Amynta Holdings LLC (together "U.S. Fire" or "Amynta").[2]

---

[1] Defendants' Motion refers to Pennsylvania Insurance Company and Applied Surety Underwriters LLC together as "Penn." In the Second Amended Complaint, however, W&T refers to these defendants together (with Applied's predecessor, Argo) as "Applied." SAC ¶ 25. For the avoidance of doubt, references herein to either "Penn" or "Applied" refer to both Pennsylvania Insurance Company and Applied Surety Underwriters LLC, unless otherwise stated or clear from context.

[2] Defendants' Motion refers to United States Fire Insurance Company and Amynta Holdings LLC together as "U.S. Fire." In the Second Amended Complaint, however, W&T refers to United States Fire Insurance Company as "USFIC," and USFIC together with Amynta Holdings LLC (and its predecessor, Aspen) as "Amynta." SAC ¶¶ 26, 30. For the avoidance of doubt, references herein to either "U.S. Fire" or "Amynta" refer to both Amynta Holdings LLC and USFIC, unless otherwise stated or clear from context.

# **TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................1

SUMMARY OF THE ALLEGATIONS IN THE SAC ...........................................4

SUMMARY OF THE ARGUMENT .........................................................................5

STANDARD OF REVIEW .........................................................................................9

ARGUMENT AND AUTHORITIES.........................................................................9

I.    W&T Has Sufficiently Pleaded Its Antitrust Claims ...................................9

    A.    W&T Has Plausibly Alleged a Price Fixing Conspiracy—
Concerted Action By Competitors on the Price Terms of Bonds.......10

        1.    W&T Has Alleged Direct Evidence of Concerted Action
Among Competitors on Price Terms of Surety Bonds and
Has Not Withdrawn Any Such Allegations.............................12

        2.    Alternatively, W&T Has Also Alleged Sufficient
Circumstantial Evidence of Concerted Action ........................17

    B.    Penn and U.S. Fire's Argument That the Court Should Dismiss
Claims Based on Their "Alternative" Explanation is Incorrect,
Procedurally Improper, and Has Already Been Rejected ...................19

    C.    The SAC Pleads Sufficient Facts as to Penn and U.S. Fire's
Involvement in the Antitrust Conspiracy ...........................................22

II.    The SAC Adequately Alleges Claims for Breach of Contract, Declaratory
Judgment, Tortious Interference, and Civil Conspiracy..............................27

    A.    The SAC States a Viable Claim for Breach of Contract.....................27

    B.    The SAC States a Viable Claim for Declaratory Judgment................31

    C.    The SAC States a Viable Claim for Tortious Interference .................32

    D.    The SAC States a Viable Claim for Civil Conspiracy ........................32

CONCLUSION................................................................................................................32

CERTIFICATE OF SERVICE ..................................................................................34

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*,
   776 F.3d 321 (5th Cir. 2015) ...............................................................10

*Acad. of Allergy & Asthma in Primary Care v. Am. Acad. of Allergy*,
   2014 WL 12497080 (W.D. Tex. Sept. 8, 2014) ..................................16

*American Needle, Inc. v. Nat'l Football League*,
   560 U.S. 183 (2010)......................................................................10, 11

*American Tobacco Co. v. United States*,
   328 U.S. 781 (1946)..............................................................................10

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ..........................................................21, 27

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................3, 9

*In re Deere & Co. Repair Serv. Antitrust Litig.*,
   703 F.Supp.3d 862 (N.D. Ill. 2023)......................................................21

*Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   961 F.2d 1148 (5th Cir. 1992) ..............................................................16

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
   547 F.3d 266 (5th Cir. 2008) ................................................................11

*Interstate Circuit, Inc. v. United States*,
   306 U.S. 208 (1939)......................................................................11, 16

*JSW Steel (USA) Inc. v. Nucor Corp.*,
   586 F.Supp.3d 585 (S.D. Tex. 2022)....................................................22

*Kleen Prods. LLC v. Georgia-Pac. LLC*,
   910 F.3d 927 (7th Cir. 2018) ................................................................11

*Lane v. Halliburton*,
   529 F.3d 548 (5th Cir. 2008) ..................................................................9

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
751 F.3d 368 (5th Cir. 2014) ...............................................................9

*MM Steel, L.P. v. JSW Steel (USA) Inc.*,
806 F.3d 835 (5th Cir. 2015) ...............................................................23

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
997 F.Supp.2d 526 (N.D. Tex. 2014) ...................................................26

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
767 F.Supp.3d 681 (N.D. Ohio 2025) ..................................................24

*Ramos v. Taylor*,
811 F.Supp.3d 826 (W.D. Tex. 2025) .............................................4, 17

*Schmueser v. Burkburnett Bank*,
937 F.2d 1025 (5th Cir. 1991) .............................................................30

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) ...............................................................18

*Texas v. BlackRock, Inc.*,
2025 WL 2201071 (E.D. Tex. Aug. 1, 2025).................................15, 18

*Todd v. Exxon Corp.*,
275 F.3d 191 (2d Cir. 2001) ................................................................18

*U.S. v. Socony-Vacuum Oil Co.*,
310 U.S. 150, 223 (1940).................................................................10, 26

*United States v. Cadillac Overall Supply Co.*,
568 F.2d 1078 (5th Cir. 1978) .............................................................24

*United States v. MMR Corp.*,
907 F.2d 489 (5th Cir. 1990) ...............................................................11

*Williams v. Wells Fargo Bank, N.A.*,
884 F.3d 239 (5th Cir. 2018) ...............................................................28

**State Cases**

*Associated Indem. Corp. v. CAT Contracting, Inc.*,
964 S.W.2d 276 (Tex. 1998) ................................................................30

*Dalton v. Educ. Testing Serv.*,
   87 N.Y.2d 384 (1995) ...................................................................................31

**Federal Statutes**

15 U.S.C. § 1 .....................................................................................*passim*

**State Statutes**

Tex. Bus. & Comm. Code §§ 1.304, 9.207.............................................30

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................9, 20

**INTRODUCTION**

Defendants' Motion repeats the same pattern they have shown throughout this litigation—ignore the Court's rulings, waste time and resources by continuing to argue issues that have already been decided, and put forward disputed facts in their procedurally improper attempt to argue the merits of the case on a motion to dismiss.[3] On April 10, 2026, this Court ruled that W&T's First Amended Complaint (FAC) properly alleged a price fixing conspiracy and group boycott in violation of the antitrust laws, as well as that W&T stated plausible claims for declaratory judgment, civil conspiracy, and tortious interference. *See* Dkt. 283 (Report & Recommendation Denying Penn and U.S. Fire's First Motion to Dismiss ("R&R")). Just before that ruling, W&T had sought leave to file a Second Amended Complaint (SAC), which set forth *additional* factual details about the scope and time period of the Defendants' conduct. The Court granted leave, and the SAC was filed on May 7, 2026, less than a month after the Court's ruling sustaining the FAC.

Defendants have now filed yet another motion to dismiss *the very same claims* that this Court already found to be properly pleaded, and they rely on *the very same arguments* in doing so—arguments this Court both fully considered and squarely

---

[3] **Concurrently with this filing, W&T is sending a letter to Defendants asking them to withdraw this motion and reserves all rights to seek its costs and fees incurred in responding to this motion**.

1

rejected. *See generally* R&R.[4] Defendants made no objections to the R&R, which

**"preclude[s] review of factual findings or legal conclusions, except for plain**

**error."** R&R at 47 (emphasis in original). Defendants cannot seriously expect this

Court to reach a different decision on W&T's SAC—a pleading that *adds* factual

allegations and cites *more* specific examples of Defendants' misconduct.

Defendants' real aim is to delay, waste time, and divert W&T's resources in yet

another attempt to avoid the discovery that they continue to improperly resist. *See*

Mot. at 3 (Defendants lamenting that "litigating antitrust claims through summary

judgment is highly expensive and burdensome"); Dkt. 309 at 9 (Court cataloging

Defendants' dilatory discovery conduct).

Faced with the Court's prior holding—which sustained the claims Defendants

again now seek to dismiss—Defendants labor to manufacture "new" issues to be

litigated here. Defendants suggest, for instance, that W&T's SAC omits allegations

the Court relied on to sustain the FAC. Nothing could be further from the truth. To

be sure, certain of W&T's allegations have been rephrased or moved to different

sections of the SAC. But the *facts* underpinning those allegations remain, and W&T

has neither "withdrawn" any of its proffered evidence, nor retreated one inch from

---

[4] As described further below, the SAC also adds one new Section 1 antitrust claim for unlawful information exchange (Claim Three) and one new claim for breach of contract (Claim Five). Defendants do not move to dismiss the information exchange claim; they do move to dismiss the breach of contract claim, and the Court has not yet had occasion to review that new claim. For the reasons described herein, every claim in the SAC states a valid claim for relief, including those repeated from the FAC and those newly added.

the overarching narrative of Defendants' misconduct. On the contrary, the SAC *bolsters* those allegations with new evidence, including direct evidence that the collusion on premium rates dates to at least 2020, as well as the routine sharing of competitively sensitive information among the Defendants. The central thesis of Defendants' motion—that the SAC should be dismissed because it alleges *less* than the FAC—is flatly wrong, and it is frivolous to suggest otherwise.

Defendants have once again failed to heed the Court's admonitions to stop delaying, produce discovery, and litigate the case on the merits at summary judgment or trial. Instead, Defendants once again complain that W&T has not provided evidence of a conspiracy—ignoring the legal standards that apply on a motion to dismiss, and improperly suggesting that W&T could have or should have come forward with additional evidence in support of its claims. *See, e.g.*, Mot. at 6, 8-10 (basing arguments on a purported lack of evidence revealed in discovery). To be clear, W&T could have continued to litigate this case under the FAC—filing the SAC does not subject W&T to some heightened evidentiary standard nor any requirement to detail all the evidence it has marshaled to date in support of its claims. The suggestion that the Court could or should dismiss any of W&T's claims on a motion to dismiss based on a lack of evidence is specious and fundamentally misunderstands the terminology about direct evidence used in *Twombly*.

3

In the end, if Defendants insist on forcing the Court to rule again, the Court may do so by applying the same standard it did last time: to prevail, "W&T must plead factual allegations sufficient for the Court to draw a reasonable inference that the Sureties made a conscious commitment to a common scheme designed to achieve an unlawful objective." R&R at 17 (internal quotations omitted). "[A]ntitrust cases are not subject to a heightened pleading standard." R&R at 17. To do so, W&T may rely on allegations of *either* direct evidence *or* circumstantial evidence in the form of parallel conduct combined with "plus factors" suggestive of a conspiracy. *Id.*; *see also id.* at 22. Just like last time, the Court should deny Defendants' Motion, because the SAC contains allegations of *both* direct *and* circumstantial evidence sufficient to state a plausible claim for relief under the Sherman Act. Indeed, "ruling otherwise would result in 'unnecessary reconsideration of previously decided issues.'" *Ramos v. Taylor*, 811 F.Supp.3d 826, 830 (W.D. Tex. 2025) (denying second motion to dismiss where allegations in revised complaint were substantially like those in the former, which had already survived prior dismissal motion).

## SUMMARY OF THE ALLEGATIONS IN THE SAC

The SAC centers on the unlawful coordination between competitor sureties related to the price terms of surety bonds, beginning at least as early as 2020. The Defendants and their co-conspirators accomplished their scheme through direct communications, through brokers as intermediaries, at trade association and industry

4

meetings, and under the cover of regulatory changes as pretext. The SAC alleges that this conduct gives rise to three related, but analytically distinct, causes of action that violate the antitrust laws: (1) price fixing; (2) group boycott; and (3) the unlawful exchange of competitively sensitive information. The SAC sets forth extensive details about the motives and methods of the conspiracy; it alleges both direct and circumstantial evidence of collusion; and it contains ample allegations that the moving Defendants joined the conspiracy.

In addition to the antitrust claims, the SAC also sets forth a breach of contract claim, as well as a declaratory judgment claim, based on the sureties' breaches of their general indemnity agreements with W&T through their unreasonable and coordinated conduct. Additionally, the SAC sets forth a claim for tortious interference with W&T's contracts and business relationships, as well as a claim for civil conspiracy based on the unlawful and tortious activities set forth in the SAC. Only Claim Three (Unlawful Information Exchange) and Claim Five (Breach of Contract and Obligation of Good Faith) are additions to the claims in the FAC.

## SUMMARY OF THE ARGUMENT

The SAC's three hundred and forty paragraphs supply detailed factual allegations supporting W&T's eight claims for relief against all Defendants, including these moving Defendants. The Court must view these allegations in the light most favorable to W&T, and doing so confirms that the SAC states a claim to

5

relief that is plausible on its face as to each Defendant and each claim. Defendants' arguments on the antitrust claims boil down to three factually and legally incorrect points: (1) that the SAC purportedly withdrew "evidence" that appeared in the FAC; (2) that the Court should credit Defendants' alternative explanation for their conduct; (3) that there are insufficient allegations of Penn and U.S. Fire's involvement in the alleged price-fixing conspiracy. Their Motion ignores W&T's well-pleaded allegations, impermissibly asks the Court to draw inferences in favor of Defendants, prematurely argues the facts, and attempts to relitigate issues that were already fully briefed and decided in the R&R. Defendants' arguments are more appropriate for summary judgment consideration, if at all.

Defendants' first argument that the SAC has abandoned "direct evidence" of the conspiracy is demonstrably false. The SAC expressly contains extensive direct evidence of collusion, *see* SAC § IV(a) ("Direct Evidence of Collusion"), including: (a) indisputable documentary evidence that the Defendants coordinated rate increases for common customers using brokers as intermediaries (SAC ¶¶ 103–110); (b) the same November 2024 presentation that this Court relied upon in the R&R, in which competitors openly discussed how to "collectively make money" and admonished each other to "stay disciplined" (SAC ¶¶ 112–116); and (c) evidence of routine anticompetitive information sharing regarding premium rates and credit terms, including collateral demands among competitors (SAC ¶¶ 117–130).

6

Defendants' additional arguments concerning the plausibility of the allegations are also entirely futile. The suggestion that W&T has "misrepresented" documents in support of its direct evidence allegations is factually incorrect, and their effort to ask the Court to make factual findings is legally impermissible. As it did in the R&R, the Court should again reject the Defendants' competing inference arguments as "more appropriately addressed at summary judgment." R&R at 24. **Moreover, where a complaint alleges direct evidence of concerted action, an alternative potential explanation for the conduct does not suffice to undermine the plausibility of the allegations**. Defendants' attempt to suggest that there might be an alternative lawful reason for their conduct or that the conspiratorial conduct was economically rational is nothing more than their inappropriate attempt to argue the merits that the Court has repeatedly rejected. *See* Jan. 13, 2026 Hr'g Tr. 79:24-80:13 (THE COURT: "I can tell you right now that there is no way on earth – if that's your theory of your Motion to Dismiss that I can read it and say that this makes absolutely no sense, so therefore there's another plausible theory, and I'm going to dismiss, I'm going to deny your Motion to Dismiss. . . . I am telling you if this is your theory it's a loser as far as I'm concerned.").

The SAC provides ample detailed allegations of both direct and circumstantial evidence in support of each of the antitrust claims, and Penn and U.S. Fire's half-hearted suggestion that there are insufficient allegations about their involvement in

7

the price-fixing conspiracy should be rejected. While Defendants' argument is somewhat muddled as to what they contend is insufficient, the law is crystal clear about the scope of price fixing and the minimal showing needed to establish that a defendant has joined an antitrust conspiracy. As this Court correctly concluded, coordination on collateral is price fixing, just as much as coordination on premium rates. R&R at 31-32. And neither Penn nor U.S. Fire can credibly argue that the SAC lacks evidence that they participated in a conspiracy involving the price terms on bonds—even if only the 2024 evidence on collateral calls were considered, that alone would be sufficient to show their participation in a price-fixing conspiracy.

Though focused primarily on W&T's federal antitrust claims, Defendants' Motion also makes conclusory arguments with respect to W&T's other claims for relief that this Court previously sustained (i.e., declaratory judgment, civil conspiracy, tortious interference, and violations of the Texas Free Enterprise and Antitrust Act). The Court should reject Defendants' arguments as to these claims for the same reasons stated in the R&R. Finally, Defendants challenge the SAC's newly added claim for breach of contract. But in previously sustaining the declaratory judgment claim, the Court implicitly rejected the basis of this argument, too. In any event, the SAC plainly alleges sufficient facts to state a plausible claim for breach of contract.

## STANDARD OF REVIEW

As a successive Rule 12(b)(6) motion, this Court should apply the same standard articulated in W&T's previous opposition, Dkt. 76 at 11, and the Court's R&R. Dkt. 283 at 7-8. In sum, a claimant need only allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and antitrust claims are not subject to any higher pleading standard. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 373 (5th Cir. 2014). Indeed, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). Moreover, courts must accept the complaint's factual assertions as true and draw all reasonable inferences in the claimant's favor. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

## ARGUMENT AND AUTHORITIES

### I.    W&T Has Sufficiently Pleaded Its Antitrust Claims

With sufficient allegations of both direct and circumstantial evidence of an antitrust conspiracy, W&T's claims easily survive dismissal. There is simply no need for this Court to reach a conclusion any different than the one it previously reached. Both the FAC and the SAC allege a price-fixing conspiracy and a group boycott among competitor sureties, in violation of Section 1 of the Sherman

9

Antitrust Act.[5]  The Court previously held that W&T had sufficiently alleged both of those claims under the FAC, and it concluded that both claims are *per se* unlawful under the antitrust laws. R&R at 16-33. Because the SAC contains even more factual allegations than the FAC, the Court should reject Defendants' argument that the allegations about a price-fixing conspiracy are insufficient, both generally, as well as to Defendants' involvement in that conspiracy.

A.      <u>W&T Has Plausibly Alleged a Price Fixing Conspiracy— Concerted Action By Competitors on the Price Terms of Bonds</u>

In attacking W&T's allegations of price fixing, Defendants ignore several basic principles of antitrust law and pleading standards. Section 1 prohibits "concerted action" that "unreasonably restrains trade." *American Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 186 (2010). Per se violations such as price fixing are, as a matter of law, unreasonable restraints of trade. *U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940); R&R at 30.

It is well established that "no formal agreement" is necessary to establish concerted action. *American Tobacco Co. v. United States*, 328 U.S. 781, 809-10

---

[5] Defendants focus only on the price-fixing claim, and do not appear to challenge the group boycott claim. Nor have they moved to dismiss the information exchange claim. Thus, W&T will focus its opposition on the price-fixing claim. To the extent that Defendants make a perfunctory reference to dismissing the Texas Free Enterprise and Antitrust Act claim (SAC Claim Four), it should be denied for the reasons set forth herein. *See* R&R at 33 n.15 (denying dismissal of state law antitrust claim). *See also Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 325 n.1 (5th Cir. 2015) ("the Texas Free Enterprise and Antitrust Act utilizes the same standards as the Sherman Act for establishing a violation").

(1946) ("The essential combination or conspiracy in violation of the Sherman Act may be found in a course of dealings or other circumstances as well as in any exchange of words."); *United States v. MMR Corp.*, 907 F.2d 489, 495 (5th Cir. 1990) (holding there is no requirement to prove "a formal, express agreement with all the terms precisely set out and clearly understood by the conspirators"). "Even a wink and a nod" suffice. *Kleen Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d 927, 936 (7th Cir. 2018) (cleaned up). Indeed, an invitation for collective action (whether explicit or implicit) followed by acceptance (which can be inferred through conduct) is sufficient to establish concerted action under Section 1. *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 227 (1939). Moreover, competitors cannot escape liability by doing through a third-party intermediary what they would be prohibited from doing directly. *See American Needle*, 560 U.S. at 202.

Thus, for purposes of evaluating whether W&T's price fixing conspiracy is adequately pled, the Court must examine whether the SAC sets forth sufficient allegations about the plausible existence of such concerted action. A plaintiff may rely on either direct or circumstantial evidence. *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008) ("Direct evidence explicitly refers to an understanding between the alleged conspirators, while circumstantial evidence requires additional inferences in order to support a conspiracy claim."). Here, the

11

SAC sets forth both, even though either alone would be sufficient, as the Court recognized. R&R at 17-26.

### 1.   W&T Has Alleged Direct Evidence of Concerted Action Among Competitors on Price Terms of Surety Bonds and Has Not Withdrawn Any Such Allegations

Defendants are flatly wrong in suggesting that the "SAC No Longer Contains the Purported 'Direct Evidence' From the FAC." Mot. at 8. To begin, this evidence is not "purported[ly]" direct; the Court *held* that these allegations constituted sufficient direct evidence of a conspiracy. R&R at 17-21. Moreover, as set forth below, the SAC contains the very same allegations of direct evidence reflecting concerted action upon which the Court relied in denying dismissal of the FAC, *and then adds more. See also* Dkt. 309 (Court granting leave to file SAC, noting that the second amended complaint "largely retreads the FAC").

W&T's SAC provides direct evidence of concerted action by all Surety Defendants, including the moving Defendants, to collectively change the financial terms on which they would do business with W&T and other smaller offshore oil-and-gas companies—whether through calls for collateral, increased rates, or both—and not provide bonding to independent oil and gas companies, like W&T, who refused to comply with their terms. Part of the direct evidence of this conspiracy included the exchange of competitively sensitive information about the price terms of bonds as well as the alignment on collateral demands. *See, e.g.*, SAC ¶¶ 103-130,

12

133, 206-221. Indeed, in holding that the allegations of the FAC constituted sufficient allegations of *direct* evidence of conspiracy, the Court confirmed that the complaint alleged "the overarching nature of the conspiracy and that the participants met to discuss their plan to collectively increase premiums, increase their collateral demands, and change the terms on which they would do business with their customers." R&R at 18.[6]

The SAC now both mirrors and *bolsters* those *same* allegations that the Court previously held to be direct evidence of conspiracy. *See* R&R at 18-19. For example:

| SAC Allegations | Corresponding FAC Allegation |
|---|---|
| SAC ¶¶ 147-148, 179 (BOEM rule was pretext); SAC ¶¶ 111-116, 150, 196-214 (Defendants met to discuss their collective response to the BOEM rule and agreed to collectively change their analysis and terms at the expense of smaller companies like W&T). | R&R at 18-19; FAC ¶ 37 (same) |
| SAC ¶¶ 4-11, 165 (alleging joint scheme to collectively set rates, demand collateral, and cut off access to those who did not agree to Defendants' extortionate terms). | R&R at 19; FAC ¶ 122 (same) |
| SAC ¶ 265 (Sompo "encouraged and supported other Sureties, in rapid succession, to demand additional collateral, including USSIC, Applied, Amynta, and PHLY."). | R&R at 19; FAC ¶ 86 (same) |
| SAC ¶¶ 111-112 (Sompo's own representative admittedly met with other sureties in 2024 to "collectively" change their | R&R at 19; FAC ¶ 90 (same) |

---

[6] It is unclear what allegations Defendants are contending were withdrawn, simply stating vaguely that "[t]hose allegations do not appear tin the SAC." Mot. at 8. That is incorrect, as evidenced by the chart below. If the Defendants' argument rests on the headings in the SAC, that argument is destined to fail. Headings organize the allegations for readability and do not alter the nature of the allegations themselves; inclusion in one section does not imply exclusion in another. The collateral demands are unquestionably part of the "scheme to raise, stabilize, and/or fix the rates *and financial terms* for surety bonds," SAC ¶ 103 (emphasis added), for which W&T sets forth direct evidence of coordination, including affirmation of participation in the scheme "for higher rates, stronger security structures" articulated by Penn's representative. SAC ¶ 114.

13

| | |
|---|---|
| "analysis" and "terms" for these Companies). *See also id.* ¶¶ 111-116, 208-209, 214. | |
| SAC ¶ 150 (In the months that followed the publication of the proposed BOEM Rule, a number of meetings and discussions among sureties took place at industry gatherings where Defendants aligned on the unlawful scheme). | R&R at 19; FAC ¶ 119 (same) |
| SAC ¶¶ 196-214 (The Sureties and their representatives continued meeting throughout 2024 to further plan and execute their scheme). | R&R at 19; FAC ¶ 124 (same) |
| SAC ¶¶ 111-112, 208, 214 (providing quotations from November 2024 meeting regarding, *inter alia*, "heartburn" and "collective" strategy). | R&R at 19; FAC ¶ 121 (same) |
| SAC ¶¶ 196, 203-205 (alleging the sureties met regularly— not just once—to collude through, e.g., NASBP and SFAA events). | R&R at 19; FAC ¶ 121 (same) |

The SAC also *adds* (at ¶¶ 103-110) new *direct* evidence allegations, including documentary evidence obtained in discovery. *See, e.g.*, SAC ¶ 108 (alleging that "the Surety Defendants have regularly coordinated rate increases via broker-intermediaries on other occasions since 2021 in violation of the antitrust laws"). The SAC alleges, for instance, ███████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████ SAC ¶ 105. The ██████ representative responded merely minutes later to ██████ ████████████████████. SAC ¶ 106. The SAC cites another example from 2024, in which a representative of ████████████████████████████████ ███████████████████████████████ SAC ¶ 110.

14

The SAC further *adds* (at ¶¶ 117-130) *direct* evidence of an agreement to share competitively sensitive pricing information through brokers. *See Texas v. BlackRock, Inc.*, 2025 WL 2201071, at *13 (E.D. Tex. Aug. 1, 2025) (allegations of information sharing supported both a reduced output § 1 claim and a separate, stand-alone information exchange claim under Section 1); *see also* SAC ¶ 124 ("The unlawful information exchange also extended to details about the Defendant Sureties' plans to demand collateral."); *id.* ¶ 119 ("[T]he Surety Defendants and Broker Defendant have routinely exchanged information about premium rates across various surety markets."). Once again, the SAC provides concrete and specific examples of this conduct, alleging, for instance, that ███████████████████ ██████████████████████████████████████████████████████████████ ██████, SAC ¶¶ 120-122, and █████████████████████████████████████, SAC ¶¶ 125-129.

W&T's price fixing claim encompasses both premium rates and collateral demands, as this Court has already held. *See* R&R at 27-33. The fact that the SAC contains *additional* specific allegations concerning rate fixing in one section does not mean that W&T has abandoned its allegations of collusive collateral demands in the broader complaint. In holding that W&T adequately alleged *direct* evidence of conspiracy, the Court credited W&T's argument that the FAC "not only provide[d] facts regarding the parties' agreement," but "also allege[d] the dates the Defendants

discussed their plan for concerted action as well as the specific dates they carried out" their demands. R&R at 19-20 (citing several trade association meetings between February and May 2024, followed by several collateral demands between July and October). The SAC makes these *same allegations* and *adds* even more specificity. *See* SAC §§ IV.b.ii & IV.c.iv; *see id.* ¶¶ 153-154, 157, 160-181, 196, 198-199. Defendants' outsized focus on the prefatory language in ¶ 265 of the SAC (which was the same in ¶ 86 of the FAC), "[u]pon information and belief," underscores the frailty of their argument on this point. Whether Sompo was the ringleader on collateral demands or not—facts that W&T is still developing in discovery—does not undermine the allegations of direct evidence that Sompo encouraged its competitors to demand collateral and others followed suit. *See Interstate Circuit,* 306 U.S. at 227 (invitation and acceptance is evidence of conspiracy).

Just like the FAC, the SAC contains specific, well-pled, factual allegations that the Defendants communicated, coordinated, and specifically agreed to raise premiums, make collateral demands, and exchange confidential information. This goes well beyond mere parallel conduct, revealing the precise moments that unlawful agreements were reached. *See Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1159 (5th Cir. 1992); *Acad. of Allergy & Asthma in Primary Care v. Am. Acad. of Allergy*, 2014 WL 12497080, at *4 (W.D. Tex. Sept. 8, 2014). The Court already held that these *very* allegations presented sufficient

16

direct evidence to survive dismissal. R&R at 18-22. Nothing in the SAC suggests the Court should reach a different conclusion here. *See Ramos v. Taylor*, 811 F.Supp.3d 826, 830 (W.D. Tex. 2025) (denying motion to dismiss complaint that was substantially similar to prior complaint surviving dismissal).

### 2. Alternatively, W&T Has Also Alleged Sufficient Circumstantial Evidence of Concerted Action

Because W&T's direct evidence is sufficient to establish concerted action, there is no need for the Court to determine whether the SAC alleges sufficient circumstantial evidence as well. *See* R&R at 22 ("Finding that W&T has sufficiently alleged direct evidence of concerted activity, the Court need not take up analysis of W&T's circumstantial evidence."). Yet like the FAC, the SAC alleges more than enough circumstantial evidence—in the form of parallel conduct and "plus factors"—to survive on that basis as well. *See* R&R at 22 ("However, the Court finds that W&T sufficiently alleged circumstantial evidence demonstrating concerted action."). As with its direct evidence, W&T has not removed from the SAC any of its previous allegations of circumstantial evidence. Indeed, it has only further *supplemented* them.

Given the plausible allegations of direct evidence of the conspiracy, one would expect also to find evidence of parallel conduct and plus factors. Such evidence exists and suffices on its own, even if it were not part of the direct evidence set forth above. As W&T has alleged, the sureties demanded unprecedented,

17

excessive collateral or increased premiums in quick succession beginning around June 2024. *See generally* SAC § IV.b. *See also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 427 (4th Cir. 2015) ("A plaintiff establishes parallel conduct when it pleads facts indicating that the defendants acted 'similarly.'").

Although unnecessary given the direct evidence of Defendants' concerted action, the SAC also alleges multiple "plus factors" that demonstrate that the sureties' acts went far beyond mere parallel conduct. Indeed, the Court already concluded that W&T has established plus factors, R&R at 23, and the SAC contains the *same* allegations—*and more*—upon which the Court relied. *See, e.g.*, actions against self-interest (SAC ¶¶ 148, 222-223); common motive (SAC ¶¶ 208, 210); pretext (SAC ¶¶ 147-150, 179); barriers to entry (SAC ¶¶ 226-237); routine sharing of competitively sensitive information (SAC ¶¶ 215-221); other antitrust litigation (SAC ¶¶ 220, 225).

This Court need not disturb its previous conclusion that the plus factors are sufficient to infer a conspiracy from allegations of parallel conduct; the SAC adds to the list. *See Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) ("Information exchange is an example of a facilitating practice [i.e., plus factor] that can help support an inference of" an alleged unlawful agreement under Section 1); *Texas v. BlackRock, Inc.*, 2025 WL 2201071, at *13 (E.D. Tex. Aug. 1, 2025) (same).

B.    Penn and U.S. Fire's Argument That the Court Should Dismiss Claims Based on Their "Alternative" Explanation is Incorrect, Procedurally Improper, and Has Already Been Rejected

As demonstrated above, the SAC contains the very same allegations of circumstantial evidence that the Court previously relied on in denying Defendants' motion to dismiss the FAC, *plus* additional allegations further supporting the claims. Defendants simply ignore this fact, arguing (again) that W&T's circumstantial allegations are insufficient because Defendants can proffer an "alternative" (i.e., non-conspiracy-based) explanation for their parallel actions. But these same Defendants have already made this same argument, and the Court squarely rejected it. "Throughout their motion to dismiss," this Court previously observed, "the Sureties implore the Court to look outside of Plaintiff's operative allegations and consider alternative explanations for the Sureties' conduct." R&R at 2 & n.4. But the Court refused to consider those arguments, pointing out the "Sureties' alternative explanations are better suited for summary judgment or trial, not the motion to dismiss stage." *Id.*

Later, in its thorough analysis of the claims and arguments, the Court correctly acknowledged that "antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case" and that an "inference of a conspiracy is always unreasonable when it is based solely on parallel behavior that can be explained as the result of the independent business judgment of the defendants." R&R at 23-24.

19

Applying that standard to W&T's particularized, well-pled allegations, the Court held both that "W&T has sufficiently alleged plus factors to demonstrate circumstantial evidence of concerted action" and that the "Sureties' arguments mostly raise competing inferences, which are more appropriately addressed at summary judgment." R&R at 24-25.

The Court went on to observe that "rather than arguing that W&T's allegations are insufficient, the Sureties argue that their interpretation of the events giving rise to the complaint should be accepted over W&T's interpretation." *Id.* at 24-25. As the Court correctly explained, "the question at the pleading stage is not whether there is a plausible *alternative* to the plaintiff's theory," but instead "whether there are sufficient factual allegations to make the complaint's claim plausible." *Id.* at 25 (cleaned up). And "the choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Id.*

There is simply nothing new about the Defendants' factual arguments in this Motion—they repeat the identical arguments that the Court rejected. *Compare* Dkt. 63 at 18 (arguing Defendants' collateral demand following Sompo's was rational independent conduct) *with* Mot. at 11-13 (same); *compare* Dkt. 63 at 18-19 (arguing Defendants' actions in response to "market conditions" were lawful and rational) *with* Mot. at 14-17 (same); *compare* Dkt. 63 at 17-19 (arguing that mere participation

20

in industry groups is insufficient to allege conspiracy) *with* Mot. at 17-18 (same); *compare* Dkt. 63 at 19 (allegations of conspiracy are economically illogical or senseless), *with* Mot. at 13 (same).[7] Because the SAC contains the same allegations as the FAC, and then adds even more, the Court can and should reach the same conclusion as it did in the R&R—namely that "W&T sufficiently alleged plus factors to demonstrate circumstantial evidence of concerted action." R&R at 25.

Nor is there any new legal authority, despite Defendants' attempt to bolster their argument with various citations. *See* Mot. at 12, n.8; 14, n.10; 18, n.12. Indeed, none of those citations stands for anything other than the unremarkable proposition that the Court already applied and with which W&T agrees—that "a plaintiff cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation" and instead must plead "'factual content that allows the court to draw the reasonable inference that the defendant is

---

[7] Defendants' argument that crippling W&T would be "economically senseless," Mot. at 12-13, is precisely what makes it a plus factor. Moreover, the Court has already considered and rejected Defendants' argument that the motive to conspire was irrational. *See* Dkt. 63 at 19; Jan 13, 2026 Hr'g Tr. 78:23-80:13; R&R at 22, 25-26. Defendants now footnote several cases for the proposition that economically senseless conspiracies should be dismissed. But they overread these cases to the extent Defendants suggest that W&T must plead anything more than a *plausible* claim given the *totality* of the allegations. Moreover, these cases are inapposite where this Court has already concluded both that the motive to conspire *was* rational and that there is *direct evidence* of conspiracy. *See, e.g., Anderson News, L.L.C. v. Am. Media, Inc.,* 680 F.3d 162, 175, 185, 187-189 (2d Cir. 2012) (criticizing district court for accepting defendants' contention that plaintiff pled an "economically implausible antitrust conspiracy" and ignoring that the complaint "alleges actual agreement"); *In re Deere & Co. Repair Serv. Antitrust Litig.,* 703 F.Supp.3d 862, 906 (N.D. Ill. 2023) (rejecting defendant's assertion at pleading stage that plaintiff's conspiracy allegations did not make economic sense).

liable for the misconduct alleged.'" *JSW Steel (USA) Inc. v. Nucor Corp.,* 586 F.Supp.3d 585, 595 (S.D. Tex. 2022) (cleaned up). As the Court previously held, and as detailed above, W&T has plainly satisfied that burden here by pleading *specific* factual allegations giving rise to a *plausible* claim. The cited cases do *not* hold that W&T must *prove* facts or make an evidentiary showing. The Court previously rejected that very argument and should do so again. *See* R&R at 21.

C.    The SAC Pleads Sufficient Facts as to Penn and U.S. Fire's Involvement in the Antitrust Conspiracy

Defendants advance a hodge-podge of arguments in an attempt to distance themselves from the full scope of the conspiracy that they joined. They suggest that the "new 'rate-fixing allegations' do not state an antitrust claim against Penn and U.S. Fire because they do not even make clear what is being alleged against Penn and U.S. Fire."  Mot. at 19. But there is no "new" "rate-fixing" claim; instead, there are additional allegations and evidence about the scope and time frame of the same price-fixing claim alleged in the FAC, which the Court *already found survived dismissal*. *See* R&R at 33 (denying motion to dismiss because U.S. Fire and Pennsylvania Insurance Company "have allegedly agreed to collectively demand collateral and/or increase premiums"). W&T continues to allege the same group boycott and price-fixing claims that the Court previously considered and sustained. *See* SAC (Claims One & Two).

Constrained by the Court's prior rulings, Defendants now try to myopically focus only on the additional direct evidence of price fixing at SAC ¶¶ 105–108. They imply that these *supplemental* factual allegations are the *only* allegations supporting a purportedly narrow "rate fixing" claim, and then insist that the claim must be dismissed because *those* allegations do not expressly mention Penn or U.S. Fire. This argument fails: W&T plausibly alleged a price fixing conspiracy (covering both rates and collateral), and plausibly alleged specific evidence showing that Penn and U.S. Fire joined in it.

First, there is no separate or new "rate fixing" claim to be dismissed. As the Court already ruled, the unlawful coordination on rates is part and parcel of the price fixing claim, as are the collateral demands. While the allegations in paragraphs 105-108 are particularly damning direct evidence of ███████████████████,[8] the Defendants *entirely ignore* the particularized factual allegations that plausibly allege both Penn and U.S. Fire joined the conspiracy. It is black letter law that by joining a conspiracy, a member becomes liable for the full scope of their coconspirators' conduct. *See MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 844 (5th Cir. 2015); *see also* ABA Model Jury Instructions in Civil Antitrust Cases A-21 ("A person who knowingly joins an existing conspiracy, or who participates only in part

---

[8] Notably, Penn and U.S. Fire refused to produce discovery on W&T's antitrust claims for any date prior to June 29, 2023. Thus, the absence of specific documents from those Defendants warrants only the inference that they have something to hide.

of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it."). And once a conspiracy has been established (i.e. adequately alleged for purposes of this motion), "only 'slight evidence' must be found to connect the defendant to that conspiracy." *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1087 (5th Cir. 1978). The SAC alleges ample specific evidence connecting these moving Defendants to the price-fixing conspiracy. For example: allegations *expressly* implicating Penn include: SAC ¶¶ 97, 111-116, 129, 134, 159-160, 172-173, 188-189, 192, 198, 201-206, 207-208, 265; Allegations *expressly* implicating U.S. Fire include: SAC ¶¶ 110, 120, 122, 128-129, 136, 161-163, 172-173, 189-192, 201-202, 225, 265.

These allegations are plainly sufficient to allege Defendants' involvement in the price-fixing conspiracy, and their attempt to repeat (again) their arguments that W&T "fail[ed] to show even parallel conduct" supporting a price fixing claim, Mot. at 19, is without merit and should be rejected for all the reasons set forth above. Accordingly, the cases Defendants cite where inadequately pleaded conspiracy claims were dismissed, Mot. at 20, n. 15, are entirely distinguishable. *See, e.g.*, *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 767 F.Supp.3d 681, 712 (N.D. Ohio 2025) ("At no point do plaintiffs even speculate—much less plausibly allege—that defendants actually conspired or exchanged confidential information.").

24

Second, Defendants' arguments that W&T's allegations "mislead[] the court," Mot. at 22, are inaccurate and unduly inflammatory. W&T has accurately quoted from each of the documents that it has cited in the SAC—Defendants have provided no suggestion otherwise. They claim only that there are other portions that should be considered—in yet another rehash of their failed "competing inferences" argument. W&T has no issue with a jury weighing the full scope of the evidence at the appropriate time for factual findings. But a motion to dismiss is not that time. Indeed, the full scope of the Motion's Exhibit 1 (Sealed) only serves to underscore why an attempt at fact-finding is inappropriate at this stage ██████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ In short, this email is only a snapshot of the broader body of evidence that would be considered in *totality* at the proper later stage, and it shows why attempting to ask the Court to decide its true meaning is improper at this juncture.

25

Nor has W&T mischaracterized any portions of the transcript of the November 2024 meeting. *See* Mot. at 22-25. Defendants do not, for example, contend that W&T *misquoted* any portion of the transcript. This leaves Defendants' arguments in stark contrast with their citation to *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F.Supp.2d 526 (N.D. Tex. 2014). Indeed, Defendants' assertion that W&T was attempting to hide anything rings especially hollow given the transcript was attached to the SAC in full. *See* Dkt. 310 at Ex. 1.D. W&T welcomes the Court to review it in its entirety if it wishes to do so, as it plainly supports the SAC's central allegation: that the Surety Defendants used the meeting as a thinly veiled vehicle to align on what they considered best not for each individual surety trying to compete and win business but for "the industry" as a whole. *See* SAC ¶¶ 111, 214. Defendants' proffered alternative explanations are inappropriate to decide on a motion to dismiss, and their invocations of "sound" business justifications are legally irrelevant. *Socony-Vacuum Oil Co.*, 310 U.S. at 221–22 (there are no "justifications" for price-fixing, including "good intentions").

Last, Defendants' accusation that "W&T is simply making things up as it goes along" is wholly meritless. Mot. at 26. The SAC has set forth a fulsome recitation of how the conspiracy unfolded over the years, including the ongoing variety of motives that led the Defendants to reaffirm their continued commitment to the conspiracy. Instances of softening prices as motive or varied initial reactions are

26

entirely consistent with the existence of the conspiracy. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 191 (2d Cir. 2012) (holding that defendants' "varied" actions during the initial stages of the alleged conspiracy did not render the existence of a conspiracy implausible). The accusation that W&T has fabricated anything it has presented to the Court is unfounded and offensive.

## II.    The SAC Adequately Alleges Claims for Breach of Contract, Declaratory Judgment, Tortious Interference, and Civil Conspiracy

The Court should also deny Defendants' motion to dismiss W&T's claims for breach of contract, declaratory judgment, tortious interference, and civil conspiracy. The latter three claims in the SAC are almost verbatim to those claims in the FAC, and Defendants' arguments seeking to dismiss them are virtually identical to the arguments that the Court considered and rejected in connection with the FAC. *See* R&R at 40, n. 17 ("the Court is unconvinced that W&T's tortious interference claims should be dismissed."); at 40-42 (rejecting argument that W&T failed to allege specific contracts); *id.* at 44-47 (rejecting repeated arguments concerning civil conspiracy claim). Seeking again to dismiss these claims on grounds already considered and denied is frivolous.

### A.    The SAC States a Viable Claim for Breach of Contract

W&T has adequately alleged each element of a claim for breach of contract based on the Defendants' breaches of their respective indemnity agreements with W&T. *See* SAC ¶¶ 247-276; 305-318. Under Texas law, the elements of a breach of

27

contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018).

The SAC pleads that Penn and U.S. Fire breached the specifically identified collateral demand provisions of their respective contracts, without basis under the contract and in bad faith, causing serious harm to W&T. *See* SAC ¶¶ 11, 267-273; *see also id.* ¶¶ 305-318. The breaches of these contracts are also described in connection with the provisions related to other Defendant sureties. For example, the SAC alleges that Sompo "encouraged and supported other Sureties, in rapid succession, to demand additional collateral, including USSIC, *Applied [Penn], Amynta [U.S. Fire]*, and PHLY," *id.* ¶ 265 (emphasis added); and that "Like with Sompo, there was no triggering event or contractual basis for these collateral calls under the applicable indemnity agreements with these non-Sompo Surety Defendants," *id.* ¶ 266.

Defendants also are flatly wrong in their suggestion that W&T fails to plead a specific portion of the relevant agreement, Mot. at 27; W&T uses a *pin cite* to identify the *collateral demand provision*s, and W&T *attached* the Penn/Applied and

28

U.S. Fire/Amynta contracts as exhibits to the complaint.[9] *See* SAC ¶¶ 267 (citing Ex. 1.B at ¶ 4) & 273 (citing Ex. 1.C ¶ 4). Next, Defendants impermissibly attempt to rely on W&T's statements not referenced in the complaint. Mot. at 28, n.24 (citing to Form 10-K). Yet again, Defendants ignore the Court's prior ruling about attempting to rely on extraneous evidence outside the four corners of the complaint without any attempt to meet their burden of doing so. R&R at 2, n.4; *id.* at 42-44, n.20 (rejecting Defendants' reliance on statements in Form 10-Q). Defendants then suggest that even if Defendants' conduct was inconsistent with their obligations under the contract, W&T's allegations "at most would provide a basis for a defense to a collateral demand, not an offensive claim for breach of contract." Mot. at 28. It is unsurprising that Defendants provide no supporting legal citation whatsoever for this proposition, as it misreads the contractual claim and is undermined by the legal elements of a breach-of-contract claim set forth above. Indeed, what would be the admitted "basis for the defense" if not to say that Defendants' conduct was a breach?

Finally, Defendants put forward a series of confused arguments based on good faith and fair dealing. First, Defendants are wrong to suggest that the validity of W&T's contractual arguments hinges on the validity of its antitrust claims—the sureties have breached their contracts *in addition* to violating the antitrust laws. *See,*

---

[9] Whether or not Defendants' argument on this point reflects a deliberate intention to mislead, it is an entirely frivolous argument to suggest that W&T did not cite specific provisions of the contracts.

*e.g.*, SAC ¶¶ 311; 315 (alleging that contracts did not permit coordinated or unilateral collateral demands, especially when no claims existed and W&T's financial condition remained substantially the same). Second, Defendants are wrong to suggest that W&T is asserting an "independent" claim for breach of the obligation of good faith. Mot. at 29 (asserting that "Texas does not recognize any independent claim for breach of an 'obligation of good faith' or 'fair dealing'" except in narrow circumstances not applicable here). But W&T's breach of contract claim is based on a breach of the agreements themselves; it does not assert a stand-alone claim for breach of the obligation of good faith. *See* SAC ¶¶ 305-318.

And last, W&T has adequately alleged that the contracts were subject to an obligation of good faith—honesty and reasonable commercial standards of fair dealing—that the Defendants breached as well. *"Every contract or duty within"* the Texas Business and Commerce Code "imposes an obligation of good faith in its performance or enforcement." *Schmueser v. Burkburnett Bank*, 937 F.2d 1025, 1032 (5th Cir. 1991). *See also* Tex. Bus. & Comm. Code §§ 1.304, 9.207. Defendants argue that the good faith obligation imposed under the Texas Business and Commerce Code is inapplicable here. Mot. at 29, n. 25. But the Texas Supreme Court has clearly held that an obligation to act "in a commercially reasonable manner" applies in the context of the surety-principal relationship. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 282 (Tex. 1998) (holding that no *common*

30

*law* good faith obligation applied to surety, "because of the[] protections" of the "existing commercial law duties" that impose similar obligations, citing the Texas Business and Commerce Code). In any event, Penn's indemnity agreement affirmatively incorporates a duty of good faith, SAC Ex. 1.B at ¶ 2, and under the New York choice of law provision in U.S. Fire's agreement, Ex. 1.C at ¶ 11, one attaches automatically. *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance.").

B.    The SAC States a Viable Claim for Declaratory Judgment

W&T has adequately alleged its declaratory judgment claim. W&T made this same claim in its FAC, ¶¶ 130-137, which now exists in the SAC in substantially the same form. SAC ¶¶ 335-340. Defendants once again attempt to argue the merits at a procedurally inappropriate juncture and offer no explanation nor legal citation as to why this issue should be revisited, suggesting only that "W&T is not entitled to the declaratory relief it seeks under the plain language of the contract." Mot. at 29-30. The declaratory judgment claim survives dismissal for the reasons W&T previously articulated, Dkt. 76 at 23, which the Court accepted in denying Defendants' motion—i.e., that the claim is "justiciable" and that discretion favors hearing the claim. *See* R&R at 33-39.

31

C.      The SAC States a Viable Claim for Tortious Interference

Like the declaratory judgment claim, on the tortious interference claim, Defendants simply repeat the same arguments that the Court already considered and rejected. *Compare* Dkt. 63 at 22 ("W&T's tortious interference claims fail as a matter of law because they rely entirely on W&T's defective antitrust allegations.") *with* Mot. at 30 (same); *compare* Dkt. 63 at 23 ("W&T fails to identify a single contract with which the Sureties allegedly interfered.") *with* Mot. at 31 (same). Defendants' repeated arguments, particularly when the SAC contains *additional* specificity about how W&T's contractual and business relationships were harmed, should be rejected for the same reasons the Court rejected them previously. *See* SAC § III (describing contracts); *see also id.* ¶¶ 247-281; 319-324; *see* R&R at 41-42.

D.      The SAC States a Viable Claim for Civil Conspiracy

Defendants' only argument to dismiss the civil conspiracy claim is that it "fails for the same reason [i.e., that the antitrust allegations are not plausibly alleged]." Mot. at 30. The Court should give it equally short shrift and deny dismissal for the same reasons set forth in its prior ruling, *see* R&R at 44-47, particularly in light of the abundance of additional allegations in the SAC.

## CONCLUSION

W&T has adequately alleged a plausible claim for relief with respect to every claim in the SAC against all Defendants. Defendants' motion to dismiss should therefore be denied. W&T further requests all other relief to which it is entitled.

32

Dated: June 26, 2026

Respectfully submitted,

McGuireWoods LLP

*/s/ Megan S. Lewis*
Megan S. Lewis
*Admitted Pro Hac Vice*
mlewis@mcguirewoods.com
888 16th Street N.W., Suite 500
Washington, DC 20006
(202) 857-1716 Telephone
(202) 857-1737 Facsimile

Nicholas J. Giles
*Admitted Pro Hac Vice*
ngiles@mcguirewoods.com
800 East Canal Street
Richmond, Virginia 23219
(804) 775-4760 Telephone
(804) 698-2040 Facsimile

**ATTORNEYS FOR W&T OFFSHORE, INC. AND W&T ENERGY VI, LLC**

**OF COUNSEL:**

**Marc Tabolsky**
Texas State Bar No. 24037576
S.D. Texas Bar No. 37154
mtabolsky@hicksjohnson.com
Hicks Johnson PLLC
1550 Lamar Street
Suite 1900
Houston, TX 77010
(713) 357-5150

33

## CERTIFICATE OF SERVICE

I certify that on June 26, 2026, this document was served on all counsel of record via e-mail and/or the Court's CM/ECF system.

/s/ *Megan S. Lewis*
Megan S. Lewis

34