**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, | |
| Plaintiffs, | |
| v. | |
| ENDURANCE ASSURANCE CORPORATION AND LEXON INSURANCE CO., | Civil Action No. 4:24-CV-03047 |
| Defendants. | |

| | |
|---|---|
| U.S. SPECIALTY INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | |
| W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, | Civil Action No. 4:24-CV-04113 |
| Defendants. | |

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | |
| W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, | Civil Action No. 4:24-CV-04395 |
| Defendants. | |

| | |
|---|---|
| PENNSYLVANIA INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | |
| W&T OFFSHORE, INC., | Civil Action No. 4:24-CV-04400 |
| Defendant. | |

## <u>PENNSYLVANIA INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO W&T's MOTION FOR SANCTIONS AND DEPOSITION ORDER</u>

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................1

    I.      W&T Provides No Basis for Sanctions....................................................1

          A.      Penn Did Not Violate the Court's Discovery Orders..................1

                  1.      Penn Did Not Violate the October 23, 2025 Order ..........1

                  2.      Penn Did Not Violate the January 2026 Orders ...............4

                  3.      The Timing of Production of Documents to Third Parties Did Not Violate the Court's January Orders....................6

          B.      USFIC's Response to Interrogatory No. 13 Does Not Provide A Basis For Sanctions...................................................................7

          C.      Penn and USFIC's Discovery Objections Did Not Violate the Federal Rules or Otherwise Provide a Basis for Sanctions .......9

          D.      Penn and USFIC Did Not Violate the Court's Procedures. ......11

                    1.      Penn/USFIC Did Not Violate Section V.7 of the Court's Procedures.......................................................................11

                    2.      Penn/USFIC Did Not Violate Section V.1 of the Court's Procedures.......................................................................13

                    3.      A Single Inadvertent Email Does Not Warrant Sanctions ...................................................................................15

          E.      Penn and USFIC Have Not Violated the Duty of Candor ........16

          F.      The Whole of W&T's Motion Does Not Exceed the Sum of Its Demonstrably Inadequate Parts ................................................20

          G.      The Request for a 30(b)(6) Deposition on Discovery Should Be Denied ...................................................................................22

    II.      Penn/USFIC Should Be Awarded Their Fees and Costs for Responding to the Motion..................................................................22

CONCLUSION ...............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Calsep, Inc. v. Intelligent Petroleum Software Sols., LLC*,
No. 4:19-CV-1118, 2021 WL 1729169 (S.D. Tex. Apr. 29, 2021)......................20

*Chambers v. NASCO, Inc.*,
501 U.S. 32, 45–46 (1991) ........................................................................... 20, 28

*Elliott v. Tilton,*
64 F.3d 213 (5th Cir. 1995) ...............................................................................20

*Hubbard v. Potter*,
247 F.R.D. 27 (D.D.C. 2008) .............................................................................27

*In re Moore*,
739 F.3d 724 (5th Cir. 2014) ..............................................................................20

*Malacara v. Garber*,
353 F.3d 39 (5th Cir. 2003) ................................................................................18

*N. Alabama Fabricating Co., Inc. v. Bedeschi Mid-W. Conveyor Co., LLC*,
2018 WL 276772 (D. Kan. Jan. 3, 2018)............................................................11

*Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*,
2018 WL 741795 (D. Kan. Feb. 7, 2018) ...........................................................28

*Richard v. Inland Dredging Co., LLC*,
2016 WL 5477750 (W.D. La. Sept. 29, 2016).....................................................11

*Romero v. Atchison*,
2019 WL 13155647 (N.D. Ill. Jan. 24, 2019) .....................................................11

*United States ex rel. Frey v. Health Mgmt. Sys., Inc.*,
No. 4:21-CV-02024, 2023 WL 2563239 (S.D. Tex. Feb. 10, 2023) ....................13

**Rules**

Fed. R. Civ. P. 37.................................................................................................27

**Other Authorities**

Judge Palermo's Court Procedures at V.1 ...............................................................17

Judge Palermo's Court Procedures at V.7 ...............................................................15

**INTRODUCTION**

W&T Offshore, Inc. and W&T Energy VI, LLC's (collectively "W&T") Motion for Sanctions (the "Motion") is meritless because it is factually inaccurate and makes no serious attempt to demonstrate that the conduct it alleges warrants sanctions. Pairing (i) a lengthy "background" section rife with misstatements, nonspecific allegations, and omitted context with (ii) a cursory "argument" section that does nothing to show that the alleged conduct is sanctionable, W&T has simply thrown a set of factually unfounded and legally insufficient allegations at the wall, hoping something sticks.  The Motion should therefore be denied.  Further, because W&T had no credible basis for seeking sanctions, Penn/USFIC should be awarded the fees and costs they have incurred in responding to it.

**ARGUMENT**

I.    **W&T Provides No Basis for Sanctions**

A.    **Penn Did Not Violate the Court's Discovery Orders**

1.  **Penn Did Not Violate the October 23, 2025 Order**

Penn complied with the Court's October 23, 2025, Order by searching for and producing the documents the Order required. W&T takes issue with the pace of production, but the Court's order did not set a production deadline for those documents, and the production's timing was reasonable in light of the various steps in the process that were necessary to complete searching and production.  Those include: (i) agreeing on search terms and custodians, (ii) conducting the search, (iii)

1

identifying and reviewing responsive documents, (iv) the competing demands of W&T's other requests, and (v) clarifying which accounts needed to be produced.

W&T ignores all of this—including that Penn/USFIC first proposed search terms and custodians on September 24, 2025. Ex. 1. Further, Penn/USFIC sent *multiple interim follow-ups* through November 5, 2025, after not hearing back. *See* Exs. 2-4; App. A (providing full timeline). The parties then negotiated terms and custodians for W&T's 60+ requests (including but not limited to the documents that were the subject of the Court's October 23 Order) leading to agreement on December 15, 2025. Ex. 12. Penn/USFIC were therefore seeking to push the process forward— the opposite of the bad faith that W&T must show to obtain sanctions.

There were then 45 days between the agreement on search terms and the production, and W&T nowhere attempts to show that this period violated the Order. Nor could it. Penn/USFIC still had to identify, review, and produce the documents during this period. Also, until the January 15 Order required complete focus on the documents addressed in the October 23 Order, *see* Dkt. 248 at 3-4, those documents were part of the processing of all documents responsive to W&T's 60+ requests. Also, the number of accounts that needed to be produced was not settled until the January 15, 2025 hearing (two weeks before production). *Id*. at 3–4 (narrowing the number of accounts that needed to be produced from 27 to approximately 7).

W&T rests on misleading assertions that ignore this background. <u>First</u>, it

2

asserts that Penn had only produced eight documents and not provided notice to operators under the NDAs as of December 19, 2025.  Mot. at 4.  It ignores that this was just four days after W&T had agreed to Penn's proposal on search terms and custodians. Penn also could not tell oil-and-gas operators what was to be produced until it completed its search and review and knew what was to be produced.

Second, W&T asserts that on November 14, 2025, "counsel conveyed that he had not even begun reviewing documents and made no proposal, nor any specific date, by which he intended to comply with the Court's order."  Mot. at 3.  It ignores that on the same page of the cited transcript, Penn/USFIC counsel stated: "If we can agree today on search terms, then we would get you something within 30 days."[1]

Third, W&T quotes the Court's January 15, 2026 observation that "Counsel did not even know the volume of documents that is responsive to the Court's order." Mot. at 4 (quoting Dkt. 248 at 3).  It ignores that Counsel's statement came after the Court had, at the hearing, narrowed the universe of accounts requiring production from 27 down to approximately 7.  *See* Dkt. 248 at 3–4.  The statement referred to Counsel's reasonable lack of knowledge of how many documents were in the just-narrowed subset of responsive accounts.

---

[1] Mot. Ex. 1, Nov. 14, 2025 Meet & Confer (M&C) Tr. at 00:03:18.187–00:03:24.627; *id*. at 00:03:55.787–00:04:15.827.

3

### 2. Penn Did Not Violate the January 2026 Orders

W&T asserts that Penn should be sanctioned for violation of January 2026 Orders of the Court due to limited redactions in its January 30 production. Mot. at 5–6. That is wrong. Penn properly withheld only information that was (i) competitively sensitive and thus appropriate only for review by outside counsel and/or (ii) entirely nonresponsive because it involved accounts that the Court said that Penn did not have to produce. Further, Penn immediately offered to produce the information to opposing counsel on an outside-counsel's eyes only basis.[2]

W&T relies on the Court's statement, "Now, listen to me. No redacting. We've got a Protective Order." Mot. at 4 (citing Jan. 13 Hr'g Tr. at 75:15–16). It is clear in at least three ways that the Court was not referring to what Penn did. First, to that point, the only discussion of redaction at the hearing addressed the different issue of Mr. Dry's previous offer to redact names of all oil and gas operators, including from opposing counsel.[3]

Second, at the hearing, the Court substantially narrowed the universe of

---

[2] *See* Mot. Ex. 3 (R. Dry Jan. 30, 2026 Letter) at 1–2 (letter describing the nature of the redactions); Mot. Ex. 4 (R. Dry Feb. 3, 2026 Letter) at 2 ("Penn is willing to make the unredacted materials available for review by W&T's outside counsel only …. If, after that review, you identify any redaction you believe contains responsive information, I have no problem discussing it further."); Mot. Ex. 16 (R. Dry Feb. 19, 2026 Email) (upon entry of amended protective order "[W]e will produce the unredacted, non-privileged documents from our last production to you by Monday.").

[3] The purpose of this offer was to allow production of documents at an earlier point pending compliance with NDA requirements. Jan. 13, 2026, Hr'g Tr. at 70:19-25.

4

accounts requiring production and stated that Penn did not have to produce "anything" from those accounts. *Id.* at 74:4–5, 74:15–16, 74:23–24. Penn was thus justified in its belief that it was not required to produce such information.

Third, immediately after the "No redacting" statement, the Court said the following: "We've got a Protective Order. These are honorable lawyers, and you—and we're all officers of the Court." *Id*. at 75:16–21. Penn addressed this concern by offering to provide the redacted information to those very lawyers.

Penn was thus simply applying redactions to information to which the OCEO designation properly applied before the Protective Order was adapted to protect it, while immediately offering to produce unredacted versions to outside counsel.[4] The Protective Order was then amended to codify that designation. *See* Dkt. 269 at 3–4 (¶ 2(b)). W&T subsequently confirmed the reasonableness of Penn/USFIC's approach at the parties' February 11, 2026 meet and confer where W&T counsel insisted that competitively sensitive information of exactly the type Penn had redacted must be designated as "Outside Counsel Eyes Only" ("OCEO"). Ex. 13 (Feb. 11, 2026 M&C Tr.) at 00:05:31.191–00:05:52.231 (stating need for agreement that "all parties are going to designate information that is competitively sensitive

---

[4] *See* Mot. Ex. 3 (R. Dry Jan. 30, 2026 Letter) at 1–2 (letter describing the nature of the redactions); Mot. Ex. 4 (R. Dry Feb. 3, 2026 Letter) at 2 ("Penn is willing to make the unredacted materials available for review by W&T's outside counsel only …. If, after that review, you identify any redaction you believe contains responsive information, I have no problem discussing it further."); Mot. Ex. 16 (R. Dry Feb. 19, 2026 Email) (upon entry of amended protective order "[W]e will produce the unredacted, non-privileged documents from our last production to you by Monday.").

under that outside counsel only provision"); 00:08:56.111–00:09:13.471.

W&T again offers only misleading statements that ignore this context. Contrary to W&T's contention, Mr. Dry did not "*simply* state that it was not a violation" when W&T raised the issue. *See* Mot. at 5 (emphasis added). Mr. Dry *also* offered to provide the information to outside counsel *in the same letter*. Mot. Ex. 4 (R. Dry Feb. 3, 2026 Letter) at 1–2. W&T also complains that the information was not produced until February 21st while omitting that this was just after entry of the Amended Protective Order providing for the new OCEO designation.

Finally, W&T asserts that the "improper redactions necessitated additional expense by W&T to negotiate and accommodate processes that it should never have had to incur." Mot. at 5. This vague phrasing deliberately obscures that the "process" was Penn's offer to produce the documents to outside counsel after entry of the Amended Protective Order providing for the OCEO designation.

### 3. The Timing of Production of Documents to Third Parties Did Not Violate the Court's January Orders

Finally, W&T also faults Penn for the timing of NDA notices to third parties but does not explain how it violated the January Orders. Mot. at 6. Nor could it given that the Order set a production deadline that Penn met. The Court did not prescribe any procedure related to NDA notices. Nor was there anything otherwise unreasonable about the timing of production to third parties. Penn devoted substantial resources to meeting the Court's deadline by the date of production and

6

produced the documents to third parties when ready.

**B.    USFIC's Response to Interrogatory No. 13 Does Not Provide A Basis For Sanctions**

W&T additionally seeks sanctions against USFIC based on its response to Interrogatory No. 13—which was submitted eight months before W&T filed its motion. Mot. at 16. That interrogatory asked USFIC to "Identify any allegations of antitrust violations, anticompetitive behavior, or unlawful conduct that have been made against You." Mot. Ex. 8 (Aug. 6, 2025 Resp.) at 13. USFIC objected on multiple grounds—vagueness, overbreadth, lack of relevance, lack of proportionality, and as an impermissible fishing expedition. *See id.*; Mot. Ex. 9 (Nov. 19, 2025 Suppl. Resp.) at 13. USFIC then answered "subject to and without waiving these objections," and "aside from W&T's baseless allegations herein, *and based on USFIC's investigation to date*, none." Mot. Ex. 9 at 13 (emphasis added). W&T claims that the declaration was "false" because it did not include *In re California Bail Bond Antitrust Litig.*, 4:19-cv-00717 (N.D. Cal.), where USFIC was a defendant. Mot. at 7.

The response provides no basis for sanctions. It was accurate because USFIC expressly qualified it as "based on USFIC's investigation to date," and the investigation was focused on markets relevant to this case. W&T itself confirmed the reasonableness of omitting bail bond litigation by later acknowledging its irrelevance. *See* Oct. 22, 2025 Hr'g Tr. at 55:8–13 ("We're not asking for any"

7

documentation concerning Lexon's "bail bond business," only for the "slice of their business dealing with offshore surety bonds for independent oil and gas operators in the Gulf of America.")

Further, inadvertent omissions of irrelevant information from interrogatory responses are not a basis for sanctions.[5]  Knowing this, W&T asserts that USFIC's "obfuscation was a unilateral determination to hide unfavorable information in its sworn response."  Mot. at 16.  This is entirely unsupported, inaccurate, and facially implausible. USFIC would have had no incentive to "hide" the bail bond allegations when the information was both irrelevant to this case and a matter of public record. USFIC also agreed to supplement its response upon request from W&T in response to its December 23, 2025 letter.  Mot. Ex. 10 (R. Dry Jan. 8, 2026 Letter) at 4–5.[6]

---

[5] *See Richard v. Inland Dredging Co., LLC*, 2016 WL 5477750, at *4 (W.D. La. Sept. 29, 2016) (finding that "plaintiff has not met the 'high' threshold for the imposition of sanctions" where "it appears to this Court that any such deficiencies in its discovery responses was inadvertent and that the responses were not provided in bad faith, or in any willful attempt to abuse the judicial process"); *Romero v. Atchison*, 2019 WL 13155647, at *2 (N.D. Ill. Jan. 24, 2019) ("Pointing to errors and inaccuracies is not enough to conclude that defense counsel acted in bad faith"); *N. Alabama Fabricating Co., Inc. v. Bedeschi Mid-W. Conveyor Co., LLC*, 2018 WL 276772, at *5 (D. Kan. Jan. 3, 2018) (denying sanctions for allegedly false and misleading interrogatory responses, finding "no evidence that at the time of signing Defendants knew their answers and objections to Plaintiff's First Interrogatories . . . were inaccurate").

[6] The Motion quotes a four-word fragment from that letter ("side disputes over semantics") while ignoring the rest.  Mot. at 7.  The full passage reads:

> "[T]o avoid side disputes over semantics and to the extent Interrogatory No. 13 is interpreted as calling for disclosure of any antitrust allegations of any kind, USFIC will supplement its response to identify that matter, while expressly stating that it is unrelated to the claims and markets alleged here and was resolved without admission of wrongdoing."

Mot. Ex. 10 (R. Dry Jan. 8, 2026 Letter) at 4–5.

W&T's conclusory assertions (proffered eight months after the response) fail to establish both the bad-faith conduct and the prejudice necessary for sanctions.

**C.　Penn and USFIC's Discovery Objections Did Not Violate the Federal Rules or Otherwise Provide a Basis for Sanctions**

W&T briefly claims that Penn and USFIC committed violations of the Federal Rules. Yet it fails to identify any such violations, much less any that merit sanctions. The Motion first asserts that "Penn and USFIC objected to all of W&T's First Requests for Production of documents on the basis that they would not respond to discovery until a ruling on a motion to dismiss." Mot. at 8 (citing Mot. Ex. 11 (July 9, 2025 First RFP Responses)). W&T fails to acknowledge that the parties resolved that objection the same month it was raised after Penn and U.S. Fire elected not to seek a stay of discovery pending the motion to dismiss.[7]

The Motion next asserts that Penn and USFIC objected to most of W&T's Second RFPs as a "fishing expedition." Mot. at 8–9. But there is nothing wrong with that objection which merely elaborates on the objection that a request is not "proportional to the needs of the case" and is firmly rooted in the Court's authority. *See United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, No. 4:21-CV-02024, 2023 WL 2563239, at *9 (S.D. Tex. Feb. 10, 2023).

---

[7] On July 30, 2025, W&T counsel wrote: "Ryan, yes, we take your email as confirmation that you are withdrawing your objection to W&T's discovery requests based on the motions to dismiss." Ex. 14 at 2; *see also* Mot. Ex. 12 (Penn and USFIC's Objections and Responses to W&T's Second RFPs (Aug. 6, 2025) (omitting the objection)).

W&T fails to identify a single instance where Penn/USFIC lacked a colorable basis to assert a request was overbroad or disproportionate but did so anyway. That alone makes clear it had no basis for seeking sanctions on this basis. Nor could it credibly do so. Penn/USFIC asserted these objections in good faith, and in most instances either (i) agreed to produce a subset of documents tailored to the conspiracy that W&T alleged (Ex. 12 at Resp Nos. 3, 7, 10–12, 14–15, 18–20, 22, 24–25, 29–30, 33–34); (ii) stated that there were no such documents (*id*. at Resp. Nos. 6, 24, 26), or (iii) offered to meet and confer to see if the parties could agree on a narrower request (*id*. at Resp. Nos. 23, 31–32).

Finally, W&T complains that Penn and USFIC have "refused to produce documents within the scope of discovery, claiming the need for a threshold evidentiary showing that does not exist under Rule 26." Mot. at 9. W&T ignores that the Court itself relied on this formulation. *See* Mot. Ex. 13 (Sept. 18, 2025 H'ring Tr.) at 2 (As "the case progresses, if documents and information dated prior to 2024 become relevant, then, as I stated, we can discuss broadening our responses."). And again, W&T (i) fails to point to any specific request where Penn asserted the objection in bad faith and (ii) ignores that the objection merely elaborated on objections concerning irrelevance and disproportionality.

W&T then argues, "Yet even when W&T has pointed to evidence of conspiracy, they insist they are entitled to dismiss it, based only on their subjective

opinion." Mot. at 9. It provides no citation or further explanation. It is ***absurd and sanctionable*** to seek sanctions based on this type of unsupported assertion.[8]

### D. Penn and USFIC Did Not Violate the Court's Procedures.

#### 1. Penn/USFIC Did Not Violate Section V.7 of the Court's Procedures

W&T argues that Penn and USFIC "ignored" § V.7 of the Court's procedures in its responses to W&T's Second Requests for Production and then "rejected" W&T's proposals for mutual supplementation instead engaging in "gamesmanship and delay." Mot. at 9–10, 11 n.2. Neither is true. <u>First</u>, Penn and USFIC did not "ignore" the rule. As an initial matter, the rule was not part of the Court's procedures until September 15, 2025, and responses to W&T's second set of requests were served on August 6, 2025. *See* Mot. Ex. 8.

Further, the rule does not prohibit use of the "subject to" phrase altogether. Instead, it provides that a "party who objects to a discovery request and also responds 'subject to the objections' must indicate whether the response is complete" and "must specifically identify whether information is withheld based on the objections and if so provide enough information about what is not produced or provided to enable further inquiry if appropriate." Court Procedures at V.7. Penn and USFIC's

---

[8] W&T then returns to the assertion that "Penn withheld documents for months based on improper objections based on NDAs that related to relevance and confidentiality." Mot. at 9. As discussed in section I(A)(1) *supra*, W&T provides no support for this assertion, and it is untrue. Penn's production timing resulted from the various steps detailed above, not from NDA obligations.

11

responses used the "subject to" phrase but then generally made clear in the cited set of requests either that (i) no documents existed that the parties were aware of (*See* Mot. Ex. 12, at USFIC Nos. 1, 4–5, 17–18, 22, 26–27; Penn Nos. 1, 17, 18, 22, 26, 27); (ii) that all responsive documents would be produced (*id.* at USFIC No. 2; Penn Nos. 2, 4); (iii) that the request was being limited to a particular subject matter and time period (*id.* at USFIC Nos. 3, 7, 10–12, 14–15, 19–20, 24–25, 29–30, 33); Penn Nos. 3, 5, 7, 10-12, 14-15, 19-20, 24-25, 29-30, 33); or (iv) that they were willing to meet and confer (USFIC Nos. 21, 23, 31-32; Penn Nos. 21, 23, 31–32).

Further, to address the instances where parties on *all sides* complained either about what was withheld or that it was unclear what was withheld, the parties agreed to a framework to mutually supplement their responses at their February 11, 2026 meet and confer.[9] W&T asserts that Penn and USFIC "rejected W&T's proposal" for supplementation. Mot. at 10. It is not even remotely clear how W&T believes this provides a basis for sanctions, and again, it is untrue. Instead, on February 19, 2026—four days before the substantial completion deadline that W&T itself had pushed the Court to maintain—W&T Counsel sent a draft "Unopposed Motion for Second Amended Docket Control Order" proposing both (i) a three-month extension

---

[9] *See* Mot. Ex. 18 (R. Dry Mar. 10, 2026 Email) at 3 ("At our February 11 meet and confer, the parties discussed and generally agreed to a mutual supplementation process to be completed after the February 23 substantial completion deadline — precisely because both sides acknowledged that the same deficiencies existed across their respective responses").

of the substantial completion deadline and (ii) a schedule for amending objections and responses.  *See* Mot. Ex. 14 (M. Lewis Feb. 19, 2026 Email). In response, Penn and USFIC rejected *the extension of the substantial completion deadline.*[10] They did *not* reject establishing a schedule for supplementation. Instead, they specifically proposed that the parties agree on an interim schedule for amending objections and responses in between the substantial completion deadline and the close of discovery.[11] W&T again misstates the record.

### 2. Penn/USFIC Did Not Violate Section V.1 of the Court's Procedures

W&T asserts that "Penn and USFIC have refused to engage in genuine compromise discussions with W&T on their discovery responses and rebuffed attempts to reach the merits."  Mot. at 11.  According to W&T, this violated section V.1 of the Court's rules which encourages working out disputes and states that "Compromise is encouraged." *Id*.; Court Procedures at V.1. This is legally and factually baseless. It is legally baseless because W&T cites no authority stating that a violation of the Court's rule "encourag[ing]" the parties to engage in compromise

---

[10] *See* Mot. Ex. 16 at 1 ("[W]e do not agree that the February 23 deadline needs to be moved. . . .We have expended a tremendous amount of time and resources to comply with the February 23 deadline, and we intend to meet it.")

[11] *See* Mot. Ex. 16 (R. Dry Feb. 19, 2026 Email) at 1 ("While I do not think we need to amend the DCO, *I do think it makes sense to set interim deadlines that fall somewhere between the substantial completion date and the close of discovery, so that all parties have sufficient time to work through objections, make supplemental requests if needed, and efficiently address any remaining areas of dispute*." (emphasis added)).

can properly provide a basis for sanctions. Indeed, absent assertion of a frivolous position or a wholesale failure to confer, it is unclear how there could be meaningful standards for sanctioning when a party has insufficiently "compromised."[12]

Further, the claim is factually baseless because Penn and USFIC have continuously conferred with W&T and sought to resolve issues throughout this case. As its sole alleged contrary example, W&T points to its February 9, 2026 letter. Mot. at 11. It ignores that the parties conferred on the subjects of the letter two days later in a transcribed meet and confer, including the form-of-response and supplementation issues that are the subject of the Motion's IV.A and IV.B arguments. *See* Mot. Ex. 17 (M. Lewis Feb. 9, 2026 Letter); Ex. 13 (Feb. 11, 2026 M&C Tr.). Penn/USFIC also engaged in subsequent written communications on those subjects. *See e.g.*, Mot. Ex. 18 (R. Dry Mar. 10, 2026 Email).

W&T calls those subsequent efforts "self-serving" and "performative" without any discussion of the alleged deficiencies that were being discussed. Mot. at 11–12. Such conclusory assertions violate the Court's caution against leaving it to the Court and parties to "hunt through this record like pigs hunting for truffles." Dkt. 195 (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)). Nor would

---

[12] Everyone should shudder at what the impact on this Court's docket and the litigation system as a whole if one opposing counsel's view of another's responses as "self-serving" and "performative" justified seeking sanctions. Penn and USFIC assure the Court that there have been numerous W&T actions in this case that Penn and U.S. Fire deem reflective of its unwillingness to compromise and as *profoundly* "self-serving" and "performative." But they have not sought sanctions on that basis because it is not a proper basis for seeking such relief.

14

that hunt yield truffles. The March 10 email cited by W&T addresses each issue then in dispute by name, identifies them with specific record citations, and proposes paths forward. *See* Mot. Ex. 18 (R. Dry Mar. 10, 2026 Email) at 1–7.  The same is true of the April 14, 2026 email cited in the Motion's footnote (Mot. Ex. 15), which works through eleven numbered substantive items raised in W&T's prior correspondence.

### 3.  A Single Inadvertent Email Does Not Warrant Sanctions

W&T asserts that counsel for Penn/USFIC violated Appendix C of the Court's rules based on an email that a lawyer with only limited involvement in the case sent inadvertently to counsel for Plaintiff.  Mot. at 12.  The email used a figurative expression to convey his impression that Mr. Dry had "hit the mark" with a response sent to W&T counsel. *See* Mot. Ex. 20 (T. Duke Mar. 20, 2026 Email Thread) ("Ryan: The hit dog yelps. Tom"). The email was certainly not meant as an insult but rather as a private internal communication intended as a light-hearted comment on the perceived effectiveness of Mr. Dry's advocacy.[13] It does not rise to the level of "willful misconduct" or "bad faith" warranting sanctions.  *See In re Moore*, 739 F.3d 724, 730 (5th Cir. 2014). Counsel for Penn/USFIC have been and remain committed to Appendix C's standards and to conducting this litigation accordingly.

---

[13] That said, W&T's motion appropriately reminded Penn and USFIC (as well as the attorney who sent the email) that the email merited an apology rather than the original response which thanked counsel for calling it to his attention and stated it was not directed to her personally or meant to cause offense. Penn/USFIC Counsel thus offered his apology to W&T Counsel in a May 14th email, a copy of which is attached to this response. *See* Ex. 15.

### E.    Penn and USFIC Have Not Violated the Duty of Candor

The Motion further asserts that counsel for Penn and USFIC "have repeatedly made factual misrepresentations and obfuscated" and "have repeatedly attempted to misrepresent the positions and history of negotiations during transcribed meet and confers and in correspondence." Mot. at 13. That is untrue, and none of the examples provided support it. Further, W&T does not even attempt to show that the statements meet the demanding standard for sanctions—*i.e.*, a showing that the statement was not just misleading but actually made in "bad faith."[14]

W&T begins by citing emails between counsel (without elaboration). Mot. at 13.[15] Then for the challenged statements that USFIC or Penn actually made to the Court, W&T again outright misrepresents the statement or mischaracterizes the subject that it was referencing. First, the Motion identifies as a misrepresentation the statement at Dkt. 294 that W&T "selectively produced fourteen (14) documents containing text message excerpts—limited to communications involving Todd

---

[14] *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (sanctions appropriate for "willful disobedience" or conduct "in bad faith, vexatiously, wantonly, or for oppressive reasons"); *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995) (reversing and vacating imposition of sanctions because while the representations to the court were "disingenuous and misleading" the district court failed to make the requisite finding that the attorney acted in "bad faith"); *Calsep, Inc. v. Intelligent Petroleum Software Sols., LLC*, No. 4:19-CV-1118, 2021 WL 1729169, at *2 n.3 (S.D. Tex. Apr. 29, 2021) (sanctions "limited to instances involving bad faith or a willful abuse of the judicial process") (Palermo, J.).

[15] Exhibit 21 simply cites counsel's own characterization, to which Penn/USFIC responded by quoting the meet-and-confer transcript; and Exhibit 22 reflects, at most, a perceived ambiguity in counsel correspondence that Penn/USFIC immediately clarified. *See* Exs. 16, 17. Neither exhibit raises any issue of candor, much less supports the extraordinary remedy of sanctions.

Grabois and McGriff—without disclosing its collection, search methodology, or custodial scope." Mot. at 14.  It asserts that this is inaccurate because W&T has produced "149 text messages." *Id*.

Here, W&T omits critical language "**Just prior to the February 23 deadline**," W&T "selectively produced fourteen (14) documents containing text message excerpts—limited to communications involving Todd Grabois and McGriff—without disclosing its collection, search methodology, or custodial scope."  Dkt. 294 at 7 (emphasis added). Properly quoted, the statement is indisputably true.  W&T thus misstates what Penn/USFIC said and thereby violates *W&T's* duty of candor to the Court.[16]

Second, the Motion challenges the statement at Dkt. 294 at 6 that "[t]he Sureties likewise confirmed that text messages were not within the agreed scope of production." Mot. at 13–14. To demonstrate the supposed contradiction, W&T asserts that its RFP definitions included text messages. *Id*. at 13–14; Mot. Exs. 23, 24. There is no contradiction. Penn/USFIC never said that W&T had agreed that Penn/USFIC would never have to produce text messages. Instead, the statement

---

[16] It also is untrue that W&T disclosed its methodology for its limited production of text messages. It says it did so in the March 3, 2026, meet and confer on the issue, but it provides no citation or written support for that proposition.  Further, as the transcript of the meet and confer reflects, W&T counsel interrupted attempts to understand the methodology based on the claim that the sureties had not yet committed to doing so. *See* Ex. 18 (March 3, 2026 M&C Tr.) at 9:13.235–9:22.035 ("Happy to have the conversation about methodologies, but not unless the sureties are committed to providing text messages").

17

refers to what the parties had agreed upon to that point, and the fact that the parties had not yet agreed on a reciprocal methodology for text-message collection and production.[17] This is why no party—including W&T—had produced text messages when the parties first met and conferred on the issue on February 11, 2026.  W&T also fails to quote the statement in full. *See* Dkt. 294 at 6 ("The Sureties likewise confirmed that text message were not within the agreed scope of production *and would not be included in the February 23 production absent further agreement*" (emphasis added)). The omitted text (shown in italics) further confirms that the statement was addressing where the parties had reached agreement. It was not claiming that W&T had agreed to forego production of text messages.

Third, the Motion references the statement at Dkt. 294 at 7–8 that "[t]he Sureties agreed to proceed with production of their text messages subject to reciprocal protocols, requiring W&T to disclose its custodians, collection methodology, and any exclusions. Counsel memorialized that agreement in writing. W&T has not provided that information."  Mot. at 14.  The Motion claims that was "false" because there "is no agreement with W&T on text messages.  W&T has been clear with the sureties that it did not, and does not, agree to any methodology that involves their use of email-style search terms."  Mot. at 14 (citing Mot. Ex. 25).

---

[17] W&T's counsel confirmed there had been no agreement on a procedure for text-message production at the February 11, 2026 meet and confer. Ex. 13 (Feb. 11, 2026 M&C Tr.) at 40:20.831–40:45.551 (also referenced in Mot. Ex. 25 and Mot. Ex. 21).

18

Again, what Penn/USFIC said was true, and again, W&T misrepresents it. The statement is about *what the Sureties had agreed to do—i.e.*, produce text messages according to "reciprocal protocols." It does not claim that there had been agreement as to what that methodology would be, much less that W&T had agreed to an exclusively search-term based methodology.[18]

In other places, W&T accurately quotes the statement but then misrepresents the record. Specifically, it disputes that a "cadence" for responding to opposing counsel was "refined through discussion and agreed upon" by the parties. Mot. at 15–16. Instead, W&T says, Penn/USFIC "rejected W&T's proposal." *Id*. (emphasis in original). The email it cites, however, referred to rejection of *one* W&T proposal. Then, just as Penn/USFIC said, the parties refined the cadence through discussion and came to agreement. *See* Mot. Ex. 26 (R. Dry Sept. 3, 2025 Email) ("Would it make sense to agree on an informal schedule: one week to respond in writing to a letter, followed by a 'meet and confer' the next week?"); Mot. Ex. 26 (M. Lewis Sept. 9, 2025 Email) at 2 (Counsel for W&T: "How about 5 business days instead of 3?"); Ex. 19 (Sept. 10, 2025 M&C Tr.) at 2:3:26.680-48:31.395–2:5:3:640) (parties

---

[18] Ex. 18 (Mar. 3, 2026 M&C Tr.) at 00:48:31.395–00:49:01.675 (emphasis added):

Dry: "But I also think, I I don't think we we still have a defined protocol on how it works as far as what to search. So I don't know if that's something you guys want to put in the e-mail and send it to everybody, but I think it would help **if *we all know the rules everybody's gonna play with*** as far as how to pull it, what to look for, stuff like that."

Lewis: "Yeah, I mean, I'm happy to put something in writing as a proposal."

agree to target five business days for a subsequent meet and confer, the functional equivalent of the original "one week" proposal.).[19]

**F.     The Whole of W&T's Motion Does Not Exceed the Sum of Its Demonstrably Inadequate Parts**

W&T's clear hope is that the Court will avoid analyzing the individual conduct alleged and simply rely on the number of allegations thrown at the proverbial wall, colored by the stream of conclusory rhetoric in the "argument." But a motion for sanctions must demonstrate that specific sanctionable misconduct has occurred that meets the specific standard for imposing sanctions.

W&T states, "*Each* of the violations listed above have layered on top of each other and compounded their impact—obstructing this case from getting to the merits and greatly increasing the costs to get there." Mot. at 22 (emphasis added). That is obviously wrong. W&T devotes many pages to statements and conduct that, even if fully credited, would not even have arguably delayed the production of responsive, relevant information. For example:

- Redacted information that Penn/USFIC provided to opposing counsel (§I(A)(2) *supra*).

- An interrogatory response that left out an irrelevant lawsuit (§I(B) *supra*).

- Statements that appeared in a recently filed opposition to W&T's motion for leave to appoint special master (which the Court denied) § (I(E) *supra*).

---

[19] The Motion also disputes the statement at Dkt. 294 at 9 that Penn and USFIC's counsel agreed to a mutual supplementation process "on the express condition that the process be mutual and that the deadline fall after the February 23 substantial completion date." Mot. at 15. As shown above, W&T misstates the February 19, 2026 email (Mot. Ex. 16) and what it "rejected" and did not reject.

- The inadvertent sending of an email to opposing counsel that had nothing to do with delaying the merits (§ I(D)(3) *supra*).

W&T further asserts that it has had to "fight at every turn" for documents. Mot. at 23. This is just inaccurate, unsupported rhetoric. W&T did not respond to Penn/USFIC's proposed search terms and custodians for six weeks. Penn/USFIC then produced 4,053 pages 45 days after the parties reached agreement on terms and custodians. Ex. 20. By the substantial completion deadline, Penn/USFIC had produced more than 67,000 pages of documents. *Id*.

W&T likewise does nothing in the brief to show that Penn/USFIC have improperly withheld any documents. It again complains about Penn/USFIC's use of the term "fishing expedition." Mot. at 22. But (as shown in §I(C) above) it fails to identify any instances where it was used inappropriately, much less in bad faith.

Then, W&T randomly complains that at the January 2026 hearing, Penn/USFIC's counsel supposedly offered a "sudden recitation of a laundry list of 'accounts' for a snap ruling by the Court," which it says "left W&T without sufficient information to test the merits of those assertions." Mot. at 23. W&T failed to raise this issue at the time or at any time in the subsequent three months. By first presenting it at the end of a sanctions brief, without support, W&T further demonstrates the Motion's "throw it at the wall" character and fundamental lack of merit.

### G. The Request for a 30(b)(6) Deposition on Discovery Should Be Denied

The Motion separately seeks an order directing Penn and USFIC to produce 30(b)(6) witnesses for depositions of "records custodians on discovery issues" within two weeks of the Court's ruling.  Mot. at 1, 25.  That request is not tied to any cognizable discovery dispute the Motion identifies. It is imprecisely described, not even remotely justified, and further confirmatory of the Motion's grab bag character.

Discovery-on-discovery depositions are reserved for circumstances in which, unlike here, a party has demonstrated specific, document-level reasons to question the other side's compliance, and even then, speculation is not enough.  *See, e.g.*, *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) (discovery-on-discovery requires more than "speculation"). The Motion does not allege spoliation, does not identify a custodial gap with particularity, and does not identify improperly withheld documents.  Therefore, the Court should deny the request.

## II. Penn/USFIC Should Be Awarded Their Fees and Costs for Responding to the Motion

This Motion is improper, and Penn and USFIC are entitled to recover their reasonable fees and costs incurred in opposing it. Fed. R. Civ. P. 37(a)(5)(B) provides that the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees,"

22

unless the motion was "substantially justified" or other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(B); *see also* Fed. R. Civ. P. 37(b)(2)(C) (analogous expense-shifting in sanctions proceedings). Courts apply this fee-shifting framework to denied Rule 37 sanctions motions. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, 2018 WL 741795, at *2 (D. Kan. Feb. 7, 2018) (imposing sanctions under Rule 37(a)(5)(B) against party that frivolously sought Rule 37 sanctions).  The Court also has inherent authority to sanction a party who has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

W&T lacked substantial justification for filing this Motion for all of the reasons discussed above.  Further, several additional factors make clear that sanctions are appropriate.  <u>First</u>, litigants with a valid basis for seeking sanctions should be able to document the precise misconduct that meets that demanding standard. W&T, however, repeatedly relies on general statements without tying the request for sanctions to a particular response. For example:

- Complaints about the "fishing expedition" objection without identifying where it was not substantially justified (*see* §I(B) above);

- Labeling Penn/USFIC's meet-and-confer efforts as "performative" with no meaningful attempt to justify the characterization (*see* § I(D)(2) above);

- Asserting "Yet even when W&T has pointed to evidence of conspiracy, they insist they are entitled to dismiss it" with no support (*see* § I(C) above); and

- Its entire "argument" section.

23

<u>Second</u>, litigants with a substantial basis for seeking sanctions do not need to mislead or omit critical context.  Penn/USFIC provide various examples of W&T's misstatements in section I(E) above.   W&T also omits material information throughout its filing, including:

- Failing to inform the Court that Penn/UFIC offered to provide the redacted information to outside counsel and W&T's use of deliberatively vague formulations to talk around the issue (*see* § I(A)(2) *supra*);

- Failed to inform the Court of Penn/USFIC's efforts to agree on search terms and custodians and move that process forward, as well as W&T's own 45-day delay in failing to respond (*see* § I(A)(1) *supra*).

Third, W&T relies on conduct that could not under any circumstances provide a basis for sanctions.  Only a litigant determined to manufacture a basis for sanctions would file such a motion over (i) a dispute over whether an order allowed redactions of nonresponsive and competitively sensitive information that a litigant immediately offered to and did provide to opposing counsel (*see* § I(A)(2) above); (ii) an inadvertently sent email like the one discussed in section I(D)(3) above; (iii) the inadvertent omission of an irrelevant lawsuit from an interrogatory response for which the movant waited eight months to seek sanctions (*see* § I(B) above); or (iv) supposed insufficient willingness to "compromise" and supposedly "self-serving" and "performative" responses (*see* § I(D)(2) above).

Finally, W&T's bad faith—and to use W&T's word, its "performative" nature—is further reflected in (i) its bizarre request to shorten Penn and USFIC's

time to respond and (ii) its timing.  As to the former, there was zero urgency justifying this extraordinary relief.  As to the latter, most of the conduct cited in the complaint occurred months before it was filed.  Yet W&T did not bring the motion until just one week after the filing of Penn/USFIC's opposition to W&T's Motion for Leave to Amend.  In that opposition, Penn/USFIC showed the Court that the second amended complaint demonstrated that W&T (i) had no credible basis for alleging that there was a collateral demand conspiracy between the sureties in 2024; (ii) falsely stated in securing denial of the motion to dismiss the first amended complaint that it had "direct evidence" of such a conspiracy even as (a) its interrogatory responses failed to identify any such evidence and (b) its second amended complaint contains nothing that it could qualify as such.  *See* Dkt. 293 at 1, 4, 6, 14-17 (Defs.' Opp'n to Mot. to Amend).  It is likely no coincidence that W&T's scramble to accuse W&T of alleged discovery misconduct did not occur until one week after Penn/USFIC raised fundamental defects in W&T's case.

But regardless of its motive, W&T had no substantial justification for seeking sanctions, and so it should required to pay the costs of filing this response.

## CONCLUSION

Penn/USFIC thus respectfully request that the Court deny W&T's Motion in all respects, award Penn/USIFC the fees and expenses they incurred in defending against it, and grant such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 6th day of July, 2026.

**BOIES SCHILLER FLEXNER LLP**

/s/ Samuel C. Kaplan
Samuel C. Kaplan
1401 New York Ave, NW
Washington, DC 20005
Email: skaplan@bsfllp.com
Telephone: (202) 274-1163
*ATTORNEYS FOR PENNSYLVANIA INSURANCE COMPANY and UNITED STATES FIRE INSURANCE COMPANY*

and

Mary-Olga Lovett
Texas Bar No. 00789289
S.D. Tex. Bar No. 17731
**MO LOVETT LAW, PLLC**
2001 Kirby Drive, Ste. 700
Houston, Texas 77019
(713) 589-5103 (office)
(713) 553-1882 (cell)
mo@molovettlaw.com
dnixon@molovettlaw.com
*ATTORNEYS FOR PENNSYLVANIA INSURANCE COMPANY and UNITED STATES FIRE INSURANCE COMPANY*

/s/ Ryan D. Dry
Ryan D. Dry
Texas Bar No. 24050532
S.D. Tex. Bar No. 618363
Steven K. Cannon
Texas Bar No. 24086997
S.D. Tex Bar No. 3356957
**DRY LAW, PLLC**
909 18th Street

26

Plano, TX 75074
(972) 797-9510 Tele/Fax
rdry@drylaw.com
scannon@drylaw.com
***ATTORNEYS FOR PENNSYLVANIA
INSURANCE COMPANY AND UNITED
STATES FIRE INSURANCE COMPANY***

## CERTIFICATE OF SERVICE

I hereby certify that, on July 6, 2026, a true and correct copy of the foregoing document was filed and served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas on those parties registered to receive electronic notice.

*/s/ Samuel C. Kaplan*
Samuel C. Kaplan