# Vinson&Elkins

Jason Halper  jhalper@velaw.com
**Tel** +1.212.237.0240

July 22, 2026

*__Via ECF E-File__*
Honorable Dena Hanovice Palermo
U.S. District Court, Southern District of Texas

Re:     *W&T Offshore, Inc. et al. v. Endurance Assurance Corp., et al.*, 4:24-cv-3047

Dear Judge Palermo:

Lexon Insurance Company and Endurance Assurance Corporation (together, "Lexon") respectfully request that the Court address the overbroad definitions employed in Plaintiffs' ("W&T") Fourth Set of Requests for Production ("Fourth RFPs," Ex. A) at the July 28, 2026 status conference.[1] Absent limitations, W&T's definitions dramatically expand discovery into areas and with respect to entities having no relationship to this case.

The Court restricted antitrust discovery in this matter to "documents sufficient to show collateral calls and rate increases tied to collateral call[s]…made to independent oil and gas operators, and documents sufficient to show communications with other sureties, reinsurers, McGriff and IndemCo regarding those collateral calls or rate increases tied to collateral calls," beginning from June 29, 2023. Dkt. 199 ("October Order"). W&T's Second Amended Complaint ("SAC") expanded the time period of the alleged conspiracy, but the SAC's two new claims rest on the same set of underlying facts as those in the First Amended Complaint.[2] Lexon therefore agreed to enlarge the relevant time period to January 1, 2020 through June 9, 2025 and expanded the subject matter addressed in the October Order to cover all premium increases Lexon made, regardless of whether tied to a collateral call. Any discovery the SAC arguably justifies beyond the October Order is thus already accounted for. *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561

---

[1] W&T previously raised the scope of discovery concerning the Fourth RFPs as an issue to be addressed in its request for a status conference, but that request was premature because Lexon had not yet responded to the requests. (Dkt. 328.) Since then, Lexon timely served its objections and responses to W&T's Fourth RFPs (Ex. B), and the parties engaged in subsequent correspondence on July 2 and July 17 confirming that they remain at an impasse on the issues raised herein.

[2] Plaintiffs acknowledged as much in their Motion for Leave to File their Second Amended Complaint, Dkt. 276 ¶ 24 (arguing the new claims in the SAC do not "fundamentally alter the nature of this case," and stating the unlawful information exchange claim is "another alternative theory of antitrust liability" and the "breach of contract claim…is based on the same set of underlying facts that have been at issue in the case in connection with the existing contractual and declaratory judgment claims").

**Vinson & Elkins LLP  Attorneys at Law**

Austin  Brussels  Dallas  Denver  Dubai  Dublin  Houston  London
Los Angeles  New York  Richmond  San Francisco  Tokyo  Washington

The Grace Building, 1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
**Tel** +1.212.237.0000  **Fax** +1.212.237.0100  velaw.com



F.3d 377, 392 (5th Cir. 2009) ("The role of discovery, however, is to find support for properly pleaded claims, not to find the claims themselves.").

W&T's Fourth RFPs deploy overbroad definitions untethered to any theory of liability or the relevant market,[3] effectively demanding all of Lexon's communications with any industry participant whether or not the entity engages in offshore drilling or whether the communication involves collateral or premium increases. *See, e.g.,* RFP 19 ("All Communications between You and any other Broker regarding Bonds [defined below] and/or the market for Bonds"); RFPs 1-6, 9-18, 20-28. Specifically, W&T seeks to expand discovery into (i) *all* oil and gas operators that conduct activities both onshore and offshore, and within and outside of the Gulf; and (ii) any bonds discussed, contemplated, or issued in connection with such operators, regardless of whether collateral was ever demanded or premiums were ever adjusted. That sweeps in the core of a surety's entire business. This is precisely the kind of burden untethered from relevance or proportionality that Rule 26(b)(1) forecloses. Lexon's definitions are tailored to preserve a nexus to the claims.

| Term | W&T Definition | Lexon Definition |
|---|---|---|
| **Bond** | "[A]ny surety bond of any kind issued to any Independent Oil and Gas Operator since January 1, 2010, regardless of the type of lease underlying the bonded asset." | The bonds issued to W&T identified in paragraph 90 of the SAC <u>and</u> any bond with offshore oil and gas operators conducting operations in the Gulf of Mexico that Lexon demanded collateral from or raised premium rates on between January 1, 2020 and June 9, 2025. |
| **Broker** | "[A]ny company or individual engaged to handle any financial assurance obligations—including the negotiation and collection of premiums—of the Bonds, regardless of whether such Broker is engaged by a Surety or an Independent Oil and Gas Operator including, but not limited to," nine named brokers. | Broker(s) that worked with Lexon with respect to the Lexon Bonds <u>and</u> brokers involved in communications regarding bonds with offshore oil and gas operators conducting operations in the Gulf of Mexico that Lexon demanded collateral from or raised premium rates on between January 1, 2020 and June 9, 2025. |
| **Independent oil and gas operator** | "[A]n oil and gas company that lacks an Investment-Grade Credit Rating, as such term is defined in the Code of Federal Regulations, 30 C.F.R. § 556.105(b)." | Offshore oil and gas operators conducting operations in the Gulf of Mexico that Lexon demanded collateral from or raised premium rates on between January 1, 2020 and June 9, 2025. |
| **Surety or Sureties** | "[A]ny company or person who has issued Outer Continental Shelf Mineral Lessee's or Operator's Bonds or Supplemental Bonds since January 1, 2010, including but not limited to the companies listed in the chart accompanying ¶ 183 of the Second Amended Complaint." | Limited to Lexon, Penn Insurance, US Fire, Applied, Amynta, U.S. Specialty Insurance Company, and Philadelphia Indemnity Insurance Company, <u>and</u> any documents concerning other sureties that hit on the agreed upon search terms, which at present include 11 other sureties. |

---

[3] *See* Plaintiff's Second Amended Complaint, Dkt. 310, at 61 (W&T stating "the relevant product market is the market for offshore surety bonds for oil and gas companies . . . on the OCS *of the Gulf*") (emphasis added).



Sincerely,

*/s/ Jason Halper*
Jason Halper