# McGuireWoods

**McGuireWoods LLP**
888 16th Street N.W.
Suite 500
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

**Megan S. Lewis**
Direct: 202.857.1716
mlewis@mcguirewoods.com

July 22, 2026

**<u>Via CM/ECF</u>**
The Honorable Dena Hanovice Palermo
U.S. District Court, Southern District of Texas

     Re: *W&T Offshore, Inc., et al. v. Endurance Assurance Corp., et al.*, 4:24-cv-3047

Dear Judge Palermo:

     W&T Offshore, Inc. and W&T Energy VI, LLC (collectively, "W&T") informs the Court of a discovery impasse that it requests be addressed at the July 28, 2026 status conference.

**<u>W&T's Discovery Requests for Pricing Information Related to Surety Bonds</u>**

     W&T's Second Amended Complaint alleges that "[s]ince at least as early as 2020, the Defendants and their co-conspirators have joined in a scheme to raise, stabilize, and/or fix the rates and financial terms for surety bonds, in part by using the Broker Defendant and others as conduits for their coordination and exchanges of confidential and competitively sensitive information." SAC ¶ 103.  W&T's discovery requests include various requests that seek information about the price terms for surety bonds, which includes (but is not limited to) premium rates and collateral.

     Defendants' pricing information and communications go to the heart of the allegations in a price fixing case.  There can be no credible basis to argue against the relevance of information related to the price-fixed product, and it cannot be limited merely to price increases.  *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221 (1940) (Sherman Act outlaws schemes that "raised, lowered, *or stabilized* prices") (emphasis added); *see also, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 07-489, 2009 WL 3443563, at *4 (D.D.C. Oct. 23, 2009) (compelling production of pricing records on rate-regulated freight even where unregulated freight was at issue); *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 574-75 (D. Kan. 2009) (compelling production of documents related to foreign activities because it might be probative of the conspiracy on domestic sales and noting "the particularly broad scope that relevance is given in antitrust cases").

     W&T's discovery requests appropriately seek documents and information about Defendants' price terms for surety bonds—both as standalone requests for "documents sufficient to show" the premium rates and collateral terms for surety bonds issued to independent oil and gas operators, as well as various requests that seek documents reflecting communications with other sureties or brokers about the price terms of surety bonds.  However, among other improper objections, the Defendants are objecting to producing documents and information about surety bonds, unless the document references a price "increase" or a collateral "demand."  Sompo also has embedded this improper limitation into its definitions, unilaterally redefining the word "Bond" to exclude any bond on which there was not a premium increase or collateral demand, thereby affecting all of its discovery responses.

After the SAC was filed, W&T asked Defendants whether they intended to maintain their objections to the time period and scope of discovery based on the Court's prior ruling in October 2025—a ruling that was a starting point under the *First Amended Complaint* that *granted* W&T's motion to compel discovery on "documents sufficient to show collateral calls and rate increases tied to collateral call[s]." ECF No. 199. On May 15, 2026, counsel for each of the Surety Defendants represented that they did "not view the scope under the second amended complaint as confined to the scope identified in the October 23, 2025, order, which addressed discovery under the first amended complaint." Exhibit 1, S. Kaplan and A. Eva Emails dated May 15, 2026. However, now, two months later, they appear to have reversed their position, with Sompo explicitly citing the order as a basis for refusing discovery. The only other objection that Sompo has pointed to is overbreadth and burden (which has not been substantiated at all).

The untenable nature of Defendants' scope objection can be highlighted by W&T's discovery requests that seek communications with or about another surety or its bonds. Such competitor communications are central to antitrust cases—yet Defendants are refusing to produce such documents unless they specifically relate to collateral "demands" or premium rate "increases." Under this objection, Defendants could look at a communication with a competitor surety which says: "Dear Competitor, we must figure out how to stop losing money on bonds and make sure no one is undercutting each other." Because that communication does not relate to a rate "increase" or a collateral "demand," Defendants could hide behind the objection and not produce that document. Similarly, if there were an internal email that says "all other sureties are going to start asking for collateral on all new bonds going forward," they would refuse to produce that document because it does not relate to a "demand." This limitation is not consistent with the broad scope of discovery permitted in antitrust cases. *In re Urethane Antitrust Litig.*, 261 F.R.D. at 574-75 (granting motion to compel production of defendant communications where they may show "the ability of defendants to engage in … price fixing, and the mechanisms employed by defendants in price fixing" as well as "who was involved in the alleged conspiracy and the dates of that involvement, or the identity and location of persons having knowledge of discoverable information").

Finally, the refusal to produce documents sufficient to show the rates and collateral for surety bonds issued by each Defendant to their customers is at odds with routine discovery in antitrust cases. Expert analyses on industry pricing and trends on the price-fixed product require full sets of data, not pricing data cherry-picked by Defendants. To permit them such leeway with discovery would not only impair W&T's analyses but would also disadvantage W&T to the extent that Defendants intend to offer countervailing analyses based on their own full sets of pricing data. *See Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2013 WL 120240, at *9 (N.D. Ill. Jan. 9, 2013) (compelling production of twelve years of defendants' transactional data, including five years of pre-conspiracy data citing the fact that "courts generally take an expansive view of discovery in antitrust cases") (internal citations and quotations omitted).

Respectfully submitted,

Megan S. Lewis
Counsel for W&T

cc: All counsel of record (via ECF)