# McGuireWoods

**McGuireWoods LLP**
888 16th Street N.W.
Suite 500
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

**Megan S. Lewis**
Direct: 202.857.1716
mlewis@mcguirewoods.com

July 22, 2026

**Via CM/ECF**
The Honorable Dena Hanovice Palermo
U.S. District Court, Southern District of Texas

Re: *W&T Offshore, Inc., et al. v. Endurance Assurance Corp., et al.*, 4:24-cv-3047

Dear Judge Palermo:

W&T Offshore, Inc. and W&T Energy VI, LLC (collectively, "W&T") informs the Court of a discovery impasse that it requests be addressed at the July 28, 2026 status conference.

## W&T's Discovery Requests for All Communications with Competitor Sureties

Communications with competitors are critically important evidence in antitrust cases. Yet, the Surety Defendants are refusing to produce all competitor surety communications. Their objections appear to have two primary aspects: 1) an unduly narrow definition of a competitor surety; and 2) an unduly narrow limitation on which communications they are willing to produce, specifically, only those communications that relate to W&T, collateral demands, or rate increases.

In its discovery requests, W&T defined the term "Surety" as any company who has issued the type of surety bonds that are at issue in this case, non-exhaustively to include the companies specifically listed in ¶ 183 (sealed) of the SAC, which provided such a listing from an industry presentation. However, even though the SAC specifically identifies these companies, Defendants have taken the position that "Surety" only encompasses the named Defendants Sompo, Penn/Applied, USFIC/Amynta, and the Defendant who settled with W&T, USSIC and its affiliated entity Philadelphia. The only ground for refusal appears to be their incorrect assertion that there is "no basis in the SAC," and that it is unduly burdensome and disproportionate. Given that there is an explicit list of sureties *in the SAC*, the only objection therefore seems to be an unsubstantiated burden objection.

With regard to the scope of the majority of the requests related to competitor surety communications, each Defendant is refusing to produce such communications unless they relate to W&T, collateral demands, or rate increases. This limitation has no basis in the case law. To the contrary, ample case law supports W&T's position that all communications with competitors during the period of the conspiracy are properly discoverable in antitrust cases. *See In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 574-75 (D. Kan. 2009) (granting motion to compel production of defendant communications that may show "mechanisms employed by defendants in price fixing" as well as "who was involved in the alleged conspiracy and the dates of that involvement, or the identity and location of persons having knowledge of discoverable information"). Imagine the range of highly relevant communications that Defendants could hide behind their limitation: communications like "let's talk about collateral"; or "these rates are killing us"; or "how do we all make more money?" or "let's meet tomorrow to talk about a game plan" would all be excluded.

Even communications that are neutral on their face are also properly discoverable. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, Misc. No. 07-489, 2009 WL 3443563, at *6 (D.D.C. Oct. 23, 2009) (granting plaintiffs' motion to compel meeting invitations involving defendants even where the "purpose is unclear or unspecified"). Using a calendar entry example, W&T would be entitled to show a pattern of meetings and would be able to depose witnesses about what was said. But if the Defendants withhold and hide its existence, W&T may never know that such a meeting occurred. Likewise, W&T's complaint highlights the overlapping professional and personal relationships and longstanding friendships between competitors in this industry, and such evidence is routinely relied upon in antitrust cases. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 587 F. Supp. 2d 27, 35 (D.D.C. 2008) (noting that even lawful behavior can be probative of a conspiracy); *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724, 2023 WL 2244685, at *1 (E.D. Pa. Feb. 27, 2023) (denying motion to dismiss price fixing case and noting allegations of industry dinners, "golf outings," and "'Girls Night Out' get togethers" as opportunities to conspire). Indeed, it can be powerful circumstantial evidence, and a jury would be entitled to consider the pattern and frequency of communications, level of familiarity, and nature of topics discussed between competitors. *See Gainesville Utilities Dept. v. Fla. Power & Light Co.*, 573 F.2d 292, 300-01 (5th Cir. 1978) (reversing special verdict for the defendants in an antitrust conspiracy case, holding that where there is a "continuous exchange of [correspondence] between high executives of [competitors]" the "inferences are irresistible" that "concerted action was contemplated and invited by the correspondence") (quotations omitted); *see also In re Plywood Antitrust Litig.*, 655 F.2d 627, 634 (5th Cir. 1981) (noting importance of evidence of communications alongside parallel conduct because "solemnized covenants to conspire are difficult to come by in any price fixing case"). And of course, if there are any "call me" or "let's take this offline" messages, such communications would be highly relevant to show the existence of a conspiracy and consciousness of guilt.

In sum, a subjective determination by defense counsel about whether or not a communication with a competitor surety relates to an improperly narrow subject matter is not appropriate in an antitrust conspiracy case. Even if the burden to identify and produce such documents were high, it would be justified by the importance of this issue to the claims in this case. But none of the Defendants has substantiated any burden argument whatsoever—indeed, none of the Defendants has even agreed to inform W&T about the volume of responsive communications that are being withheld based on their objections. Even if Defendants have thousands of communications with their competitor sureties, that underscores the need to review what exactly they have been discussing.

Respectfully submitted,

Megan S. Lewis
Counsel for W&T

cc:    All counsel of record (via ECF)