# McGuireWoods

**McGuireWoods LLP**
888 16th Street N.W.
Suite 500
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

**Megan S. Lewis**
Direct: 202.857.1716
mlewis@mcguirewoods.com

July 22, 2026

**Via CM/ECF**
The Honorable Dena Hanovice Palermo
U.S. District Court, Southern District of Texas

Re: *W&T Offshore, Inc., et al. v. Endurance Assurance Corp., et al.*, 4:24-cv-3047

Dear Judge Palermo:

W&T Offshore, Inc. and W&T Energy VI, LLC (collectively, "W&T") informs the Court of a discovery impasse that it requests be addressed at the July 28, 2026 status conference.

## W&T's Discovery Requests Related to Brokers & Intermediaries

W&T's Second Amended Complaint (SAC) alleges an antitrust conspiracy on surety bonds that is effectuated, in part, by using brokers and other third parties as conduits for collusion. Discovery of the identities of these brokers, as well as communications with them, is central to the allegations in the complaint. W&T has put forward substantial direct evidence in its complaint that highlights the role that certain brokers played. Other brokers, whose identities and documents have been hidden behind Defendants' improper objections, are likely to reveal even more evidence of collusion on surety bonds.

The Surety Defendants are taking an impermissibly narrow view of which brokers they will search and produce information from, which affects multiple discovery requests. W&T specifically asked in Interrogatory 1—served in June **2025**—to "[i]dentify every Broker You have communicated with related to the provision or terms of Bonds for independent oil and gas operators." W&T has also asked Defendants to produce "Documents sufficient to show all Brokers or other third parties You engaged to represent You in connection with the sale or marketing of Bonds." And, in various requests, W&T asked for communications with brokers about the surety bond market or competitor sureties' bonds.

Defendant Sompo has failed even to disclose the identities of any brokers other than McGriff and IndemCo. Discovery on which brokers the Defendants communicated with and/or engaged to represent them in connection with surety bonds is basic discovery that should have been provided a year ago. Sompo's refusal to inform W&T—after multiple letters and meet and confers—which other brokers they have engaged is particularly egregious. There is no privilege and there is no burden on the mere identification of such entities or individuals. Sompo's purported refusal appears to rest on the Court's October 23, 2025 order, despite having told W&T in May of this year that they did not believe that order limited the scope of discovery under the SAC. Sompo misses the point that their refusal to disclose the identities of other brokers contributed to only those two brokers (McGriff and IndemCo) being specifically named in that order. Moreover, the Court itself referred to its October rulings as a "starting point." Oct. 22, 2025 Hr'g Tr. at 58:24. W&T should not have to guess about which brokers had what engagements with which

Defendants. Sompo's refusal to provide this information is not only unfounded, but it is impairing W&T's ability to negotiate search terms and discuss parameters of document productions.

Sompo has also objected to providing broker-related discovery beyond only those brokers who were involved in rate increases or collateral demands. As W&T has uncovered, other brokers in the industry, such as CAC Specialty and a reinsurance broker, have played significant roles in facilitating collusive discussions, meetings, and information sharing. The law is clear that a defendant cannot use a third-party intermediary to do that which the antitrust laws prohibit it from doing directly. *See Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 202 (2010); *United States v. MMR Corp. (LA)*, 907 F.2d 489, 498 (5th Cir. 1990). Whether a broker was specifically involved in a collateral call or rate increase or not, W&T is entitled to discovery to understand the identities of the brokers and third parties in the surety bond industry, and the scope and web of overlapping communications between and among the sureties, whether directly or through brokers or other third parties.[1]

Defendants Penn/Applied and USFIC/Amynta also have objected to W&T's discovery requests on brokers. In connection with W&T's most recent requests for production of documents, they object to defining "Broker" any more broadly than the brokers that were involved in W&T's bonds, and they also raise objections to scope beyond brokers involved in rate increases or collateral demands. They appear to be resting on an objection based on overbreadth, stating that W&T's requests related to "Brokers" are "overly broad as [the term] includes companies or individuals that are not identified in the Second Amended Complaint or are unrelated to the [Defendant Company's bonds to W&T]." These limitations are unfounded. The SAC is not limited to conduct involving only W&T's bonds, and there is no basis for limiting discovery to the specific brokers W&T named in the SAC. *See, e.g.*, *CFPB v. Nexus Servs., Inc.*, No. 5:21-cv-16, 2022 WL 1597840, at *8 (W.D. Va. May 19, 2022) (rejecting defendants' attempt to restrict discovery related to nonparties not named in complaint because "[t]he question is whether the information sought is 'relevant to any party's claim or defense,' not whether the plaintiff's complaint alleges certain facts.").

Respectfully submitted,

Megan S. Lewis
Counsel for W&T

cc:    All counsel of record (via ECF)

---

[1] W&T is not seeking an unbounded universe of third parties. Rather, it is seeking to identify whether there were any other third parties that were used or engaged in connection with Defendants' surety bond business—for example, if Defendants engaged a "consultant," W&T is entitled to know, even if such person is not technically a "broker."