# McGuireWoods

**McGuireWoods LLP**
888 16th Street N.W.
Suite 500
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

**Megan S. Lewis**
Direct: 202.857.1716
mlewis@mcguirewoods.com

July 22, 2026

**Via CM/ECF**
The Honorable Dena Hanovice Palermo
U.S. District Court, Southern District of Texas

Re: *W&T Offshore, Inc., et al. v. Endurance Assurance Corp., et al.*, 4:24-cv-3047

Dear Judge Palermo:

W&T Offshore, Inc. and W&T Energy VI, LLC (collectively, "W&T") informs the Court of a discovery impasse that it requests be addressed at the July 28, 2026 status conference.

## W&T's Discovery Requests Related to Bonds Issued to Other Independent Oil and Gas Operators

W&T's Second Amended Complaint alleges a conspiracy regarding surety bonds for independent oil and gas operators in the Gulf ("Independents"), including the allegation that the Surety Defendants refused to provide bonding to Independents who did not agree to their terms. Additionally, W&T has alleged that the sureties' purported reasons for their rate increases and/or collateral demands, such as the BOEM Rule or W&T's financial condition, were pretextual.

W&T has sought discovery related to the surety bonds that were issued to Independents, which it defined by using the same definition set forth in the Code of Federal Regulations used by BOEM and relevant to the financial assurance requirements that are at issue in this case. *See* 30 C.F.R. § 556.105(b). Defendants have objected to using that definition, as well as the definition of the term "Bond," instead imposing an unwarranted limitation to only those bonds and Independents who received collateral demands or rate increases. However, the permissible scope of discovery is not so limited. Surety bonds are the price-fixed product, and the companies who sought or received surety bonds are within the scope of proper discovery in antitrust cases.

Sompo's objection sets up the false premise that W&T's definition of "Bond" is "limitless" and would require Sompo to search for records over a 16-year period. This is not so. W&T's discovery requests information concerning surety bonds that were issued or in effect during the relevant conspiracy period. If a bond issued in 2015 is still in effect in 2025, Sompo's records related to the terms of that bond during the conspiracy period are current records within the scope of discovery. Likewise, W&T's requests about Independents are not unbounded. Although Sompo has refused to produce customer lists for its bonds, the information W&T has compiled from other sources shows that Sompo has likely bonded 20-30 Independents. The financial terms of these bonds, as well as documents and communications about bonds for Independents who did not receive demands or increases, are equally relevant to W&T's discovery requests. Furthermore, treatment of other Independents who may or may not have been in poor financial condition but did not receive collateral demands or rate increases is relevant to W&T's complaint and theories of defense that any concern about W&T's financial condition was pretextual. Such evidence is also

relevant to W&T's contractual claims to show the collateral demands to W&T were not commercially reasonable nor made in good faith.

Penn/Applied and USFIC/Amynta have objected to W&T's definitions of "Bond, Bonds, Broker, and Independent Oil and Gas Operator, to the extent they seek documents concerning surety bonds issued in connection with *onshore* oil and gas accounts, assets, or operations." Defendants have not responded to W&T's request to clarify the scope of this objection and to clarify if or how they contend that surety bonds for onshore "accounts" or "assets" are different from offshore bonds.  As part of its analysis of the surety bond market, W&T is entitled to understand the nature and type of surety bonds being issued by the Defendants.  For example, merely because an "account" has some "onshore" aspect to it does not take it out of the realm of relevance.  W&T is not seeking discovery on issues that have no relationship whatsoever to this case.  However, to the extent that such "accounts" are being issued similar or identical surety bonds, from the same Defendants at issue in this case, and potentially even to the same Independents at issue, at minimum documents and communications about rates and collateral for those bonds are within the scope of discovery.  *See, e.g.*, *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 574-75 (D. Kan. 2009) (granting motion to compel discovery on foreign conduct in connection with domestic case and explaining how a "meeting between representatives of two defendants held shortly before defendants each announced a U.S. price increase of Polyether Polyol products could be used by plaintiffs as circumstantial evidence of the conspiracy, even if the face of the document indicates that the subject of the meeting was a discussion of urethane sales to markets in Africa.").  It is apparent from the interrogatory responses of Penn/Applied that collateral was required of many additional customers for which it has not produced information, and it is apparent that both Penn/Applied and USFIC/Amynta sought or implemented price increases for which they have also not produced information.[1]  Whether or not a collateral demand or rate increase was implemented, such conduct is highly relevant and well within the scope of discoverable information in this case.[2]

Respectfully submitted,

Megan S. Lewis
Counsel for W&T

cc:    All counsel of record (via ECF)

---

[1] Penn improperly withheld even this basic information from W&T for the majority of the first discovery period.  Penn did not serve its written response to the relevant interrogatory on W&T until January 30, 2026—only *after* its counsel for the first time mid-hearing on January 13, 2026, began running through a laundry list of "accounts" and information that had not been shared with W&T, leaving W&T without any ability to respond before the Court made oral rulings.

[2] USFIC and Penn state in their pending Motion to Dismiss (ECF No. 357) that W&T's Second Amended Complaint does not contain allegations about rate increases involving them.  Not only is that false (*see* SAC ¶¶ 110; 159; 162), but it is particularly disingenuous given their interrogatory responses and refusals to provide details or produce such documents.