

July 24, 2026

***Via CM/ECF & E-mail:*** [***palermochambers@txs.uscourts.gov***](mailto:palermochambers@txs.uscourts.gov)
The Honorable Dena Hanovice Palermo
United States Magistrate Judge
515 Rusk Avenue, Room 7227
Houston, Texas 77002

  RE: *W&T Offshore, Inc., et al. v. Endurance Assurance Corp., et al.*,
     No. 4:24-cv-3047

Dear Judge Palermo:

  Defendants United States Fire Insurance Company ("U.S. Fire"), Pennsylvania Insurance Company ("Penn"), Amynta Holdings LLC d/b/a Amynta Surety Solutions ("Amynta"), and Applied Surety Underwriters LLC ("Applied") (collectively, the "U.S. Fire and Penn Defendants"), respond to W&T's letter of June 5, 2026 [ECF 335].[1]

**Confidentiality designations.** W&T states that "[a]s of" its June 5th filing, "neither Defendant ha[d] responded to W&T's request to lower" certain confidentiality designations. This referenced W&T's June 4th request to lower the designation on seven Penn text messages, which arbitrarily set a deadline of noon the next day. Penn agreed the following Monday (*i.e.*, two business days after the request) to lower or remove the designation on six of the seven. It also stated it was "open to discussions" as to the seventh. W&T never had

---

[1] Certain issues raised by W&T's letter addressed disputes with Lexon [ECF 335, §§ II–III], not the U.S. Fire and Penn Defendants. Others overlap with and to avoid repetition, are addressed in Penn and U.S. Fire's contemporaneously filed response to four letters W&T filed on July 22, 2026.  ECF Nos. 377-380.

1



any basis for suggesting there was an impasse simply because Penn did not meet W&T's one-day deadline for response.[2]

**Text Messages and Scope of Discovery.**   To date, using a manual review process, Penn and U.S. Fire have produced a total of 2,964 text messages comprised of 569 text threads over productions dated May 29, 2026, June 10, 2026, and July 21, 2026.  This review has applied the scope of review and production the Court previously ordered, and also expanded it to encompass a time period of January 1, 2020 to June 30, 2025, and to encompass documents related to price increases unconnected to collateral demands.[3] W&T identifies three other areas of dispute involving Penn and U.S. Fire.

A. **Production of Surety-to-Surety Communications**:  We address this issue at pages 3-4 of Penn and U.S. Fire's contemporaneously filed consolidated response to the July 22 letters.

B. **Date Range**:  W&T seeks discovery back to January 1, 2019.  This is excessive.  Penn and U.S. Fire have already agreed to search over five years of documents, which exceeds the period of the complaint and if anything is a substantial compromise.  The Second Amended Complaint contains no specific allegations related to Penn and U.S. Fire in 2020.  Further, the lone specific 2020 document or conduct involving any party that is specifically referenced in the Second Amended Complaint is dated July 6, 2020, and none of Penn, Applied, U.S. Fire, or Amynta are parties to that communication.  *See* 2d Am. Compl. ¶ 120.  Further, even the broad conclusory allegations of the Second Amended Complaint date back only to 2021.  *See, e.g.*, 2d Am. Compl. ¶ 104 ("Since *at least 2021*, the Defendants have agreed to coordinate rate increases for common customers, including W&T."); ¶ 108 (alleging coordinated rate increases "*since 2021*.") (emphasis added).

C. **Financial Terms**:  W&T's letter asserts that it wanted "clarity" on Penn and U.S. Fire's position as to "documents that show the financial terms for surety bonds—i.e., premiums/rates and collateral requirements."  ECF 328 at

---

[2] The Protective Order requires the parties to "make a good-faith effort to resolve any challenge to another Party's confidentiality designation," with Court resolution available only "in the absence of agreement." ECF 269 ¶ 4.

[3] By way of comparison, W&T has produced 291 text threads to date.



2.   As we explain at pages 2 and 6 of the consolidated response to W&T's July 22 letters, this is grossly excessive and unduly burdensome particularly in light of W&T's definition of "bonds" to include "onshore bonds."

Respectfully submitted,

Samuel C. Kaplan

cc:     All counsel of record (via ECF)

3