United States District Court
Southern District of Texas

**ENTERED**

July 30, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

W&T OFFSHORE, INC., AND §
W&T ENERGY VI, LLC, §
§
§   Lead Case No. 4:24-cv-3047
v. §
§
ENDURANCE ASSURANCE §
CORPORATION AND LEXON §
INSURANCE, CO., ET AL. §

## MINUTE ORDER

On July 28, 2026, the Court ruled on Plaintiffs' pending motion to for protective order. ECF No. 286.[1] The Court announced on the record that W&T made a specific work product privilege objection in response to discovery requests and further, the Court did not find W&T waived its work product privilege by expressly disclaiming it in open court or by voluntarily sharing documents with the Government to induce the Government to initiate an antitrust investigation against the sureties. Counsel for the Sompo Defendants asked the Court to reconsider its ruling, citing additional authority asserting that voluntary disclosure to the government to incite it to bring an investigation against your adversary waives any work product privilege. The Court took the motion for protective order under advisement and will issue a separate order.

---

[1] The district judge to whom this case is now assigned referred all pretrial proceedings to this Court. ECF No. 77.

Counsel advised that they had reached an impasse on other discovery matters. The Court permitted argument on the sureties' four discrete discovery disputes. The sureties first argued that they have sought a discrete set of documents related to W&T's asset recovery obligations, an important aspect of W&T's financial condition. The sureties argued that they requested W&T's quarterly and annual ARO reports from 2020 to 2025, which are not overly voluminous and are referred to throughout W&T's allegations. W&T argued that they have already produced the 2023 and 2024 reports and numerous documents including field details and spreadsheets, demonstrating its AROs. W&T argued that they have produced sufficient documents to demonstrate W&T's AROs, so the cumulative nature of these requests is unwarranted. The Court ruled that W&T shall produce W&T's quarterly and annual ARO reports from 2020 to 2025.

The sureties next asked for a verified response answering why W&T moved from Ernst and Young's auditing services to Deloitte's auditing services. W&T agreed to supplement the interrogatory response, so this issue is now moot.

The sureties next argued that they request the ordinary course of communications at the time of the change from E&Y to Deloitte. W&T argued that they have produced these documents, including text messages from W&T's CEO. This issue was tabled for counsel to discuss it further.

The sureties next argued that W&T have not produced its direct evidence of a

conspiracy in response to their contention interrogatory. W&T argued that the sureties conflate pleading and evidentiary standards, such that W&T is entitled to plead allegations that will be substantiated in discovery. Its allegations are sufficient at this stage and once they have this information, which arguably the sureties hold along with their co-conspirators, then they will amend its discovery responses. The Court ruled that W&T's response to the sureties' contention interrogatory is sufficient at this time.

The sureties finally argued that W&T made broad allegations about seeking a replacement surety but has not provided information about who it contacted for replacement bonding and the substance of those conversations. W&T responded that its authorized broker, McGriff sought replacement bonding for W&T, and it cannot produce this information because it does not have control over McGriff. The sureties argued that W&T must try to get this information before saying they cannot produce this information. W&T stated that it is trying to obtain information from McGriff's counsel and invited the sureties to engage in a meet and confer with McGriff's counsel. The sureties were satisfied with this invitation and decided not to pursue this discovery issue further.

The Court also heard argument on W&T's pending discovery letters. ECF Nos. 377, 378, 379, 380. W&T argued that although the sureties argue its requests are too broad, the discovery requests are responsive to the crux of the allegations in

the Second Amended Complaint. The sureties argued that if they use W&T's definitions, discovery will be impermissibly broad and lead to production of thousands and thousands of documents, most of which will be irrelevant. The parties disagreed on the below definitions:

| Term | W&T Definition | Lexon Definition |
|---|---|---|
| Bond | "[A]ny surety bond of any kind issued to any Independent Oil and Gas Operator since January 1, 2010, regardless of the type of lease underlying the bonded asset." | The bonds issued to W&T identified in paragraph 90 of the SAC and any bond with offshore oil and gas operators conducting operations in the Gulf of Mexico that Lexon demanded collateral from or raised premium rates on between January 1, 2020 and June 9, 2025. |
| Broker | "[A]ny company or individual engaged to handle any financial assurance obligations—including the negotiation and collection of premiums—of the Bonds, regardless of whether such Broker is engaged by a Surety or an Independent Oil and Gas Operator including, but not limited to," nine named brokers. | Broker(s) that worked with Lexon with respect to the Lexon Bonds and brokers involved in communications regarding bonds with offshore oil and gas operators conducting operations in the Gulf of Mexico that Lexon demanded collateral from or raised premium rates on between January 1, 2020 and June 9, 2025. |
| Independent oil and gas operator | "[A]n oil and gas company that lacks an Investment-Grade Credit Rating, as such term is defined in the Code of Federal Regulations, 30 C.F.R. § 556.105(b)." | Offshore oil and gas operators conducting operations in the Gulf of Mexico that Lexon demanded collateral from or raised premium rates on between January 1, 2020 and June 9, 2025. |
| Surety or Sureties | "[A]ny company or person who has issued Outer Continental Shelf Mineral Lessee's or Operator's Bonds or Supplemental Bonds since January 1, 2010, including but not limited to the companies listed in the chart accompanying ¶ 183 of the Second Amended Complaint." | Limited to Lexon, Penn Insurance, US Fire, Applied, Amynta, U.S. Specialty Insurance Company, and Philadelphia Indemnity Insurance Company, and any documents concerning other sureties that hit on the agreed upon search terms, which at present include 11 other sureties. |

ECF No. 376 at 2.

The Court ordered counsel to return in person to the courtroom on July 29, 2026, for a meet and confer on their disputed issues. The parties shall go through all disputed discovery requests and work together to resolve their issues. If the parties reach an impasse, they may ask the Court for a ruling. As guidance for their discussion, the Court provided input on the scope of discovery as consistent with its ruling in October 2025 and limited to the offshore oil and gas operations in the Gulf

of Mexico.

The Court will set Plaintiff's pending motion for sanctions against USFIC and Penn, ECF No. 302, for a separate hearing. The Court provided the following focus to streamline the issues in that hearing: whether the Court should award sanctions because Penn produced redacted documents when the Court explicitly ordered that no documents should be redacted because there is a Protective Order in place.

On the morning of July 29, 2029, counsel reconvened in the courtroom to work on resolving their discovery disputes. The Court resumed the hearing that afternoon. Counsel advised that, after hours of negotiation, they narrowed their discovery issues. The Court heard argument on the remaining discovery impasses, including whether W&T is entitled to "any and all communications" between competitor sureties without limitation for other factors. Counsel for Sompo stated that there are 750 text threads responsive to the request, encompassing an unknown number of text messages. Counsel had created a spreadsheet of names and numbers for all the contacts who appear in that thread and offered to make that limited work product available to Plaintiff. Based on Sompo's agreement, the Court ruled that Sompo shall produce a contact list of all individuals who appear in the texts responsive to this request, including the individual's name, phone number, and number of text threads in which the individual appears. The parties will use this information as a starting point for their future discussions about W&T's discovery

requests related to competitor communications and W&T will limit its requests to the important individuals. Counsel memorialized all agreements reached, including that W&T's definitions as discussed above will largely be utilized, by reciting them on the record.

The Court encouraged the parties to continue to discuss their discovery issues. The Court sets this matter for a status conference on September 3, 2026, at 9:30 a.m. A Zoom link to follow.

**IT IS SO ORDERED.**

Signed at Houston, Texas, on July 29, 2026.

**Dena Hanovice Palermo**
**United States Magistrate Judge**