United States District Court
Southern District of Texas

**ENTERED**
July 31, 2026
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

W&T OFFSHORE, INC. and      §
W&T ENERGY VI, LLC,      §
     §
     §      Lead Case No. 4:24-cv-3047
v.      §      Consolidated Action
     §
ENDURANCE ASSURANCE      §
CORPORATION and LEXON      §
INSURANCE, CO., *et al.*,      §

## ORDER

Before the Court is W&T Offshore, Inc.'s and W&T Energy VI, LLC's (collectively "W&T") motion for a protective order, ECF No. 286.[1] At a hearing on July 28, 2026, the Court partially granted the motion. Once the Court ruled, Lexon requested that the Court reconsider its ruling, citing yet additional authority. Based on the newly cited cases, the substance of the documents submitted *in camera*, and the parties' arguments, the Court denies W&T's motion for protective order, ECF No. 286, and orders Plaintiffs to produce to Defendants all documents submitted *in camera*.

---

[1] Endurance Assurance Corp. and Lexon Insurance Co. (collectively "Lexon") filed a response. ECF No. 307. Pennsylvania Insurance Co. ("Penn") and United States Fire Insurance Co. ("USFIC") filed a response. ECF No. 308. W&T filed a reply. ECF No. 312. Complying with the Court's order for additional briefing, ECF No. 370, W&T filed a supplement. ECF No. 384. Lexon previously filed a motion to compel production of Plaintiffs' communications with the government related to the allegations in this case. ECF No. 184. The Court granted that motion in part, requiring Plaintiffs to submit their documents and written communications with the government that they were withholding from production to the Court for *in camera* review. Order, ECF Nos. 199 & 248. Plaintiffs submitted two binders for an *in camera* inspection under an assertion of work product protection. ECF Nos. 201, 268. After the Court reviewed the documents, it ordered Plaintiffs to file a motion for protection and Defendants to respond. Order, ECF No. 280.

## I.    BACKGROUND

Plaintiffs initiated suit on August 14, 2026. ECF No. 1. On December 11, 2024, Plaintiffs amended their complaint and added antitrust claims. ECF No. 36. Thereafter, Plaintiffs initiated communications with the Department of Justice, the United States Attorney for the Southern District of Texas, and the Texas Attorney General. Plaintiffs seek to withhold their communications with the government based on the work product protection.[2]

Plaintiffs provided information about its claims in this lawsuit, apparently seeking to convince the government to initiate criminal investigations and potentially bring criminal charges against Lexon, Penn, and USFIC (collectively "the Sureties") for their alleged antitrust violations. Lexon asks the Court to reconsider whether Plaintiffs waived work product privilege when they voluntarily initiated communications with the government about this matter's antitrust allegations to incite the government to bring criminal antitrust proceedings against

---

[2] In their responses to Plaintiff's motion for protective order, Defendants challenge whether the Plaintiffs have preserved any work product privilege. On the record at the July 29, 2026 hearing, the Court found that Plaintiffs had not waived work product privilege based on their written responses to discovery or their arguments at the October 22, 2026 hearing. As the Court stated, the record did not sufficiently establish that any potential waiver was knowing and voluntary. Thus, for the purposes of this ruling, the Court assumes that the work product privilege applies to most of the documents submitted *in camera*. The Court found that documents, such as email, that merely reflected logistical communications and follow up to meetings were not privileged and should be produced.

the Sureties. Lexon, along with the other defendant Sureties, argue that Plaintiffs waived any work product protection when they voluntarily disclosed their documents to the government when there was no criminal investigation against them pending. Plaintiffs argue that the information provided to the government consists of their strategies and mental processes prepared in anticipation of litigation and as victims of the alleged antitrust violations, their mere disclosure to the government, which purportedly shares a common interest in prosecuting antitrust claims against the Sureties, did not alter the information's work product protection.

## II.   THE WORK PRODUCT PRIVILEGE

"Generally, the work product privilege provides qualified protection of documents and other items prepared in anticipation of litigation." *Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, 242 F. Supp. 3d 576, 577 (S.D. Tex. 2017) (citing *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991)). Rule 26(b)(3) states "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation . . . ." Fed. R. Civ. P. 26(b)(3).

"[T]he work product privilege exists in order 'to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent.'" *Dresser-Rand Co.*, 242 F. Supp. 3d at 577 (quoting *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989)). However, "[w]ork product protection 'is not absolute. Like other qualified

privileges, it may be waived.'" *In Bank of America, N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 172 (S.D.N.Y. 2002) (quoting *United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). Mere voluntary disclosure of an attorney's research, analyses, or legal theories to a third party alone is not enough to waive the work product privilege. *In re Application of Chevron Corporation v. 3TM Consulting, LLC*, Misc. No. H-10-134, 2011 WL 13135155 at *3 (S.D. Tex. Jan. 10, 2011); *accord United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980); *In Bank of America*, 212 F.R.D. at 169. Courts have explained that waiver occurs when the protected materials are used in a way that is inconsistent with the protection, as for example, when the material is given to an adversary or used in a way that an adversary may obtain them. *In Bank of America*, 212 F.R.D. at 169; *accord Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (disclosure waives work product protection when it "has substantially increased the opportunities for potential adversaries to obtain the information.") (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Pract. & Proc.* § 2024 (3d ed. 2010)).[3] The "protection is unavailable when the disclosure is not made 'in the pursuit of such

---

[3] Court routinely hold that as long as the parties anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts. Because they share common interests on a particular issue against a common adversary, the recipient is not likely to disclose the work product material to the adversary. *AT&T*, 642 F.2d at 1299. When disclosure is made with a guarantee of confidentiality, courts are more likely to find no waiver. *Id.*

trial preparation' or when the disclosure is made in a manner that is 'inconsistent with maintaining secrecy against opponents.'" *In Bank of America*, 212 F.R.D. at 170 (citing *AT&T*, 642 F.2d at 1299). "For this reason, even a disclosure to a non-adversary that 'substantially' or 'materially' increases the likelihood that an adversary will obtain the information results in a waiver of the work product protection." *Id.* (citations omitted).

Courts have found that "work product privilege is waived when the attorney . . . discloses the information to the court voluntarily or makes no objection when it is offered." *Id.* (quoting *Shields*, 864 F.2d at 382 (citing *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1983)). Determining whether waiver has occurred is trickier when the disclosure is to a government agency.

## III.　WAIVER THROUGH DISCLOSURE TO THE GOVERNMENT

Determining whether disclosure of work product to the government waives privilege depends on the circumstances surrounding the disclosure—circumstances which largely arise in three different scenarios: (1) courts have found "no waiver in production of the work-product to an existing ally in litigation, applying the concept of the 'joint defense' privilege," which applies between private parties and the government; (2) courts have sometimes found no waiver "when the documents were submitted under some coercion to a governmental authority which was not expected to reveal the material to the producing party's adversary;" and (3) courts have found

"waiver results from the voluntary submission of material to a government agency to incite it to attack the informant's adversary." *See Info. Res., Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591 (S.D.N.Y. 1998) ("While the decisions in the law involving waiver by production to governmental authorities with an expectation they will not be revealed to the producing party's adversary are fact-intensive and not entirely consistent, they fall roughly into three categories," and listing the three categories); *see also Audet v. Fraser*, No. 3:16CV940(MPS), 2019 WL 285400, at *2 (D. Conn. Jan. 22, 2019) ("Courts have considered the issue of waiver of work product protection in a variety of cases, including those in which 'the disclosure of information to governmental authorities was made in the hope that the government will "attack" the disclosing party's adversary,'" finding waiver in such cases) (quoting *Matrix Essentials, Inc. v. Quality King Distributors, Inc.*, No. CV901070 (LDW/WDW), 2006 WL 8435312, at *2 (E.D.N.Y. Jan. 12, 2006) (quoting *Dun & Bradstreet Corp.*, 999 F. Supp. at 592)); *see also Mir v. L–3 Communications Integrated Systems, L.P.*, 315 F.R.D. 460, 470 (N.D. Tex. 2016) (voluntary disclosure of attorney work product information in connection with a government investigation waives the privilege in later civil discovery). "Such disclosure, it has been held, cannot be said to be done in the pursuit of trial preparation, and disclosure in such a situation results in a waiver of the work product protection." *Audet*, 2019 WL 285400, at *2; *accord In Bank of America*, 212 F.R.D. at 172 ("Disclosing

information to governmental authorities in the hope that they will attack an adversary, however, cannot be said to be done 'in the pursuit of . . . trial preparation.'") (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

In addition, courts have found that "[w]hen material is disclosed to a law enforcement agency without any agreement regarding confidentiality, there is a strong potential that the material may ultimately become public and thus available to an adversary. This may occur if the material is used at trial – either as part of the government's case-in-chief or for purposes of cross-examining a witness." *Audet*, 2019 WL 285400, at *2 (quoting *Bank of America*, 212 F.R.D. at 172). The government may also be required to produce the information as a Freedom of Information Act ("FOIA") request or as *Brady* material in a criminal prosecution. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); *see also Toshiba Int'l Corp. v. Kalaga*, No. CV H-19-4274, 2020 WL 13413222, at *2 (S.D. Tex. May 26, 2020) (considering argument that disclosure to the government constitutes a waiver because the withheld documents will likely be discoverable under *Jencks v. United States*, 353 U.S. 657 (1957) or *Brady v. Maryland*, 373 U.S. 83 (1963) in a potential criminal

proceeding); *Bank of America*, 212 F.R.D. at 173 (government may be required to disclose material to a criminal defendant or under a FOIA request).

## IV. W&T'S DISCLOSURES RESULT IN WAIVER OF ANY WORK PRODUCT PRIVILEGE.

Shortly after initiating suit, Plaintiffs voluntarily approached three governmental entities: the Department of Justice,[4] the United States Attorney for the Southern District of Texas,[5] and the Texas Attorney General.[6] Nothing in the record demonstrates that any of these governmental entities were investigating the sureties prior to communications with Plaintiffs. In fact, the evidence suggests the opposite. Only after these initial contacts, did the government issue a subpoena to Plaintiffs.[7] With the intent of inciting the government to investigate the Sureties, Plaintiffs

---

[4] On February 20, 2025, Plaintiffs made a presentation to the DOJ Antitrust Division. ECF No. 201-2 (Sealed); ECF No. 268-3 (Sealed).

[5] On February 12, 2025, Plaintiffs made a presentation to the U.S. Attorneys' Office of the Southern District of Texas. ECF No. 201-2 (Sealed); ECF No. 268-2 (Sealed).

[6] On December 20, 2024, Plaintiffs emailed a letter and supporting documents to the Office of the Texas Attorney General. ECF No. 268-1 (Sealed).

[7] On March 13, 2025, the government notified Plaintiffs' counsel that it was preparing a subpoena. ECF Nos. 268-4, 268-5. On March 14, 2025, Plaintiffs received a federal grand jury subpoena from the Antitrust Division of the U.S. Department of Justice. ECF No. 96. Plaintiffs filed an *ex parte* notice with the Court notifying it of the government's investigation, resulting in two judges recusing themselves from the case and striking the *ex parte* communication from the record. Orders of Recusal, ECF Nos. 71, 73. USFIC filed a motion to compel the *ex parte* communication, insisting they had the right to see it, ECF No. 89, which lead to the Court ordering Plaintiffs to file it under seal and serve it on Defendants' counsel as attorney eyes only ("AEO"). Order, ECF No. 91. Defendants' counsel then wanted to remove the AEO designation so that they could share it with their clients. ECF No. 100. The Court ordered Plaintiffs to notify the government's attorneys of the pending motion to unseal so that the government could intervene to state any objection to disclosure. Order, ECF No. 103. The government did not file any response to the motion. The evidence suggests that the government was satisfied that the *ex parte* communication was disclosed. ECF No. 268-6 (Sealed).

voluntarily provided the three governmental entities with materials that they now claim are protected work product and should not be produced to the Sureties. Plaintiffs have not demonstrated that they undertook or obtained any precautions, such as a confidentiality agreement, to keep this information confidential. *See Audet*, 2019 WL 285400, at *2.

Thus, the record establishes that this matter falls under the third category and therefore, Plaintiffs waived their work product protection. Here, when Plaintiffs initiated communications and produced their documents, Plaintiffs and the various governmental entities they contacted were "neither adversaries nor allies" and the material was disclosed "voluntarily to stimulate beneficial official action." *Bank of America*, 212 F.R.D. at 173. As is evident throughout the *in camera* submission, Plaintiffs "sought to persuade uncommitted agencies to initiate actions which would disadvantage [the Sureties]" and potentially benefit Plaintiffs' case with "useful evidence from a governmental authority's investigation" and with the initiation of criminal proceedings, possibly lend credibility to their civil allegations. *See Dun & Bradstreet Corp.*, 999 F. Supp. at 593 ("As in many such cases, plaintiff sought to persuade uncommitted agencies to initiate actions which would disadvantage its competitor and perhaps provide plaintiff with the advantages of collateral estoppel from a governmentally-litigated favorable judgment, or at least useful evidence from a governmental authority's investigation. This case falls easily into the third

category, in which protection is waived for materials submitted voluntarily to stimulate beneficial official action.); *see also Dresser-Rand Co.*, 242 F. Supp. 3d at 579 ("there is no common interest between this civil suit and a criminal prosecution, as much as Dresser–Rand would have liked to have seen its former employees prosecuted. Dresser–Rand made a calculated disclosure to further the government's inclination to prosecute the two former employees. In the context of a criminal prosecution, there is no joint prosecution privilege between Dresser–Rand and the United States."). The fact that the government decided to initiate an investigation into the Sureties does not change this analysis because at the time of the disclosure there was no common interest between Plaintiffs and the government.[8] Plaintiffs have cited no case finding otherwise.

Finding waiver and requiring disclosure "vindicates the principle of full disclosure, prevents the unfairness of selective revelations, and reflects the common-sense perception that in most such cases the privacy attending creation of the work-product had either served its purpose or was of little importance in the first place." *Dun & Bradstreet Corp.*, 999 F. Supp. at 593.

## V.    CONCLUSION

Accordingly, the Court finds that Plaintiffs waived any privilege attached to the information voluntarily divulged to the government entities. Plaintiffs' motion

---

[8] Since then, the government closed its grand jury investigation. ECF No. 268-6 (Sealed).

for protective order is **DENIED**. ECF No. 286. Plaintiffs are **ORDERED** to produce

to the Defendants all documents produced to the Court for *in camera* inspection.[9]

     **IT IS SO ORDERED.**

Signed in Houston, Texas, on July 31, 2026.

                    **Dena Hanovice Palermo**
                    **United States Magistrate Judge**

---

[9] Defendants shall use this discovery consistent with the terms of the Agreed Protective Order, ECF No. 168, to the extent that Plaintiffs retroactively designate the attorney work product material as confidential or highly confidential and this discovery shall be used solely for the defense of this lawsuit and for no other purpose. The Court filed under seal several of the *in camera* exhibits as attachments to ECF No. 201 and ECF No. 268 to create a record. However, these exhibits will likewise be produced to Defendants with the other *in camera* submissions.