Vinson&Elkins

Jason Halper jhalper@velaw.com
**Tel** +1.212.237.0240

September 8, 2026

***Via ECF E-File***
Honorable Dena Hanovice Palermo
U.S. District Court, Southern District of Texas

Re: *W&T Offshore, Inc. et al. v. Endurance Assurance Corp., et al.*, 4:24-cv-3047

Dear Judge Palermo:

Lexon[1] writes in response to Plaintiffs' ("W&T") "notice" filed on September 8. Dkt. 453. Lexon submits that the Court's rulings during the September 3, 2026 hearing, which are reflected in the Court's Minute Order, are clear and no order on this issue is necessary. *See* Dkt. 449. If the Court determines an order is necessary, Lexon respectfully requests that the Court enter its Proposed Order (the "Proposed Order, " Ex. A).

***First*, W&T's proposed order would allow W&T to dictate search terms without allowing Lexon to raise concerns about the burden or irrelevance of terms not narrowly tailored to this case.** W&T did not provide new terms until the day that the agreed order was due, and the proposed terms were so broad that they would capture essentially all collected messages, resulting in 849,260 text messages, 663,248 of which are new.[2] Ex. B. Lexon's provision requires good faith negotiations.[3]

| W&T Order ¶ 1 | Lexon Order ¶ 1 |
|---|---|
| Lexon will continue to perform searches of text messages using search terms. W&T provided Lexon with additional text message search terms on September 8, 2026. Lexon will process those terms and review the resulting messages for responsiveness and production | Lexon will continue to perform searches of text messages using previously provided search terms. W&T provided Lexon with additional text message search terms on September 8, 2026. W&T and Lexon will work in good faith to negotiate these search terms, if necessary, to determine what, if any, additional search terms should be reviewed for responsiveness and production. |

***Second*, W&T declined Lexon's proposed clarification to exclude two categories of messages that are not communications between Lexon and other sureties.** Personal text messages sent or received by custodians before their employment by Lexon are not Lexon's documents; they are personal communications from a period when the custodians had no relationship with Lexon whatsoever. Also, communications between a company's coworkers are internal communications within a single company, rather than

[1] "Lexon" refers to Defendants Lexon Insurance Company and Endurance Assurance Corporation.
[2] One 24-hour thread could contain a single message, or 200 messages. The number of messages therefore dictates the burden.
[3] Dkt. 451, Sept. 3, 2026 Hr'g Tr. at 63:13-23 (reiterating that W&T was not entitled to "all communications," inviting the parties to negotiate text message search terms, and distinguishing a narrowly tailored production request from one that seeks "hundreds of thousands or millions of documents.").

communications between Lexon and another surety. Thus, they fall outside the discovery subject to this proposed order.

| W&T Order ¶ 2 | Lexon Order ¶ 2 |
|---|---|
| In addition, Lexon will manually review, without filtering through the use of search terms, any other text messages that include any of the following individuals: | In addition, Lexon will manually review, without filtering through the use of search terms, any other text messages <u>between the Lexon Text Message Custodians (while employed at Lexon)</u> and any of the following individuals <u>(at a time when that contact was not employed at the same company as the text message custodian(s) involved in the message)</u>: |

***Third*, W&T declined Lexon's compromise regarding text messages with sureties concerning social events.** Because the Court did not order such materials to be responsive in all contexts, Lexon proposed identifying by category any such messages located during the manual review, so the parties could later address with the Court, if necessary, whether any messages deemed non-responsive required further consideration or production. *See* Tr. at 64:1-9 (holding that while some social messages "***may be*** relevant," and Lexon is not required to produce "things that have clearly nothing to do with work. That is permissible for [Lexon] to keep out.") (emphasis added); *see also* Ex. C.

| W&T Order ¶ 3 | Lexon Order ¶ 3 |
|---|---|
| Lexon agrees to review messages in accordance with the scope articulated in Lexon's August 31, 2026 letter . . . Additionally, the scope of responsive messages with competitors to be produced will include social events, connections, or communications. Lexon will be permitted to redact any sensitive personal information, such as medical issues or information related to children, to the extent such information is contained within responsive documents. | Lexon agrees to review messages in accordance with the scope articulated in Lexon's August 31, 2026 letter to W&T, ECF No. 432-3 (sealed) at 2 ("Scope of Discovery"), and Lexon will be permitted to redact any sensitive personal information, such as medical issues or information related to children, to the extent such information must be produced due to the responsiveness of other information contained in close proximity to such sensitive personal information. |

***Finally*, W&T's proposed order would require a detailed responsiveness log between Lexon and 95 different surety employees.** The Court did not issue a ruling requiring a responsiveness log. Instead, the Court ordered the parties "to lay out exactly . . . what has been produced versus withheld. And it doesn't have to be in the form of a log, but it does need to be described so that the other side can understand what you are doing[.]" *See* Tr. at 80:22-81:2. Nonetheless, Lexon offered to provide a log by category and volume for documents not produced from its manual review.

| W&T Order ¶ 4 | Lexon Order ¶ 4 |
|---|---|
| Before the next status conference, Lexon will identify to W&T the number of text message threads with competitor sureties that are not produced, with information sufficient to enable an assessment of the basis that a competitor text message was not produced. The parties will confer and agree on the format and contents of the log. | Before the next status conference, Lexon will identify to W&T <u>by category and volume for each of the 10 contacts selected for manual review, the number of text messages that are not produced by volume and category</u> sufficient to enable an assessment of the basis that a competitor text message was not produced. |

Respectfully submitted,

*/s/ Jason Halper*
Jason Halper