**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC,** | § | |
| | § | |
| **V.** | § | **LEAD CASE NO. 4:24-CV-3047 CONSOLIDATED ACTION** |
| | § | |
| **ENDURANCE ASSURANCE CORPORATION, AND LEXON INSURANCE CO., *ET AL*.** | § | |
| | § | |
| | § | |
| | § | |

**ENDURANCE ASSURANCE CORPORATION AND LEXON INSURANCE COMPANY'S NOTICE OF ISSUANCE OF SUBPOENA TO PRODUCE DOCUMENTS TO MARSH & MCLENNAN AGENCY LLC, THE SUCCESSOR IN INTEREST OF MCGRIFF INSURANCE SERVICES, LLC**

Endurance Assurance Corporation and Lexon Insurance Company, by and through their undersigned counsel and pursuant to Rule 45 of the Federal Rules of Civil Procedure, hereby give notice that the *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action*, which is attached hereto as **Exhibit A**, will be served on Marsh & McLennan Agency LLC, the successor in interest of McGriff Insurance Services, LLC for the production of documents on or before the date set forth in the Subpoena.

Also attached hereto is **Exhibit B**, the current Protective Order in this matter, under which third parties producing documents in response to a subpoena have the right to designate documents at varying levels of confidentiality according to their content.

Dated: October 27, 2026

Respectfully submitted,

**VINSON & ELKINS LLP**

*/s/ Nicole Castle*
Jason M. Halper*
Sara E. Brauerman*
Nicole Castle*
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel.: (212) 237-0000
Fax: (212) 237-0100
jhalper@velaw.com
sbrauerman@velaw.com
ncastle@velaw.com

Christopher V. Popov
Texas Bar No. 24032960
Federal ID No. 34615
845 Texas Avenue, Suite 4700
Houston, Texas 77002-2947
Tel.: (713) 758-2636
Fax: (713) 615-5068
cpopov@velaw.com

**Admitted pro hac vice*

**ATTORNEYS FOR ENDURANCE ASSURANCE CORPORATION AND LEXON INSURANCE COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2026, a true and correct copy of the above and foregoing instrument was served on all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Nicole Castle*
Nicole Castle

# EXHIBIT A

## Subpoena to Produce Documents, Information or Objects or Permit Inspection in a Civil Case

## Form AO 88B (Rev. 02/14)

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

W&T Offshore, Inc. and W&T Energy VI, LLC

*Plaintiff*

v.

Endurance Assurance Corporation and Lexon Insurance Co., et al.

*Defendant*

Civil Action No. 4:24-CV-03047

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Custodian of Records for Marsh & McLennan Agency LLC, the successor in interest of McGriff Insurance Services, LLC c/o its Registered Agent, CT Corporation System at 28 Liberty St., New York, NY 10005

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Addendum

| Place: Vinson & Elkins LLP, 1114 Avenue of the Americas, 32nd Floor, New York, NY 10036 or electronically to ncastle@velaw.com | Date and Time: 11/10/2026 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/27/2026

*CLERK OF COURT*

OR

/s/ Nicole Castle

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Endurance Assurance Corporation and Lexon Insurance Co., who issues or requests this subpoena, are:

Nicole Castle, Vinson & Elkins LLP, 1114 Avenue of the Americas, 32nd Floor, New York, NY 10036, ncastle@velaw.com, (212) 237-0000

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 4:24-CV-03047

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________________
______________________________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC,** | § § § | |
| **V.** | § § | **LEAD CASE NO. 4:24-CV-3047 CONSOLIDATED ACTION** |
| **ENDURANCE ASSURANCE CORPORATION, AND LEXON INSURANCE CO., *ET AL*.** | § § § § | |

**ADDENDUM TO SUBPOENA TO PRODUCE DOCUMENTS TO MARSH & MCLENNAN AGENCY LLC, THE SUCCESSOR IN INTEREST OF MCGRIFF INSURANCE SERVICES, LLC**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure ("Federal Rules"), the Local Rules of the Southern District of Texas, and the Court Procedures of Judge Andrew Hanen and Magistrate Judge Dena Palermo (with the Local Rules of the Southern District of Texas, "Local Rules"), Defendants Endurance Assurance Corporation and Lexon Insurance Company (together, "Lexon"), through their undersigned counsel, hereby submit these Requests for Production of Documents in connection with the *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action* (the "Subpoena") issued to Marsh & McLennan Agency LLC, the successor in interest of McGriff Insurance Services, LLC (the "Respondent"). On or before the date set forth in the Subpoena, Respondent shall serve responses and produce the requested documents in

accordance with an agreed-upon discovery protocol, to Lexon's counsel, Vinson & Elkins LLP, 1114 Avenue of the Americas, 23nd Floor, New York, NY 10036, or at such other location to which the parties may mutually agree.

## INSTRUCTIONS

The instructions, definitions, and rules of construction set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure, as well as the Local Rules of this Court and the applicable procedures of Judge Andrew Hanen and Magistrate Judge Dena Palermo, are incorporated herein by reference. The following Instructions shall also apply to these Requests:

1. These Requests should be construed in accordance with the full scope of Rules 26 and 34 of the Federal Rules of Civil Procedure.

2. The Documents and Communications responsive to these Requests are to be produced as they are kept in the usual course of business, or organized and labeled to correspond with the categories specified in these Requests. You should respond to each Document Request separately.

3. In producing Documents and other materials, You are requested to furnish all Documents or things in Your possession, custody or control, regardless of whether such Documents or materials are possessed directly by You or by Your affiliates, predecessors, successors, assigns, agents, employees, partners, attorneys, representatives, administrators, investigators, consultants or other persons, acting

or purporting to act on Your behalf, or by Your attorneys or their agents, employees, representatives or investigators.

4. Documents shall be produced on a rolling basis as they become available.

5. Each requested Document should be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other Documents at any time affixed thereto.

6. Unless modified by agreement with Lexon, these Requests require a complete search of all the files of Respondent. The Documents and Communications covered by these Requests include all Documents and Communications in Your possession, custody, or control. You shall produce all responsive Documents and Communications.

7. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, the Requests shall be deemed continuing so as to require supplemental production, from the date hereof to the conclusion of the above-captioned action, if any additional Documents responsive to these Requests come into Your possession, custody or control, including the possession, custody or control of Your agents or representatives.

8. Unless otherwise specified, the time period for the Requests is January 1, 2020 through the present (the "Relevant Time Period" or "Relevant Period").

9. For each Document or Communication responsive to these Requests withheld under a claim of privilege, the following information shall be provided in a privilege log that shall be produced along with any other responsive Documents:

a. the nature and basis of the privilege which is being claimed and, if applicable, the rule or law allegedly governing such claim;

b. the identity of any Person who has or had access, or purports to have access, to the withheld Document or its contents;

c. the type of Document or Communication;

d. the general subject matter of the Document or Communication;

e. the date of the Document or Communication;

f. such other information as is sufficient to identify the Document or Communication and establish the privilege claimed, including, where appropriate, the Document or Communication author(s), addressee(s), and where not apparent, the relationship between the author(s) and addressee(s); and

g. the entity that the Person(s), author(s) and/or addressee(s) is employed by and is representing in such Documents.

10. If there are no Documents responsive to a Request, please provide a written response so stating.

11. When the context herein makes it appropriate, each singular word shall include its plural and each plural shall include its singular.

12. If any Document responsive to any Request once was, but is no longer, in Your possession, custody, or control, or has been lost, destroyed, discarded, or otherwise disposed of, You are requested to identify the Document as completely as possible, including the following information: (a) the nature of the Document; (b) the Person(s) who prepared or authorized the Document and, if applicable, the Person(s) to whom the Document was sent; (c) the date on which the Document was prepared or transmitted; and (d) explain what has happened to the Document and where it or any copies of it may be located, or if the Document was lost, destroyed, or otherwise disposed of, the date on which the Document was lost, destroyed, or disposed of, and, if destroyed, the conditions of and the reasons for destruction and the persons requesting and performing the destruction.

13. Electronically Stored Information (ESI) shall be produced in its native electronic format (e.g., .pst for email, .xlsx for spreadsheets, .docx for word processing documents) with all metadata fields intact.

a. Preservation: Pending production of the documents and information requested herein, You must take reasonable steps to

preserve all responsive ESI, including emails, shared drives, cloud accounts, and mobile devices used in Your business.

b. Metadata: Do not remove or alter metadata. Metadata to be preserved and produced shall include at least:

i. Author/Creator
ii. Recipient(s)
iii. CC/BCC fields
iv. Subject line (for emails)
v. File name and extension
vi. File path and location
vii. Date and time of creation, modification, and sending
viii. Hash values (if available)

c. Emails: Produce email messages in native or near-native format (e.g., .msg or .eml) with attachments linked and preserved.

d. Spreadsheets: Produce in native format (e.g., Excel) with all underlying formulas, hidden columns, comments, and metadata preserved.

e. Databases/Applications: If responsive information is stored in databases or proprietary applications, provide reports or exports in searchable, usable formats (e.g., .csv, .txt, or database export),

with sufficient context to understand field names and relationships.

f. Text Messages/Chats: Produce in native format or export with metadata showing participants, date/time, and complete message threads.

g. Load Files: If You use an e-discovery vendor, provide load files that enable review systems to ingest and preserve metadata.

## DEFINITIONS

1. "Lawsuit" means the consolidated action captioned *W&T Offshore, Inc. et al. v. Endurance Assurance Corp.*, Case No. 4:24-cv-03047, pending in the United States District Court for the Southern District of Texas.

2. "Lexon" means Lexon Insurance Company and Endurance Assurance Corporation, and any of their current or former employees, directors, officers, agents, parents, affiliates, subsidiaries, operating units, divisions, and any other persons acting or purporting to act on their behalf.

3. "McGriff," "You," and "Your" mean and refer to Marsh & McLennan Agency LLC, the successor in interest of McGriff Insurance Services, LLC, to the extent the documents and information requested herein apply to documents and information in the possession, custody, or control of Marsh & McLennan Agency LLC or McGriff Insurance Services, LLC (collectively, "McGriff"), and their current or

former employees, directors, officers, agents, parents, affiliates, subsidiaries, operating units, divisions, and any other persons acting or purporting to act on their behalf.

4. "W&T" means W&T Offshore, Inc. and W&T Energy VI, LLC, individually and collectively, including all present and former directors, officers, parents, subsidiaries, affiliates, assigns, agents, employees, partners, principals, or anyone acting or purporting to act on their behalf.

5. "Other Sureties" means companies other than Lexon that issued or considered issuing surety bonds related to W&T, including but not limited to Pennsylvania Insurance Company, Applied Surety Underwriters LLC, U.S. Specialty Insurance Company, United States Fire Insurance Company, Amynta Holdings LLC d/b/a Amynta Surety Solutions, Philadelphia Indemnity Insurance Company, Aspen Insurance, Ironshore, Inc., Liberty Mutual Insurance Company, North American Specialty Insurance Company, Swiss Re Corporate Solutions America Insurance Corporation, SiriusPoint Ltd., The Hanover Insurance Group, RLI Insurance Company, Indemnity National Insurance Company, QBE Insurance Group, Skyward Specialty Insurance, and Ascot Surety and Casualty Company.

6. "Surety" or "Sureties" means the Other Sureties and Lexon, collectively.

7. "Broker" means any company, including but not limited to McGriff, IndemCo, LP, Petro-Marine Underwriters, Alliant Insurance Services, and CAC Specialty (Cobbs Allen Capital LLC), that facilitated the procurement of or discussions related to surety bonds between W&T or other offshore oil and gas producers, on the one hand, and Sureties, on the other.

8. "Industry Conference" means any conference or meeting organized by an industry organization related to the oil and gas industry, including but not limited to the Bank of America Leveraged Finance Conference, Bank of America Securities Energy and Power Credit Conference, Barclays CEO Energy-Power Conference, Capital One Securities Annual Energy Conference, EnerCom Denver Conference, EnerCom's The Oil & Gas Conference, EnerCom Denver – The Energy Investment Conference, Louisiana Energy Conference, Pareto Annual Energy Conference, ROTH Conference, ROTH London Conference, Seaport Research Partners Summer Investor Conference, and the Stifel Cross Sector Insight Conference.

9. "Document" or "Documents" shall have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, and includes any Communications as well as "writings" and "recordings" (as defined by Rule 1001 of the Federal Rules of Evidence) and also includes, without limitation, originals and copies, however made, of letters, memoranda, notes, computer generated data, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers,

legal instruments, agreements, drawings, sketches, graphs, prints, hand-written notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, videotapes, pictures, photographs, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, electronic mail messages, or any other writings, records, or tangible objects produced or reproduced mechanically, electrically, electronically, photographically, or chemically. A draft, non-identical copy, or translation is a separate Document within the meaning of this term.

10. "Communications" means any and all inquiries, discussions, conversations, agreements, contracts, understandings, meetings, telephone conversations (including recorded or taped telephone conversations), voice messages (including messages left on cellular phones), letters, correspondence, notes, facsimiles, facsimile confirmation sheets, electronic mail, instant messages (including, without limitation, messages exchanged via iMessage, WhatsApp, Signal, Skype or Skype for Business, Slack, Microsoft Teams, or any other messaging service), text messages, voice messages, Bloomberg messages, blog entries, postings on internet websites, internal call notes, sales pipeline updates, or other forms of written or verbal intercourse (electronic or otherwise), and any Documents exchanged, including but not limited to Communications with third parties.

11. “Person” or “Persons” means any natural person, firm, sole proprietorship, partnership, limited liability company, corporation, association, trust, governmental body or agency, or any other form of entity.

12. The terms “and” and “or” shall be interpreted liberally as conjunctive, disjunctive or both, depending on the context, so as to encompass the broadest request for disclosure.

13. The term “all” or “any” means any and all.

14. The term “including” means including, but not limited to, and is otherwise used in the broadest sense of the term so that the specification of a particular matter in a Request is not intended to exclude any other Documents or categories of Documents responsive to the Request.

15. The term “relating to” means concerning, in connection with, pertaining to, reflecting, respecting, regarding, referring to, setting forth, supporting, refuting, and terms of similar import.

16. “Trade Associations” means any trade association, professional organization, or industry group relating to the surety, insurance, or oil and gas industries, including but not limited to the American Petroleum Institute (“API”), the Houston Association of Professional Landmen (“HAPL”), the Outer Continental Shelf Advisory Board (“OCSAB”), the Society of Petroleum Engineers (“SPE”), and the Gulf Energy Alliance (“GEA”).

## REQUESTS FOR PRODUCTION

1. All Documents and Communications relating to McGriff's appointment or assignment as a Broker for W&T, including the scope, terms, or limitations of such appointment and any subsequent agreements with W&T.

2. Documents sufficient to identify all services You provided to W&T that relate to financial assurance, credit support, or W&T's decommissioning obligations (including the placement of letters of credit, escrow or trust arrangements, insurance, or any other alternative to surety bonds, and any advisory services concerning BOEM financial assurance requirements, collateral, or financing), and all Documents and Communications relating to any alternative form of financial assurance considered or obtained for W&T.

3. Documents sufficient to show all commissions, fees, and other compensation You received or were entitled to receive from W&T or any Surety in connection with services provided to W&T, including any commission split or sharing arrangement with any other Broker.

4. Documents sufficient to identify each McGriff employee who worked on W&T's account, including his or her title, role, and dates of involvement.

5. All Documents and Communications relating to Payment and Indemnity Agreement No. 1380 between W&T and Lexon, including the negotiation, execution, and any amendments, modifications, or interpretations thereof.

6. All Documents and Communications relating to Lexon's right or discretion to demand collateral under Payment and Indemnity Agreement No. 1380.

7. All Documents and Communications relating to any payment and indemnity agreement, general indemnity agreement, or similar agreement between W&T and any Other Sureties, including the negotiation, execution, amendment, modification, or interpretation thereof.

8. All Documents and Communications relating to any collateral demand or collateral negotiation involving W&T and any Surety, including but not limited to Lexon's July 9, 2024 demand for $7,500,000 in collateral, and any related discussions preceding or following any such demand.

9. All Documents and Communications relating to any plan, strategy, or discussion by W&T or McGriff to avoid, delay, reduce, negotiate, challenge, or resist any demand for collateral or premium increase by any Surety, including any discussion of asserting claims against any Surety.

10. All Documents and Communications relating to any actual or anticipated failure, refusal, or inability of W&T to pay premiums on any bond issued to W&T by Lexon or any Other Sureties, including any notices of non-payment or default.

11. All Documents and Communications relating to this Lawsuit, including any internal McGriff Communications and any Communications between McGriff and W&T, any Sureties, Brokers, or other entity or Person concerning the Lawsuit, including all Communications with W&T's counsel and

all declarations, statements, interview notes, or summaries provided to or prepared with W&T or its counsel; provided that this Request does not seek, and You need not produce, privileged Communications with Your own counsel.

12. All Documents and Communications relating to any request by or on behalf of W&T, including through McGriff, for new or additional bonding capacity, surety bonds, or replacement bonds, including McGriff's efforts to remarket or place W&T's bonds, the terms discussed (including any quote, indication, proposal, or term sheet received or provided), any conditions imposed by any Surety or potential surety, any declination or refusal to issue bonds, and the reasons given for any such declination or refusal.

13. All Documents and Communications relating to any efforts by McGriff, on behalf of W&T, to secure surety bonding (or any other form of financial assurance, credit support, or security) in connection with the following:

a. W&T's financial assurance obligations under the January 2019 Purchase and Sale Agreement with Exxon Mobil Corporation ("Exxon").

b. W&T's efforts to acquire, or its acquisition of, assets from Arena Energy in or about 2020.

c. W&T's attempt to acquire from Exxon up to a 9.73% non-working interest in the Heidelberg Oil Field in 2024.

d. W&T's attempt to acquire from Equinor US up to a 12% non-working interest in the Heidelberg Oil Field in 2026.

e. W&T's attempt to purchase from Marubeni Corporation and/or Evercore Inc. a 12.5% non-operating working interest in the Big Foot oil and gas field in 2025 or 2026.

f. W&T's attempt to purchase from Shell Corporation a 50% non-operating working interest in the Na Kika oil and gas assets in 2026.

g. W&T's leases to oil and gas fields known as "Holy Grail" and "Thunderbolt."

h. Any other plan, contemplation or effort by W&T to acquire, purchase, lease or otherwise obtain an interest in any other asset.

14. All Communications between McGriff and any of the following Persons, or any other Surety or Broker, relating to W&T, and all Documents provided to or received from any of them relating to W&T:

a. Petro-Marine Underwriters

b. IndemCo

c. Amynta Surety Solutions / Applied Surety Underwriters

d. Aspen Insurance

e. U.S. Fire Insurance Company

f. Lexon

g. Arch Insurance Company

h. DUAL Surety

i. Indemnity National Insurance Company / Kewa Financial

j. Intact Surety

k. RLI Insurance Company

l. QBE Insurance Company

m. Skyward Insurance Company

n. Travelers

o. United States Specialty Insurance Company

p. Philadelphia Insurance Companies

q. The Hanover Insurance Group

15. All Documents and Communications relating to the placement, pricing (including any actual or proposed rate change, rate increase, or rate reduction), renewal, collateral, replacement, discharge, release, or cancellation of any bond issued to or on behalf of W&T, including any efforts to release any Surety from liability under such bonds.

16. All Documents and Communications relating to discussions between McGriff on the one hand, and W&T, any Surety, or any other Broker on the other, regarding, as applicable or potentially applicable to W&T: bond premium rates, collateral demands, financial condition, bonding terms, bond schedules, or bonding capacity with Lexon or any Other Surety.

17. All Documents and Communications relating to W&T's financial condition, creditworthiness, bonding capacity, or ability to satisfy collateral demands or other bond-related or financial obligations, including any analysis, assessment, or evaluation by or for McGriff and any analyses of W&T's reserves, financial statements, liquidity, credit ratings, or debt maturities.

18. All Documents and Communications relating to McGriff's role in drafting, reviewing, interpreting, or recommending any form of general indemnity

agreement, payment and indemnity agreement, bond form, collateral agreement, or standardized bond language for use with W&T or other oil and gas operators, and any advice, explanation, or understanding conveyed to or by W&T or any other oil and gas operator regarding a Surety's right to demand collateral or W&T's or any other oil and gas operator's obligation to provide it.

19. All Documents and Communications prepared by or for McGriff, or received from third parties, from January 1, 2020 to June 9, 2025 analyzing, assessing, or evaluating the market for surety bonds for offshore oil and gas operators on the Outer Continental Shelf, including any analyses of market concentration, capacity constraints, carrier exits, or availability of bonding for independent producers.

20. Documents sufficient to show any demand for collateral, premium increase, request to replace bonds, or non-renewal by any Surety, directed to any offshore oil and gas operator other than W&T for which McGriff placed or serviced surety bonds.

21. All Documents and Communications relating to the attendance of any McGriff employee at any Industry Conference or any other event, conference, seminar, or meeting (whether formal or informal) of any Trade Association or other industry group from January 1, 2020 to June 9, 2025.

22. All Documents and Communications relating to the sharing of information relating to any surety bond issued to or requested by W&T, or other W&T financial information, with any Surety, including any request for, grant of, or

limitation on permission to share such information, and any non-disclosure or confidentiality agreement.

23. All Documents and Communications relating to any of the following bonds issued by Lexon:

| **Bond Number** | **Principal Name** | **Obligee Name** | **Bond Amount** |
|---|---|---|---|
| EACX226000025 | W & T Energy VI LLC | US Department of Interior | $3,000,000 |
| 1156846 | W & T Energy VI LLC | US Department of Interior | $5,000,000 |
| 1097677 | W & T Energy VI LLC | US Department of Interior | $9,000,000 |
| 1159776 | W & T Energy VI LLC | US Department of Interior | $3,000,000 |
| EACX226000038 | W & T Energy VI LLC | US Department of Interior | $1,482,000 |
| EACX226000039 | W & T Energy VI LLC | US Department of Interior | $3,830,148 |
| EACX226000044 | W & T Energy VI LLC | US Department of Interior | $3,000,000 |
| 1152010 | W&T Offshore Inc | Woodside Energy USA Inc. | $1,931,562 |
| 1152011 | W&T Offshore Inc | Woodside Energy USA Inc. | $376,688 |
| EACX226000043 | W&T Offshore Inc | Exxon Mobil Corporation et al | $7,000,000 |
| EACX226000045 | W&T Offshore Inc | Railroad Commission of Texas | $125,000 |
| EACX226000047 | W&T Offshore Inc | US Department of Interior | $2,285,584 |
| EACX226000040 | W & T Energy VI LLC | U.S. Department of Interior | $13,126,457 |
| 1136950 | W&T Offshore Inc | U.S. Department of Interior | $117,279 |

| | | | |
|---|---|---|---|
| 1136949 | W&T Offshore Inc | U.S. Department of Interior | $1,166,860 |
| EACX226000022 | W & T Energy VI LLC | U.S. Department of Interior | $1,461,000 |

24. Documents sufficient to identify each surety that wrote or was marketed as available to write surety bonds for oil and gas decommissioning obligations on the Outer Continental Shelf (including any carrier list, panel list, or "go-list" of sureties for placing bonds You maintained or used), and the dates any carrier entered or exited; Documents sufficient to show each such surety's capacity limits and typical premium and collateral terms as You understood them; and any industry reports or presentations You prepared or presented concerning the offshore oil and gas surety bond industry.

25. All Documents and Communications prepared by or for You, or received from third parties, from January 1, 2020 to June 9, 2025 analyzing, assessing, or evaluating the impact of the Bureau of Ocean Energy Management (BOEM)'s April 2024 final rule titled "Risk Management and Financial Assurance for OCS Lease and Grant Obligations," on the market for surety bonds for oil and gas operators on the Outer Continental Shelf, including any analysis of market entry or exit by other sureties, risk management implications, and the availability of bonding for independent producers.

26. All Documents and Communications prepared by or for You, or received from third-parties, analyzing, assessing, or evaluating the impact of any bankruptcies of oil and gas operators from January 1, 2020 to June 9, 2025 (including that of Fieldwood Energy LLC), on the market for surety bonds for oil

and gas operators on the Outer Continental Shelf, including any analysis of market entry or exit by other sureties, risk management implications, impact of subrogation rights, and the availability of bonding for independent producers.

# EXHIBIT B

## Amended Protective Order (ECF 269)

United States District Court
Southern District of Texas
**ENTERED**
February 18, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| W&T OFFSHORE, INC., AND W&TENERGY VI, LLC, | § | |
| v. | § | **LEAD CASE NO. 4:24-cv-3047 CONSOLIDATED ACTION** |
| ENDURANCE ASSURANCE CORPORATION and LEXON INSURANCE CO., et al. | § | |

**AMENDED PROTECTIVE ORDER**

WHEREAS, W&T Offshore, Inc. and W&T Energy VI, LLC (collectively, "***W&T***") and Sureties Endurance Assurance Corporation, Lexon Insurance Company, United States Fire Insurance Company, and Pennsylvania Insurance Company ("***Sureties***," and with W&T, the "***Parties***" and each a "***Party***") believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information; and

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

The Court ORDERS that the following restrictions and procedures (the "***Protective Order***") apply to certain information, documents, and excerpts from

documents that the Parties produce to each other during initial disclosures and in response to discovery requests.

1. “Confidential Information” refers to private, secret, or restricted information of any Party that by its nature must be maintained in confidence to protect the interests of the Party. Counsel for any Party, or a non-party whose information is being produced in this Litigation, may designate any document, information contained in a document, information revealed in an interrogatory response, or information revealed during a deposition as Confidential Information where determined in good faith that such designation is necessary. The Party making such designation must stamp the documents or information with an indication of “CONFIDENTIAL.” Deposition testimony may be designated as Confidential Information by making a statement on the record or in writing and directing the court reporter to mark the affected pages of the transcript.

2. (a) “Highly Confidential Information” refers to Confidential Information that, if disclosed other than as permitted in Paragraph 6 of this Protective Order, the producing Party reasonably and in good faith believes will be substantially likely to cause injury to the producing Party. For purposes of this Protective Order, so-designated information includes, but is not limited to, product formula information, design information, non-public financial information, customer identification data, and certain study methodologies. Counsel for any Party, or a non-

party whose information is being produced in this Litigation, may designate any document, information contained in a document, information revealed in an interrogatory response, or information revealed during a deposition as Highly Confidential where determined in good faith that such designation is necessary. The Party designating information as Highly Confidential must stamp the documents or information with an indication of "HIGHLY CONFIDENTIAL." Deposition testimony may be designated as Highly Confidential by making a statement on the record or in writing and directing the court reporter to mark the affected pages of the transcript.

(b) "Highly Confidential – Outside Counsel Only" refers to competitively sensitive information, such as terms, rates, or other pricing-related information for surety bonds or documents that reflect confidential business strategies of non-party independent oil and gas operators. The Parties will use their best efforts to mark documents that contain competitively sensitive information as Outside Counsel Only. Counsel for any Party, or a non-party whose information is being produced in this Litigation, may designate any document, information contained in a document, information revealed in an interrogatory response, or information revealed during a deposition as Highly Confidential – Outside Counsel Only where determined in good faith that such designation is necessary. The Party designating information as Highly Confidential – Outside Counsel Only must stamp the documents or

information with an indication of "OUTSIDE COUNSEL ONLY." Deposition testimony may be designated as Highly Confidential – Outside Counsel Only by making a statement on the record or in writing and directing the court reporter to mark the affected pages of the transcript.

3. Unless otherwise ordered by the Court or provided for in this Protective Order, any Party receiving Confidential Information or Highly Confidential Information:

a. Must hold and maintain such information or document solely for use in connection with this action; and

b. Must not disclose the information or document to any other person.

4. The Parties must make a good-faith effort to resolve any challenge to another Party's confidentiality designation. The challenging Party may seek resolution by the Court in the absence of agreement.

5. Information or documents designated as "Confidential Information" must not be disclosed to any person, except:

a. Counsel for the Parties in this lawsuit, including in-house counsel, and their respective staff;

b. Independent experts or consultants (and their administrative or clerical staff) engaged or retained in connection with this lawsuit (which shall

not include the current employees, officers, members, or agents of parties or affiliates of parties who are not covered in 5(a));

c. Any employees of a Party where reasonably necessary to assist in connection with this litigation;

d. Any person from whom testimony is taken by deposition or at trial in this matter, but such a person may only be shown Confidential Information during and in preparation for testimony and may not retain the Confidential Information;

e. Any special master, mediator, or arbitrator engaged by the Parties or authorized by the Court for purposes of mediation, arbitration, or other dispute resolution regarding this litigation;

f. The Court, including any clerk, stenographer, or other person having access to Confidential Information by virtue of his or her position with the Court, and including the jury at trial or as exhibits to motions;

g. Litigation vendors, stenographers, video camera operators, translators, and other litigation support personnel; and

h. Any other person upon (i) order of the Court, or (ii) written stipulation of, or statement on the record by, the producing Party who provided the Confidential Information being disclosed, provided that such person signs

the agreement attached hereto as Exhibit A, or as otherwise agreed by the Parties.

6. Information or documents designated as "Highly Confidential" must not be disclosed to any person, except:

a. Counsel for the Parties in this lawsuit, excluding in-house counsel, and their respective staff;

b. Ted Imperato, Deputy General Counsel for Litigation for W&T; Bob Lavitt, Senior Vice President, Surety Legal & Claims for Amynta Surety Solutions for United States Fire Insurance Company; Jeffrey A. Silver, Executive Vice President, Secretary and General Counsel of Applied Underwriters, Inc. for Pennsylvania Insurance Company; and Daniel Lurie, Global Deputy General Counsel & EVP for Endurance Assurance Corporation and Lexon Insurance Company;

c. Actual or potential independent experts or consultants (and their administrative or clerical staff) engaged in connection with this lawsuit (which shall not include the current employees, officers, members, or agents of parties or affiliates of parties who are not covered in 6(a));

d. Any person from whom testimony is to be taken by deposition or at trial in this matter, but such a person may only be shown Highly Confidential Information during and in preparation for such testimony after

that person has been noticed for deposition or put on a party's witness list for trial, may not retain the Highly Confidential Information, and must agree to be bound by this Protective Order on the record in their deposition or trial testimony. Notwithstanding anything to the contrary, Highly Confidential Information may not be shown to a deponent unless the deponent is (i) an author, recipient, or custodian of the information or (ii) a current employee of the producing party whose job responsibilities include the subject matter of the information, or if such disclosure is otherwise agreed to by the parties, which shall not be unreasonably withheld, or approved by the Court upon a motion. In all other cases, questioning that requires reference to Highly Confidential Information shall proceed in a manner that protects against unnecessary disclosure, including by sealing the transcript or limiting the witness's review to specific excerpts;

e. The Court, including any clerk, stenographer, or other person having access to Highly Confidential Information by virtue of his or her position with the Court, and including the jury at trial or as exhibits to motions;

f. Litigation vendors, court reporters, video camera operators, translators, and other litigation support personnel; and

g. Any other person upon (i) order of the Court, or (ii) written stipulation of, or statement on the record by, the producing Party who provided the Highly Confidential Information being disclosed, provided that such person signs the agreement attached hereto as Exhibit A, or as otherwise agreed by the Parties.

h. Information designated as Highly Confidential – Outside Counsel Only may be shared as designated in this paragraph, except that it shall not be shared with the individuals listed in 6(b).

7. Prior to disclosing or displaying Confidential Information or Highly Confidential Information to any persons identified in Paragraphs 5(a), 5(b), 5(c), and 5(d) or in Paragraphs 6(a), 6(b), and 6(c) counsel must:

a. Inform the person of the confidential nature of the information and documents; and

b. Inform the person that this Court has enjoined the use of the information or documents for any purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

8. Prior to disclosing or displaying Confidential Information or Highly Confidential Information to any persons identified in Paragraphs 5(b) or 6(c), counsel must also obtain a signed agreement binding the person to this Protective Order in the form attached hereto as Exhibit A. The Party desiring to disclose

Confidential Information or Highly Confidential Information may seek appropriate relief from the Court in the event such person refuses to sign an agreement. Counsel are required to retain all signed Exhibit As and produce them upon request of another Party, except that for any person covered by Section 5(b) or Section 6(c), such disclosure need not occur prior to the time, if applicable, that disclosure is required under the Docket Control Order.

9. The disclosure of a document or information without designating it as Confidential Information or Highly Confidential Information shall not constitute a waiver of the right to later designate such document or information, provided that the producing Party so designates such material no later than fourteen (14) days after the close of discovery. Upon such designation, all Parties must treat such document or information as Confidential Information or Highly Confidential Information. No producing Party may hold a receiving Party accountable for any use or disclosure prior to such designation.

10. If a Party learns of any unauthorized disclosure of Confidential Information or Highly Confidential Information, the Party shall immediately upon learning of such disclosure inform the producing Party of all pertinent facts relating to such disclosure and shall make all reasonable efforts to prevent disclosure by each unauthorized person who received such information.

11. Any Party seeking to file under seal any pleading, brief, or supporting material containing Confidential Information or Highly Confidential Information shall follow Judge Palermo's procedures for sealing. All pleadings or documents filed under seal must be identified as "SEALED" in the title of the document. Once filed, the filing Party must serve the sealed document to all counsel of record. No motion is necessary to file under seal. A Party that opposes the filing of any pleading, brief, or supporting material under seal shall raise such objection with the Court within fourteen (14) days of the filing of the pleading, brief, or supporting material, using the procedures outlined in Rule 7 of the Local Rules of the United States District Court for the Southern District of Texas.

12. Within thirty (30) days after entry of final judgment no longer subject to further appeal, each Party must return all Confidential Information and Highly Confidential Information and any copies thereof to the producing Party or provide certification of its destruction, unless such information is stored in disaster recovery backups or is otherwise not accessible. Notwithstanding the foregoing, the Parties and their counsel may retain work product, pleadings, motion papers, legal memoranda, correspondence, trial transcripts, and trial exhibits admitted into evidence that contain Confidential Information or Highly Confidential Information. Any materials containing such information but not destroyed shall remain subject to the terms of this Protective Order.

13. The foregoing is without prejudice to the right of any Party to apply to the Court for an order to:

a. Further protect Confidential Information or Highly Confidential Information;

b. Seek protection regarding the production of documents or information;

c. Compel production of documents or information; or

d. Modify this Protective Order.

14. Nothing in this Protective Order constitutes an admission by any Party that Confidential Information or Highly Confidential Information disclosed in this case is relevant or admissible. Each Party maintains its right to object to the use or admissibility of all Confidential Information or Highly Confidential Information pursuant to applicable law and rules.

15. Nothing in this Protective Order shall require the production of materials that a Party contends is protected from disclosure by the attorney–client privilege, the work-product doctrine, or any other privilege, doctrine, or immunity. If a Party becomes aware of any unauthorized or inadvertent disclosure of information protected by the attorney–client privilege, the work-product doctrine, or any other privilege, doctrine, or immunity, the receiving Party must immediately

inform the producing Party of the disclosure and allow the producing Party to initiate clawback procedures pursuant to Fed. R. Evid. 502(b) and 502(c).

16. The parties agree that this Protective Order is an Order entered under Rule 502(d) of the Federal Rules of Evidence and thus the inadvertent disclosure of information protected by the attorney–client privilege, the work-product doctrine, or any other privilege, doctrine, or immunity shall not prejudice or otherwise constitute a waiver of, or estoppel as to, any claims of privilege, doctrine, or immunity associated with such information or materials in this action or in any other federal or state proceeding.

17. Any Party may enforce this Protective Order by motion to the Court. Any violation may result in the imposition of sanctions.

18. To the extent non-parties produce material in response to discovery requests (whether via subpoenas or voluntarily), this Protective Order shall apply with equal force to those non-parties, provided, however, that nothing shall prevent any non-party from seeking additional protections from the Court. For clarity, this provision means that a non-party who produces information to a Party in connection with this litigation may also designate its materials as Confidential, Highly Confidential, or Highly Confidential – Outside Counsel Only as described in this order, and such materials shall be treated accordingly. For non-party productions, references to the "producing Party" shall refer to the producing non-party.

It is so ORDERED.

Signed on February 18, 2026 at Houston, Texas.

Dena Palermo

Dena Hanovice Palermo
United States Magistrate Judge