United States District Court
Southern District of Texas
ENTERED
November 24, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| W&T OFFSHORE, INC., AND W&T ENERGY VI, LLC, | § | |
| | § | |
| V. | § | LEAD CASE NO. 4:24-CV-3047 CONSOLIDATED ACTION |
| | § | |
| ENDURANCE ASSURANCE CORPORATION, AND LEXON INSURANCE CO., *ET AL.* | § | |

## ORDER AND STIPULATED PROTOCOL FOR EXPERT DISCOVERY

The parties, by and through their counsel ("Counsel") in the above-captioned matter ("Litigation"), hereby stipulate and agree to the following regarding the scope of expert discovery in the Litigation:

Accordingly, **IT IS HEREBY ORDERED AS FOLLOWS:**

### 1. Scope of Protocol

1.1. This Order and Stipulated Protocol for Expert Discovery ("Expert Protocol") shall apply to discovery related to all testifying and non-testifying retained experts ("Experts") in this Litigation and to all Expert depositions. To the extent that this Expert Protocol imposes limitations on discovery that would otherwise be available under the Federal Rules of Civil Procedure, the parties have agreed to such limitations.

1.2. Nothing in this Expert Protocol shall be considered an admission by any person or party that any of the information restricted from discovery as set forth herein would otherwise be discoverable or admissible.

1.3. Except where prohibited by the express terms of this Expert Protocol, nothing in this Expert Protocol otherwise limits any party's rights or obligations in connection with fact discovery in this Litigation, including fact discovery that concerns or overlaps with the subject matter of an opinion to be provided by an Expert. All such fact discovery must be timely and fully provided notwithstanding that an Expert may offer, or has offered, an opinion that relates to that fact discovery.

**2. Scope of Expert Discovery**

2.1. <u>Exemptions from Discovery</u>. Subject to Sections 2.3 and 2.4, the following types of information shall *not* be the subject of any form of discovery, and for the avoidance of doubt, need not be identified, logged, or preserved during the pendency of this Litigation:

a. All oral, written, or other communications or other materials exchanged among and between:

i. parties or their Counsel, including staff, agents, or employees thereof, and those parties' retained Expert (or the retained Expert of any party aligned in interest with those parties in the Litigation, such as a co-Defendant) or his or her staff, assistants, or supporting firm(s);

ii. an Expert and his or her staff, assistants, or supporting firm(s);

iii. an Expert and the staff, assistants, or supporting firm(s) of any other Expert retained by the same party or by any party aligned in interest with that party in the Litigation (e.g., a co-Defendant); and/or

iv. the respective staff, assistants, or supporting firm(s) of any Experts retained by the same party or by any party aligned in interest with that party in the Litigation (e.g., a co-Defendant);

b. All oral, written, or other communications or other materials related to preparation for the deposition of a testifying Expert;

c. All oral, written, or other communications or other materials related to the interviews of, or the potential retention of, any Expert;

d. All work performed by non-testifying experts or consultants performed at the direction of counsel, or in connection with the work of a testifying expert, in connection with this Litigation;

e. Notes; preliminary or non-final calculations, computations, or other data runs; and other types of preliminary work created by, for, or at the direction of an Expert in connection with the Litigation (aside from the final written Expert report(s)), including copies of documents produced by any party bearing the notes, markings, or comments of any of the following persons or their staff or agents: the Expert, the Expert's staff, assistants, and/or supporting firm(s), or Counsel;

f. Drafts, including without limitation, draft Expert reports, analyses, studies, opinions, or other work product prepared by, for, or at the direction of the Expert;

g. Data formulations, data runs, data analyses, or any database-related operations not relied upon by the Expert in the opinions contained in his or her final Expert report; and

h. Budgets, invoices, bills and related billing records, receipts, or time records of or concerning the Expert, his or her staff, assistants, colleagues, associates, or their company and/or organization.

2.2. Notwithstanding the above, if the testifying Expert (or his or her staff, assistants, and/or supporting firm(s)) uses a Generative AI Tool (as defined in Section 2.2(b)) in a manner such that the use of artificial intelligence ("AI") is necessary to reproduce the analysis or other work contained in the Expert's report or opinions, the party proffering the Expert shall disclose the AI methodology used, including the name and version of the Generative AI Tool and the prompts, inputs, settings, and outputs sufficient to reproduce that analysis or other work.

a. For the avoidance of doubt, a testifying Expert's use of a Generative AI Tool for non-substantive, editorial purposes (e.g., formatting, cite-checking, proofreading), document management, data processing, exploratory analysis, or code debugging does not require disclosure

under this Section 2.2 unless the Expert's analysis or other work contained in his or her report cannot be reproduced without it.

b. "Generative AI Tool" means a software application, system, or platform that uses AI, including but not limited to a large language model or similar technology, to generate text, code, images, audio, video, or other content in response to a user's prompt, instruction, or through the system's autonomous operation. It does not include standard statistical, econometric, spreadsheet, or modeling software (e.g., Stata, SAS, R, or Excel) used to perform an analysis specified by the user, even if that software incorporates machine-learning techniques. It does not include automatic outputs provided when running an internet search (e.g., Gemini summaries when running a Google search). "Generative AI Tool" includes, without limitation, systems such as ChatGPT, Claude, Gemini, and Harvey, and any successor or substantially similar technology.

2.3. Bases for Opinions. The limitations contained in Section 2.1 shall not apply to any communications, materials, documents, data sets, data runs, calculations, computations, assumptions, or other forms of information or work (excluding drafts, as described in Section 2.1(f)) upon which an Expert relies as a basis for any of his or her opinions. To the extent a testifying Expert relies on an assumption provided by Counsel, the assumption and that it was provided by Counsel – but not the

communication(s) among Counsel, the Expert and/or their respective staff concerning that assumption – must be disclosed.

2.4. Rates, Time Worked & Amount Billed. The limitations contained in Section 2.1 shall not prevent the parties from asking an Expert reasonable questions while such Expert is testifying at a deposition, hearing, or trial regarding (a) the hourly rates of the Expert and his or her staff, (b) the amount of time that an Expert or his or her staff has spent on the Expert's report and associated work in this Litigation, and (c) the total amount billed for the Expert's report and associated work in this Litigation.

**3. Required Expert Disclosures**

3.1. Other than any disclosures that are exempt from discovery as set forth in Section 2.1, and subject to the provisions of Sections 2.2, 2.3 and 2.4, the parties will make all disclosures required by Federal Rule of Civil Procedure 26(a)(2), including a signed written report containing the information required by the Rule (the "Expert Report"), except that the term "considered" as used in Rule 26(a)(2)(B)(ii) and Rule 26(b)(4)(C)(ii) shall be interpreted to mean "relied upon" for purposes of this Litigation.

3.2. All disclosures required by Federal Rule of Civil Procedure 26(a)(2)(B) shall be served at the same time as the Expert Report, as described more fully in Section 4 below.

**4. Backup Materials**

4.1. Within one (1) calendar day of any party serving any Expert Report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) or otherwise, the party or parties proffering the Expert shall produce the facts, data or other information relied on by the Expert in forming his or her opinions, including but not limited to:

a. copies of the data, materials, and/or other information relied upon by the testifying Expert in forming his or her opinions, including all raw and final electronic data sets and electronic data compilations in the form or format used by the testifying Expert;

b. the input, programs, and output underlying all final calculations (including any intermediary steps for those calculations) that the testifying Expert relied on in forming his or her opinions and/or that are needed to replicate or reproduce the Expert's disclosed tables, figures, calculations, and/or reported results, including the underlying raw and final data, cleaned, reformatted, modified data, description of the steps to clean, reformat, modify data, spreadsheets, computerized regression analyses, and/or other underlying reports and schedules sufficient to reconstruct the work, calculations, and/or analyses upon which the expert is relying for his or her opinions;

c. any information (including, but not limited to, analyses, spreadsheets, graphs, and charts) relied upon by the testifying Expert that is based on the output from any computer programs that are produced; and

d. all programs and codes necessary to recreate any calculation from the initial ('raw') data files.

4.2. The information required to be produced by Sections 3.2 and 4.1 should be produced electronically (via email, disc, or FTP site), where feasible.

4.3. Publicly available electronic documents need not be produced absent a reasonable basis for such a request, provided that the documents and their public location are identified in the Expert Report; however, for the avoidance of doubt any publicly available data sets that are used or relied upon as inputs into an Expert's calculations or analyses should still be produced pursuant to Section 4.1(a).

4.4. Documents previously produced during discovery need not be produced if they are identified by Bates number.

4.5. Data need not be reproduced if the party served with the report already possesses it.

4.6. Deposition transcripts and exhibits from this Litigation need not be reproduced so long as the names of deponents, dates of transcripts, and exhibit numbers relied upon are identified.

4.7. No party will be required to produce: (a) computer software that is reasonably and commercially available (e.g., Stata, Microsoft Word,

Excel); or (b) databases, programs, and software that (i) are used in the ordinary course of a party's business and (ii) are not practicable to copy, as long as the party offering the Expert's opinion provides timely and reasonable access for purposes of replication or analysis of disclosed results.

**5. Expert Depositions**

5.1. Scheduling Procedure. On the date on which the parties are required to disclose the identity of their Experts, as set forth in the operative Docket Control Order ("DCO") issued by the Court, Counsel proffering an Expert shall provide notice of three (3) dates on which that Expert is available for a deposition. All three such dates shall be within the period for Expert depositions set forth in the DCO and, absent agreement of the parties, shall post-date the period for serving all expert and rebuttal reports. Within five (5) business days of Counsel providing potential dates for an Expert's deposition, the party noticing the deposition shall select from among the dates offered or, if the noticing party's Counsel cannot accommodate those dates, offer three (3) alternative dates that, absent agreement of the parties, post-date the period for serving all expert and rebuttal reports.

5.2. No Subpoenas Necessary. No subpoenas for depositions or documents need or may be served on any Expert from whom a report or declaration is provided. Instead, the party proffering such Expert shall (a) produce all materials and information as required by the Federal Rules of Civil

Procedure or this Expert Protocol, and (b) make the Expert available for deposition at a date and time mutually agreed to by the parties and consistent with this Expert Protocol and the Court's DCO. Nothing herein shall preclude the party taking the Expert's deposition from seeking or, if necessary, filing a motion to compel the production of additional material or information, in advance of the deposition, that it contends should have been but was not produced consistent with the requirements of the Federal Rules of Civil Procedure and this Stipulation.

**6. Costs**

6.1. Each party is responsible for all fees, costs, and expenses incurred by its own Experts. The party requesting discovery of an Expert, including but not limited to noticing a deposition of an Expert, shall not be required to pay any fees, costs, and expenses for the Expert's time.

**7. Materials Relied Upon or Otherwise Discoverable**

7.1. For the avoidance of doubt, nothing in this Expert Protocol shall be construed to permit a party or an Expert to withhold any proposition, fact, belief, or other data, information, or material (including any assumption) on which the Expert relies in support of his or her opinion(s) that are disclosed or proffered by a party in this Litigation.

It is so ORDERED.

November 24, 2026
Date

The Honorable Dena Hanovice Palermo
United States Magistrate Judge